1 Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
2 Steven W. Golden (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
3 One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
4 Telephone: 415.263.7000
Facsimile: 415.263.7010
5 E-mail: dgrassgreen@pszjlaw.com
mlitvak@pszjlaw.com
6 sgolden@pszjlaw.com

7 Proposed Attorneys for Debtors and
Debtors in Possession

8 **UNITED STATES BANKRUPTCY COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN JOSE DIVISION**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11 In re: | Case No. 21-51477

12 WATSONVILLE HOSPITAL | Chapter 11
CORPORATION, *et al.*,

13 Debtors.[1] | **DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE APPOINTMENT OF STRETTO AS CLAIMS AND NOTICING AGENT, AND (II) GRANTING RELATED RELIEF**

16 Date: December 7, 2021
17 Time: 9:30 a.m.
Place: **Telephonic/Video Appearance**
18 **Only**
Courtroom 11
19 280 South First Street
San Jose, CA 95113
20 Judge: Hon. M. Elaine Hammond

21

22 The debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned

23 bankruptcy cases (the "<u>Bankruptcy Cases</u>"), hereby file this application (the "<u>Application</u>") for the

24 entry of an order, pursuant to section 156(c) of title 11 of the United States Code, 11 U.S.C. §§ 101–

25 1532 (the "<u>Bankruptcy Code</u>") and Rules 9013-1(a) and 5075-1(b) of the Federal Rules of Bankruptcy

26

27 [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital
28 Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA
95076.

Procedures (the "Bankruptcy Rules"): (a) appointing Stretto, Inc. ("Stretto") as claims and noticing agent (the "Claims and Noticing Agent") for the Debtors in their Bankruptcy Cases effective as of the Petition Date (as defined herein) including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' Bankruptcy Cases, and (b) granting related relief. In support of this Application, the Debtors submit the Declaration of Sheryl Betance, Senior Managing Director of Stretto (the "Betance Declaration"), attached hereto as **Exhibit B**. The Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise. The terms of Stretto's retention are set forth in the Engagement Agreement attached to this Application as **Exhibit C** (the "Engagement Agreement"). By separate application, the Debtors will seek authorization to retain and employ Stretto as administrative advisor in these Bankruptcy Cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these Bankruptcy Cases will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

A proposed form of order granting the relief requested herein (the "Order") is attached hereto as **Exhibit A**.

In further support of this Application, the Debtors submit the *Declaration of Jeremy Rosenthal, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference,[2] and the accompanying memorandum of points and authorities set forth below.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Northern District of California Bankruptcy Local Rule 5011-1(a). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The legal bases for the relief requested herein are section 156(c) of the Bankruptcy Code and Bankruptcy Rules 9013-1(a) and 5075-1(b).

## II.

## BACKGROUND

On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Bankruptcy Cases, and no committees have been appointed or designated.

The Debtors operate Watsonville Community Hospital (the "Hospital"), a 106 bed acute care facility located in Watsonville, California. As the only acute care facility in the area, the Hospital provides vital services to its surrounding community, including emergency, cardiac, pediatric, surgical, pharmaceutical, laboratory, radiological, and other critical services. A more detailed description of the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the First Day Declaration.

## STRETTO'S QUALIFICATIONS

Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as debtor's counsel or official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include: *In re California-Nevada Methodist Homes*, Case No. 21-40363 (CN) (Bankr. N.D. Cal. Apr. 20, 2021); *In re Galileo Learning, LLC*, Case No. 20-40857 (RLE) (Bankr. N.D. Cal. May 20, 2020); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.,* Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.,* Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); *In re Seabras 1 USA, LLC*, Case No. 19-14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019); *In re Agera Energy LLC*, Case No. 19-23802 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); and *In re Barneys New York, Inc.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 7. 2019).[3]

By appointing Stretto as the Claims and Noticing Agent in these Bankruptcy Cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

the Court (the "Clerk's Office") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

**IV.**

**SCOPE OF SERVICES**

This Application pertains only to the work to be performed by Stretto under the Clerk's Office's delegation of duties permitted by 28 U.S.C. § 156(c), and any work to be performed by Stretto outside of this scope is not covered by this Application or by any order granting approval hereof. Specifically, Stretto will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

    (a)    prepare and serve required notices and documents in these Bankruptcy Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Bankruptcy Cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Bankruptcy Cases;

    (b)    maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

    (c)    maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

    (d)    furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

    (e)    maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

    (f)    for all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     provide an electronic interface for filing proofs of claim;

(i)     maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

(n)     upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)     monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)     identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     assist in the dissemination of information to the public and respond to requests for administrative information regarding these Bankruptcy Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(r)     if these Bankruptcy Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Stretto of entry of the order converting the cases;

(s)     thirty days prior to the close of these Bankruptcy Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Bankruptcy Cases;

(t)     within seven days of notice to Stretto of entry of an order closing these Bankruptcy Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Bankruptcy Cases; and

(u)     at the close of these Bankruptcy Cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, or (ii) any other location requested by the Clerk's Office.

## V.

## PROFESSIONAL COMPENSATION

The Debtors respectfully request that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

Prior to the Petition Date, the Debtors provided Stretto advances in the aggregate amount of $76,750. Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these Bankruptcy Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Stretto's bad faith, gross negligence, or willful misconduct or as otherwise provided in the Engagement Agreement or Order. The Debtors believe that such an

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Bankruptcy Cases.

## VI.

### DISINTERESTEDNESS

Although the Debtors do not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Stretto has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

Moreover, in connection with its retention as Claims and Noticing Agent, Stretto represents in the Betance Declaration, among other things, that:

(a) Stretto is not a creditor of the Debtors;

(b) Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Bankruptcy Cases;

(c) by accepting employment in these Bankruptcy Cases, Stretto waives any rights to receive compensation from the United States government in connection with these Bankruptcy Cases;

(d) in its capacity as the Claims and Noticing Agent in these Bankruptcy Cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e) Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Bankruptcy Cases;

(f) Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

(g) in its capacity as Claims and Noticing Agent in these Bankruptcy Cases, Stretto will not intentionally misrepresent any fact to any person;

(h) Stretto shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

(i) Stretto will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(j)     none of the services provided by Stretto as Claims and Noticing Agent in these Bankruptcy Cases shall be at the expense of the Clerk's Office.

Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## VII.

### BASIS FOR RELIEF

Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of bankruptcy courts, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases. It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

Given the number of creditors and other parties in interest involved in these Bankruptcy Cases, the Debtors seek an order appointing Stretto as the Claims and Noticing Agent in these Bankruptcy Cases effective as of the Petition Date pursuant to 28 U.S.C. § to relief the Court and the Clerk's Office of administrative burdens.

At the Debtors' request, Stretto has been serving in a Claims and Noticing Agent capacity since prior to the Petition Date with assurances that the Debtors would seek approval of its employment and retention effective as of the Petition Date so that Stretto may be compensated for its pre-application services in these Bankruptcy Cases. The Debtors believe that no party in interest will be prejudiced by the granting of the employment effective as of the Petition Date, as provided herein, because Stretto has provided and continues to provide valuable services to the Debtors' estates in the interim period.

Courts routinely approve employment effective as of the petition date for claims and noticing agents similar to that requested herein. *See, e.g., In re SVXR, Inc.*, Case No. 21-51050 (SLJ), Docket No. 52 (Bankr. N.D. Cal. Aug. 11, 2021); *In re Wave Computing, Inc.*, Case No. 20-50682 (MEH),

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Docket No. 54 (Bankr. N.D. Cal. May 1, 2020); *In re PG&E Corp.*, Case No. 19-30088 (DM), Docket No. 245 (Bankr. N.D. Cal. Feb. 1, 2019).

Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code and the Bankruptcy Rules. Accordingly, the Debtors respectfully request entry of the Order, pursuant to section 156(c), approving this Application to retain and employ Stretto as the Claims and Noticing Agent in these Bankruptcy Cases, effective as of the Petition Date.

## VIII.

## **EMERGENCY CONSIDERATION**

The Debtors respectfully request emergency consideration of this Application pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." As set forth herein, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the Hospital's viability and that any delay in granting the requested relief could hinder the Debtors' operations and disrupt the efficient restructuring process. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Application on an emergency basis.

## IX.

## **NOTICE**

Notice of this Motion has been provided by email, facsimile, and/or overnight courier to the First Day Notice Parties (as defined in the Motion to Shorten Time). The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 5, 2021                          PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
_____
Debra I. Grassgreen
Maxim B. Litvak
Steven W. Golden

Proposed Attorneys for Debtors and Debtors in Possession

## EXHIBIT A

**(Proposed Order)**

1  Debra I. Grassgreen (CA Bar No. 169978)
   Maxim B. Litvak (CA Bar No. 215852)
2  Steven W. Golden (*pro hac vice* pending)
   PACHULSKI STANG ZIEHL & JONES LLP
3  One Market Plaza, Spear Tower, 40th Floor
   San Francisco, CA  94105-1020
4  Telephone:    415.263.7000
   Facsimile:     415.263.7010
5  E-mail:        dgrassgreen@pszjlaw.com
                  mlitvak@pszjlaw.com
6                 sgolden@pszjlaw.com

7  Proposed Attorneys for Debtors and
   Debtors in Possession

8                    **UNITED STATES BANKRUPTCY COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10                          **SAN JOSE DIVISION**

11  In re:                                    Case No. 21-51477

12  WATSONVILLE HOSPITAL                       Chapter 11
    CORPORATION, *et al.*,
13                                             **ORDER (I) AUTHORIZING AND
                      Debtors.**[1]             APPROVING THE APPOINTMENT OF
14                                             STRETTO AS CLAIMS AND NOTICING
                                               AGENT, AND (II) GRANTING RELATED
15                                             RELIEF**

16                                             Date:        December 7, 2021
                                               Time:        9:30 a.m.
17                                             Place:       **Telephonic/Video Appearance
                                                            Only**
18                                                          Courtroom 11
                                                            280 South First Street
19                                                          San Jose, CA  95113
                                               Judge:       Hon. M. Elaine Hammond
20

21          Upon the application (the "<u>Application</u>")[2] of the above-captioned debtors and debtors in

22  possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Order</u>"), (a) appointing Stretto as

23  the claims and noticing agent (the "<u>Claims and Noticing Agent</u>") to, among other things, (i) distribute

24  required notices to parties in interest, (ii) receive, maintain, docket, and otherwise administer the

25  proofs of claim filed in the Debtors' Bankruptcy Cases, and (iii) provide such other administrative

26  ---
    [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
    Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital
27  Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA
    95076.
28
    [2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

services—as required by the Debtors—that would fall within the purview of services to be provided by the Clerk's Office, and (b) granting related relief, all as more fully set forth in the Application; and upon the Betance Declaration submitted in support of the Application; and upon the First Day Declaration; and the Debtors having estimated that there are in excess of 4,000 creditors in these Bankruptcy Cases, many of which are expected to file proofs of claim, and it appearing that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Claims Noticing Agent has the capability and experience to provide such services and that Claims and Noticing Agent does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given; and no other or further notice being required; and it appearing that the employment of Claims and Noticing Agent is in the best interests of the Debtors, the estates and creditors and sufficient cause appearing; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Northern District of California*, dated February 1, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing, if any, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1. The Application is approved as set forth herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2.     The Debtors are authorized to retain Stretto as Claims and Noticing Agent effective as of the Petition Date under the terms of the Engagement Agreement, and Stretto is authorized and directed to perform noticing services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these Bankruptcy Cases, and all related tasks, all as described in the Application.

3.     Stretto shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these Bankruptcy Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim filed in these Bankruptcy Cases unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.     Stretto is authorized and directed to provide an electronic interface for filing proofs of claim—to the extent necessary—and to obtain a post office box or address for the receipt of proofs of claim.

5.     Stretto is authorized to take such other action to comply with all duties set forth in the Application.

6.     The Debtors are authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.     Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. With respect to services provided prior to the effective date of a chapter 11 plan in these Bankruptcy Cases, Stretto shall serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

8. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided*, *however*, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

9. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtors' estates.

10. Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Stretto may hold its advance under the Engagement Agreement during the Bankruptcy Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11. The Debtors shall indemnify Stretto under the terms of the Engagement Agreement, as modified pursuant to this Order.

12. All requests by Stretto for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided*, *however*, that in no event shall Stretto be indemnified in the case for its own bad faith, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

13. In the event that Stretto seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Stretto's own applications, both interim and final, but determined by this Court after notice and a hearing.

14. In the event Stretto is unable to provide the services set out in this Order, Stretto will immediately notify the Clerk and the Debtors' attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

15.     The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

16.     Stretto shall not cease providing claims processing services during these Bankruptcy Cases for any reason, including nonpayment, without an order of this Court; *provided*, *however*, that Stretto may seek such an order on expedited notice by filing a request with this Court with notice of such request to be served on the Debtors, the United States Trustee, and any official committee of creditors appointed in these Bankruptcy Cases by facsimile or overnight delivery; *provided*, *further*, that except as expressly provided herein, the Debtors and Stretto may otherwise terminate or suspend other services as provided under the Engagement Letter.

17.     After entry of an order terminating Stretto's services as the Claims and Noticing Agent, upon the closing of these Bankruptcy Cases, or for any other reason, Stretto shall be responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable.

18.     Notwithstanding the relief granted in this Order, any payment made by the Debtors pursuant to the authority granted herein shall be subject to and in compliance with any orders entered by the Court approving the Debtors' entry into any postpetition debtor in possession financing facility and any budget in connection therewith and/or authorizing the Debtors' use of cash collateral and any budget in connection therewith.

19.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

20.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

1      23.     This Court retains exclusive jurisdiction with respect to all matters arising from or

2   related to the implementation, interpretation, and enforcement of this Order.

3      24.     In the event of any inconsistency between the Engagement Agreement, the Application

4   and this Order, this Order shall govern.

5                                   ***END OF ORDER***

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**EXHIBIT B**

**(Betance Declaration)**

DOCS_SF:104223.9 92311/001

1  Debra I. Grassgreen (CA Bar No. 169978)
   Maxim B. Litvak (CA Bar No. 215852)
2  Steven W. Golden (*pro hac vice* pending)
   PACHULSKI STANG ZIEHL & JONES LLP
3  One Market Plaza, Spear Tower, 40th Floor
   San Francisco, CA  94105-1020
4  Telephone:    415.263.7000
   Facsimile:    415.263.7010
5  E-mail:       dgrassgreen@pszjlaw.com
                 mlitvak@pszjlaw.com
6                sgolden@pszjlaw.com

7  Proposed Attorneys for Debtors and
   Debtors in Possession

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11 In re:                                    Case No. 21-51477

12 WATSONVILLE HOSPITAL                      Chapter 11
   CORPORATION, *et al.*,
13                                           **DECLARATION OF SHERYL BETANCE**
                                Debtors.[1]  **IN SUPPORT OF DEBTORS'**
14                                           **APPLICATION FOR ENTRY OF AN**
                                             **ORDER (I) AUTHORIZING AND**
15                                           **APPROVING THE APPOINTMENT OF**
                                             **STRETTO AS CLAIMS AND NOTICING**
16                                           **AGENT, AND (II) GRANTING RELATED**
                                             **RELIEF**
17
                                             Date:      December 7, 2021
18                                           Time:      9:30 a.m.
                                             Place:     **Telephonic/Video Appearance**
19                                                       **Only**
                                                         Courtroom 11
20                                                       280 South First Street
                                                         San Jose, CA  95113
21                                           Judge:     Hon. M. Elaine Hammond

22

23         I, Sheryl Betance, under penalty of perjury, declare as follows:

24         1.      I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc. ("Stretto"),

25 a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, California

26

27 [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
   Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital
28 Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA
   95076.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

92602. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.     This declaration (this "Declaration") is made in support of the above-captioned debtors' (collectively, the "Debtors") *Debtors' Application Seeking Entry of an Order (I) Authorizing and Approving the Appointment of Stretto as Claims and Noticing Agent and (II) Granting Related Relief*, filed contemporaneously herewith (the "Application").[2]

## I.

## QUALIFICATIONS

3.     Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's cases include: *In re California-Nevada Methodist Homes*, Case No. 21-40363 (CN) (Bankr. N.D. Cal. Apr. 20, 2021); *In re Galileo Learning, LLC*, Case No. 20-40857 (RLE) (Bankr. N.D. Cal. May 20, 2020); *In re A.B.C. Carpet Co., Inc.*, Case No. 12-11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, Case No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, Case No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.,* Case No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* Case No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* Case No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.,* Case No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); *In re Seabras 1 USA, LLC*, Case No. 19-14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019); *In re Agera Energy*

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

DOCS_SF:104273.92_RJI_001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  *LLC*, Case No. 19-23802 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); and *In re Barneys New York, Inc.*,

2  Case No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 7, 2019).[3]

### II.

### SERVICES TO BE RENDERED

4.  As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement. In performing such services, Stretto will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as Exhibit C to the Application.

5.  Stretto represents, among other things, the following:

(a)  Stretto is not a creditor of the Debtors;

(b)  Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Bankruptcy Cases;

(c)  By accepting employment in these Bankruptcy Cases, Stretto waives any rights to receive compensation from the United States government in connection with these Bankruptcy Cases;

(d)  In its capacity as the Claims and Noticing Agent in these Bankruptcy Cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e)  Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Bankruptcy Cases;

(f)  Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)  In its capacity as Claims and Noticing Agent in these Bankruptcy Cases, Stretto will not intentionally misrepresent any fact to any person;

(h)  Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)  Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Declaration. Copies of these cited orders are available upon request to the Debtors' proposed counsel.

(j)    None of the services provided by Stretto as Claims and Noticing Agent in these Bankruptcy Cases shall be at the expense of the Clerk's office.

6.    Although the Debtors do not propose to retain Stretto under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of potential parties-in-interest (the "Potential Parties in Interest") in these Bankruptcy Cases. A list of Potential Parties in Interest, attached hereto as **Exhibit 1**, was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, secured creditors, unions, major contract counterparties, the Debtors' professionals, the Debtors' largest unsecured creditors on a consolidated basis, the United States Trustee for the Northern District of California, San Jose Division and persons employed in the office of the United States Trustee, and other parties. The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries. Stretto's internal database also includes Stone Point Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties"). The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision. At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest. Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to file promptly a supplemental declaration.

7.    To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.

8.    Stretto has and will continue to represent clients in matters unrelated to these Bankruptcy Cases. In addition, in matters unrelated to these Bankruptcy Cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these Bankruptcy Cases. Stretto may also provide professional services to entities or

Case: 21-51477    Doc# 5    Filed: 12/05/21    Entered: 12/05/21 13:18:11    Page 23 of 42

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

persons that may be creditors or parties in interest in these Bankruptcy Cases, which services do not directly relate to, or have any direct connection with, these Bankruptcy Cases or the Debtors. Based upon a review of the Potential Parties in Interest:

- The list of Potential Parties in Interest includes the following entities, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services: AT&T, Verizon, Pacific Gas & Electric, Bank of America, Wells Fargo Bank, Delta Dental of California, and First Insurance Funding. However, to the best of my knowledge, such relationships are materially unrelated to these Bankruptcy Cases.

9.  To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the Northern District of California, the United States Trustee for Region 17, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the Northern District of California.

10.  Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these Bankruptcy Cases were filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in these Bankruptcy Cases.

11.  Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in Bankruptcy Cases representing the Debtors or parties in interest. To the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in these Bankruptcy Cases.

12.  In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point. Stone Point is a financial services-focused private equity firm based in Greenwich,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Connecticut. The firm has raised and managed eight private equity funds – the Trident Funds – with aggregate committed capital of approximately $25 billion. Stone Point targets investments in the global financial services industry and related sectors.

13.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

14.     Stretto has searched the names of the Debtors and the names of the Potential Parties in Interest against the Stone Point Searched Parties. Based solely on the foregoing search, Stretto has determined that neither the Trident VI Funds, Stone Point nor the Stone Point Searched Parties have been identified on the parties in interest list in these Bankruptcy Cases as of the date hereof and to the best of its knowledge, that there are no material connections that require disclosure. To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge. Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates. Stretto has a policy

prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained. Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

17. To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtors' estates; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: December 5, 2021

_/s/ Sheryl Betance_
Sheryl Betance
Senior Managing Director
Stretto

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**EXHIBIT 1**

**(Potential Parties in Interest)**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_SF:104223.9 92831/001

**Debtors**
Halsen Healthcare, LLC
Watsonville Healthcare Management, LLC
Watsonville Hospital Corporation
Watsonville Hospital Holdings, Inc.

**Related Parties**
Halsen Holdings, LLC
KSJS Montecito Investments, LLC
RLB Capital, LLC

**Secured Creditors/UCC**
CNH Finance Fund I, L.P.
MPT of Watsonville, LLC

**Current/Former Directors and Officers**
David Gordon
Daniel Brothman
Edmund King
Frank R. Williams
Jeremy Rosenthal
Sean Fowler
Steven Salyer

**Professionals**
Bankruptcy Management Solutions, Inc.
Bartko Zankel Bunzl & Miller, P.C.
Blanco + Hopkins & Associates, LLC
Cowen and Company, LLC
Force Ten Partners LLC
Hooper Lundy & Bookman, P.C.
Pachulski Stang Ziehl & Jones LLP

**Banks**
Bank of America
Farmers & Merchants Bank
Wells Fargo Bank

**Litigation Counterparties**
Peritus Advisors
Vaco LLC

**Largest Unsecured Creditors**
3M Health Information System
Allied Universal Company
ASD Healthcare
Cardinal Health
Carefusion Solutions LLC
Department of Health Care Services
  (DHCS)

Dominican Hospital
Emergency Medical Services Authority
Firm Revenue Cycle Management
Guidehouse Managed Services Inc.
Health Trust
Healthnow Administrative Services
Heroic Security, LLC
Intuitive Surgical, Inc.
Lucile Packard Children Hospital
Medhost
Medical Properties Trust, Inc.
Meritan Health Inc.
Pacific Gas & Electric
Peritus Advisors
Pinehurst Hospitalist Medical Group, Inc.
Radiology Medical Group
Rehab Practice Management
Rxbenefits
Salud Para La Gente
Santa Cruz County Tax Collector
Stealth Partner Group, LLC
Stryker Orthopaedics
The Permanente Medical Group
Total Renal Care, Inc

**Major Contract Counterparties**
Alta Hospitals System, LLC
Aretaeus Telemedicine, Inc.
Associated Pathology Medical Group
CEP America – Neurology, P.C.
Elite Anesthesia Medical Group, Inc.
Coastal Health Partners, P.C.
LifeLinc Anesthesia VI, P.C.

**Unions**
California Nurses Association
California Technical Employees' Coalition
General Teamsters Local 912
SEIU-UHW

**Insurance and Benefits Parties**
Beazley Insurance Company, Inc.
BETA Healthcare Group
Crum & Forster Specialty Insurance Co.
Delta Dental of California
First Insurance Funding
Hudson Specialty Insurance Co.
Igoe Administrative Services
Marsh & McLennan Agency, LLC
Starr Indemnity & Liability Co.
Tokio Marine Specialty Insurance Co.
Travelers Indemnity Co. of Connecticut

**Utilities**
AT&T
Charter Communications
City of Watsonville
Constellation New Energy
Pacific Gas & Electric
Stericycle, Inc.
Verizon

**Judges and UST Personnel**
Anna Lee
Anna Rosales
Honorable Elaine M. Hammond
Honorable Stephen L. Johnson
Katina Umpierre
Laurent Chen
Marta E. Villacorta
Michael Chow
Patricia Vargas
Raenna J. Rorabeck
Suhey Ramirez
Walker Mondt

DOCS_SD:106621.2 92281/001

**EXHIBIT C**

**(Engagement Agreement)**

DOCS_SF:104273.9 92884/001


## Services Agreement

This Services Agreement (this "Agreement") is entered into as of _____November 11, 2021_____, 2021 between Stretto, Inc. ("Stretto") and _Watsonville Hospital Corp._ (together with its affiliates and subsidiaries, the "Company").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  **Services**

    (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("Claims Administration, Noticing, and Solicitation Services"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "Services").

    (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "Company Parties") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

    (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2.  **Rates, Expenses and Payment**

    (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "Preferred Rate Structure"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

    (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses is expected to be incurred to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1]     The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.


as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $ 20,000.00 . Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on an annual basis effective on the first business day of each year. If such annual increases represent an increase greater than 10% from the previous year's levels, Stretto shall provide 30 days' notice to the Company of such increases.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Client using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3. Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "Bankruptcy Code"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

**4. Confidentiality**

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection



with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

## 5. Property Rights

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "Property") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

## 6. Bank Accounts

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

## 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "Cause" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and



assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

**8. No Representations or Warranties**

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

**9. Indemnification**

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "Indemnified Parties") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "Losses") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

**10. Limitations of Liability**

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

**11. Company Data**

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "SOFAs and Schedules"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.



(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. California Consumer Privacy Act.**

(a) Definitions. In this Section 12,
   (i) "CCPA" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii) "Personal Information" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii) "Commercial Purposes," "Sell," "Business," and "Service Provider" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**13. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

**14. Force Majeure**

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.



### 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

### 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

### 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

### 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:      Stretto
410 Exchange, Ste. 100
Irvine, CA 92602
Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com



| If to the Company: | _____ | Jeremy Rosenthal, CRO |
| | _____ | c/o Force 10 Partners |
| | _____ | 5271 California, Suite 270 |
| | _____ | Irvine, California 92617 |
| | _____ | |
| | _____ | |

| With a copy to: | _____ | Debra Grassgreen |
| | _____ | Pachulski Stang |
| | _____ | 150 California Street |
| | _____ | 15th Floor |
| | _____ | San Francisco CA 94111-4500 |
| | _____ | |

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

_____

By:   James M. Le

Title:   COO

Watsonville Hospital Corp.

_____

By:   Jeremy Rosenthal

Title:   CRO


**Exhibit A**



# GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "Agreement") by and between Stretto (the "Processor")[2] and the Company (together, the "Parties").

## RECITALS

**WHEREAS**,

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "GDPR").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.     **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

   (a)     "Addendum" shall mean this GDPR Addendum;

   (b)     "Company Personal Data" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

   (c)     "Data Protection Laws" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

   (d)     "Services" means the services the Processor provides to the Company pursuant to the Agreement;

   (e)     "Subprocessor" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.



(f)     "Technical and organizational security measures" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms "Commission", "Controller", "Data Subject", "Member State", "Personal Data", "Personal Data Breach", "Processor", "Processing", "Special Categories of Personal Data", and "Supervisory Authority" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Company.**  The Company agrees and warrants:

(a)     that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)     that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)     that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)     that it will ensure compliance with the technical and organizational security measures; and

(f)     that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.     **Obligations of the Processor.**  The Processor agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;



(c)     that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)     that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)     that it will promptly notify the Company about:

    i.     any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

    ii.     any accidental or unauthorized access; and

    iii.     any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)     to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)     to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)     that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.     Obligations after Termination of Personal Data Processing Services.**

(a)     The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.


(b)     The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.     **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.