Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA  94105-1020
Telephone:    415.263.7000
Facsimile:    415.263.7010
E-mail:    dgrassgreen@pszjlaw.com
           mlitvak@pszjlaw.com
           sgolden@pszjlaw.com

Proposed Attorneys for Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 21-51477 |
| WATSONVILLE HOSPITAL CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | **DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION, AND (B) PAY AND HONOR BENEFITS AND OTHER WORKFORCE OBLIGATIONS; (II) AUTHORIZING AND DIRECTING THE APPLICABLE BANKS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS MADE BY THE DEBTORS RELATING TO THE FOREGOING; AND (III) GRANTING RELATED RELIEF** |
| | Date:      December 7, 2021 |
| | Time:      9:30 a.m. |
| | Place:     **Telephonic/Video Appearance Only** |
| | Courtroom 11 |
| | 280 South First Street |
| | San Jose, CA 95113 |
| | Judge:     Hon. M. Elain Hammond |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113) ("WHC"); Watsonville Healthcare Management, LLC (4168) ("WHM"); Watsonville Hospital Holdings, Inc. (1118) ("Watsonville Holdings"); and Halsen Healthcare, LLC ("Halsen Healthcare"). The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby file this motion (the "Motion") for the entry of interim and final orders, pursuant to sections 105, 362, 363, 507, 541, and 1129 of title 11 of the United State Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rules 4001, 6003, and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"): (a) authorizing the Debtors to (i) pay prepetition wages, salaries, and other compensation and (ii) pay and honor benefits and other workforce obligations (including withholding obligations, maintenance of workers' compensation insurance, and contributions to retirement plans); (b) authorizing and directing the applicable banks to pay all checks and electronic payment requests made by the Debtors related to the foregoing; and (c) granting related relief.

A proposed form of interim order granting the relief requested herein (the "Interim Order") is attached hereto as **Exhibit A**.

In support of this Motion, the Debtors submit the *Declaration of Jeremy Rosenthal, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference,[2] and the accompanying memorandum of points and authorities set forth below.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

**TABLE OF CONTENTS**

**Contents**                                                                                    **Page**

I. INTRODUCTION ................................................................................................................ 1

II. JURISDICTION AND VENUE ........................................................................................ 1

III. FACTUAL BACKGROUND ............................................................................................ 2

   A. General Background .................................................................................................. 2

   B. The Workforce .......................................................................................................... 2

      1. The Debtors' Employees ...................................................................................... 3

      2. Supplemental Workforce ..................................................................................... 3

      3. Physicians ............................................................................................................. 4

   C. Workforce Compensation and Benefits Programs ................................................ 4

      1. Compensation, Withholding, and Related Obligations ...................................... 5

      2. Leave Obligations ................................................................................................ 9

      3. Workforce Benefits Programs .............................................................................. 9

IV. RELIEF REQUESTED ..................................................................................................... 14

V. BASIS FOR REQUESTED RELIEF ................................................................................ 15

   A. The Court Has Authority to Grant the Relief Requested ..................................... 15

   B. Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits Programs ..................................................................................................... 16

      1. Certain Compensation and Benefits Programs are Entitled to Priority Treatment .............. 16

      2. Payment of Prepetition Compensation and Benefits Program Obligations is Necessary to Maintain Hospital Operations and Preserve Value ...................... 17

      3. Payment of Certain Compensation and Benefits Programs is Required by Law ................ 19

      4. Maintaining Compensation and Benefits Programs is Within the Debtors' Business Judgment ................................................................................................. 20

   C. A Limited Waiver of the Automatic Stay for Workers' Compensation Claims, To the Extent Necessary, is Appropriate .................................................................... 20

   D. Sufficient Cause Exists to Direct Banks to Honor Checks and Transfers Related to Compensation and Benefits Programs ................................................................. 21

VI. EMERGENCY CONSIDERATION ................................................................................ 21

VII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS ......................................... 22

VIII. RESERVATION OF RIGHTS ...................................................................................... 22

IX. NOTICE ............................................................................................................................. 22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

11 U.S.C. § 541(d) .................................................................................................... 19

*Begier v. Internal Revenue Service*, 496 U.S. 53, 58-59 (1990) ................................... 19

*City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) ...................... 19

*Cohen v. KDC Fin. Serv., Inc.* (*In re Miller Mining, Inc.*), 219 B.R. 219, 223 (Bankr. N.D. Ohio 1998) .......................................................................................................................... 16

*Czyewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2016) ............................... 16, 17

*In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) .................................... 17

*In re Advent Management Corp.*, 178 B.R. 480, 487 (B.A.P. 9th Cir. 1995) .................. 19

*In re All Seasons Indus.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990) ..................... 20

*In re Canton Castings, Inc.*, 103 B.R. 874, 876 (Bankr. N.D. Ohio 1989) ..................... 20

*In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) ....................................... 19

*In re EcoSmart, Inc.*, Case No. 15-27139 (RK), 2015 Bankr. LEXIS 4244, at *13-14 (Bankr. C.D. Cal. Dec. 18, 2015) ................................................................................................. 15

*In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000) .................... 20

*In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, Case No. 16-17463ER, Docket No. 68 (Bankr. C.D. Cal. June 10, 2016) ..................................................................................................... 16

*In re Gordian Med., Inc.*, Case No. 1212399-MW, Docket No. 57 (Bankr. C.D. Cal. March 5, 2012) .......................................................................................................................... 16

*In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ................................... 17

*In re Halvorson*, 581 B.R. 610, 636 n. 91 (Bankr. C.D. Cal. 2018) .............................. 15

*In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ........................ 15

*In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ................... 15

*In re Pac. Forest Indus., Inc.*, 95 B.R. 740, 743 (Bank. C.D. Cal. 1989) ...................... 20

*In re Pacific Gas Electric Co.*, No. 01-30923-SFM, Chapter 11, at *1 (Bankr. N.D. Cal. May 16, 2001) .......................................................................................................................... 16

*In re Professional Financial Investors, Inc.*, Case No. 20-30604, Docket No. 45 (Bankr. N.D. Cal. Aug. 7, 2020) .......................................................................................................... 16

*In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005) ....................................................... 15

*In re Sizzler USA, Inc.*, Case No. 20-30748, Docket No. 23 (Bankr. N.D. Cal. Sep. 22, 2020) ......... 16

*In re Stanmock, Inc.*, 103 B.R. 228, 229 (B.A.P. 9th Cir. 1989) ................................. 19

*In re SVXR, Inc.*, Case No. 21-51050 (SLJ), Docket No. 56 (Bankr. N.D. Cal. Aug. 11, 2021) ....... 16

*In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ............................................. 19

*In re Verity Health System of Calif., Inc.*, Case No. 2:18-bk-20151-ER, Docket No. 75 (Bankr. C.D. Cal. Sep. 5, 2018) ..................................................................................................... 16

*In re Victor Valley Cmty. Hosp.*, Case No. 10-39537-CB, Docket No. 30 (Bankr. C.D. Cal. Sep. 17, 2010) .......................................................................................................................... 16

*In re Wave Computing, Inc.*, Case No. 20-50682 (MEH), Docket No. 67 (Bankr. N.D. Cal. May 1, 2020) .......................................................................................................................... 16

*LTV Corp. v. Aetna Cas. & Surety Co.* (*In re Chateaugay Corp.*), 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) ................................................................................................................ 17

*Pension Benefit Guar. Corp. v. Sharon Steel Corp.* (*In re Sharon Steel Corp.*), 159 B.R. 730, 736-737 (Bankr. W.D. Pa. 1993) ..................................................................................... 16

*Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012) ........................................................................................................................ 15

*Sierra Steel, Inc. v. S S Steel Fabrication* (*In re Sierra Steel, Inc.*), 96 B.R. 271, 273 (9th Cir. BAP 1989) .......................................................................................................................... 19

**Statutes**

11 U.S.C. § 101(31) ..................................................................................................... 7

11 U.S.C. § 105 .......................................................................................................... 2

11 U.S.C. § 1107(a) .................................................................................................... 2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

11 U.S.C. § 1108 .......................................................................................................... 2
11 U.S.C. § 1129 .......................................................................................................... 2
11 U.S.C. § 1129(a)(9)(b) .......................................................................................... 16
11 U.S.C. § 362 ............................................................................................................ 2
11 U.S.C. § 362(a) ...................................................................................................... 20
11 U.S.C. § 362(d) ...................................................................................................... 20
11 U.S.C. § 363 ............................................................................................................ 2
11 U.S.C. § 363(b)(1) ................................................................................................. 15
11 U.S.C. § 507 ....................................................................................................... 2, 18
11 U.S.C. § 507(a)(4)(A) ........................................................................................... 16
11 U.S.C. § 507(a)(5) ................................................................................................. 16
11 U.S.C. § 507(a)(8)(D) ........................................................................................... 16
11 U.S.C. § 541 ............................................................................................................ 2
11 U.S.C. § 541(b)(1) ................................................................................................. 19
11 U.S.C. § 541(b)(1)(d) ............................................................................................ 19
26 U.S.C. § 6672 ........................................................................................................ 19
26 U.S.C. § 7501(a) ................................................................................................... 19
28 U.S.C. § 1334 .......................................................................................................... 1
28 U.S.C. § 1408 .......................................................................................................... 1
28 U.S.C. § 1409 .......................................................................................................... 1
28 U.S.C. § 157 ............................................................................................................ 1
28 U.S.C. § 157(b)(2) ................................................................................................... 1
Cal. Code Regs. Tit. 22, § 70217 ................................................................................ 3
Cal. Health & Safety Code § 1276.4 ........................................................................... 3

**Other Authorities**

March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 11:386, at 11–45 (2014) ...... 15

**Rules**

Bankruptcy Local Rule 5011-1(a) ................................................................................ 1
Fed. R. Bankr. P. 4001 ................................................................................................. 2
Fed. R. Bankr. P. 6003 ................................................................................................. 2
Fed. R. Bankr. P. 6004 ................................................................................................. 2
Fed. R. Bankr. P. 7008 ................................................................................................. 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The Debtors' principal goals in these Bankruptcy Cases are to (a) maintain seamless operations for the benefit of the Watsonville community and the patients (the "Patients") who seek and depend on medical care at Watsonville Community Hospital (the "Hospital") and (b) maximize value for all of the Debtors' stakeholders through an orderly restructuring process. Accordingly, it is imperative that the Debtors minimize any adverse impact of the chapter 11 filing on the Hospital's physicians, nurses, and other staff (collectively, the "Workforce"), who work tirelessly for Patients and are integral to the Debtors' continued operations. Any disruption to the payment of compensation in the ordinary course, or to the continued operation of benefit programs (collectively, the "Compensation and Benefits Programs"), could cause members of the Workforce to terminate their relationship with the Debtors, distract from their duties to care for Patients, disrupt the operations of the Hospital, and permanently hurt morale at a particularly sensitive time for the Workforce. Accordingly, the Debtors respectfully request that the Court grant the Motion on an interim basis at an emergency hearing and on a final basis following a noticed hearing.

## II.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Local Rules of Bankruptcy Procedure of the Northern District of California (the "Bankruptcy Local Rules"). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

The legal bases for the relief requested herein are sections 105, 362, 363, 507, 541, and 1129 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004.

**III.**

**FACTUAL BACKGROUND**

**A.**    **General Background**

On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Bankruptcy Cases, and no committees have been appointed or designated.

The Hospital is a 106-bed acute care facility located in Watsonville, California.  As the only acute care facility in the area, the Hospital provides vital services to its surrounding community, including emergency, cardiac, pediatric, surgical, pharmaceutical, laboratory, radiological, and other critical services.  A more detailed description of the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the First Day Declaration.

**B.**    **The Workforce**

Broadly speaking, the Hospital's Workforce consists of Physicians, Employees, and the Supplemental Workforce (each as defined below).  The Hospital's Employees include registered nurses, allied health support, ancillary health technicians, administrative and management personnel, licensed professionals, service workers, and skilled workers, all of whom are essential to the Hospital's operations.  The Debtors also engage a Supplemental Workforce of traveling nurses and contractors, who are not directly employed by the Debtors, to supplement critical roles.  Finally, as described in further detail in the First Day Declaration, the physicians who work at the Hospital (the "Physicians") are either independent contractors or employed by various medical groups (the "Medical Groups") who, in turn, contract with the Debtors.[3]

---

[3] With the exception of the CHP Physicians (as defined below), the Debtors do not seek any relief in this Motion with respect to any Physicians or Medical Groups except to continue the Debtors' relationship with such Physicians and Medical Groups postpetition in the ordinary course of business.

DOCS_DE:237027.5 92381/001

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

### 1. The Debtors' Employees

As of December 1, 2021, the Debtors directly employed approximately 654 individuals (collectively, the "Employees"),[4] making the Hospital one of the three largest employers in Watsonville.[5] Of the Debtors' Employees, approximately 294 are full-time, 230 are part-time, and 130 are *per diem*. Both full-time and part-time Employees (collectively, "Eligible Employees") are regularly scheduled to work every pay period, whereas *per diem* Employees are used on an as-needed basis. The Hospital calls on *per diem* Employees in situations when it could not otherwise meet its core staffing requirements, such as when full-time or part-time Employees are sick or on vacation, or when there is a spike in the Patient census. Although not limited to nursing Employees, California law requires the Hospital to maintain specific nurse-to-patient ratios,[6] so the Debtors also use *per diem* Employees to ensure the Hospital is in compliance with those requirements.

Over three-quarters of the Debtors' Employees—approximately 557 Employees total (the "Represented Employees")—are represented by one of four labor unions (collectively, the "Unions"), as follows:

| Union | # of Represented Employees |
|---|---|
| California Nurses Association ("CNA") | 261 |
| California Technical Employees' Coalition ("CalTEC") | 53 |
| General Teamsters, Local 912 ("Teamsters") | 54 |
| SEIU-United Healthcare Workers West ("SEIU-UHW") | 189 |

The Debtors' arrangements with the Unions for the employment of the Represented Employees are reflected in five collective bargaining agreements (the "CBAs").[7]

### 2. Supplemental Workforce

In addition to their Employees, the Debtors utilize the services of third parties (the "Supplemental Workforce") to perform essential functions at the Hospital. Most critically, as of the

---

[4] Approximately 641 of the Employees are employed by WHC and approximately 13 of the Employees are employed by WHM. Neither Halsen Healthcare nor Watsonville Holdings currently have any Employees.

[5] *See City of Watsonville, California Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2019* at p. 131, *available at* https://cityofwatsonville.org/DocumentCenter/View/13219/Comprehensive-Annual-Financial-Report-for-FY-18-19

[6] *See* Cal. Health & Safety Code § 1276.4; Cal. Code Regs. Tit. 22, § 70217.

[7] SEIU-UHW Represented Employees are represented under one of two separate CBAs, one for the Service and Maintenance Represented Employees (the "S&M CBA") and one for the Professional Employees (the "Professionals CBA").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

Petition Date, approximately 18 members of the Debtors' Supplemental Workforce are traveling nurses (the "Traveling Nurses"), of whom 15 are sourced through various medical staffing agencies (the "Staffing Agencies")[8] and three (3) are independent contractors who directly contract with the Debtors.

### 3. Physicians

As described in further detail in the First Day Declaration, under applicable California law, the Hospital cannot directly employ physicians to provide patient care and instead obtains the Physicians' professional medical services through a variety of independent contractor relationships, including through contracts with Medical Groups. One such Medical Group is Coastal Health Partners, P.C. ("CHP"), a "friendly physician" group that directly employs nine Physicians (the "CHP Physicians")[9] who are so fully integrated with and indispensable to the Hospital's daily operations that, even though they are legally treated as independent contractors, they are functionally equivalent to full-time employees in other ways. Pursuant to the CHP Management Agreement, the CHP Physicians' wages and salaries are paid (via ADP) by the Debtors and the CHP Physicians are enrolled in the Debtors' Benefits Programs.[10]

In addition to CHP, the Hospital contracts with approximately 12 other Medical Groups, who provide the services of approximately 70 Physicians to the Hospital. The Medical Groups' Physicians include those in the anesthesiology, pathology, pediatrics, obstetrics, radiology, neurology, general surgery, pathology, and intensive care departments. The Hospital also maintains independent contractor relationships with approximately 11 Physicians (the "On Call Physicians") who provide on call coverage in the Hospital's critical care, orthopedic, neurology, gastroenterology, cardiology, nephrology, and infectious disease departments.

### C. Workforce Compensation and Benefits Programs

---

[8] The Staffing Agencies include ADEX Medical Staffing, LLC; the California Emergency Medical Services Authority; HealthTrust Workforce Solutions, LLC; and Wynden Stark LLC.

[9] The CHP Physicians include two urologists, three general surgeons, one cardiologist, two orthopedic surgeons, and one nephrologist. CHP also has a call coverage agreement under which CHP Physicians provide daily on call coverage for these specialty practices in exchange for fees included as part of the CHP Physicians' compensation.

[10] Although the Debtors facilitate the payment of the CHP Physicians' compensation and enrollment in Benefits Programs, all such expenses are paid from CHP's funds, which are swept into the Debtors' Cash Management System pursuant to the CHP Management Agreement.

**1.      Compensation, Withholding, and Related Obligations**

        a.      <u>Employee Wages</u>

The Hospital's Employees are paid their wages and salaries (the "<u>Wages</u>") bi-weekly, in arrears, six days after the end of every 14-day pay period, through direct deposit or by check.  The Debtors pay the Employees on Friday for the preceding 14-day period running from Sunday to Saturday.  The Debtors' average bi-weekly gross payroll is approximately $2.4 million and is disbursed by ADP.  The Debtors normally fund such payroll on Thursday prior to the pay date.

The Employees were last paid on November 26, 2021, for the two-week period ending November 20, 2021.  The Employees' next routine payroll is scheduled for December 10, 2021 (the "<u>Next Employee Payroll</u>") and is expected to total approximately $1.75 million, exclusive of Withholding Obligations (which are defined and discussed below), covering Wages earned from November 21 to December 4, 2021 (the "<u>Last Pay Period</u>").  All of the Next Employee Payroll is attributable to prepetition Wages (the "<u>Prepetition Employee Wages</u>").  The Debtors seek authority to pay the Prepetition Employee Wages, subject to an aggregate cap of $2.2 million,[11] and to continue to pay Wages to their Employees incurred postpetition in the ordinary course of the Debtors' business.

        b.      <u>Physician Compensation</u>

As described in further detail in the Cash Management Motion and First Day Declaration, pursuant to the CHP Management Agreement, Debtor WHM manages all back-office functions for CHP, including payroll for the nine CHP Physicians.  Through the Hospital's integrated Cash Management System, the Debtors fund the CHP Physicians' Wages to ADP on the same schedule and in the same manner as the Debtors fund ADP for the Employees' Wages (except that the CHP Physicians' Wages are paid out of CHP's funds), and the CHP Physicians are paid on the same bi-weekly cycle as the Employees, as described above.

The CHP Physicians were last paid on November 26, 2021, for the two-week period ending November 20, 2021.  The CHP Physicians' next routine payroll is scheduled for December 10, 2021 and is expected to be approximately $100,000, exclusive of Withholding Obligations, covering Wages

---

[11] Because certain Employees' compensation is tied to, among other things, overtime pay, holiday pay, and additional shifts picked up during a payroll period, the Debtors cannot precisely determine the amount of the Next Employee Payroll until several days after the Last Pay Period ends.

DOCS_DE:237426.7 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

earned from November 21 to December 4, 2021 (the "Next CHP Physician Payroll"), all of which is attributable to prepetition Wages (the "Prepetition CHP Physician Wages"). Accordingly, the Debtors seek authority to pay the Prepetition CHP Physician Wages in full, subject to an aggregate cap of $150,000.[12] By this Motion, the Debtors do not seek to pay any prepetition amounts that may be due to Medical Groups or On Call Physicians. The Debtors seek to continue to pay compensation to the CHP Physicians, and amounts due to the Medical Groups and On Call Physicians, incurred postpetition in the ordinary course of the Debtors' business.

c.    Supplemental Workforce Compensation

As noted above, the Hospital uses Traveling Nurses, who generally join the Hospital's Workforce for a minimum of thirteen (13) weeks, to fill essential roles in providing Patient care. The Debtors have entered into contracts with the Staffing Agencies (the "Staffing Agreements"), pursuant to which the Debtors pay an agreed fee to the Staffing Agencies (the "Staffing Fee") for each Traveling Nurse who joins the Hospital's Workforce, which Staffing Fee corresponds to the compensation each Traveling Nurse receives from their respective employer. On average, the Debtors incur approximately $525,000 per month in Staffing Fees. By this Motion, the Debtors do not seek to pay any prepetition accrued Staffing Fees to the Staffing Agencies, but do seek authority to continue to pay postpetition Staffing Fees under the terms of the Staffing Agreements in the ordinary course of the Debtors' business, including onboarding additional Traveling Nurses.

d.    Withholding Obligations and Hospital Tax Obligations

In the ordinary course of business, the Debtors withhold certain amounts from Wages that the Debtors are required to transmit to the government and other third parties for, among other things, Social Security and Medicare withholdings, income taxes, contributions to the Debtors' Benefits Programs (as defined below), Union dues, garnishment, and child support obligations (collectively, the "Withholding Obligations"). In addition, the Debtors are required to transmit certain additional amounts to the government and other third parties in addition to the Withholding Obligations, including tax obligations such as FICA and Social Security (the "Hospital Tax Obligations"). As of

---

[12] Because the CHP Physicians' compensation is tied to, among other things, the number of on-call shifts picked up during a payroll period, the Debtors cannot precisely determine the amount of the Next CHP Physician Payroll until several days after the Last Pay Period ends.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

the Petition Date, the Debtors will owe (a) on account of Withholding Obligations, approximately $900,000 in connection with the Prepetition Employee Wages and $75,000 in connection with the Prepetition CHP Physician Wages and (b) on account of Hospital Tax Obligations, approximately $160,000 in connection with the Prepetition Employee Wages and $5,000 in connection with the Prepetition CHP Physician Wages. Accordingly, the Debtors seek authority to pay the prepetition Withholding Obligations in the amount of $975,000 and the prepetition Hospital Tax Obligations in the amount of $165,000, and to continue to pay Withholding Obligations and Hospital Tax Obligations incurred postpetition in the ordinary course of the Debtors' business.

### e. CBA Obligations

The Debtors are required to make certain Union-specific contributions (the "CBA Obligations") pursuant to certain of the CBAs. For instance, pursuant to the SEIU-UHW (Service & Maintenance Unit) CBA, the Debtors are required to contribute 0.22% of gross wages of certain Represented Employees, not to exceed $10,000, to a training fund established for such Represented Employees. The Debtors do not believe that any prepetition amounts are due and owing on account of the CBA Obligations. Accordingly, the Debtors seek authority to continue to pay CBA Obligations incurred postpetition in the ordinary course of the Debtors' business.

### f. Non-Insider Incentive Programs[13]

The Hospital, like other California healthcare facilities, is facing a significant shortfall of registered nurses.[14] To incentivize prospective Employees and current non-insider Employees to fill such critical vacancies, the Debtors offer four incentive programs (collectively, the "Vacancy Programs"): (a) a one-time referral payment to existing Employees payable once the referred new Employee completes their probationary period; (b) an incentive payment, paid in two installments over six months, for certain Employees that change from part-time to full-time status; (c) an incentive payment, paid in three installments over 18 months, for certain Employees that change from *per diem*

---

[13] The relief sought in this Motion with respect to Non-Insider Incentive Programs does not include the payment of any amounts to an "insider" (as that term is defined in section 101(31) of the Bankruptcy Code).

[14] *See, e.g.,* "California Faces Short-Term Nursing Shortage from COVID-19 Retirements," UCSF (September 6, 2021) *available at* https://www.ucsf.edu/news/2021/09/421366/california-faces-short-term-nursing-shortage-covid-19-retirements.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

to full-time status; and (d) a sign-on bonus, payable in three installments over 18 months, for certain new Employees.

As of the Petition Date, the Debtors are current on all prepetition amounts due and owing under the Vacancy Programs. Accordingly, the Debtors seek authority to continue to make payments to non-insider Employees pursuant to the terms of the Vacancy Programs in the ordinary course of business and when due (including, for example, scheduled installment payments on December 12 and 26, 2021)[15] and, in their discretion, to continue the Vacancy Programs postpetition in the ordinary course of business.

In addition, and for the same reasons underlying the establishment of the Hospital's Vacancy Programs, the Debtors offer an incentive payment to Employees that are registered nurses and patient care partners based on such Employees' attendance record and willingness to undertake additional shifts (the "Attendance Program" and, together with the Vacancy Programs, the "Non-Insider Incentive Programs"). Specifically, the Nursing Incentive Program provides for a one-time monetary incentive to eligible Employees based on such Employee's perfect attendance between September 16 and December 18, 2021, which amount is increased if an eligible Employee also takes on an additional shift each week during that time period. As of the Petition Date, the Debtors are current on all prepetition amounts due and owing under the Attendance Program. Accordingly, the Debtors seek authority to continue to make payments to non-insider Employees pursuant to the terms of the Attendance Program in the ordinary course of business and when due and, in their discretion to continue the Attendance Program postpetition in the ordinary course of business.

g. Business Expense Reimbursement

The Debtors customarily reimburse Employees who incur business expenses in the ordinary course of performing their duties on behalf of the Debtors. Such expenses typically include, but are not limited to, business-related travel expenses (including mileage), business meals, relocation allowances, tuition reimbursement, and other items specified in the CBAs (the "Reimbursement

---

[15] The Debtors estimate that, between the Petition Date and January 31, 2022, approximately $46,000 in aggregate installment payments under the Vacancy Programs will be due to approximately 15 existing Employees.

Obligations"). Expense reports detailing the Reimbursement Obligations are submitted for reimbursement by the Employees and generally must be supported by copies of receipts.

It is difficult for the Debtors to determine the exact amount of Reimbursement Obligations that is due and owing for any particular time period since the expenses incurred by Employees vary on a monthly basis and because there is customarily a delay between when an Employee incurs an expense and submits the expense report for processing. Based on historical experience, the Debtors anticipate that, as of the Petition Date, the Debtors owe less than $25,000 in Reimbursement Obligations. Accordingly, the Debtors seek authority to pay up to $25,000 in Reimbursement Obligations to their Employees. The Debtors further seek to continue to pay Reimbursement Obligations incurred postpetition in the ordinary course of the Debtors' business.

### 2. Leave Obligations

The Hospital's Eligible Employees (*i.e.* full-time and part-time Employees) are eligible to receive benefits, as further discussed herein. *Per diem* Employees are not Eligible Employees. Eligible Employees are entitled to participate in paid leave programs (collectively, the "Paid Leave Programs"), although not all Eligible Employees are entitled to participate in all Paid Leave Programs, as some arise under specific CBAs.[16] As of October 31, 2021, the Debtors are carrying approximately $5.5 million on their books for 122,590 hours of accrued and unused paid leave.

With respect to the Debtors' obligations arising under all Paid Leave Programs, the Debtors seek authority, but not direction, to honor their existing Paid Leave Programs to permit continuing Employees to use their prepetition accrued leave in the ordinary course of business according to existing guidelines and policies. The Debtors are not, by this Motion, seeking permission to pay prepetition accrued and unpaid Paid Leave to any Employee who terminates their employment relationship with the Debtors.

### 3. Workforce Benefits Programs

---

[16] The Paid Leave Programs include paid time off, extended sick leave, vacation, and holidays.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

The Debtors offer Eligible Employees the opportunity to participate in a number of insurance and benefit programs (the "Benefits Programs"), as described in further detail below.[17]

          a.      **Medical, Pharmacy, Dental, and Vision Insurance**

The Debtors offer Eligible Employees and their eligible dependents (collectively, the "Dependents") medical, pharmacy, dental, and vision insurance (collectively, the "Insurance Benefits Programs"). For medical, the Debtors offer: (a) a self-insured PPO plan (the "PPO Plan"); and (b) a fully-insured HMO plan through Kaiser Permanente Insurance Company (the "Kaiser HMO" and, together with the PPO Plan, the "Medical Plans"). Meritain Health, Inc. ("Meritain") is the third-party administrator for all medical claims submitted under the PPO Plan.

The Debtors bear between approximately 95% and 97% of the costs of the Medical Plans, depending on, among other things, whether the Eligible Employee is a Represented Employee and, if so, under what CBA. Under the PPO Plan, the Debtors pay Meritain (i) monthly administration fees that are partially based on the number of insured individuals in the prior month (the "Meritain Admin Fees"), and (ii) actual medical claims submitted by Employees (the "Meritain Claims"). Additionally, the PPO Plan is supported by a stop-loss insurance policy (the "Stop-Loss Policy") issued by Westport Insurance Corporation ("Westport"). The Kaiser HMO, which the Debtors recently began to implement, has approximately thirteen (13) enrolled Employees, and the Debtors pay approximately $12,628 per month in premiums on account of the Kaiser HMO.

As of the Petition Date, the Debtors do not believe they owe any amounts on account of Meritain Admin Fees and have paid all reported Meritain Claims. The Debtors may owe up to $50,000 on account of prepetition Kaiser HMO premiums (collectively, the "Prepetition Kaiser Premiums"), which amounts the Debtors seek authority to pay by this Motion, and to continue to pay the postpetition Kaiser HMO premiums in the ordinary course of business. By this Motion, the Debtors seek authority to continue to pay the postpetition Meritain Admin Fees, premiums on the Stop-Loss Policy, and the Kaiser HMO premiums in the ordinary course of business and to continue to honor and pay all Meritain Claims reported and/or incurred postpetition in the ordinary course of business.

---

[17] In addition to the Debtors' Eligible Employees, the CHP Physicians have the option to enroll in the Benefits Programs. As of the Petition Date, approximately seven CHP Physicians participate in the Benefits Programs. All amounts and descriptions herein, unless otherwise noted, include both the CHP Physicians and the Employees.

DOCS_DE:237426.7 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

The Debtors offer prescription drug benefits through RxBenefits, Inc. ("RxBenefits") pursuant to a self-insured plan (the "Prescription Drug Plan"). Under the Prescription Drug Plan, the Debtors pay RxBenefits (i) actual prescription drug claims (the "RxBenefits Claims"); and (ii) administration fees that are based on the number of insured individuals in the prior month and the number of RxBenefits Claims (the "RxBenefits Admin Fees").

For dental, the Debtors offer a self-insured plan (the "Dental Plan") administered by Delta Dental of California ("Delta"). The Debtors pay 100% of the costs of the Dental Plan. Under the Dental Plan, the Debtors pay Delta for (i) actual dental claims (the "Dental Claims"); and (ii) administration fees that are based on the number of insured individuals in the prior month (the "Delta Admin Fees").

Finally, for vision, the Debtors offer a self-insured plan (the "Vision Plan") administered by Vision Service Plan ("VSP"). The Debtors pay 100% of the costs of the Vision Plan. Under the Vision Plan, the Debtors pay VSP for (i) actual vision claims (the "Vision Claims"); and (ii) administration fees that are based on the number of insured individuals in the prior month (the "VSP Admin Fees").

As of the Petition Date, the Debtors do not believe they owe any amounts on account of RxBenefits Admin Fees, Delta Admin Fees, or VSP Admin Fees and have paid all reported RxBenefits Claims, Dental Claims, and Vision Claims. By this Motion, the Debtors seek authority to continue to pay the postpetition RxBenefits Admin Fees, Delta Admin Fees, and VSP Admin Fees in the ordinary course of business and to continue to honor and pay all RxBenefits Claims, Dental Claims, and Vision Claims reported and/or incurred postpetition in the ordinary course of business.

b. COBRA

Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), certain former full-time Employees of the Debtors ("COBRA Participants") may continue insurance coverage under the Insurance Benefits Programs (the "COBRA Benefits"). COBRA Participants are entitled by law to continue to receive COBRA Benefits for up to 18 months, and in certain instances up to 36 months, after termination of their employment. As of the Petition Date, there were approximately eight (8) former full-time Employees that are COBRA Participants. COBRA Participants are

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

responsible for paying all premiums associated with the COBRA Benefits. The Debtors use Igoe & Company, Inc. ("Igoe") to administer the COBRA Benefits, including to provide all required notifications, bill and collect premiums from the COBRA Participants, coordinate enrollment information with the Insurance Benefits Program administrators, and to provide customer service and support for COBRA Participants. COBRA beneficiaries pay the applicable COBRA plan cost directly to Igoe. Igoe automatically withdraws an administrative fee before mailing the Debtors the remaining funds. Accordingly, the Debtors do not owe any fees in connection with the COBRA Benefits. The Debtors request authority to (i) remit all outstanding prepetition amounts owed on account of the COBRA Benefits; (ii) continue to offer the COBRA Benefits to eligible former full-time Employees, including to any full-time Employees that became eligible postpetition, if any, and (ii) honor all related obligations postpetition in the ordinary course of business and consistent with their prepetition practices.

c.      Life Insurance, Disability Insurance, and Other Elective Insurance

The Debtors offer Eligible Employees premium-based group life insurance ("Life Insurance") and accidental death and dismemberment insurance ("AD&D Insurance") through The Guardian Life Insurance of America ("Guardian"). The premiums and other related charges for Life Insurance and AD&D Insurance are paid 100% by the Debtors for up to certain amounts of coverage (depending on, among other things, the terms of the relevant CBA) and total approximately $60,000 monthly. Eligible Employees can also elect to obtain additional Life Insurance, AD&D Insurance, and other insurance coverage such as long term disability and critical illness (collectively, the "Guardian Insurance Benefits") through Guardian at their expense. As of the Petition Date, the Debtors estimate that they do not owe any amounts to Guardian on account of the Guardian Insurance Benefits. Accordingly, the Debtors seek authority to continue the Guardian Insurance Benefits postpetition in the ordinary course and to deliver the Employees' portion of any accrued and unpaid prepetition premiums to Guardian in connection with the payments of Wages and Withholding Obligations.

d.      Workers' Compensation

The Debtors maintain workers' compensation insurance ("Workers' Compensation") through Travelers Property Casualty Company of America ("Travelers"), with Marsh serving as broker of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

record and third-party administrator. The amount of the annual premium owed to Travelers is $1,640,990, which is financed by Travelers and paid in nine installments over the course of the year.

The Debtors believe that they are current on their Workers' Compensation obligations. To the extent they are not, in order to remain in compliance with state law, the Debtors seek authority to pay any prepetition amounts related to Workers' Compensation and to continue to maintain the Workers' Compensation program postpetition in the ordinary course of business.

    e.    Retirement Plans

The Debtors provide Eligible Employees the opportunity to participate in two retirement plans, although Employees' eligibility to participate in such plans vary depending on, among other things, the terms of the applicable CBA. Specifically, the Debtors offer (i) a defined contribution plan (the "401(k) Plan"); and (ii) a defined benefit plan, available only to Eligible Employees covered by the S&M CBA (the "SEIU Plan" and, together with the 401(k) Plan, the "Retirement Plans").[18]

Eligible Employees participating in the 401(k) Plan may contribute up to the federal statutory cap each year, and the Debtors deduct Employee pre-tax deferrals from the Employees' paychecks.[19] The Debtors provide a non-elective contribution of 6% of each Eligible Employees' annual salary to the 401(k) Plan. The Debtors also make the actuarially-determined required cash contributions to the SEIU Plan.

As of the Petition Date, the Debtors believe that approximately $90,000 in accrued but unpaid prepetition employer obligations under the 401(k) Plan will be due within the first 21 days of these Bankruptcy Cases (the "Employer 401(k) Obligations"). The Debtors accordingly seek authority to pay such accrued but unpaid prepetition amounts owing under the 401(k) Plan and to deliver any Employee contributions in connection with the payment of Wages and Withholding Obligations

---

[18] In addition to the Retirement Plans, the Debtors also offer a retiree medical expense plan to SEIU and CNA Represented Employees (the "Flex Plan") under the terms of the applicable CBAs.

[19] The Employee contributions to the 401(k) Plan will continue to be made in the ordinary course as part of the Withholding Obligations described above.

described above.[20] The Debtors also seek authority to pay, in their discretion and in the ordinary course of business, postpetition obligations to or under the Retirement Plans.

## IV.

## RELIEF REQUESTED

By this Motion, the Debtors seek to minimize the personal hardship to the Hospital's Workforce as a result of the filing of these Bankruptcy Cases and to minimize any disruption to the Hospital's operations and—most importantly—to Patient care and safety. To accomplish this, the Debtors request, in their sole discretion, the authority to pay and honor their prepetition obligations under the Compensation and Benefits Programs, subject to the limits described above and summarized in the chart below, and to continue to pay and honor the Compensation and Benefits Programs postpetition in the ordinary course of business.

| Compensation and Benefits Program | Interim Amount | Final Amount |
|---|---|---|
| Prepetition Employee Wages | $2,200,000 | $2,200,000 |
| CHP Physician Compensation | $ 150,000 | $ 150,000 |
| Withholding Obligations | $ 975,000 | $ 975,000 |
| Hospital Tax Obligations | $ 165,000 | $ 165,000 |
| Expense Reimbursements | $ 25,000 | $ 25,000 |
| Prepetition Kaiser Premiums | $ 50,000 | $ 50,000 |
| Employer 401(k) Obligations | $ 90,000 | $ 90,000 |

To enable the Debtors to accomplish the foregoing, the Debtors request that the Court authorize and direct the Debtors' banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing.

Notwithstanding the authority requested in this Motion, the Debtors, in the ordinary course of business, may modify, change, and discontinue Compensation and Benefits Programs and implement new Compensation and Benefits Programs generally consistent with the terms of this Motion; provided, however, that the Debtors shall seek Court approval, on notice, of any modification of any Compensation and Benefits Program that would implicate sections 503(c), 1113, and/or 1114 of the Bankruptcy Code.

---

[20] By this Motion, the Debtors do not seek any specific relief with respect to accrued but unpaid prepetition Flex Plan obligations. To the extent applicable to accrued but unpaid prepetition Flex Plan obligations, the Debtors intend to pay such obligations in accordance with section 1114 of the Bankruptcy Code.

DOCS_DE:237426.7 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

**V.**

**BASIS FOR REQUESTED RELIEF**

**A.    The Court Has Authority to Grant the Relief Requested**

Pursuant to section 105(a) of the Bankruptcy Code, "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Essentially, section 105(a) provides a statutory counterpart to the bankruptcy court's otherwise inherent and discretionary equitable powers.[21] Courts therefore recognize the "critical need to pay prepetition wage and commission claims to employees and specified independent contractors so that they continue to work for the debtor and render services to the debtor to help it continue operations as a going concern."[22]

Moreover, section 363 of the Bankruptcy Code provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[23] Under section 363(b), courts require only that a debtor "show that a sound business purpose justifies such actions."[24] Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."[25] Courts construing California law have similarly declined to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence, and have upheld a board's decisions as long as such decisions were made in good faith.[26] Accordingly,

---

[21] *See In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005); *In re Halvorson*, 581 B.R. 610, 636 n. 91 (Bankr. C.D. Cal. 2018).

[22] *In re EcoSmart, Inc.*, Case No. 15-27139 (RK), 2015 Bankr. LEXIS 4244, at *13-14 (Bankr. C.D. Cal. Dec. 18, 2015); *see also* 2 March, Ahart and Shapiro, *California Practice Guide: Bankruptcy*, ¶ 11:386, at 11–45 (2014) ("Most courts allow payment of prepetition employee wages up to the priority amount under the *'necessity of payment' doctrine*, which permits immediate payment of creditors who will not supply services or material essential to the conduct of the business until their prereorganization claims are paid.") (emphasis in original).

[23] 11 U.S.C. § 363(b)(1)

[24] *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted)

[25] *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

[26] *Scouler & Co., LLC v. Schwartz*, No. 11-CV-06377 NC, 2012 WL 1502762, at *4 (N.D. Cal. Apr. 23, 2012); *Berg & Berg Enterprises, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1046 (2009).

bankruptcy judges in this district and in healthcare cases generally regularly grant motions requesting similar relief to that requested in this Motion.[27]

## B. Sufficient Cause Exists to Authorize the Debtors to Honor the Compensation and Benefits Programs

### 1. Certain Compensation and Benefits Programs are Entitled to Priority Treatment

The Bankruptcy Code entitles certain claims arising from the Compensation and Benefits Programs owed to the Employees to priority treatment, including claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay," employment taxes due from the Debtors, and for contributions to benefit plans, subject to a statutory cap.[28] As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan.[29] Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees, and does not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Compensation and Benefits Programs at this time enhances value for the benefit of all interested parties.[30]

---

[27] *See, e.g., In re SVXR, Inc.*, Case No. 21-51050 (SLJ), Docket No. 56 (Bankr. N.D. Cal. Aug. 11, 2021); *In re Sizzler USA, Inc.*, Case No. 20-30748, Docket No. 23 (Bankr. N.D. Cal. Sep. 22, 2020); *In re Professional Financial Investors, Inc.*, Case No. 20-30604, Docket No. 45 (Bankr. N.D. Cal. Aug. 7, 2020); *In re Wave Computing, Inc.*, Case No. 20-50682 (MEH), Docket No. 67 (Bankr. N.D. Cal. May 1, 2020); *see also In re Verity Health System of Calif., Inc.*, Case No. 2:18-bk-20151-ER, Docket No. 75 (Bankr. C.D. Cal. Sep. 5, 2018); *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, Case No. 16-17463ER, Docket No. 68 (Bankr. C.D. Cal. June 10, 2016); *In re Gordian Med., Inc.*, Case No. 1212399-MW, Docket No. 57 (Bankr. C.D. Cal. March 5, 2012); *In re Victor Valley Cmty. Hosp.*, Case No. 10-39537-CB, Docket No. 30 (Bankr. C.D. Cal. Sep. 17, 2010).

[28] *See* 11 U.S.C. §§ 507(a)(4)(A), 507(a)(5), 507(a)(8)(D).

[29] *See* 11 U.S.C. § 1129(a)(9)(b) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including sick leave earned by an individual and (b) contributions to an employee benefit plan).

[30] See e.g., *Czyewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2016) (acknowledging "first-day wage orders that allow payment of employees' prepetition wages" further the objectives of the Bankruptcy Code); *In re Pacific Gas Electric Co.*, No. 01-30923-SFM, Chapter 11, at *1 (Bankr. N.D. Cal. May 16, 2001) ("[n]umerous courts have authorized early payment of some pre-petition obligations where those payments are essential to the debtor's attempts to reorganize. As already noted the most common example is wages and benefits to key employees, who would otherwise leave and cripple the debtor") (citing *Pension Benefit Guar. Corp. v. Sharon Steel Corp.* (*In re Sharon Steel Corp.*), 159 B.R. 730, 736-737 (Bankr. W.D. Pa. 1993) (allowing payment of pre-petition wages over objection, where alternative would "far exceed" that cost); *Cohen v. KDC Fin. Serv., Inc.* (*In re Miller Mining, Inc.*), 219 B.R. 219, 223 (Bankr. N.D. Ohio 1998) (court noted that it has permitted payment of pre-petition wages so debtor-in-possession can maintain "effective work force").

### 2. Payment of Prepetition Compensation and Benefits Program Obligations is Necessary to Maintain Hospital Operations and Preserve Value

In *Jevic*, the Supreme Court of the United States implicitly approved of what it called "interim distributions that violate ordinary priority rules," including (without reference to statutory priority caps) prepetition wages.[31] The Supreme Court offered several, nonexhaustive considerations for courts in determining whether to grant such payments, including (a) preservation of a debtor as a going concern; (b) promoting the possibility of a confirmable plan; and (c) restoration of the *status quo ante* the Petition Date.[32] With respect to the relief requested herein—the ordinary course payment in full of all prepetition obligations owing under the Compensation and Benefits Programs—all three considerations are clearly satisfied.

The continuation of a stable workforce and harmonious employee relations in operating chapter 11 cases is critical to preserving the value of the bankruptcy estate.[33] Compared to a typical claim in bankruptcy, wages represent a large part of an employee's wealth. Unlike an ordinary trade creditor, the typical Employee does not have other sources of income and thus cannot diversify the risk of their employer's default. Indeed, much of the Workforce lives paycheck-to-paycheck and rely on receiving their full compensation and benefits to continue to pay their daily living expenses. These considerations are only magnified here, where the Debtors operate a hospital whose Workforce, even when not on the front lines of the COVID-19 pandemic as they are today,[34] provide lifesaving medical treatment to tens of thousands of people per year.

Due to the timing of the commencement of these Bankruptcy Cases, the Workforce is owed 14 days' worth (a full pay period) of accrued prepetition Wages for which they are to receive payment in the ordinary course through their regularly-scheduled payroll this coming Friday, December 10. Even

---

[31] *Jevic*, 137 S. Ct. at 985.

[32] *Id.* at 985-86. *See also In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) (stating that the "fundamental tenet" of bankruptcy of "rehabilitation of debtors . . . may supersede the policy of equal treatment," specifically referencing payments to and on behalf of employees).

[33] *See, e.g.*, *LTV Corp. v. Aetna Cas. & Surety Co.* (*In re Chateaugay Corp.*), 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990); *In re Gulf Air, Inc.*, 112 B.R. 152, 154 (Bankr. W.D. La. 1989) ("[R]etention of skills, organization, and reputation . . . must be considered valuable assets contributing to going concern value and aiding rehabilitation . . . .").

[34] Indeed, California is preparing for a potential surge in COVID-19 cases this winter. *See* U.S. News, "California Prepares for Possible Winter Pandemic Surge," November 10, 2021, *available at* https://www.usnews.com/news/best-states/california/articles/2021-11-10/california-prepares-for-possible-winter-pandemic-surge.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
San Francisco, CA

though, absent the chapter 11 filing, such Wages would be paid in the ordinary course and without any effect on the Workforce, they now cannot be paid in full without the approval of this Court. The Debtors' failure to pay the Wages timely and in the ordinary course of business would result in significant hardship to the Workforce, may violate California labor law, would undermine the employee-employer relationship, and would likely lead to significant turnover and could result in serious and irreparable disruptions of the Hospital's operations and potentially cause harm to the Patients. Any number of Workforce departures or deterioration in morale, especially at this sensitive time and in the midst of the Omicron variant of COVID-19,[35] will substantially and adversely affect the Debtors' ability to operate the Hospital and would thus result in immediate and irreparable harm to the Debtors' estates.

By this Motion, the Debtors seek authority to pay, in the ordinary course, all prepetition obligations arising under the Compensation and Benefits Programs to all non-insider Employees, whether or not such amount exceeds $13,650 with respect to each Employee. Based on historical data, the Debtors estimate that approximately six to eight non-insider Employees—all of whom are CNA-represented nurses—may be owed in excess of $13,650 in prepetition Compensation and Benefits Programs obligations, principally due to such nurses filling critical staffing needs during the Last Pay Period to preserve Patient care, such as taking on overtime, picking up additional shifts, and/or forgoing rest in between shifts, all of which are compensable under the CNA collective bargaining agreement.[36] However, because the Last Pay Period ended on December 4 and the Debtors' payroll personnel have not yet determined the precise amount of the Prepetition Employee Wages, the Debtors cannot yet precisely identify which Employee nurses may be owed in excess of $13,650, and by exactly how much. Based on available information, including historical data and the Hospital's human resources system, the Debtors estimate that any prepetition Wage and Benefits Program obligations

---

[35] *See, e.g.,* NPR, "Why some researchers think the omicron variant could be the most infectious one yet," November 30, 2021, available at https://www.npr.org/sections/goatsandsoda/2021/11/30/1059859253/why-omicron-variant-spreads-so-quickly-infectious-mutations (noting, among other things, that the Omicron variant may be resistant to certain vaccines).

[36] The Debtors estimate that obligations owed to one Employee will exceed $13,650 on account of referral payments under the Vacancy Programs due to such nurse's recruitment of two new full-time nurses. Because such payments will not vest (if they vest) until the two new Employees complete their probationary period postpetition, the Debtors submit that the two referral payments are not prepetition obligations and thus may be paid in the ordinary course of business. However, to the extent such obligations are prepetition obligations, the Debtors request authority to honor them in the ordinary course of business, notwithstanding section 507 of the Bankruptcy Code.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

owing to such Employees would only exceed the section 507 cap by between $400 and $3,300 per Employee.

The Debtors submit that the amounts to be paid pursuant to this Motion, including any amounts owing to any individual member of the Workforce in excess of $13,650, is comparatively small in light of the immediate and irreparable consequences that the Hospital (not to mention the Workforce, Patients, and the Watsonville community) will suffer if the members of the Workforce do not receive the wages that they are relying on, if morale deteriorates or if the Workforce leaves in significant numbers. Accordingly, the Debtors submit that payment of all prepetition obligations under the Compensation and Benefits Programs is essential to preserving the Hospital as a going concern, keeping the *status quo*, and increasing the possibility of a confirmable plan.

### 3. Payment of Certain Compensation and Benefits Programs is Required by Law

The Debtors' Withholding Obligations, which amounts the Debtors must remit to appropriate third parties, principally represent Employee earnings that taxing authorities, Employees, and courts have designated for deduction from the Employees' paychecks. In that respect, certain Withholding Obligations are not property of the Debtors' estates because the Debtors withhold such amounts from the Employees' paychecks on a third party's behalf.[37] Further, federal and state laws require the Debtors to withhold certain taxes from Employee paychecks and pay such amounts to the appropriate taxing authority.[38] Thus, because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request authority to transmit, or to direct ADP to transmit, the Withholding Obligations to the proper parties in the ordinary course of business.

---

[37] *See* 11 U.S.C. §§ 541(b)(1), (d); see also *In re Advent Management Corp.*, 178 B.R. 480, 487 (B.A.P. 9th Cir. 1995) ("something held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d) . . .") (citing *Begier v. Internal Revenue Service*, 496 U.S. 53, 58-59 (1990); and *Sierra Steel, Inc. v. S S Steel Fabrication* (*In re Sierra Steel, Inc.*), 96 B.R. 271, 273 (9th Cir. BAP 1989).

[38] 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re Stannock, Inc.*, 103 B.R. 228, 229 (B.A.P. 9th Cir. 1989) to encourage or enhance withholding and payment of payroll taxes, when the nominal employer (commonly a corporation) does not collect and pay the tax, any other person responsible for the collection and payment of withholding is liable, on a one-hundred percent penalty basis, for the trust fund taxes . . ."); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

### 4. Maintaining Compensation and Benefits Programs is Within the Debtors' Business Judgment

The Debtors' relationship with its Workforce, including the terms and conditions of their employment and/or retention, are matters subject to the Debtors' business judgment and may be managed by the Debtors in the "ordinary course of business."[39] This doctrine applies with equal force to accrued employee benefits such as paid time off and leave policies.[40]

Simply put, the Hospital cannot operate—and the Patients will not receive critical medical care—without the Workforce, who depend on the Compensation and Benefits Programs to support themselves and their families. As noted by one court, "the need to pay pre-petition employee wage claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted."[41] Any interruption in approving Compensation and Benefits Programs to a single member of the Workforce could cause an immediate and deleterious effect on the Hospital, its Patients, and all other stakeholders. Accordingly, in the Debtors' business judgment, the continued and uninterrupted provision of the Compensation and Benefits Programs is critical to the Hospital's reorganization and continued operations.

### C. A Limited Waiver of the Automatic Stay for Workers' Compensation Claims, To the Extent Necessary, is Appropriate

Section 362(a) of the Bankruptcy Code, which operates as an automatic stay on the commencement or continuation of any action or proceeding against a debtor, may be modified for "cause."[42] The Debtors seek authorization, to the extent necessary, under section 362(d) of the Bankruptcy Code, to permit its Employees to proceed with their insured workers' compensation claims in the appropriate judicial or administrative forum. The Debtors believe that cause exists to modify the automatic stay because staying the Employees' workers' compensation claims could have a

---

[39] *See In re All Seasons Indus.*, 121 B.R. 822, 825-26 (Bankr. N.D. Ind. 1990); *In re Pac. Forest Indus., Inc.*, 95 B.R. 740, 743 (Bank. C.D. Cal. 1989) ("Employees do not need court permissions to be paid and are usually paid as a part of the ongoing operation of the business.").

[40] *See In re Canton Castings, Inc.*, 103 B.R. 874, 876 (Bankr. N.D. Ohio 1989).

[41] *In re Equalnet Comm. Corp.*, 258 B.R. 368, 370 (Bankr. S.D. Tex. 2000)

[42] 11 U.S.C. §§ 362(a), (d).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

detrimental effect on the financial well-being and morale of the Employees and lead to the departure of Employees who are critical to the Hospital's operations. Such departures could cause a severe disruption in the Hospital's operations to the detriment of all stakeholders. In addition, if the Debtors fail to maintain the Workers' Compensation program, state law may prohibit the Debtors from operating. Accordingly, the Debtors request a limited waiver of the automatic stay, to the extent necessary, for purposes of allowing the Workers' Compensation insurance program to proceed in the ordinary course.

**D.** **Sufficient Cause Exists to Direct Banks to Honor Checks and Transfers Related to Compensation and Benefits Programs**

The Debtors will have sufficient funds to pay all amounts described in this Motion in the ordinary course of business through the expected cashflows from ongoing operations and anticipated access to cash collateral and postpetition financing. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks and wire transfer requests as relating to an authorized payment in respect of Compensation and Benefits Programs. Accordingly, checks and wire transfers for those other than Compensation and Benefits Programs should not be honored inadvertently. Accordingly, the Debtors respectfully request that their banks (the "Banks") be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all transfer requests made by the Debtors related to Compensation and Benefits Programs, whether such checks were presented or funds transfer submitted before or after the Petition Date (including any checks that have been presented and dishonored), to the extent that the relevant Bank accounts contain sufficient funds.

## VI.

### EMERGENCY CONSIDERATION

The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the payment of prepetition Compensation and Benefits Program obligations is necessary to avoid immediate and irreparable harm because the Debtors rely on their Workforce to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

operate their business. Nonpayment or late payment of the Debtors' Workforce would have adverse effects on the Debtors' personnel and may inflict a significant hardship on such individuals, many of whose families depend on their income from the Debtors, all of which would lead to a significant flight risk of the Debtors' critical personnel. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

**VII.**

**REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS**

The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**VIII.**

**RESERVATION OF RIGHTS**

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or nonbankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code.

**IX.**

**NOTICE**

Notice of this Motion has been provided by email, facsimile, and/or overnight courier to the First Day Notice Parties (as defined in the Motion to Shorten Time), the Staffing Agencies, ADP, the

Banks, Meritain, Guardian, Kaiser, RxBenefits, Delta, VSP, Igoe, and Travelers. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

No prior request for the relief sought in this Motion has been made by the Debtors to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of interim and final Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 5, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen
Maxim B. Litvak
Steven W. Golden

Proposed Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

# EXHIBIT A

1   Debra I. Grassgreen (CA Bar No. 169978)
    Maxim B. Litvak (CA Bar No. 215852)
2   Steven W. Golden (*pro hac vice* pending)
    PACHULSKI STANG ZIEHL & JONES LLP
3   One Market Plaza, Spear Tower, 40th Floor
    San Francisco, CA 94105-1020
4   Telephone:    415.263.7000
    Facsimile:    415.263.7010
5   E-mail:       dgrassgreen@pszjlaw.com
                  mlitvak@pszjlaw.com
6                 sgolden@pszjlaw.com

7   Proposed Attorneys for Debtors and
    Debtors in Possession

8                    UNITED STATES BANKRUPTCY COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11  In re:                                    Case No. 21-51477

12  WATSONVILLE HOSPITAL                       Chapter 11
    CORPORATION, *et al.*,
13                                             **[PROPOSED] INTERIM ORDER (I)**
                              Debtors.[1]      **AUTHORIZING THE DEBTORS TO (A)**
14                                             **PAY PREPETITION WAGES, SALARIES,**
                                               **AND OTHER COMPENSATION, AND (B)**
15                                             **PAY AND HONOR BENEFITS AND**
                                               **OTHER WORKFORCE OBLIGATIONS;**
16                                             **(II) AUTHORIZING AND DIRECTING**
                                               **THE APPLICABLE BANKS TO PAY ALL**
17                                             **CHECKS AND ELECTRONIC PAYMENT**
                                               **REQUESTS MADE BY THE DEBTORS**
18                                             **RELATING TO THE FOREGOING; AND**
                                               **(III) GRANTING RELATED RELIEF**
19
                                               Date:     December 7, 2021
20                                             Time:     9:30 a.m.
                                               Place:    **Telephonic/Video Appearance**
21                                                       **Only**
                                                         Courtroom 11
22                                                       280 South First Street
                                                         San Jose, CA 95113
23                                             Judge:    Hon. M. Elain Hammond

24         Upon the *Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition*

25  *Wages, Salaries, and Other Compensation, and (B) Pay and Honor Benefits and Other Workforce*

26

27  [1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:
    Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital
28  Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA
    95076.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

*Obligations; (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing; and (III) Granting Related Relief* [Docket No. [●]] (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105, 362, 363, 507, 541, and 1129 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003, and 6004, for interim and final orders: (a) authorizing the Debtors to (i) pay prepetition wages, salaries, other compensation, and reimbursable expenses of the Hospital's Workforce and (ii) continue benefits programs and other Workforce obligations (including withholding obligations, maintenance of workers' compensation, and contributions to retirement plans); (b) authorizing and directing the applicable banks to pay all checks and electronic payment requests related to the foregoing; and (c) granting related relief; and upon the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Bankruptcy Local Rule 5011-1(a); and this Court found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing thereon were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard any statements in support of the relief requested therein at the First Day Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the First Day Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

    **IT IS HEREBY ORDERED THAT**:

    1.    The Motion is granted on an interim basis as provided herein.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

DOCS_DE:237417.7 92381/001

2

2.      The Debtors are authorized, but not directed, to pay prepetition amounts on account of Compensation and Benefits Programs, including all processing and administrative fees associated with payment of Compensation and Benefits Programs, subject to the aggregate caps set forth in the chart below; *provided, however*, that the Debtors shall not pay any insider (as such term is defined in section 101 of the Bankruptcy Code) in excess of $13,650 on account of prepetition obligations arising under the Compensation and Benefits Programs:

| Compensation and Benefits Program | Interim Amount |
|---|---|
| Prepetition Employee Wages | $2,200,000 |
| CHP Physician Compensation | $  150,000 |
| Withholding Obligations | $  975,000 |
| Hospital Tax Obligations | $  165,000 |
| Expense Reimbursements | $   25,000 |
| Prepetition Kaiser Premiums | $   50,000 |
| Employer 401(k) Obligations | $   90,000 |

3.      The Debtors are authorized to allow Employees to use accrued prepetition Paid Leave postpetition in the ordinary course of business in the Debtors' discretion, consistent with existing Paid Leave policies. Nothing herein shall be deemed to authorize the Debtors to cash out any Employees' accrued Paid Leave upon such Employee's termination of employment with the Debtors.

4.      The Debtors are authorized to pay amounts arising under the Non-Insider Incentive Programs in the ordinary course of business and, in their discretion, to continue the Non-Insider Incentive Programs postpetition in the ordinary course of business.

5.      The Debtors are authorized to continue to administer and provide the Benefits Programs postpetition in the ordinary course of business in the manner and to the extent that such Benefits Programs were in effect immediately prior to the Petition Date, including to continue to honor and pay all Meritain Claims, RxBenefits Claims, Dental Claims, and Vision Claims reported and/or incurred postpetition in the ordinary course of business. Nothing herein shall be deemed to authorize the payment of any amounts which violate, implicate, or otherwise are subject to section 503(c) of the Bankruptcy Code.

6.      The Banks are authorized and directed to honor checks presented for payment, whether issued prior to or after the Petition Date, and to honor all fund transfer requests made by the Debtors related thereto in connection with this Order.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

DOCS_DE:237417.2 92381/001

3

7. Notwithstanding anything to the contrary in this Order, the Debtors retain their right to modify or terminate any Compensation and Benefits program to the extent that such right exists under the terms of the Compensation and Benefits program or as may be authorized or required by applicable law; *provided, however*, that the Debtors shall seek court approval, on notice, of any modification that would implicate any portion of section 503(c) of the Bankruptcy Code.

8. Pursuant to section 362(d) of the Bankruptcy Code, members of the Debtors' Workforce are authorized to proceed with their claims under the Workers' Compensation program in the appropriate judicial or administrative forum, and the Debtors are authorized, but not directed, to continue the Workers' Compensation program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation program.

9. Nothing in this Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors. Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

10. Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance, limit, or change the status of, any claim held by any member of the Workforce or other person.

11. Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to the requirements imposed on the Debtors

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

under any orders of this Court approving any debtor in possession financing and/or use of cash collateral by the Debtors and any budget in connection therewith.

12. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

13. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

14. Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

16. A final hearing to consider the relief requested in the Motion shall be held on [●] at [●] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed on or prior to [●] at 4:00 p.m. (prevailing Pacific Time), and served on: (i) the Debtors, c/o Force Ten Partners LLC, 5271 California Ave., Suite 270, Irvine, CA 92617, Attn: Jeremy Rosenthal (jrosenthal@force10partners.com); (ii) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, One Market Street, Spear Tower, 40th Floor, San Francisco, CA 94105-1020, Attn: Debra Grassgreen (dgrassgreen@pszjlaw.com), Maxim B. Litvak (mlitvak@pszjlaw.com), and Steven W. Golden (sgolden@pszjlaw.com); (iii) counsel for the DIP Lender, the MPT Prepetition Lender, and MPT of Watsonville, LLP, (a) KTBS Law, LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067 (Attn: Thomas E. Patterson, tpatterson@ktbslaw.com; Sasha M. Gurvitz, sgurvitz@ktbslaw.com) and (b) Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 420 20th Street North, Suite 1400, Birmingham, Alabama 35203 (Attn: Luther P. Crull, III, lcrull@bakerdonelson.com); (iv) counsel for the official committee of unsecured creditors, if appointed; and (v) the Office of the United States Trustee, Region 17, 280 South First St., Room 268, San Jose, CA 95113 (Attn: Jason Blumberg, jason.blumberg@usdoj.gov; and Elvina Rofael, elvina.rofael@usdoj.gov).

17. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation or interpretation of this Order.

***END OF ORDER***

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA