```
1   Debra I. Grassgreen (CA Bar No. 169978)
    Maxim B. Litvak (CA Bar No. 215852)
2   Steven W. Golden (*pro hac vice* pending)
    PACHULSKI STANG ZIEHL & JONES LLP
3   One Market Plaza, Spear Tower, 40th Floor
    San Francisco, CA 94105-1020
4   Telephone:   415.263.7000
    Facsimile:   415.263.7010
5   E-mail:      dgrassgreen@pszjlaw.com
                 mlitvak@pszjlaw.com
6                sgolden@pszjlaw.com

7   Proposed Attorneys for Debtors and
    Debtors in Possession
```

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>WATSONVILLE HOSPITAL CORPORATION, *et al.*,<br><br>Debtors.[1] | Case No. 21-51477<br><br>Chapter 11<br><br>**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (I) CONTINUE EXISTING INSURANCE COVERAGE AND SATISFY OBLIGATIONS RELATED THERETO IN THE ORDINARY COURSE OF BUSINESS; AND (II) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES**<br><br>Date:  December 7, 2021<br>Time:  9:30 a.m.<br>Place: **Telephonic/Video Appearance Only**<br>Courtroom 11<br>280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. M. Elain Hammond |

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby submit this motion (the "Motion"), pursuant to

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

DOCS_NY:44677.8 92381/001

Case: 21-51477    Doc# 13    Filed: 12/05/21    Entered: 12/05/21 17:04:31    Page 1 of 17

sections 105, 363, 503, 1107(a), and 1108 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of interim and final orders authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto (collectively, the "<u>Insurance Obligations</u>"); and (ii) renew, amend, supplement, extend, or purchase Insurance Policies (defined below) as may be required during these Bankruptcy Cases.

A proposed form of order granting the relief requested herein on an interim basis (the "<u>Interim Order</u>") is attached hereto as **Exhibit A**.

In support of this Motion, the Debtors submit the *Declaration of Jeremy Rosenthal, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "<u>First Day Declaration</u>") filed concurrently herewith and fully incorporated herein by reference,[2] and the accompanying memorandum of points and authorities set forth below.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The legal bases for the relief requested herein are sections pursuant to sections 105, 363, 503, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II.

## BACKGROUND

On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Bankruptcy Cases, and no committees have been appointed or designated.

The Debtors operate Watsonville Community Hospital (the "Hospital"), a 106-bed acute care facility located in Watsonville, California. As the only acute care facility in the area, the Hospital provides vital services to its surrounding community, including emergency, cardiac, pediatric, surgical, pharmaceutical, laboratory, radiological, and other critical services. A more detailed description of the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the First Day Declaration.

## III.

## RELIEF REQUESTED

By this Application, the Debtors seek entry of interim and final orders authorizing the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto; and (ii) renew, amend, supplement, extend, or purchase Insurance Policies (as defined below) as may be required during these Bankruptcy Cases.

## IV.

## THE INSURANCE POLICIES AND RELATED PAYMENT OBLIGATIONS

In the ordinary course of business, the Debtors maintain approximately twelve (12) insurance policies that are administered by various third party carriers (the "Insurance Carriers"). These policies provide coverage for, among other things, general and professional liability, automotive, commercial property, non-owned helicopter liability, pollution liability, management liability, and cyber privacy and data liability (collectively, the "Insurance Policies").[3] A summary of the Insurance Policies, including descriptions of coverage, annual premiums, applicable Insurance Carriers, policy periods, and policy numbers, is attached hereto as **Exhibit B** (the "Insurance Schedule").[4]

While the Debtors previously paid the annual premiums for several of the Insurance Policies, as indicated in the Insurance Schedule, the Debtors also finance a number of the Insurance Policies or otherwise pay their annual premiums in installments. More particularly, the Debtors finance their management liability, cyber liability, and crime policies (collectively, the "PFA Policies") pursuant to the terms of a Premium Finance Agreement (the "PFA") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company. In addition, the Debtors obtain their commercial property and primary automobile liability policies (the "Travelers Policies")[5] from Travelers Property Casualty

---

[3] Certain of the Insurance Policies may cover certain non-Debtor affiliates in addition to the Debtors.

[4] For clarity, the Debtors also maintain certain health, life, workers compensation, and related insurance policies and programs which are not the subject of the Motion; rather, such policies are detailed in and addressed by that certain *Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, and Other Compensation, and (B) Pay and Honor Benefits and Other Workforce Obligations; (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing; and (III) Granting Related Relief* (the "Employee Wage and Benefit Motion"), filed concurrently herewith.

[5] In addition to the Travelers Policies herein, the Debtors also obtain their worker's compensation policies from Travelers, which is addressed by, and detailed in, the Compensation and Benefits Motion.

Company of America, or an affiliate thereof (collectively, "Travelers") and their general and professional liability policies (together, the "BETA Policies", and together with the PFA Policies, the Travelers Policies, and the BETA Policies, the "Financed Policies") from BETA Healthcare Group ("BETA"). The Debtors pay the annual premiums for the Travelers Policies and BETA Policies in monthly installments directly to Travelers and BETA, respectively. As of the Petition Date, the Debtors believe that they are current under the Financed Policies and the PFA and that there are no prepetition amounts due and owing with respect to the Insurance Policies.

Continuation of the Debtors' Insurance Policies, and entry into new insurance policies as may be required during the Debtors' Bankruptcy Cases, is essential to the preservation of the value of the Debtors' business and operations. Moreover, in many instances, insurance coverage is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the Office of the United States Trustee's (the "U.S. Trustee") requirement that a debtor maintain adequate coverage during its chapter 11 case. Accordingly, to ensure uninterrupted coverage, the Debtors request authority to maintain their existing Insurance Policies, pay any prepetition Insurance Obligations related thereto, and enter into new Insurance Policies in the ordinary course of business.

## V.

## THE INSURANCE BROKER

In the ordinary course of business, the Debtors utilize Marsh & McLennan Insurance Agency LLC (the "Insurance Broker") to obtain their Insurance Policies. The Insurance Broker primarily assists the Debtors with the procurement and negotiation of the Insurance Policies, enabling the Debtors to obtain the Insurance Policies on advantageous terms and at competitive rates. The Insurance Broker is compensated for its services through a commission from the Insurance Carriers (the "Brokerage Fees"). To the best of the Debtors' knowledge, they do not owe any prepetition Brokerage Fees. To the extent the Debtors have to pay the Brokerage Fees in the future, the Debtors seek the Court's authority to do so. The use of the Insurance Broker allows the Debtors to obtain and manage their program of Insurance Policies in a reasonable and prudent manner and to realize considerable savings in the procurement of the Insurance Policies by having access to market comparables provided by the Insurance Broker.

# VI.

# BASIS FOR RELIEF REQUESTED

**A.  Continuation of the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee Operating Guidelines**

Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. In addition, in many instances, the coverage provided under the Insurance Policies is required by the various regulations, laws, and contracts that govern the Debtors' operations, including the operating guidelines issued by the U.S. Trustee (the "<u>UST Operating Guidelines</u>").  Accordingly, the Debtors believe it is essential to their estates and consistent with the Bankruptcy Code and the UST Operating Guidelines that they continue to satisfy all obligations related to the Insurance Policies and have the authority to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

**B.  Satisfying Obligations Under the Insurance Policies in the Ordinary Course of Business is Warranted**

Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession may enter into transactions, including the use, sale, or lease of property in the ordinary course of business, without notice or a hearing. 11 U.S.C. § 363(c)(1).  In the alternative, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."[6] Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."[7]

---

[6] *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted) (requiring only that the debtor "show that a sound business purpose" justifies the proposed use of property); *see also F.D.I.C. v. Castetter*, 184 F.3d 1040, 1043 (9th Cir. 1999) (the business judgment rule "requires directors to perform their duties in good faith and as an ordinarily prudent person in a like circumstance would").

[7] *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near Herculean task.").

The Debtors believe payment of the Insurance Obligations are transactions in the ordinary course of business, but seek, out of an abundance of caution, Court approval of the payment of the Insurance Obligations. Furthermore, while the Debtors do not believe that there are any Insurance Obligations due and owing as of the Petition Date, they believe that to the extent that any prepetition Insurance Obligations are discovered or otherwise arise during the course of these Bankruptcy Cases, such amounts are appropriately paid in the ordinary course of business and consistent with past practice to avoid any interruption of the coverage of the Insurance Policies and to avoid any unnecessary delay, distraction, and expense.

In this regard, section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of"[8] the Bankruptcy Code, pursuant to the "doctrine of necessity." The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.[9] "Under 11 U.S.C. § 105 the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."[10] In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.[11] Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this court may grant the relief requested herein.

---

[8] 11 U.S.C. § 105(a).

[9] *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (noting that courts are authorized to approve orders allowing payment of prepetition claims, which is necessary for the debtors to have a successful reorganization).

[10] *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

[11] *See, e.g., Miltenberger v. Logansport C. & S. W. Ry. Co.*, 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [indispensable] business relations"); *Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits); *see also Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. at 985.

In addition, the Court may rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business.[12] The Supreme Court has held that bankruptcy courts may allow debtors to immediately pay certain prepetition debts of employees and critical vendors that are necessary to a successful reorganization.[13]

Accordingly, the Debtors' payment of any Insurance Obligations in the ordinary course of business and consistent with past practice, regardless of whether such amounts arose pre- or post-petition, is warranted under section 363(b) of the Bankruptcy Code and the doctrine of necessity. Continuation of the Insurance Policies is essential to preserving uninterrupted operations and the value of the Debtors' estates. Furthermore, the Debtors' ability to maintain the Insurance Policies, pay any Insurance Obligations in the ordinary course of business, consistent with past practice, will provide certainty to not only the Debtors, but also the Debtors' patients, the Insurance Carriers, the Insurance Broker and other parties in interest that the Debtors have the ability to maintain appropriate insurance during these Bankruptcy Cases.

## C. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfer

In the ordinary course of business, the Debtors draw upon funds in their bank accounts to satisfy the Insurance Obligations. The Debtors respectfully request that the Court authorize the banks and financial institutions at which the Debtors maintain their accounts to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic funds transfers requested or to be requested by the Debtors relating to Insurance Obligations. The Debtors also seek authority for the Debtors to issue new postpetition checks or effect new postpetition

---

[12] *See, e.g., In re Just for Feet*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity particularly when such payment is necessary for the debtor's survival during a chapter 11 case); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is a standard that enables a court to authorize payment of prepetition claims prior to the confirmation of a reorganization plan); *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (Bankruptcy Code section 105(a) equity powers permit court to "authorize payment of prepetition claims where such payment is necessary to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately").

[13] *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. at 985.

electronic funds transfers in replacement of any checks or transfer requests on account of Insurance Obligations dishonored or rejected as a result of the commencement of these Bankruptcy Cases.

## VII.

## EMERGENCY CONSIDERATION

The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the relief requested is necessary to avoid immediate and irreparable harm because the Debtors must maintain their Insurance Policies to safely and legally operate the Hospital. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

## VIII.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

## IX.

## RESERVATION OF RIGHTS

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or nonbankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any

agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code.

## X.
## NOTICE

Notice of this Motion has been provided by email, facsimile, and/or overnight courier to the First Day Notice Parties (as defined in the Motion to Shorten Time), the Insurance Broker, and the Insurance Carriers. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

No previous request for the relief sought herein has been made by the Debtors to this or any other court.

**WHEREFORE** the Debtors respectfully request entry of interim and final Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 5, 2021      PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Debra I. Grassgreen*
    Debra I. Grassgreen
    Maxim B. Litvak
    Steven W. Golden

    Proposed Attorneys for Debtors and Debtors in Possession

# EXHIBIT A

(Proposed Interim Order)

Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: dgrassgreen@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Proposed Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>WATSONVILLE HOSPITAL CORPORATION, *et al.*,<br><br>Debtors.[1] | Case No. 21-51477<br><br>Chapter 11<br><br>**[PROPOSED] INTERIM ORDER AUTHORIZING THE DEBTORS TO (I) CONTINUE EXISTING INSURANCE COVERAGE AND SATISFY OBLIGATIONS RELATED THERETO IN THE ORDINARY COURSE OF BUSINESS; AND (II) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES**<br><br>Date: December 7, 2021<br>Time: 9:30 a.m.<br>Place: **Telephonic/Video Appearance Only**<br>Courtroom 11<br>280 South First Street<br>San Jose, CA 95113<br>Judge: Hon. M. Elain Hammond |

Upon the motion (the "Motion"),[2] of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Bankruptcy Cases") for entry of interim and final orders, pursuant to sections 105, 363, 503, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113) ("WHC"); Watsonville Healthcare Management, LLC (4168) ("WHM"); Watsonville Hospital Holdings, Inc. (1118) ("Watsonville Holdings"); and Halsen Healthcare, LLC ("Halsen Healthcare"). The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

6003 and 6004, granting the Debtors authority to (i) continue insurance coverage entered into prepetition and satisfy Insurance Obligations in the ordinary course of business, and (ii) renew, amend, supplement, extend, or purchase Insurance Policies, all as more fully set forth in the Motion; and the Court having found it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found and determined that notice of the Motion as provided to the parties listed therein is reasonable and sufficient under the circumstances, and it appearing that no other or further notice need be provided; and this Court having reviewed the Motion and the First Day Declaration; and this Court having held a hearing on the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, shareholders, and all parties in interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis to the extent set forth herein.

2. A final hearing to consider the relief requested in the Motion shall be held on [●] at [●] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed on or prior to [●] at 4:00 p.m. (prevailing Pacific Time), and served on: (i) the Debtors, c/o Force Ten Partners LLC, 5271 California Ave., Suite 270, Irvine, CA 92617, Attn: Jeremy Rosenthal (jrosenthal@force10partners.com); (ii) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, One Market Street, Spear Plaza, 40th Floor, San Francisco, CA 94105-1020, Attn: Debra Grassgreen (dgrassgreen@pszjlaw.com), Maxim B. Litvak (mlitvak@pszjlaw.com), and Steven W. Golden (sgolden@pszjlaw.com); (iii) counsel for the DIP Lender, the MPT Prepetition Lender, and MPT of Watsonville, LLP, (i) KTBS Law, LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067 (Attn: Thomas E. Patterson, tpatterson@ktbslaw.com; Sasha M. Gurvitz, sgurvitz@ktbslaw.com) and

Case: 21-51477  Doc# 13  Filed: 12/05/21  Entered: 12/05/21 17:04:31  Page 13 of 17

2

(ii) Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 420 20th Street North, Suite 1400, Birmingham, Alabama 35203 (Attn: Luther P. Crull, III, lcrull@bakerdonelson.com); (iv) counsel for the official committee of unsecured creditors, if appointed; and (v) the Office of the United States Trustee, Region 17, 280 South First St., Room 268, San Jose, CA 95113 (Attn: Jason Blumberg, jason.blumberg@usdoj.gov; and Elvina Rofael, elvina.rofael@usdoj.gov).

3.  The Debtors are authorized on an interim basis, but not directed, to maintain and continue the Insurance Policies, and, in their sole discretion, pay and honor in the ordinary course of business any amounts outstanding under the Insurance Policies, including any Insurance Obligations or Brokerage Fees.

4.  The Debtors are authorized, but not directed, to renew, amend, supplement, extend, or purchase insurance policies, to the extent that the Debtors determine, in their sole and exclusive discretion, that such action is in the best interest of its estate.

5.  Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

6.  The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

7.  The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

consequence of these Bankruptcy Cases with respect to prepetition amounts owed in connection with any of the Insurance Policies.

8. Notwithstanding anything to the contrary contained herein, any payment made or to be made under this Interim Order, any authorization contained in this Interim Order, or any claim for which payment is authorized hereunder, shall be subject to the requirements imposed on the Debtors under any orders of this Court approving any debtor in possession financing and/or use of cash collateral by the Debtors and any budget in connection therewith.

9. The Motion satisfies the requirements of Bankruptcy Rule 6003(b).

10. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

11. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Interim Order in accordance with the Motion.

13. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

***END OF ORDER***

# EXHIBIT B

(Insurance Schedule)

| NO. | COVERAGE DESCRIPTION | INSURER | POLICY NO. | POLICY PERIOD | FINANCED/PAYABLE IN INSTALMENTS? | FINANCING PARTY, AS APPLICABLE | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|---|
| 1 | General and Professional Liability | BETA Healthcare Group | HCL-21-1212 | 10/01/2021 – 10/01/2022 | Yes | BETA Healthcare Group | $565,000.00 |
| 2 | Automobile | Travelers | BA-0R320535-21-43-G | 10/01/2021 – 10/01/2022 | Yes | Travelers | $2,045.00 |
| 3 | Commercial Property | Travelers | P-630-9M557624-TIL-21 | 10/01/2021 – 10/01/2022 | Yes | Travelers | $70,568.00 |
| 4 | Management Liability | Crum & Forster Specialty Insurance Company | PCF-100635 | 10/01/2021 – 10/01/2022 | Yes | FIRST Insurance Funding | $24,072.74 |
| 5 | Cyber Liability | Crum & Forster Specialty Insurance Company | CYB-103121 | 10/01/2021 – 10/01/2022 | Yes | FIRST Insurance Funding | $113,575.00 |
| 6 | Cyber Liability | Ambridge - Lloyds of London | ACR1011721 | 10/01/2021 – 10/01/2022 | Yes | FIRST Insurance Funding | $114,091.25 |
| 7 | Cyber Excess Liability | Corvus – Accredited Specialty Insurance Company | Policy number not yet issued | 10/01/2021 – 10/01/2022 | Yes | FIRST Insurance Funding | $204,636.34 |
| 8 | Crime | Beazley Insurance Company | V28DF8210301 | 10/01/2021 – 10/01/2022 | Yes | FIRST Insurance Funding | $9,166.00 |
| 9 | Non-Owned Helicopter Liability Policy | Starr Indemnity & Liability Company | 100023895803 | 10/01/2021 – 10/01/2022 | No | N/A | $7,150.00 |
| 10 | Above-Ground Pollution | Tokio Marine Specialty Insurance Company | PPK2043682 | 10/01/2019 - 10/01/2022 | No | N/A | $53,304.00 |
| 11 | Underground – Pollution Liability | Tokio Marine Specialty Insurance Company | PPK2334727 | 10/01/2021 – 10/01/2022 | No | N/A | $1,122.33 |
| 12 | Excess Automobile Liability | BETA Healthcare Group | XAL-21-1212 | 10/01/2021 – 10/01/2022 | No | N/A | $1,000.00 |