Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: dgrassgreen@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Proposed Attorneys for Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 21-51477 |
| WATSONVILLE HOSPITAL CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | **DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) AUTHORIZING CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM; (III) GRANTING LIMITED WAIVER OF SECTION 345(b) DEPOSIT REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF** |
| | Date: December 7, 2021 |
| | Time: 9:30 a.m. |
| | Place: **Telephonic/Video Appearance Only** |
| | Courtroom 11 |
| | 280 South First Street |
| | San Jose, CA 95113 |
| | Judge: Hon. M. Elaine Hammond |

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned

bankruptcy cases (the "Bankruptcy Cases"), hereby file this motion (the "Motion") for the entry of

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

interim and final orders, pursuant to sections 105, 345, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"): (i) authorizing the maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions; (ii) authorizing the continued use of the Debtors' existing cash management system, bank accounts, and checks; (iii) granting a limited waiver of the deposit and investment requirements imposed by section 345(b) of the Bankruptcy Code; and (iv) granting related relief.

A proposed form of interim order granting the relief requested herein (the "Interim Order") is attached hereto as **Exhibit C**.

In support of this Motion, the Debtors submit the *Declaration of Jeremy Rosenthal, Chief Restructuring Officer of the Debtors, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference,[2] and the accompanying memorandum of points and authorities set forth below.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

2

# TABLE OF CONTENTS

I. JURISDICTION AND Venue ............................................................................................ 1

II. BACKGROUND ............................................................................................................. 1

    A.   The Chapter 11 Cases ......................................................................................... 1

    B.   The Cash Management System ............................................................................ 2

III. RELIEF REQUESTED ................................................................................................... 7

IV. BASIS FOR REQUESTED RELIEF .............................................................................. 7

    A.   Maintaining the Existing Cash Management System is Essential to Maximizing the Value of the Debtors' Estates ................................................................................ 7

    B.   Maintaining the Existing Cash Management System Will Not Harm Parties-in-Interest ........ 9

    C.   The Court Should Authorize the Continued Use of Debit and Wire Transfers ...................... 9

    D.   Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course is Warranted ................................................................. 9

    E.   Waiver of the Requirements of Section 345(b) of the Bankruptcy Code is Warranted ......... 10

V. EMERGENCY CONSIDERATION ............................................................................... 12

VI. WAIVER OF BANKRUPTCY RULE 6004 ................................................................. 13

VII. RESERVATION OF RIGHTS ..................................................................................... 13

VIII. NOTICE ..................................................................................................................... 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*,
778 F.2d 617 (11th Cir. 1985) ............................................................................. 8

*In re Baldwin-United Corp.*,
79 B.R. 321 (Bankr. S.D. Ohio 1987) ................................................................... 8

*In re First Protection, Inc.*,
440 B.R. 821 (B.A.P. 9th Cir. 2010) ..................................................................... 8

*In re Nellson Nutraceutical, Inc.*,
369 B.R. 787 (Bankr. D. Del. 2007) ..................................................................... 8

*In re OccMeds Billing Servs., Inc.*,
Case No. 07-28444, 2008 Bankr. LEXIS 30 (Bankr. E.D. Cal. Jan. 3, 2008) .......... 8

*In re Roth Am., Inc.*,
975 F.2d 949 (3d Cir. 1992 .................................................................................. 8

*In re Serv. Merch. Co.*,
240 B.R. 894 (Bankr. M.D. Tenn. 1999) ............................................................. 12

*Meoli v. Am. Med. Serv. of San Diego*,
287 B.R. 808 (S.D. Cal. 2003) ............................................................................. 8

**Statutes**

11 U.S.C. § 105 .................................................................................................... 1
11 U.S.C. § 1107(a) ............................................................................................. 1
11 U.S.C. § 1108 .................................................................................................. 1
11 U.S.C. § 345 ................................................................................................ 1, 11
11 U.S.C. § 345(a) ..................................................................................... 10, 11, 12
11 U.S.C. § 345(b) ....................................................................................... 7, 11, 12
11 U.S.C. § 363 .................................................................................................... 1
11 U.S.C. § 363(c) ................................................................................................ 8
11 U.S.C. § 363(c)(1) ........................................................................................ 5, 8
11 U.S.C. § 503 .................................................................................................... 1
28 U.S.C. § 1334 .................................................................................................. 1
28 U.S.C. § 1408 .................................................................................................. 1
28 U.S.C. § 1409 .................................................................................................. 1
28 U.S.C. § 157 .................................................................................................... 1
28 U.S.C. § 157(b)(2) ........................................................................................... 1

**Other Authorities**

140 Cong. Rec. H. 10,767 (Oct. 4, 1994) ............................................................. 11

**Rules**

Bankruptcy Local Rule 5011-1(a) ......................................................................... 1
Fed. R. Bankr. P. 6003 ......................................................................................... 1
Fed. R. Bankr. P. 7008 ......................................................................................... 1
Fed. R. Civ. P. 6004(a) ....................................................................................... 13
Fed. R. Civ. P. 6004(h) ....................................................................................... 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

ii

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

The United States Bankruptcy Court for the Northern District of California (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"). The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

The legal bases for the relief requested herein are sections 105, 345, 363, and 503 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## II.

## BACKGROUND

### A.    The Chapter 11 Cases

On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Bankruptcy Cases, and no committees have been appointed or designated.

The Debtors operate Watsonville Community Hospital (the "Hospital"), a 106-bed acute care facility located in Watsonville, California. As the only acute care facility in the area, the Hospital provides vital services to its surrounding community, including emergency, cardiac, pediatric, surgical, pharmaceutical, laboratory, radiological, and other critical services. A more detailed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

DOCS_DE:237176.6 92381/001
Case: 21-51477   Doc# 14   Filed: 12/05/21   Entered: 12/05/21 17:52:44   Page 5 of 28

description of the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the First Day Declaration.

**B.    The Cash Management System**

The Debtors maintain a centralized cash management system (the "Cash Management System") that is integral to the operation and administration of the Hospital. The Cash Management System allows the Debtors to (i) monitor and control all of the Debtors' cash receipts and disbursements, (ii) identify the cash requirements of the Debtors, and (iii) transfer cash as needed to meet the Debtors' obligations.

The Cash Management System is similar to systems commonly employed by healthcare businesses located in California and efficiently facilitates the Debtors' receipt and disbursement of funds. In particular, most of the Debtors' revenues are derived from reimbursement for medical care provided to Medicare or Medi-Cal enrollees and to other private insurance beneficiaries. These longstanding, and largely electronic, payment systems are critical to the Debtors' ongoing operations. It is vital that the Cash Management System remain intact during these Bankruptcy Cases to ensure the seamless continuation of transactions and uninterrupted collection of revenues and disbursement of internal, intercompany, and third-party obligations, and to avoid irreparable harm to the Debtors' business and their patients.

The Debtors' receipts are generally derived from patients and insurers (both governmental and private). The Debtors' cash disbursements generally include (i) employee wages and benefits; (ii) third-party vendor and independent contractor expenses; (iii) corporate overhead expenses; and (iv) Intercompany Transactions (as defined below).

A diagram reflecting the flow of funds through the Cash Management System is annexed hereto as **Exhibit A** (the "Cash Management System Diagram").

**i.    Bank Accounts**

As of the Petition Date, the Debtors maintain control over and administration of eight (8) Debtor-owned bank accounts (the "Debtor Bank Accounts") and one (1) non-debtor owned bank account (the "CHP Bank Account" and, with the Debtor Bank Accounts, the "Bank Accounts"), which are maintained at Bank of America, N.A., Wells Fargo Bank N.A., U.S. Bank National Association,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

2

DOCS_DE:237177.6 92381/001

and Farmers & Merchants Bank of Long Beach (collectively, the "Banks"). All of the Banks, other than Farmers & Merchants Bank of Long Beach ("F&M"), are authorized depositories by the Office of the United States Trustee for Region 17 (the "United States Trustee"), pursuant to the United States Trustee's Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees (the "UST Guidelines"). F&M is an authorized depository by the Office of the United States Trustee for Region 16 (Central District of California).

Specifically, the Debtor Bank Accounts consist of the following:

| Bank Account | Description |
|---|---|
| Depository Account (0811) F&M \| Hospital Holdings ("Financing Depository Account")[3] | This account has been used to receive funds borrowed from MPT, which are then transferred either to the Concentration Account or directly to certain payees. As of the Petition Date, the approximate balance of the Financing Depository Account is $600,000. |
| Depository Account (5387) BofA \| WHC | Certain of the Debtors' receipts are deposited to this account, which are then automatically swept into the below depository account ending in 7495 each business day pursuant to a service agreement between WHC, CNH Finance Fund I, L.P. ("CNH") and BofA. On average, approximately $8 million is deposited into this account each month. As of the Petition Date, there is a $150,000 balance in this account that will be swept on Monday, December 6, 2021. |
| Depository Account (7495) BofA \| WHC | Certain of the Debtors' receipts are deposited to this account (including receipts swept from the above account), which are then wire transferred automatically to CNH each business day pursuant to a DACA among WHC, CNH, and BofA. Such amounts received by CNH are applied to and reduce the outstanding loan balance of the Revolving Facility, which balance relates to WHC's obligations arising before and after the Petition Date. On average, approximately $200,000 (exclusive of amounts transferred from the above account) is deposited to this account each month. As of the Petition Date, there is no balance in this account. |
| Concentration Account (4192) F&M \| Hospital Holdings ("Concentration Account") | This account is the Hospital's central concentration account, which is funded through transfers from the Financing Depository Account and the CHP Bank Account, as well as through advances from CNH (depending on availability) under the Revolving Facility.[4] The Debtors then transfer amounts from this account to their disbursement accounts for |

---

[3] The Financing Depository Account is subject to a deposit account control agreement (a "DACA") by and among Hospital Holdings, F&M, and MPT Prepetition Lender.

[4] Postpetition, the Debtors will no longer be receiving advances from the Revolving Facility.

DOCS_DE:237177.6 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

| Bank Account | Description |
|---|---|
| | payments to third-party payees. In addition, this account is used to pay third-party payees by wire transfer. As of the Petition Date, the approximate balance of the Concentration Account is approximately $1.2 million. |
| Disbursement Account (7088) Wells Fargo | WHC | This account is a disbursement account that is used to pay the Hospital's third-party payees. This account only maintains a balance to the extent the third-party payees have not yet cashed the checks the Debtors issue from this account. |
| Disbursement Account (7403) Wells Fargo | WHM | This account is a disbursement account that is used to pay the Hospital's third-party payees. This account only maintains a balance to the extent the third-party payees have not yet cashed the checks the Debtors issue from this account. |
| Disbursement Account (3854) F&M | Hospital Holdings | This account is a zero balance disbursement account that is solely used to pay Meritain for obligations arising under the PPO Plan.[5] |
| Disbursement Account (0979) F&M | Hospital Holdings | This account is a zero balance disbursement account that is solely used to pay ADP for the Debtors' Employees and CHP's employees' Wages. |

As discussed in further detail in the First Day Declaration, as a result of California laws that have been construed to prohibit a for-profit hospital's direct employment of physicians, the Hospital is affiliated with a "friendly" professional medical corporation, Coastal Health Partners, P.C. ("CHP"), whose employed physicians are fully integrated into the Hospital's workforce. Pursuant to a management agreement between Debtor Watsonville Healthcare Management, LLC ("WHM")[6] and CHP (the "CHP Management Agreement"), WHM bills patients and payors for the professional services provided by the CHP Physicians on CHP's behalf and in CHP's name, collects the resulting revenue, and handles all salary and expense payments for the CHP-employed physicians. Under the CHP Management Agreement, such revenues are collected in an account—the CHP Bank Account—managed by WHM but in CHP's name and periodically swept into the Concentration Account. Such revenue, however, is CHP's property and, although it may be commingled with the Debtors' revenues, it is carefully tracked and separately accounted for.

---

[5] As defined and described in the Wage and Benefits Motion.

[6] As is common in the healthcare industry, WHM acts as a management services organization (MSO) to assist with CHP's billing, collection, and patient records, among other tasks.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

As described in further detail below, all payments made by the Debtors on CHP's behalf are disbursed out of Debtor Bank Accounts. While CHP funds money into the Debtor Bank Accounts, the Debtors do not fund money into the CHP Bank Account.

A schedule of the Bank Accounts is attached hereto as **Exhibit B**. The Bank Accounts are primarily utilized to (i) pay operating expenses and (ii) receive payments from payors (public and private), patients, and other parties. Certain Bank Accounts also facilitate the movement of funds to other accounts of the Debtors. The Debtors routinely deposit, withdraw, and otherwise transfer money to, from, and between certain of the Bank Accounts by various methods, including by wire transfer, internal transfer, ZBA transfer, automatic clearing house transfer, and checks.

**ii.    Intercompany Transactions**

In the ordinary course of business, the Hospital engages in various intercompany transactions (the "Intercompany Transactions"), including transfers of funds between Bank Accounts held in different entities' names. In particular, as noted above and in the First Day Declaration, certain Debtors receive revenue in depository Bank Accounts on behalf of other Debtors and then transfer (or cause to be transferred) such funds into other Bank Accounts. These Intercompany Transactions also relate to payroll and benefits charges for the Hospital's Workforce. The Intercompany Transactions reduce administrative costs and ensure the orderly operation of the Hospital. When funds are transferred between Bank Accounts or disbursed for the benefit of Debtors not named on such Bank Accounts, Intercompany Transactions are recorded and booked.

In addition, the Debtors (primarily through WHM) routinely engage in Intercompany Transactions with non-Debtor CHP, which is legally required to be separate from the Debtors. Thus, in the ordinary course of business, the Debtors routinely engage in Intercompany Transactions with both Debtors and CHP, which transactions are traceable and recorded.

The Debtors anticipate that the Intercompany Transactions will continue postpetition in the ordinary course of business. Such transactions are necessary to the efficient operation of the Hospital. Because the Debtors routinely engaged in the Intercompany Transactions on a prepetition basis and such transactions are common for enterprises like the Debtors, the Debtors believe that they may continue the Intercompany Transactions in the ordinary course under section 363(c)(1) of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

Bankruptcy Code, without court approval. Nonetheless, out of an abundance of caution, the Debtors seek express authority, but not direction, to continue engaging in the Intercompany Transactions. Consistent with their prepetition practice, the Debtors will maintain records of all transfers and can ascertain, trace and account for all of the Intercompany Transactions.

### iii. Bank and Payment Processing Fees

In the ordinary course of business, the Banks charge, and the Debtors pay, honor, or allow to be deducted from the appropriate Bank Accounts, certain service charges and other fees, costs, and expenses charged by the Banks (collectively, the "Bank Fees"). The Bank Fees currently average approximately $9,000 per month in the aggregate.

### iv. Existing Business Forms and Checks

The Debtors use in the ordinary course of business various pre-printed checks and other business forms including, without limitation, letterhead and invoices (collectively, the "Business Forms") that were printed prior to the Petition Date without reference to the Debtors' status as "debtors in possession." The Debtors anticipate that they will be in a position to begin using the designation "Debtor in Possession" and the corresponding bankruptcy case number on all Business Forms within fourteen (14) days of the date of the entry of the Interim Order.

As the foregoing overview reflects, the Cash Management System is specifically designed for administering the Hospital, and cannot be altered without significant disruption to the Debtors' operations and material distraction to the Debtors' management. The Debtors use the Cash Management System in the ordinary course to transfer and distribute funds and to facilitate cash monitoring, forecasting, and reporting. The Debtors maintain daily oversight over the Cash Management System and implement cash-management controls for entering, processing, and releasing funds. The Debtors, therefore, request that the Court authorize them to continue using the existing Cash Management System, and to transfer funds into, out of, and through the Cash Management System in the ordinary course of business in accordance with the agreements governing the Debtor Bank Accounts, including, without limitation, any prepetition cash management agreements, bank account terms and conditions, or treasury services agreements (collectively, the "Bank Account Agreements").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

# III.

## RELIEF REQUESTED

By this Motion, the Debtors seek the entry of interim and final orders (i) authorizing the maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions; (ii) authorizing the continued use of the Debtors' existing cash management system, bank accounts, and checks; (iii) granting a limited waiver of the deposit and investment requirements imposed under section 345(b) of the Bankruptcy; and (iv) granting related relief.

# IV.

## BASIS FOR REQUESTED RELIEF

### A.  Maintaining the Existing Cash Management System is Essential to Maximizing the Value of the Debtors' Estates

The U.S. Trustee Operating Guidelines require debtors in possession to, among other things: (a) establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (b) close all existing bank accounts and open new debtor-in-possession accounts; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks that bear the designation "debtor in possession" and reference the bankruptcy case number and type of account on such checks.  These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

The Debtors submit that enforcement of the foregoing U.S. Trustee Operating Guidelines during these Bankruptcy Cases would disrupt the Debtors' ability to efficiently administer these Bankruptcy Cases.  The Cash Management System that the Debtors have in place for the transfer and distribution of funds ties into the Debtors' existing corporate accounting and cash forecasting reporting.  Terminating such Cash Management System now would put the Hospital at risk of losing critical access to funds necessary for the Hospital's operations and require the Debtors' personnel and professionals to needlessly divert their time away from providing Patient care and working to keep the

7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

Hospital's doors open for the Watsonville community. Accordingly, the Debtors respectfully request that the Court allow it to operate each of the Bank Accounts as they were maintained in the ordinary course before the Petition Date.

Section 363(c)(1) of the Bankruptcy Code, authorizing a debtor in possession to "use property of the estate in the ordinary course without notice or a hearing," permits the continuation of the Cash Management System. The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court.[7] Included within the purview of section 363(c) is a debtor's ability to continue "routine transactions" necessitated by a debtor's cash management system.[8] Indeed, bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."[9] Accordingly, the Debtors believe that they are authorized, pursuant to section 363(c)(1) of the Bankruptcy Code, to continue the collection and disbursement of cash pursuant to its Cash Management System as described above.

The Cash Management System constitutes an ordinary-course and essential business practice providing significant benefits to the Debtors, including the ability to control Hospital funds, maximize collections from public and private payors, ensure the continued availability of funds when and where necessary, reduce administrative expenses by facilitating the movement of funds, and ensure the availability of timely and accurate account balance information consistent with prepetition practices. The use of the Cash Management System has historically reduced the Debtors' expenses by enabling

---

[7] *Meoli v. Am. Med. Serv. of San Diego*, 287 B.R. 808, 817 n.3 (S.D. Cal. 2003) (stating that 363(c)(1) is designed to provide "wide-ranging management authority over the debtor"); *see In re First Protection, Inc.*, 440 B.R. 821, 833 (B.A.P. 9th Cir. 2010) (a debtor may "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and to use property of the estate in the ordinary course of business without notice or a hearing" when the debtor's business is being operated under sections 1107 and 1108 of the Bankruptcy Code); *see also In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted).

[8] *See, e.g., In re OccMeds Billing Servs., Inc.*, Case No. 07-28444, 2008 Bankr. LEXIS 30, at *7 (Bankr. E.D. Cal. Jan. 3, 2008) (noting that so long as bank accounts are not a creditor's cash collateral "the debtor does not need the permission of the court to use them in ordinary course of its business"); *Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with section 363(c)(1) (internal quotation omitted)); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted).

[9] *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

the Hospital to use funds in an optimal and efficient manner. Accordingly, the continued use of the Cash Management System without interruption is vital to the Hospital's operations and the success of these Bankruptcy Cases.

**B.      Maintaining the Existing Cash Management System Will Not Harm Parties-in-Interest**

The Debtors' continued use of the Cash Management System will facilitate the Hospital's transition into chapter 11 by, among other things, avoiding administrative inefficiencies, added expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of their existing Cash Management System, including continued use of the Bank Accounts, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date. In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

**C.      The Court Should Authorize the Continued Use of Debit and Wire Transfers**

The Debtors request that the Court grant further relief from the U.S. Trustee Operating Guidelines to the extent they require the Debtors to make all disbursements by check. In particular, the U.S. Trustee Operating Guidelines generally require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement. If the Debtors' ability to conduct transactions by debit or wire transfer, or other similar methods, is impaired, the Hospital's day-to-day activities will be unnecessarily disrupted, and the estates will incur additional costs.

**D.      Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course is Warranted**

The Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts[10] as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course. In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, and other instructions and drafts

---

[10] Excepting the CHP Account, which is not held in the name of a Debtor.

DOCS_DE:237476.9 92381/001

Case: 21-51477    Doc# 14    Filed: 12/05/21    Entered: 12/05/21 17:52:44    Page 13 of 28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided* that any check, draft, or other notification that the Debtors advise the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent a bank honors a prepetition check or other item drawn on any account either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, such bank will not be deemed to be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

Moreover, the Debtors requests that the Court authorize the Debtors to pay any prepetition Bank Fees on account of prepetition transactions that are charged postpetition and authorize the Banks to: (a) continue to charge the Debtors the Bank Fees; and (b) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

**E.** **Waiver of the Requirements of Section 345(b) of the Bankruptcy Code is Warranted**

Section 345(a) of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes such deposits or investments as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United

10

States," section 345(b) of the Bankruptcy Code requires that the debtor obtain from the "entity with which the money is deposited or invested a bond in favor of the United States [that is] secured by the undertaking of a[n adequate] corporate surety . . . unless the court for cause orders otherwise."

In chapter 11 cases such as this, strict adherence to the requirements of section 345(b) of the Bankruptcy Code would be inconsistent with the value-maximizing purpose of chapter 11 by unduly hampering a debtor's ability under section 345(a) to invest money such "as will yield the maximum reasonable net return on such money." As a result, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) to provide that its strict investment requirements may be waived or modified if the court so orders "for cause."[11] Here, the Debtors satisfy both the procedural and substantive requirements necessary to obtain a waiver of section 345(b) of the Bankruptcy Code.

First, as set forth above, five of the nine Bank Accounts are maintained at a Bank that has been approved by the U.S. Trustee as an "authorized depository" in accordance with the U.S. Trustee Guidelines. Although F&M is not a designated authorized depository by the U.S. Trustee for Region 17, F&M is a highly-rated, sufficiently capitalized, stable banking institution that *is* an authorized depository by the U.S. Trustee for Region 16.[12] To the extent that the accounts at F&M are not in technical compliance with the requirements of section 345, the Debtors seek to have such requirements waived so as to allow F&M to accept, hold, and distribute cash in accordance with the Debtors' prepetition practices.

Moreover, there is cause to warrant a waiver of the requirements of section 345(b) of the Bankruptcy Code. Courts consider the "totality of the circumstances" in determining whether "cause" exists, with particular regard to the following factors: "(1) the sophistication of the debtor's business; (2) the size of the debtor's business operations; (3) the amount of investments involved; (4) the bank ratings . . . of the financial institutions where debtor in possession funds are held; (5) the complexity of the case; (6) the safeguards in place within the debtor's own business of insuring the safety of the funds; (7) the debtor's ability to reorganize in the face of a failure of one or more of the financial

[11] 140 Cong. Rec. H. 10,767 (Oct. 4, 1994).

[12] *See* https://www.justice.gov/ust-regions-r16/file/approved_depositories.pdf/download.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

institutions; (8) the benefit to the debtor; (9) the harm, if any, to the estate; and (10) the reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case."[13]

Under the totality of the circumstances, including through the evaluation of the ten factors listed above, there is cause to warrant a waiver of section 345(b) of the Bankruptcy Code (to the extent necessary) with respect to F&M. The four F&M Bank Accounts are integral to the Cash Management System and cannot be easily or efficiently replaced, as doing so will take considerable time by the very personnel who are charged with the Debtors' financial restructuring efforts. Moreover, the Hospital has financial controls in place that carefully track all funds flowing into and out of the F&M Bank Accounts. Finally, F&M is a highly-rated financial institution that has entered into a Uniform Depository Agreement with the United States Trustee for Region 16.

The benefits of a waiver of the technical requirements of section 345(a) with respect to the F&M Bank Accounts outweigh any potential harm to the estates from noncompliance with this provision. Accordingly, the Debtors respectfully request that the Court waive the requirements of section 345(b) in these Bankruptcy Cases.

## V.

## EMERGENCY CONSIDERATION

The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to continue to operate the Cash Management System and honor certain prepetition obligations related thereto and granting the other relief requested herein is integral to the Debtors' ability to transition the Hospital's operations into the Bankruptcy Cases smoothly. Failure to receive such authorization and other relief during the first 21 days of these Bankruptcy Cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and

---

[13] *In re Serv. Merch. Co.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

irreparable harm" standard of Bankruptcy Rule 6003 and respectfully request that the Court approve the relief requested in this Motion on an emergency basis.

### VI.

### **WAIVER OF BANKRUPTCY RULE 6004**

The Debtors request a waiver of any applicable notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

### VII.

### **RESERVATION OF RIGHTS**

Nothing contained herein is intended or shall be construed as (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' or any party in interest's rights to dispute the amount of, basis for, or validity of any claim of any creditor or interest of any interest holder under applicable bankruptcy or nonbankruptcy law; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; or (iv) an assumption, adoption, or rejection of any agreement, contract, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code.

### VIII.

### **NOTICE**

Notice of this Motion has been provided by email, facsimile, and/or overnight courier to the First Day Notice Parties (as defined in the Motion to Shorten Time) and the Banks. The Debtors submit that, in light of the nature of the relief requested, no other or further notice is required.

No prior request for the relief sought in this Motion has been made by the Debtors to this or any other court.

///

**WHEREFORE**, the Debtors respectfully request entry of interim and final orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:    December 5, 2021          PACHULSKI STANG ZIEHL & JONES LLP


By: */s/ Debra I. Grassgreen*
Debra I. Grassgreen
Maxim B. Litvak
Steven W. Golden

Proposed Attorneys for Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

14

# EXHIBIT A

# Exhibit A



**WATSONVILLE HOSPITAL
CASH MANAGEMENT SYSTEM DIAGRAM**

CHP / Debtor Vendors

Hospital Patients / Payors

Depository EFT / Lockbox
Holder: Watsonville Hospital Corp.
Bank: Bank of America
Account No. 5387

Disbursement
Holder: Watsonville Hospital Corp.
Bank: Wells Fargo
Account No. 7088

Disbursement
Holder: Watsonville Healthcare Mgmt.
Bank: Wells Fargo
Account No. 7403

Depository
Holder: Watsonville Hospital Holdings
Bank: Farmers & Merchants
Account No. 0811

Financing Advances

Hospital Patients / Payors

Depository OTC
Holder: Watsonville Hospital Corp.
Bank: Bank of America
Account No. 7495

CNH Sweep / Advance

Concentration Account
Holder: Watsonville Hospital Holdings
Bank: Farmers & Merchants
Account No. 4192

Depository
Holder: Coastal Health Partners
Bank: US Bank
Account No. 3858

CHP Patients / Payors

## LEGEND

Debtor Watsonville Hospital Holdings Account

Debtor Watsonville Hospital Corporation Account

Debtor Watsonville Healthcare Mgmt. Account

Non-Debtor Account

Meritain Account
Holder: Watsonville Hospital Holdings
Bank: Farmers & Merchants
Account No. 3854

Payroll Account
Holder: Watsonville Hospital Holdings
Bank: Farmers & Merchants
Account No. 0979

Medical Benefit Plan

CHP / Debtor Wages

## Exhibit B

### Bank Accounts

| Bank | Name in Which Account is Held | Purpose of Account | Last 4 Digits of Account Number |
|---|---|---|---|
| Bank of America | Watsonville Hospital Corp. | Lockbox Depository | 5387 |
| | Watsonville Hospital Corp. | Financing Deposits and Vendor Disbursements | 7495 |
| Wells Fargo | Watsonville Hospital Corp. | Vendor Disbursement | 7088 |
| | Watsonville Healthcare Management, LLC | Vendor Disbursement | 7403 |
| Farmers & Merchants | Watsonville Hospital Holdings, Inc. | Financing Advance Deposits | 0811 |
| | Watsonville Hospital Holdings, Inc. | Concentration Account | 4192 |
| | Watsonville Hospital Holdings, Inc. | Medical Benefits Disbursement | 3854 |
| | Watsonville Hospital Holdings, Inc. | Payroll Disbursement | 0979 |
| U.S. Bank | Coastal Health Partners P.C.[1] | CHP Payor Deposits | 3858 |

---

[1] Non-Debtor.

**EXHIBIT "E"**

Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (*pro hac vice* pending)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: dgrassgreen@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Proposed Attorneys for Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>WATSONVILLE HOSPITAL CORPORATION, *et al.*,<br><br>Debtors.[1] | Case No. 21-51477<br><br>Chapter 11<br><br>**[PROPOSED] INTERIM ORDER (I) AUTHORIZING MAINTENANCE OF EXISTING BANK ACCOUNTS; (II) AUTHORIZING CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM; (III) GRANTING LIMITED WAIVER OF SECTION 345(b) DEPOSIT REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF**<br><br>Date: December 7, 2021<br>Time: 9:30 a.m.<br>Place: **Telephonic/Video Appearance Only**<br> Courtroom 11<br> 280 South First Street<br> San Jose, CA 95113<br>Judge: Hon. M. Elaine Hammond |

Upon the *Motion for Entry of Interim and Final Orders (I) Authorizing Maintenance of Existing Bank Accounts; (II) Authorizing Continuance of Existing Cash Management System; (III) Granting Limited Waiver of Section 345(b) Deposit Requirements; and (IV) Granting Related Relief*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

DOCS_DE:237491.7 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

[Docket No. [●]] (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105, 345, 363, and 503 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), for interim and final orders (i) authorizing the maintenance of existing bank accounts, including the authority to pay routine prepetition banking fees owed to financial institutions; (ii) authorizing the continued use of the Hospital's existing cash management system, bank accounts, and checks; (iii) granting a limited waiver of the deposit requirements imposed under section 345(b) of the Bankruptcy; and (iv) granting related relief; and upon the First Day Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges*, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for hearing thereon were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard any statements in support of the relief requested therein at the First Day Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the First Day Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is granted on an interim basis as provided herein.

2.      The Debtors are authorized (i) to continue to manage their cash and the cash of CHP pursuant to their existing Cash Management System; (ii) to collect and disburse cash in accordance with the Cash Management System, including Intercompany Transactions between and among the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

DOCS_DE:237491.7 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

Debtors and CHP, and the automatic sweeps and wire transfers between the Debtors and CNH Finance Fund I, L.P. (the "CNH Prepetition Lender"); and (iii) to make ordinary course changes to their Cash Management System, as set forth herein without further order of the Court.

3. The Debtors are authorized to (i) designate, maintain, and continue to use any or all of their existing Bank Accounts listed on Exhibit C to the Motion with the account numbers existing immediately before the Petition Date; (ii) deposit funds in, and withdraw funds from, such accounts by all usual means, including, without limitation, checks, wire transfers, ACH transfers, and other debits; (iii) pay any Bank Fees or other charges associated with the Bank Accounts, whether arising before or after the Petition Date, (iv) maintain and continue to use the service agreements and control agreements to which the Debtors, the CNH Prepetition Lender, and Bank of America are a party to as of the Petition Date; and (v) maintain the DACA to which the Debtors, the MPT Prepetition Lender, and F&M are a party to as of the Petition Date.

4. The Debtors are authorized to use their existing business forms and not print "Debtor in Possession" on any such business forms (including checks and letterhead), provided, that once the Debtors' preprinted correspondence and business forms (including checks and letterhead) have been depleted, the Debtors shall, when reordering, require the designation "Debtor in Possession" and the case number of the lead bankruptcy case on all such documents; *provided, further*, that with respect to electronic letterhead that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend and the case number of the lead bankruptcy case on such items within fourteen (14) days of the date of entry of this Interim Order.

5. The Banks are authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Banks' counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtors' accounts with the Banks prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all undisputed prepetition amounts

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

outstanding as of the date hereof, if any, owed to the Banks as Bank Fees for the maintenance of the Cash Management System.

6.     The Banks are authorized to charge, and the Debtors are authorized and directed to pay, honor, or allow, both prepetition, if any, and postpetition fees, costs, charges, and expenses, including the Bank Fees, and charge back returned items to the Bank Accounts in the ordinary course.

7.     The Banks shall not be liable to any party on account of: (i) following the Debtors' representations, instructions, or presentations as to any order of the Court (without any duty of further inquiry) or (ii) the honoring of any prepetition checks, drafts, wires, or ACH transfers in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition check, draft, wires, or ACH transfers.

8.     The Banks are authorized and directed to continue to honor transfers, as directed by the Debtors, of funds among the Bank Accounts.

9.     The Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records.

10.     The Debtors are authorized to continue the Intercompany Transactions in the ordinary course of business.   The Debtors shall maintain current records with respect to Intercompany Transactions such that all intercompany transfers are properly recorded on intercompany accounts and may be readily ascertained and traced, and such records shall be made available upon request by the U.S. Trustee and any official statutory committee appointed in these Bankruptcy Cases (a "Committee").

11.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the depository bank at which such account is opened, which bank shall be deemed a Bank.  To the extent the Debtors open a new Bank Account, such Bank Account must be opened at a Bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at a Bank that is willing to immediately execute such an agreement.

12.     The requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Operating Guidelines are hereby waived with respect to the Bank Accounts held at F&M.  To the extent any of the Bank Accounts that are held at an Authorized Depository are not in compliance with section 345(b) of the Bankruptcy Code, the Debtors shall have 45 days, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent an agreement cannot be reached.

13.     Nothing herein shall prevent the Debtors from closing any of the Bank Accounts as they may deem necessary and appropriate.  The Banks are authorized to honor any request to close such Bank Accounts, and the Debtors shall give notice of the closure of any Bank Account to the United States Trustee and any Committee.

14.     As soon as practicable after the entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

15.     Nothing in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

16.     Nothing in this Order: (i) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtors or their estates; (ii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates to contest the validity, priority, or amount of any claim against the Debtors or their estates; (iii) shall impair, prejudice, waive, or otherwise affect the rights of the Debtors or their estates with respect to any and all claims or causes of action against any third party; or (iv) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtors.  Any payment made pursuant to this Order is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

17.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

18. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

19. Notwithstanding the applicability of Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20. The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Order.

21. A final hearing to consider the relief requested in the Motion shall be held on [●] at [●] (prevailing Pacific Time) and any objections or responses to the Motion shall be filed on or prior to [●] at 4:00 p.m. (prevailing Pacific Time), and served on: (i) the Debtors, c/o Force Ten Partners LLC, 5271 California Ave., Suite 270, Irvine, CA 92617, Attn: Jeremy Rosenthal (jrosenthal@force10partners.com); (ii) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, One Market Street, Spear Plaza, 40th Floor, San Francisco, CA 94105-1020, Attn: Debra Grassgreen (dgrassgreen@pszjlaw.com), Maxim B. Litvak (mlitvak@pszjlaw.com), and Steven W. Golden (sgolden@pszjlaw.com); (iii) counsel for the DIP Lender, the MPT Prepetition Lender, and MPT of Watsonville, LLP, (i) KTBS Law, LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067 (Attn: Thomas E. Patterson, tpatterson@ktbslaw.com; Sasha M. Gurvitz, sgurvitz@ktbslaw.com) and (ii) Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 420 20th Street North, Suite 1400, Birmingham, Alabama 35203 (Attn: Luther P. Crull, III, lcrull@bakerdonelson.com); (iv) counsel for the official committee of unsecured creditors, if appointed; and (v) the Office of the United States Trustee, Region 17, 280 South First St., Room 268, San Jose, CA 95113 (Attn: Jason Blumberg, jason.blumberg@usdoj.gov; and Elvina Rofael, elvina.rofael@usdoj.gov).

22. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation or interpretation of this Order.

**END OF ORDER**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA