Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: dgrassgreen@pszjlaw.com
mlitvak@pszjlaw.com
sgolden@pszjlaw.com

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>WATSONVILLE HOSPITAL CORPORATION, *et al.*,<br><br>Debtors.[1] | Case No. 21-51477<br><br>Chapter 11<br>(Jointly Administered)<br><br>**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**<br><br>Date: January 19, 2022<br>Time: 10:00 a.m.<br>Place: **Telephonic/Video Appearance Only**<br>Judge: Hon. M. Elaine Hammond |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

DOCS_NY:44857.3 92381/002
Case: 21-51477    Doc# 207    Filed: 01/17/22    Entered: 01/17/22 14:38:00    Page 1 of 17

The debtors and debtors in possession (collectively, the "Debtors") in the above-captioned bankruptcy cases (the "Bankruptcy Cases"), hereby file this reply (the "Reply") in support of the *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing; and (VII) Granting Related Relief* [Docket No. 10] (the "DIP Financing Motion"),[2] and in opposition to the *Objection of the United States Trustee to Final Approval of Debtors' Motion for Debtor in Possession Financing* [Docket No. 111] (the "UST Objection").

A copy of the proposed final order approving the DIP Financing Motion, along with an updated approved Budget, is attached hereto as **Exhibit 1** (the "Proposed Final Order"). The Proposed Final Order authorizes the DIP Facility in the amount of up to $30,750,000, of which $21,500,000 constitutes new money financing (inclusive of $16,000,000 previously authorized during the interim period) and $9,250,000 represents a roll-up of certain prepetition emergency advances. ***The Proposed Final Order has been extensively negotiated by the Debtors, the DIP Lender, and the Official Committee of Unsecured Creditors (the "Committee") and fully resolves the Committee's potential objections to the DIP Financing Motion.*** A redline of the Proposed Final Order against the entered interim order granting the DIP Financing Motion [Docket No. 54] (the "Interim Order") is attached hereto as **Exhibit 2**. The UST Objection is the only pending objection to final approval of the DIP Financing Motion.[3]

For the reasons set forth herein, the DIP Financing Motion, and the First Day Declaration, the Debtors respectfully request that the Court overrule the UST Objection and enter the Proposed Final Order. In support of this Reply, the Debtors respectfully state as follows:

---

[2] A capitalized term used but not defined herein shall have the meaning ascribed to it in the DIP Financing Motion.

[3] The Committee filed a reservation of rights to the DIP Financing Motion on January 16, 2022 [Docket No. 206].

# MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Following the appointment of the Committee on December 22, 2021, the Debtors, the DIP Lender, and the Committee engaged in arms' length and good faith discussions regarding the terms of the DIP Facility and the Proposed Final Order. As a result of those negotiations and in complete resolution of the Committee's potential objections, the parties have agreed to a number of important revisions reflected in the Proposed Final Order, including:

(a) The DIP Lender will use commercially reasonable efforts to exhaust its remedies against other DIP Collateral before turning to proceeds of avoidance actions or commercial tort claims. *See* Proposed Final Order ¶ 2.1.2.

(b) The DIP liens and adequate protection liens, as well as superpriority claims, of the DIP Lender and the MPT Prepetition Lender will not extend, or have recourse, to the proceeds of any successful objection or any claims (including section 506(c) surcharge claims) against the MPT Prepetition Lender or the CNH Prepetition Lender. *See id.* ¶¶ 2.1.2, 2.2, 2.4.2.

(c) The Carve-Out Expenses will include all unpaid ordinary course postpetition expenses of the Debtors that were incurred prior to the Carve-Out Trigger Date, up to the amounts set forth in the Budget. *See id.* ¶ 2.3(e).

(d) The Committee's Investigation Budget has been increased from $25,000 to $50,000. *See id.* ¶ 2.3.

(e) The Permitted Variance has been updated to, *inter alia*, expand the testing period from 2 to 4 weeks, clarify the aggregate line items for purposes of the applicable testing variance, and allow positive variances for a particular week to be carried forward to successive weeks. *See id.* ¶ 2.4.1.

(f) Certain provisions automatically terminating the automatic stay upon the occurrence of an Event of Default have been eliminated. *See id.* ¶ 7.3.

(g) The challenge deadline for the Committee with respect to the MPT Prepetition Obligations has been extended to no later than the earlier to occur of (i) the day before the sale hearing and (ii) March 9, 2022. *See id.* ¶ 9.1.

(h) The Committee is automatically granted standing to, *inter alia*, pursue and compromise any and all of the estates' claims against the MPT Prepetition Lender and the CNH Prepetition Lender; the MPT Prepetition Lender shall be required to reasonably cooperate with the Committee in its investigation. *See id.* ¶¶ 9.1.1-9.1.3.

(i) The Debtors' waiver of section 506(c) surcharge rights is limited to the period of time in which the Debtors are authorized to use Cash Collateral. *See id.* ¶ 9.3.

(j) Subject to the passage of the Committee Objection Deadline without the assertion of an objection or challenge by the Committee and the successful closing of the Sale (as defined below), the Debtors, the Committee, and the DIP Lender have agreed to a term sheet (the

"Term Sheet"), which is incorporated in section 10.9 of the Proposed Final Order and attached thereto as Exhibit C. The Term Sheet includes:

   i. The DIP Lender's and the Committee's consent to the sale of substantially all of the Debtors' assets (a "Sale") on the terms, as may be amended, of the stalking horse bid submitted by the Project (defined below) or an Alternative Transaction.

   ii. The funding of all remaining availability under the DIP Facility consistent with the Debtors' needs at the closing of a Sale.

   iii. The DIP Lender's acceptance of the sum of $34,000,000 (the "MPT Payment"), plus the sharing of 20% of the proceeds of the Sale, if any, in excess of the MPT Payment with the Debtors' estates, in satisfaction of the Debtors' obligations under the DIP Facility and the MPT Prepetition Obligations.

   iv. The agreement of the parties to share certain excess cash at Sale closing, if any, between the Debtors' estates and the DIP Lender on a 35/65 basis in favor of the DIP Lender in the event that the Debtors' cash on hand exceeds $3,500,000 (excluding certain escrowed amounts for professional fees and the estate excess sale proceeds, if any, referenced above).

   v. The agreement of the parties to share in all assets available for distributions, if any, between the Debtors' estates/liquidating trust and the DIP Lender on a 50/50 basis once such trust distributes to holders of allowed general unsecured claims against the Debtors (after accounting for trust expenses) the greater of (i) $3,500,000 or (ii) an amount equal to 20% of the aggregate amount of allowed general unsecured claims.

   vi. Upon receipt of the MPT payment and the other proceeds, if any, to which the DIP Lender is entitled under the Term Sheet, the MPT Prepetition Lender and the DIP Lender shall have no other liens or claims in the Debtors' estates.

   vii. The DIP Lender and the Committee will support a plan of liquidation which, *inter alia*, (A) provides for the creation of a liquidation trust and appointment of a trustee mutually agreeable to the Debtors, the Committee, and the DIP Lender and (B) vests in the liquidation trust (1) any remaining Debtors' cash on hand (other than amounts contemplated to be paid to professionals from the Professional Fee Trust Account), which amounts shall be treated as unencumbered cash) and (2) all other remaining assets of the Debtors' estates, subject to the sharing mechanism with the DIP Lender described above.

   viii. In the event that the Sale does not close, the Committee' Objection rights will be restored and the Debtors, the DIP Lender, and the Committee will negotiate in good faith regarding amendments to the Term Sheet.

The revised terms of the Proposed Final Order incorporate many concessions by the DIP Lender, as negotiated with the Debtors and the Committee, all of which provide substantial benefits to the Debtors' estates, while ensuring that the Debtors have access to $5,500,000 of additional new money financing required to maintain the operations of the Hospital. Without such crucial additional financing, the Debtors would be unable to continue providing urgently needed patient care or

completing their ongoing sale and marketing process, jeopardizing the welfare of the Debtors' patients and over 650 jobs.

Although the potential objections of the Committee to the DIP Financing Motion have now been resolved, the UST Objection remains pending. As addressed further below, the Debtors believe that many, but not all, of the objections raised by the Office of the United States Trustee (the "U.S. Trustee") have been addressed through revisions to the Proposed Final Order.

One objection that remains unresolved is the U.S. Trustee's issue with the proposed limited roll-up (the "Roll-Up") of the Debtors' prepetition obligations to the MPT Prepetition Lender. The Roll-Up equals the sum of $9,250,000 in emergency advances made by the MPT Prepetition Lender (the "Emergency MPT Advances") to the Debtors approximately during the month preceding the Petition Date (as defined below). The purpose of the Emergency MPT Advances was to provide the Debtors with the funding that they needed to continue to operate and provide patient care while preparing for these Bankruptcy Cases. Without the Emergency MPT Advances, the Debtors would have been forced to cease operations and would not have had the opportunity to efficiently transition into the Bankruptcy Cases. Indeed, if the limited Roll-Up were not approved by the Court, the MPT Prepetition Lender would be placed at a material disadvantage for providing much-needed funding to the Debtors prepetition. In context, such a result cannot withstand scrutiny; the Emergency MPT Advances were provided to allow the Hospital to continue to operate in the middle of a pandemic, including providing critical healthcare services to an already underserved community and preserving over 650 jobs. It is precisely these types of circumstances when roll-ups are most appropriate and the Committee has recognized this fact by agreeing to the Roll-Up as part of the Proposed Final Order.

The U.S. Trustee further objects to the DIP Facility, arguing that: (i) liens on avoidance actions are inappropriate (the Proposed Final Order provides for the DIP Lender to marshal away from proceeds of Avoidance Actions); (ii) waivers of, and liens on, section 506(c) surcharge should be limited to the period in which the Debtors are authorized to borrow funds (the Proposed Final Order addresses this point); and (iii) certain other terms of the DIP Facility improperly divest the Debtors of discretion in these Bankruptcy Cases. The UST Objection is asserted in a vacuum, failing to recognize the practical realities of the Debtors' financial situation, and are standard features in debtor in

5

possession financing generally. Such customary provisions are particularly appropriate here given that the Debtors have been operating the Hospital at a loss for some time, no other party was willing to provide financing on more favorable terms, and the Debtors urgently required funding in order to continue patient care and complete their ongoing sale and marketing process.

Accordingly, the U.S. Trustee's remaining objections should be overruled and the DIP Financing Motion should be approved on a final basis for the reasons stated herein.

## RELEVANT BACKGROUND

On December 5, 2021 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Bankruptcy Cases.

On December 6, 2021, the U.S. Trustee filed that certain *Omnibus Objection and Reservation of Rights of the United States Trustee to Debtors' First Day Motions [ECF Nos. 7, 8, 10, 11, 14]* [Docket No. 34], which objected to, *inter alia*, the interim relief sought by the Debtors in the DIP Financing Motion.

On December 8, 2021, the Court entered the Interim Order, which, *inter alia*, authorized the Debtors to borrow up to $16,000,000 under the DIP Facility from the DIP Lender. The hearing to consider the DIP Financing Motion on a final basis was initially scheduled for January 5, 2022 at 10:00 a.m., but was later continued to January 12, 2022 and then January 19, 2022 at 10:00 a.m. in order to allow more time to address various issues raised by the Committee to the DIP Facility. *See* Docket Nos. 83, 114, 159. Another $5,500,000 of new money financing will be available to the Debtors under the DIP Facility once the Proposed Final Order is entered.

On December 8, 2021, the Court entered the *Order Extending Time to File Schedules of Assets of Liabilities and Statements of Financial Affairs* [Docket No. 45] (the "Schedules Order"). The Schedules Order extended the Debtors' deadline to file their Schedules of Assets and Liabilities and Statements of Financial Affairs (collectively, the "Schedules") to January 19, 2022.

On December 22, 2021, the U.S. Trustee appointed the Committee. *See* Docket No. 97. The Committee has hired counsel and quickly engaged with the Debtors' counsel in the Bankruptcy Cases.

On December 22, 2021, the Debtors filed that certain *Debtors' Motion for Order (A) Approving Bidding Procedures for the Sale of Substantially All Assets; (B) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Approving Related Notice Procedures; (D) Authorizing Debtors to Enter Into Stalking Horse Agreement and Approving Bid Protections; (E) Scheduling a Sale Hearing; and (F) Granting Related Relief* [Docket No. 93] (the "Bid Procedures Motion"). The Bid Procedures Motion sought, *inter alia*, the approval of certain procedures and deadlines in connection with a Sale, including with respect to a stalking horse bid submitted by the Pajaro Valley Healthcare District Project (the "Project").

On December 27, 2021, the Debtors filed that certain *Debtors' Motion for Entry of an Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 103] (the "Sale Motion"). The Sale Motion seeks, *inter alia*, court approval of a Sale. A hearing on the Sale Motion is currently scheduled for February 23, 2022 at 10:00 a.m. (Pacific Time).

On December 29, 2021, the U.S. Trustee filed the UST Objection.

On January 10, 2022, the Court entered an order approving the relief requested in the Bid Procedures Motion. *See* Docket No. 188.

On January 16, 2022, the Committee filed a statement and reservation of rights with respect to the DIP Financing Motion. *See* Docket No. 206.

**TERM SHEET RESOLVING COMMITTEE OBJECTIONS**

As noted above, the Debtors, the DIP Lender, and the Committee have engaged in extensive arms' length and good faith negotiations regarding the DIP Financing Motion and agreed on a package of revisions reflected in the Proposed Final Order, which include the Term Sheet attached thereto as Exhibit C. Pursuant to the Term Sheet, the Debtors, the DIP Lender, and the Committee consent to entry of the Proposed Final Order. The principal provisions of the Term Sheet are set forth below:

| | | |
|---|---|---|
| Objection Condition | | The "Objection Condition" shall be deemed to occur upon the passage of the Committee Objection Deadline without the Committee having filed an Objection. The Parties agree that, in the event of the occurrence of the Objection Condition, MPT and the Committee shall consent to the Sale (as defined in the *Debtors' Motion for Entry of an Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 103] (the "Sale Motion"), the "Sale") on the terms set forth in the Stalking Horse APA (as defined in the Sale Motion, and as the same may be amended from time to time with MPT's consent or as otherwise agreed by the Parties, the "Stalking Horse APA") or, if applicable, any proposed Alternative Transaction (as defined below). |
| Closing | | In the event that (i) the Objection Condition occurs and (ii) the Sale or any other transaction or series of transactions (collectively, an "Alternative Transaction") on economic terms no less beneficial to each of the Parties than those set forth in the Stalking Horse APA and the Term Sheet shall have closed (the "Closing") (unless otherwise agreed by the Parties) prior to August 31, 2022 (subject to extension by agreement of the Parties): <ul><li>At the Closing, to the extent that the DIP Facility has not already been fully funded, advanced, and made available to the Debtors, MPT shall fully fund, advance, and make available to the Debtors the entire $30,750,000 DIP Facility, consistent with the Debtors' operational needs and obligations hereunder;</li><li>The net cash proceeds of the Sale or Alternative Transaction, up to the amount of $34,000,000, shall be paid to MPT (the "MPT Payment") at the Closing;</li><li>Any net cash proceeds of the Sale or Alternative Transaction in excess of $34,000,000 (the "Excess Sale Proceeds") shall be shared between MPT and the Estates as follows: MPT shall be paid 80% of the Excess Sale Proceeds at the Closing (the "MPT Excess Sale Proceeds Payment") and the Estates shall be paid and retain 20% of the Excess Sale Proceeds ("Estate Excess Sale Proceeds Share");</li><li>In the event that the Debtors' and Estates' cash on hand immediately following the Closing (excluding (i) any amounts in the Professional Fee Trust Account required for the payment of professional fees contemplated to be paid from the Professional Fee Trust Account and (ii) the Estate Excess Sale Proceeds Share) (the "Post-Closing Cash on Hand") exceeds $3,500,000, the Post-Closing Cash on Hand in excess of $3,500,000 (the "Post-Closing Excess Cash") shall be shared between MPT and the Estates as follows: MPT shall be paid 65% of the Post-Closing Excess</li></ul> |

Cash (the "MPT Post-Closing Excess Cash Payment") and the estates shall be paid and/or retain, as applicable, 35% of the Post-Closing Excess Cash;

- Upon payment of (i) the MPT Payment, (ii) the MPT Excess Sale Proceeds Payment (if any), and (iii) the MPT Post-Closing Excess Cash Payment (if any), the following terms shall apply:

    - All DIP Obligations and all claims of MPT, with respect to the DIP Facility and the DIP Loan Documents shall automatically be deemed satisfied in full;

    - All liens and security interests of MPT and any other party in and/or on any property of the Debtors or their Estates under the DIP Facility and the DIP Loan Documents shall automatically be deemed satisfied and released; provided, however, MPT shall be entitled to retain and apply as it determines any cash security or other deposit held by MPT in respect of the MPT Prepetition Obligations;

    - All claims of MPT in any capacity against the Debtors and their Estates shall automatically be deemed waived and released in their entirety for all purposes (including for the purposes of distribution under any chapter 11 plan for the Debtors) other than (i) voting to accept or reject a chapter 11 plan for the Debtors and (ii) receiving the MPT Trust Distribution Share (each as defined below) under a chapter 11 plan for the Debtors; provided, however, MPT shall be entitled to retain and apply as it determines any cash security or other deposit held by MPT in respect of the MPT Prepetition Obligations; and

    - All claims of the Debtors and their Estates against MPT (including, but not limited to, any causes of action vested in the Committee) shall be deemed waived and released; and

- MPT and the Committee (i) shall support and (ii) shall not object to or otherwise oppose, and MPT shall vote in favor of, a chapter 11 plan for the Debtors that (a) contains the following terms, (b) provides for the appointment of an individual reasonably acceptable to the Debtors, the Committee, and MPT as the trustee of the Liquidating Trust (defined below), and (c) is otherwise consistent with the Term Sheet (the "Plan"):

    - A liquidating trust (the "Liquidating Trust") shall be established for the benefit of the

9

- Debtors' creditors, to be funded pursuant to the Plan with all available Debtor and Estate cash on hand (excluding any amounts in the Professional Fee Trust Account required for the payment of allowed professional fees);

- All Debtor and Estate cash on hand, including (i) all Excluded Cash (as defined in the Stalking Horse APA) earmarked under the Stalking Horse APA to fund a wind-down of the Debtors' Estates and (ii) all amounts in the Professional Fee Trust Account (which Professional Fee Trust Account, notwithstanding anything in the Proposed Final Order or other DIP Loan Documents to the contrary, shall be funded in accordance with and to the full extent of the Budget) other than amounts required for the payment of allowed (or pending) professional fees that are accrued but unpaid as of the date the Liquidating Trust is established, shall be treated as unencumbered Estate assets, and, to the extent then remaining, available for the funding of and use by the Liquidating Trust;

- All causes of action of the Debtors and the Estates (including all Avoidance Actions) and/or their proceeds, as applicable, shall be treated as unencumbered Estate assets available for the funding of and use by the Liquidating Trust;

- All other assets of the Debtors and their Estates and/or such assets' proceeds, as applicable, shall be treated as unencumbered Estate assets available for the funding of and use by the Liquidating Trust;

- In the event that the Liquidating Trust distributes to holders of allowed general unsecured claims against the Debtors and their Estates (after accounting for all other payments required under the Plan, including the payment of the Liquidating Trust's expenses) the greater of (i) $3,500,000 or (ii) an amount equal to 20% of the aggregate amount of allowed general unsecured claims (the "<u>Minimum Distribution Threshold</u>"), any further amounts distributed by the Liquidating Trust from any source shall be paid 50% to MPT (the "<u>MPT Trust Distribution Share</u>") and 50% to holders of allowed general unsecured claims against the Debtors and their Estates.

| | | |
|---|---|---|
| | | - The trustee of the Liquidating Trust (or debtor representative appointed for such purpose under the Plan, as applicable) shall have sole and absolute discretion to pursue, prosecute, negotiate, release, and/or settle all Debtor and Estate causes of action (including Avoidance Actions and commercial tort claims) subject to approval of a plan oversight committee (the "<u>POC</u>"), which POC will be established under the Plan and consist of (i) any members selected by the Committee and (ii) one member selected by MPT; and<br><br>- MPT shall not receive any distribution or retain any rights with respect to the Debtors or the Estates' assets under the Plan other than the MPT Trust Distribution Share. |
| | Failure of Closing | Unless otherwise agreed by the Debtors, the Committee, and MPT, in the event that (i) the Objection Condition occurs but (ii) the Closing of the Sale or an Alternative Transaction does not occur prior to August 31, 2022:<br><br>- All Objection rights of the Committee shall be restored in full without regard to the Committee Objection Deadline or any lapse thereof; and<br><br>- The Debtors, the Committee, and MPT shall negotiate in good faith regarding modifications to the Term Sheet and/or an alternative agreement to facilitate confirmation of a chapter 11 plan for the Debtors and a distribution to the Debtors' unsecured creditors. |

## **ARGUMENT IN RESPONSE TO UST OBJECTION**

**A.   The Limited Roll-Up of Emergency MPT Advances is Reasonable Under the Circumstances and Should Be Approved**

The U.S. Trustee objects to the Roll-Up of limited portions of the MPT Prepetition Lender's prepetition debt, equating to $9,250,000 of the Emergency MPT Advances. Such advances were absolutely vital in allowing the Debtors to maintain Hospital operations and critical patient care during the month prior to the Petition Date, while also negotiating a going concern stalking horse bid for the sale of the Hospital to the Project. Without the Emergency MPT Advances, the Debtors would not have been able to enter these Bankruptcy Cases as a going concern or to continue to provide critical healthcare to the already underserved Watsonville community in the midst of the COVID-19 pandemic. Moreover, the Emergency MPT Advances provided the Debtors with the initial runway

11

that they needed to continue to engage with the Project regarding its stalking horse bid. The proposed Roll-Up is particularly necessary in these Bankruptcy Cases given that only a targeted portion of the MPT Prepetition Lender's obligations, which directly aided in maintaining Hospital operations and the Debtors' chapter 11 preparations, would be rolled-up.

The UST Objection ignores the reasonableness of the Roll-Up under the circumstances and instead objects on the formulaic basis that the Debtors have not yet filed their Schedules, which are due, pursuant to the Schedules Order, on January 19, 2022. The U.S. Trustee argues that, because the Schedules have not yet been filed, the extent to which the Roll-Up benefits the MPT Prepetition Lender cannot be ascertained. However, the U.S. Trustee ignores that the DIP Lender is unwilling to advance the DIP Facility without the Roll-Up, which is a key economic point, and that no other lender is willing to provide financing to the Debtors, putting in jeopardy the health and welfare of the Debtors' patients and community, as well as over 650 jobs. Nothing in the Schedules, once they are filed, will change this basic fact. Further, the U.S. Trustee should be able to see from the stalking horse bid with the Project that the MPT Prepetition Lender will only realize a limited recovery on account of its prepetition debt. There is no reason to delay final approval of the DIP Facility based on the timing of when the Schedules are due, given that the Debtors immediately need access to another $5,500,000 of new money financing under the DIP Facility once the Proposed Final Order is entered.

Moreover, the amount of the Roll-Up of $9,250,000 is small in relation to the new money advances of up to $21,500,000 under the DIP Facility and represents less than one-fourth of the MPT Prepetition Obligations, which total no less than $40,132,813. Roll-ups are also a common feature of debtor in possession financing arrangements, and courts in the Ninth Circuit and across the country have approved similar financing features in postpetition loans.[4]

---

[4] *See, e.g.*, *In re Collab9, LLC*, Case No. 21-12222-ER (Bankr. C.D. Cal. Apr. 21, 2021) (authorizing roll-up in of prepetition debt pursuant to final order); *In re Wave Computing, Inc. et al.*, Case No. 20-50682 (MEH) (Bankr. N.D. Cal. Sept. 25, 2020) (same); *In re Metal Partners Rebar, LLC, et al.*, Case No. 20-12878-abl (Bankr. D. Nev. Aug. 11, 2020) (authorizing in final order roll-up of prepetition debt at lender's election); *In re Channel Techs. Grp., LLC, et al.*, Case No. 16-11912 (Bankr. C.D. Cal. Nov. 9, 2016) (authorizing roll-up in of prepetition debt pursuant to final order); *see also JAB Energy Solutions II, LLC*, Case No. 21-11226 (CTG) (Bankr. D. Del. Oct. 26, 2021) (authorizing roll-up in of prepetition debt pursuant to final order); *In re OFS International LLC, et al.,* Case No. 21-31784 (DRJ) (Bankr. S.D. Tex. June 21, 2021) (same); *In re Nine Point Energy Holdings, Inc., et al.,* Case No. 21-10570 (MFW) (Bankr. D. Del. Apr. 21, 2021); *In re Gulfport Energy Corp. et al.*, Case No. 20-35562 (DRJ) (Bankr. S.D. Tex. Dec. 18, 2020) (same); *In re Ascena Retail Group, Inc. et al.*, Case No. 20-33113 (KRH) (Bankr. E.D. Va. Sept. 10, 2020).

Here, as set forth above, the limited amount of the Roll-Up is tied to the Emergency MPT Advances, which allowed the Debtors to maintain Hospital operations and to transition into these Bankruptcy Cases in an orderly way. The Roll-Up is also supported by the First Day Declaration as a sound exercise of the Debtors' business judgment and remains a feature of the DIP Facility and the Proposed Final Order following extensive negotiations with the Committee and multiple concessions by the DIP Lender.

In light of the foregoing, and taking into account the support of the Committee and the circumstances of these Bankruptcy Cases, the Roll-Up is reasonable, appropriate, and ultimately in the best interest of creditors and other parties in interest.

### B. The Liens and Superpriority Claims on Proceeds of Avoidance Actions Under the Proposed Final Order Are Appropriate

The U.S. Trustee objects to the granting of liens on and superpriority claims with recourse to the proceeds of Avoidance Actions. The U.S. Trustee argues that such liens and claims are inappropriate because Avoidance Actions exist for the benefit of all creditors and that it is unclear whether general unsecured creditors will share in any portion of the proceeds from the sale of the Hospital.

As set forth above, the Debtors require access to the DIP Facility in order to continue to operate and provide critical patient care during these Bankruptcy Cases and the Debtors' sale and marketing process. As is entirely customary, in order to advance up to another $5,500,000 of new money financing under the Proposed Final Order, the DIP Lender requires, among other things, the granting of liens on and superpriority claims with recourse to the proceeds of Avoidance Actions. Without the additional new money financing under the Proposed Final Order, the Debtors will be unable to continue to operate and provide patient care. In this regard, the DIP Facility maximizes going concern value for all constituents, while at the same time providing for the payment of accruing administrative expenses in these Bankruptcy Cases.

Neither the Bankruptcy Code nor relevant case law prohibits the Debtors from granting postpetition liens on previously unencumbered assets, such as avoidance actions. Section 364(c)(2) of the Bankruptcy Code expressly authorizes the granting of liens on "property of the estate that is not

otherwise the subject of a lien." This Court has previously approved the granting of liens on and superpriority claims with recourse to the proceeds of avoidance actions,[5] and courts across the country also regularly approve such liens and claims.[6] Moreover, as part of the resolution of the Committee's potential objections, the DIP Lender has agreed to use commercially reasonable efforts to exhaust remedies against other DIP Collateral before turning to the proceeds of Avoidance Actions. *See* Proposed Final Order ¶ 2.1.2. In addition, with respect to the U.S. Trustee's concern that general unsecured creditors should share in sale proceeds, the Term Sheet provides for the Debtors' estates to benefit from such proceeds, subject to certain sharing mechanics with the DIP Lender.

Accordingly, the granting of liens on and superpriority claims with recourse to the proceeds of Avoidance Actions, as set forth in the Proposed Final Order, is appropriate under the circumstances.

C. **Surcharge Waivers Are Customary and Appropriate Accommodations as Part of the DIP Facility**

The U.S. Trustee asserts that the waiver of, and lien on, the Debtors' rights under section 506(c) of the Bankruptcy Code is inappropriate where the waiver and lien are not limited to the period in which the Debtor is "authorized to use cash collateral or borrow funds."

First, as reflected in the Proposed Final Order, the DIP Lender has agreed to limit the surcharge waiver to the period during which the Debtor is authorized to use Cash Collateral. *See* Proposed Final Order ¶ 9.3. Second, the Debtors' surcharge rights under section 506(c) are no longer included as DIP Collateral. *See id.* ¶ 2.1.2. Third, the DIP Lender has agreed to expand the scope of the Carve-Out Expenses to include post-petition expenses incurred in the ordinary course of the Debtors' operations to the extent such amounts were payable under the Budget prior to the Carve-Out Trigger Date, but were not paid as of such date. *See* Proposed Final Order ¶ 2.3(e). By virtue of the foregoing, the issue of surcharge is effectively rendered moot, at least during the period when the Proposed Final Order would be in place.

---

[5] *See In re Imperial Toy LLC*, Case No. 19-52335 (MEH) (Bankr. N.D. Cal. Dec. 19, 2019) (approving the granting of DIP liens on, and superpriority claims with recourse to, avoidance actions and proceeds therefrom).

[6] *See, e.g., In re Avadim Health, Inc., et al.*, Case No. 21-10883 (CTG) (Bankr. D. Del. July 28, 2021) (approving the granting of DIP liens on, and superpriority claims with recourse to, avoidance action proceeds); *In re Washington Prime Group Inc., et al.*, Case No. 21-31948 (MI) Bankr. S.D. Tex. July 8, 2021) (same); *In re Secure Home Holdings LLC, et al.*, Case No. 21-10745 (JKS) (Bankr. D. Del. May 21, 2021) (same); *In re Automotores Gildemeister SpA, et al.*, Case No. 21-10685 (LGB) (Bankr. S.D.N.Y. May 11, 2021) (same); *In re Foresight Energy LP, et al.* Case No. 20-41308-659 (Bankr. E.D. Mo. Apr. 9, 2020) (same).

14

Under these circumstances and given the additional new money to be advanced to these estates under the DIP Facility, it is entirely customary and appropriate for the DIP Lender to have the benefit of a surcharge waiver. Indeed, courts in this circuit and across the country have approved even broader waivers.[7]

Accordingly, the Debtors submit that the surcharge waivers in the Proposed Final Order are entirely reasonable and should be approved as part of the overall DIP Facility.

**D.  The DIP Facility Does Not Improperly Divest the Debtors of Discretion**

The U.S. Trustee objects to the inclusion of two specific Events of Default in the DIP Facility, which Events of Default are triggered if (i) the Debtors assume or reject the Lease without the consent of the DIP Lender, or (ii) if the Debtors terminate their CRO. However, the foregoing Events of Default are appropriate under the circumstances.

Given the amount of new money that the DIP Lender is prepared to advance to these estates under the DIP Facility, it is not unusual that the DIP Lender should have some say over certain major milestones in the Bankruptcy Cases, such as the assumption or rejection of the Lease with the MPT Lessor, which property underlies the Hospital, and termination of the CRO without a replacement acceptable to the DIP Lender.

Accordingly, the terms of the DIP Facility do not improperly divest the Debtors of discretion in these Bankruptcy Cases.

**E.  The Remaining Legal Issues Raised by the U.S. Trustee Have Either Been Addressed in the Proposed Final Order or Should Be Overruled**

The U.S. Trustee raises additional arguments, which have either been resolved or should be overruled, as set forth below:

- <u>The U.S. Trustee Carve-Out Expenses Are Not Limited to Allowed Administrative Expenses</u>.  The U.S. Trustee objects that the Carve-Out Expenses should not be limited to "allowed administrative expenses" for the U.S. Trustee's quarterly fees under 28

---

[7] *See, e.g.*, *In re Ingenu Inc.*, Case No. 20-03779-LT11 (Bankr. S.D. Cal. Aug 13, 2020) (authorizing surcharge waiver in final order); *In re Metal Partners Rebar, LLC, et al.*, Case No. 20-12878-abl (Bankr. D. Nev. Aug. 11, 2020) (same); *In re Imperial Toy LLC*, Case No. 19-52335 (MEH) (Bankr. N.D. Cal. Dec. 19, 2019) (same); *see also In re: ORG GC MIDCO, LLC*, Case no. 21-90015 (MI) (Bankr. S.D. Tex. Nov. 22, 2021) (same); *In re CP Holdings LLC, et al.*, Case No. 21-10950 (LSS) (Bankr. D. Del. July, 16, 2021) (same).

15
Case: 21-51477    Doc# 207    Filed: 01/17/22    Entered: 01/17/22 14:38:00    Page 15 of 17

U.S.C. § 1930(a)(6). This issue has been resolved in section 2.3(d) of the Proposed Final Order.

- <u>The Carve-Out Expenses Will Be Held in Compliance with Section 345 of the Bankruptcy Code</u>. The U.S. Trustee objects that the DIP Facility is unclear whether the Professional Fee Trust Account into which the Carve-Out Expenses may be funded will comply with section 345 of the Bankruptcy Code. This issue has been resolved in section 2.3 of the Proposed Final Order. The Carve Out expenses will be held in the trust account of Debtors' counsel at the Banc of California, an authorized depository in the Northern District of California.

- <u>Committee's Investigation Budget and Challenge Period Have Been Increased</u>. The U.S. Trustee objects to the amount of the Committee's budget to investigate the MPT Prepetition Lender and the Debtors' stipulations with respect thereto (the "<u>Investigation Budget</u>"). The U.S. Trustee also asserts that the Challenge Period under the DIP Facility is too short. The DIP Lender has agreed to increase the Investigation Budget from $25,000 to $50,000 in the Proposed Final Order and the Committee has agreed to such budget. *See* Proposed Final Order ¶ 2.3. The Committee Objection Deadline has been extended to no later than the earlier to occur of (a) the day before the sale hearing or (b) March 9, 2022, subject to extension for cause by the Court or by agreement of the DIP Lender. This is a reasonable period of time for the Committee to conduct its investigation and the Committee itself has already agreed to such deadline.

**WHEREFORE**, the Debtors respectfully request that the Court overrule the UST Objection, enter the Proposed Final Order substantially in the form attached hereto as **Exhibit 1**, and grant such other and further relief as the Court may deem just and proper under the circumstances.

Dated: January 17, 2022  PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Maxim B. Litvak*
    Debra I. Grassgreen
    Maxim B. Litvak
    Steven Golden

Attorneys for Debtors and Debtors in Possession