**EXHIBIT 2**

**(Redline Proposed Final Order Against Interim Order)**

Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone:    415.263.7000
Facsimile:     415.263.7010
E-mail:        dgrassgreen@pszjlaw.com
               mlitvak@pszjlaw.com
               sgolden@pszjlaw.com

Proposed Attorneys for Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 21-51477 |
| WATSONVILLE HOSPITAL CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | ~~INTERIM~~ (Jointly Administered) |
| | **FINAL** ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (IV) GRANTING ADEQUATE PROTECTION~~;~~ (V) MODIFYING THE AUTOMATIC STAY; **AND** (VI) ~~SCHEDULING A FINAL HEARING, AND (VII)~~ GRANTING RELATED RELIEF |
| | Date:    ~~December 7~~January 19, ~~2021~~2022 Time:    ~~9:30~~10:00 a.m. Place:    **Telephonic/Video Appearance Only** Courtroom 11 280 South First Street |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

| | | San Jose, CA 95113 |
| 1 | | |
| 2 | Judge: | Hon. M. Elaine Hammond |

183266.7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Upon the motion (the "<u>Motion</u>"), dated December 5, 2021, of Watsonville Hospital Corp. ("<u>WHC</u>") and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>"), pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), seeking, among other things:

a. authorization for the Debtors to obtain post-petition loans, advances and other financial accommodations in an amount up to $~~16,000,000~~30,750,000 on ~~an interim~~a final basis ~~for a period (the "Interim Period") through and including the date of the Final Hearing (as defined below)~~ from MPT of Watsonville Lender, LLC (in such capacity, the "<u>DIP Lender</u>"), in accordance with all of the lending formulae, sublimits, terms, and conditions set forth in the DIP Note (as defined below), and in accordance with this <u>Final</u> Order, secured by security interests in and liens upon all of the DIP Collateral (as defined below) pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

b. authorization for the Debtors to enter into, be bound by, and perform under a multi-draw term loan credit facility (the "<u>DIP Facility</u>"), under the "Senior Secured Superpriority Debtor in Possession Promissory Note," dated as of December 5, 2021, by and among the Debtors and the DIP Lender which agreement is attached hereto as **<u>Exhibit A</u>** (as it may be modified, supplemented, amended or restated from time to time, the "<u>DIP Note</u>," and together with the other DIP Loan Documents, as defined in the DIP Note, the "<u>DIP Loan Documents</u>");

c. modification of the automatic stay to the extent hereinafter set forth;

d. the grant to the DIP Lender of superpriority administrative claim status pursuant to section 364(c)(1) of the Bankruptcy Code in respect of all of the DIP Obligations (as defined in the DIP Note);

e. authorization for the Debtors to use the DIP Collateral (including Cash Collateral (as defined below) in accordance with the Budget (as defined below) and subject to the terms, restrictions, and other conditions of the DIP Note) that is subject to the existing liens and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

security interests in favor of MPT of Watsonville Lender, LLC (in such capacity, the "MPT Prepetition Lender") and CNH Finance Fund I, L.P. (the "CNH Prepetition Lender"), respectively, and granting adequate protection to these parties as set forth herein; and

        f.      authorization for the Debtors to use the proceeds of the loans under the DIP Facility (the "DIP Loans"), subject to the terms, restrictions, and other conditions of the DIP Note, to (a) upon entry of ~~the~~this Final Order ~~(as defined below)~~, repay the outstanding MPT Prepetition Note up to $9,250,000, (b) upon entry of ~~this~~the Interim Order (as defined below), accrue fees and expenses related to the DIP Note and the Cases, and (c) upon entry of ~~this~~the Interim Order, fund working capital in the ordinary course of the business of the Debtors and other general corporate purposes, in each case, to the extent set forth in the Budget and permitted under DIP Loan Documents; and

        ~~g.      the setting of a final hearing on the Motion; and~~

The initial hearing on the Motion having been held by this Court on December 7, 2021 (the "Interim Hearing") and an order having been entered on December 8, 2021 approving the Motion on interim basis [Docket No. 54] (the "Interim Order" and together with the Final Order, the "Financing Orders"); and

The final hearing on the Motion having been held on January 19, 2022 (the "Final Hearing"); and

It appearing that due and appropriate notice of the Motion, the relief requested therein, the Interim Hearing, and the ~~Interim~~Final Hearing (the "Notice") was served by the Debtors in accordance with Bankruptcy Rule 4001(c) on (i) the DIP Lender, (ii) counsel to the DIP Lender, (iii) the CNH Prepetition Lender, (iv) the Office of the United States Trustee for the Northern District of California (the "U.S. Trustee"), (v) the holders of the thirty-five (35) largest unsecured claims against the Debtors' Estates (on a consolidated basis) (the "35 Largest Unsecured Creditors"), (vi) the United States Attorney's Office for the District of California, (vii) the Internal Revenue Service, (viii) the Securities and Exchange Commission, and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Noticed Parties"); and

DOCS_SF:106443.8 92381/001

This Court having reviewed the Motion and any responses and objections thereto, the *Declaration of Jeremy Rosenthal in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), the other filings and pleadings made by the Debtors and other parties in interest, the evidence and testimony presented at the Interim Hearing and the Final Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      Petition.  On December 5, 2021 (the "Petition Date"), each Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtors continue as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On December 22, 2021, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

B.      Jurisdiction and Venue.  The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this Court over the Cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Notice.  Under the circumstances, the Notice given by the Debtors of the Motion, the Interim Hearing, the Final Hearing, and the relief granted under the Interim Order and this Final Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001(c) and Local Rule 4001-2.

D.      Findings Regarding the MPT Prepetition Note.  Without prejudice to the rights of any other non-Debtor party in interest as provided in Section 9.1 of this Final Order, the Debtors admit, stipulate, acknowledge and agree that:

(i)      *MPT Prepetition Note*: As of the Petition Date, certain of the Debtors and the DIP Lender are parties to those certain: (a) Amended and Restated Promissory Note, dated September 30, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "MPT Prepetition Note"), by WHC in favor of the DIP Lender; (b) Security Agreement, dated September 30, 2019 (as amended, restated, supplemented or otherwise modified from time to time,

DOCS_SF:106443.8 92381/001

ERROR! UNKNOWN DOCUMENT PROPERTY NAME.

the "MPT Security Agreement"), by and among WHC, MPT of Watsonville, LLC, and the DIP Lender; (c) the Security Agreement, dated November 10, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "MPT (Holdings) Security Agreement" and together with the MPT Security Agreement, the "MPT Security Agreements"), by and among Watsonville Hospital Holdings, Inc., MPT of Watsonville, LLC, and the DIP Lender; (d) the Pledge Agreement, dated September 30, 2019, by the Pledgors (as defined therein), MPT of Watsonville, LLC, and the DIP Lender (as amended, restated, supplemented or otherwise modified from time to time, the "MPT Pledge Agreement"); and (e) the Lease (as defined in the DIP Note, and together with the MPT Prepetition Note, the MPT Security Agreements, the MPT Pledge Agreement and any other agreements entered into in connection with any of the foregoing, collectively, the "MPT Prepetition Transaction Documents"). The MPT Prepetition Transaction Documents provide that: (a) WHC and, as applicable, the other Debtors are obligated for principal, accrued and unpaid interest, fees, costs, expenses, indemnities, and other amounts arising under the MPT Prepetition Transaction Documents (the "MPT Prepetition Obligations") and (b) subject to that certain Intercreditor Agreement, dated as of June 22, 2021 (the "Intercreditor Agreement"), by and among the CNH Prepetition Lender, the MPT Prepetition Lender, MPT of Watsonville, LLC and WHC, all of the MPT Prepetition Obligations are secured by first priority liens granted to the MPT Prepetition Lender (the "MPT Prepetition Liens") on certain of the property of the Debtors, as described in the MPT Prepetition Transaction Documents (the "MPT Prepetition Collateral"), which includes certain cash collateral within the meaning of Bankruptcy Code section 363(a) ("Cash Collateral").

(ii)     *MPT Prepetition Obligations and the MPT Prepetition Liens*: As of the Petition Date, the outstanding MPT Prepetition Obligations totaled no less than $~~37,812,665~~40,132,813, inclusive of all principal and accrued and unpaid interest, exclusive of all costs, expenses, and fees owed to the MPT Prepetition Lender. The Debtors further acknowledge, agree, and stipulate that (a) the MPT Prepetition Liens (1) are valid, binding, enforceable, and perfected liens in the MPT Prepetition Collateral, (2) were granted to the MPT Prepetition Lender for fair consideration and reasonably equivalent value, (3) are not subject to avoidance,

DOCS_SF:106443.8 92381/001

4

Case: 21-51477    Doc# 207    Filed: 01/17/22    Entered: 01/17/22 14:38:00    Page 7 of 47

recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (4) are subject and subordinate only to (A) valid, perfected, and unavoidable liens permitted under the applicable MPT Prepetition Transaction Documents, but only to the extent that (x) such liens are permitted by the applicable MPT Prepetition Transaction Documents to be senior to the applicable MPT Prepetition Liens and (y) such liens are actually senior to the applicable MPT Prepetition Liens under applicable law and (B) as set forth in the Intercreditor Agreement, and (b) (1) all of the MPT Prepetition Obligations constitute legal, valid, and binding obligations of WHC and the other Debtors, as applicable, enforceable in accordance with the terms of the applicable MPT Prepetition Transaction Documents, (2) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the MPT Prepetition Obligations exist, and (3) no portion of the MPT Prepetition Obligations or any payments made to or for the benefit of the MPT Prepetition Lender are subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(iii)  *Proof of Claim*.  The foregoing acknowledgment by the Debtors of the MPT Prepetition Obligations and the rights, priorities, and protections granted to MPT Prepetition Lender pursuant to the MPT Prepetition Transaction Documents shall be were, upon entry of the Interim Order, deemed to be a timely filed proof of claim on behalf of the MPT Prepetition Lender in these Cases and the MPT Prepetition Lender is and shall not be required to file any additional proofs of claim with respect to the MPT Prepetition Obligations.

E.  Findings Regarding the Post-Petition Financing.

(i)  *Postpetition Financing*.  The Debtors have requested from the DIP Lender, and the DIP Lender is willing to extend, certain loans, advances, and other financial accommodations on the terms and conditions set forth in this Final Order and the DIP Loan Documents.

(ii)  *Need for Postpetition Financing*.  The Debtors do not have sufficient available sources of working capital, including cash collateral, to pay administrative expenses and

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

conclude a sale of their assets without the financing requested under the Motion. As of the Petition Date, the Debtors are actively marketing their assets for sale. The ability of the Debtors to obtain sufficient working capital and liquidity through the proposed postpetition financing arrangements with the DIP Lender as set forth in the Interim Order, this Final Order and the DIP Loan Documents is vital to the Debtors' ability to maximize the value of the assets of their bankruptcy estates (as defined under section 541 of the Bankruptcy Code, the "Estates") through an orderly sale process. Accordingly, the Debtors have ~~an immediate~~a need to obtain the postpetition financing in order to, among other things, preserve and maximize the value of the assets of their Estates.

(iii) *No Credit Available on More Favorable Terms*. The Debtors are unable to procure financing in the form of unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code, as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or solely based on the grant of an administrative expense priority pursuant to section 364(c)(1) of the Bankruptcy Code. The Debtors are also unable to obtain secured credit allowable solely under section 364(c)(2) or 364(c)(3) of the Bankruptcy Code. The Debtors have been unable to procure the necessary financing on terms more favorable than the financing offered by the DIP Lender pursuant to the DIP Note.

(iv) *Budget*. The Debtors have prepared and delivered to the DIP Lender a cash-flow forecast for the orderly sale of the Watsonville Community Hospital, ~~a~~an updated copy of which is attached hereto as **Exhibit B** (as may be modified from time to time in accordance with the DIP Note, the "Budget"). The Budget has been approved by the DIP Lender pursuant to the terms of the DIP Note. The Budget has been thoroughly reviewed by the Debtors and their management and sets forth, among other things, projections for the periods covered thereby. The DIP Lender ~~is relying~~has relied upon and is continuing to rely upon the Debtors' compliance with the Budget in accordance with the terms of the DIP Note, the other DIP Loan Documents, the Interim Order, and this Final Order in determining to enter into the post-petition financing arrangements provided for herein.

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

(v)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The terms of the DIP Loan Documents and this Final Order reflect the Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  The terms and conditions of the DIP Loan Documents and this Final Order have been negotiated in good faith and at arms' length by and among the Debtors and the DIP Lender, with all parties being represented by counsel.  Any new money credit extended under the terms of this Final Order shall be deemed to have been extended in good faith by the DIP Lender as that term is used in section 364(e) of the Bankruptcy Code.

(vi)    *Good Cause*.  The relief requested in the Motion is necessary, essential, and appropriate, and is in the best interests of and will benefit the Debtors, their creditors, and their Estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to preserve and maximize the value of the Debtors' Estates for the benefit of all the Debtors' creditors, and avoid immediate and irreparable harm to the Debtors, their creditors, and their assets.

(vii)    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Order pursuant to Bankruptcy Rule 4001(c)(2).  No party appearing in the Cases has filed or *Objections*.  Any objections that were made an objection to the relief sought in the Motion or the entry of this Final Order, or any objections that were made (to the extent such objections have not been withdrawn or resolved) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, that:**

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted in accordance with Bankruptcy Rule 4001(c)(2) to the extent provided in this Order on a final basis as set forth herein.  This Final Order shall hereinafter be referred to as the "Interim Final Order."

1.2    Authorization to Borrow and Use Loan Proceeds.  The Debtors are hereby authorized to enter into, be bound by, and perform under the DIP Facility and all DIP Loan

DOCS_SF:106443.8 92381/001

Documents and to ~~immediately~~ borrow, pursuant to the DIP Note, an aggregate amount not to exceed ~~$16,000,000 during the Interim Period~~30,750,000, provided that disbursements of such amount are in accordance with the Budget, the DIP Loan Documents, and this ~~Interim~~Final Order. Upon the entry of this ~~Interim~~Final Order, the Debtors shall be authorized to use the DIP Collateral, including Cash Collateral, and to draw on the DIP Facility to make any disbursement as specifically provided in the Budget (subject to the permitted variances as set forth in the DIP Loan Documents), but solely in accordance with the terms and conditions set forth in this ~~Interim~~Final Order and the DIP Loan Documents.

1.3  DIP Loan Documents

1.3.1  Approval.  The DIP Loan Documents and each term, condition, and covenant set forth therein are approved.  All of such terms, conditions, and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors and the DIP Lender, and of each Debtor's assumption and adoption of all of the terms, conditions, and covenants of the DIP Note and the other DIP Loan Documents for all purposes, including, without limitation, to the extent applicable, the payment when due of all DIP Obligations arising thereunder, including, without limitation, all principal, interest, and such fees and expenses, including, without limitation, all of the DIP Lender's consultant fees and professional fees (including attorney fees and expenses) as more fully set forth in the DIP Loan Documents.

1.3.2  Amendment.  Subject to the terms and conditions of the DIP Note and the other DIP Loan Documents, the Debtors and the DIP Lender may amend, modify, supplement or waive any provision of the DIP Loan Documents (an "Amendment") without further approval or order of the Court, provided that any material Amendment shall require advance notice and opportunity to object of no less than two (2) business days to the U.S. Trustee and ~~any statutory committee appointed in the Cases (the "~~the Committee"~~)~~.

DOCS_SF:106443.8 92381/001

Section 2. <u>Liens; Superpriority Administrative Claim Status.</u>

2.1 <u>Priority and Liens</u>.

2.1.1 <u>Lien Grant</u>. To secure the prompt payment and performance of any and all obligations of the Debtors to the DIP Lender of whatever kind, nature or description, absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtors' Estates may have (but subject to the Carve-Out Expenses (as defined below) and the Permitted Priority Liens (as defined below)) in and upon all of the DIP Collateral (as defined below) (collectively, the "<u>DIP Liens</u>"). ~~Notwithstanding the foregoing or anything to the contrary contained in the DIP Note, the grant to the DIP Lender of liens on and security interests in the proceeds of Avoidance Actions (as hereinafter defined) (other than proceeds from Avoidance Actions arising under section 549 of the Bankruptcy Code, to which the DIP Liens shall attach immediately), are subject to entry of an order granting the relief requested in the Motion on a final basis (the "~~Final Order~~" and together with this Interim Order, the "~~Financing Orders~~").~~

2.1.2 <u>DIP Collateral</u>. For purposes of this ~~Interim~~<u>Final</u> Order, the term "DIP Collateral" shall have the meaning ascribed to such term in the DIP Loan Documents <u>as modified and subject to the exclusions set forth in this Section 2.1.2</u>, which term includes the following: all of the existing and after acquired real and personal, tangible and intangible, property and assets of the Debtors, including, but not limited to, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, patents, tradenames, trademarks, copyrights, intellectual property, general intangibles, payment intangibles, rights under Section 506(c) of the Bankruptcy Code ~~(subject to entry of Final Order)~~, and all other property or "property of the estate" (as defined in Section 541 of the Bankruptcy Code) of any kind or nature, investment property, supporting obligations, letter of credit rights, licenses, operating certificates, permits, causes of action (excluding causes of action, claims, objections and

DOCS_SF:106443.8 92381/001

defenses arising under or deriving from sections 506(d), 510, 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code, or any similar state or federal law and any commercial tort actions not part of the MPT Prepetition Collateral ("Avoidance Actions") and the proceeds of Avoidance Actions), and all rents, products, substitutions, accessions, profits, replacements, and cash and non-cash proceeds of all of the foregoing, wherever located, including insurance proceeds, noncash proceeds or any other proceeds of the foregoing; provided, however, that, the DIP Collateral shall not include (i) any Avoidance Actions (provided that, subject to entry of the Final Order, but shall include the proceeds of Avoidance Actions shall no longer be excluded), (ii, subject to the terms of clause (ii) hereof), (ii) the proceeds of any (a) successful Objection (as hereinafter defined) or any successful affirmative claim of the Debtors and/or their Estates against the MPT Prepetition Lender or the CNH Prepetition Lender or (b) rights or claims for surcharge under section 506(c) of the Bankruptcy Code with respect to the DIP Collateral, the MPT Prepetition Collateral, or collateral of the CNH Prepetition Lender, (iii) any agreements, permits, licenses, or the like solely in the event and to the extent that a grant of a DIP Lien on such license, contract, or agreement results in a termination of any such license, contract, or agreement or would render such license, contract, or agreement non-assumable or non-assignable under the Bankruptcy Code (other than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406, 9-407, or 9-408 of the Uniform Commercial Code (or any successor provision or provisions)) and, in any event, immediately upon the ineffectiveness, lapse or termination of any such terms or default under such license, contract or agreement, the DIP Collateral shall include, and the applicable Debtor shall be deemed to have granted a security interest in, all such licenses, contracts, or agreements as if such terms had never been in effect, and (iii iv) any other Excluded Property (as defined in the DIP Note); provided, however, that the DIP Collateral shall include any and all proceeds of any of such property and assets described in the foregoing clauses (ii iii) and (iii iv) (except to the extent such proceeds themselves constitute Excluded Property); provided, further, that, any agreement, permit, license, or the like not constituting DIP Collateral under the foregoing clauses (i) through (iii iv) (except to the extent such proceeds themselves constitute Excluded Property) shall constitute DIP Collateral from

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and after such time as the lessor, licensor, grantor or other party to such agreement, permit, license,

or the like consents to the grant of a DIP Lien in favor of the DIP Lender in such agreement, permit,

license, or the like or the prohibition against granting a Lien therein in favor of the DIP Lender shall

cease to be effective. ~~Notwithstanding the foregoing or anything to the contrary contained in the DIP~~

~~Loan Documents, the attachment of the DIP Liens on~~; provided, further, that the DIP Lender and the

MPT Prepetition Lender shall not apply the proceeds of Avoidance Actions ~~(other than proceeds~~

~~from Avoidance Actions arising under section 549 of the Bankruptcy Code, to which the DIP Liens~~

~~shall attach immediately), and on any~~or rights or claims for surcharge under section 506(c) of the

Bankruptcy Code~~, shall be subject to~~ to the DIP Obligations or the MPT Prepetition Obligations,

respectively, until the DIP Lender and the MPT Prepetition Lender, as applicable, have first used

commercially reasonable efforts to exhaust their recoveries from all DIP Collateral other than the

~~entry~~proceeds of ~~the Final Order~~Avoidance Actions.

      2.1.3 <u>Lien Priority</u>. The DIP Liens shall be first and senior in priority to all

other interests and liens of every kind, nature and description, whether created consensually, by an

order of the Court or otherwise, including, without limitation, liens or interests granted in favor of

third parties in conjunction with section 363, 364 or any other section of the Bankruptcy Code or

other applicable law; <u>provided</u>, <u>however</u>, that the DIP Liens shall be subject to (A) the Carve-Out

Expenses to the extent provided for in Section 2.3 of this ~~Interim~~Final Order~~, (B) CNH Prepetition~~

~~Liens (as defined below) solely in respect of the~~ Loan Collateral (as defined in the Intercreditor

~~Agreement and referred to herein as the "CNH Priority Collateral"),~~ and (~~C~~B) the valid, enforceable,

properly perfected, non-avoidable security interests in existence as of the Petition Date that are

senior to the MPT Prepetition Liens (the ~~liens described in the foregoing clauses (B) and (C), the~~

"Permitted Priority Liens"). For the avoidance of doubt, the Intercreditor Agreement ~~shall~~

~~govern~~governed the priority of the liens granted to the CNH Prepetition ~~Liens~~Lender as described in

the CNH Prepetition Loan Documents (as defined below), relative to the MPT Prepetition Liens and

the DIP Liens (as if they were MPT Prepetition Liens) in the Loan Collateral (as defined in the

Intercreditor Agreement and referred to herein as the "CNH Priority Collateral~~, until payment in full~~

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

of the CNH Prepetition Obligations. The" prior to payment in full of the CNH Prepetition Obligations, which occurred following entry of the Interim Order. Except as otherwise set forth in this Final Order, the DIP Liens and the Superpriority Claim (as defined below) (a) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, (subject to entry of the Final Order) the "equities of the case" exception of section 552 of the Bankruptcy Code, or (subject to entry of the Final Order) section 506(c) of the Bankruptcy Code, (b) shall be senior in priority and right of payment to (x) the MPT Prepetition Obligations, (y) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise and (z) any intercompany or affiliate liens or claims of the Debtors, and (c) shall be valid and enforceable against any trustee or any other estate representative appointed or elected in the Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, or in any other proceedings related to any of the foregoing (each, a "Successor Case"), and/or upon the dismissal of any of the Cases or any Successor Case.

2.1.4 <u>Enforceable Obligations</u>. The DIP Loan Documents shall constitute and evidence the valid and binding DIP Obligations of the Debtors, which DIP Obligations shall be enforceable against the Debtors, their Estates, and any successors thereto (including, without limitation, any trustee or other estate representative in any Successor Case), and their creditors, in accordance with their terms. NoExcept as otherwise set forth in this order, no obligation, payment, transfer, or grant of security under the DIP Note, the other DIP Loan Documents, the Interim Order, or this InterimFinal Order shall be stayed, restrained, voidable, avoidable, disallowable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) or based on any Avoidance Actions), or subject to any avoidance, disallowance, impairment, reduction, setoff, offset, recoupment, recharacterization, disgorgement, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, surcharge, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

DOCS_SF:106443.8 92381/001

2.1.5   Post-Petition Lien Perfection.   This ~~Interim~~Final Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien (each, a "Perfection Act"). Notwithstanding the foregoing, if the DIP Lender shall, in its sole discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, the DIP Lender is authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or reasonably required by the DIP Lender, which act or acts shall be deemed to have been accomplished as of the Petition Date, notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file, and/or record any document in regard to such act in accordance with applicable law.  The DIP Lender may choose to file, record, or present a certified copy of ~~this~~the Interim Order or this Final Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, and/or record such certified copy of ~~this~~the Interim Order or this Final Order in accordance with applicable law.  Should the DIP Lender so choose and attempt to file, record, and/or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this ~~Interim~~Final Order.  For the avoidance of doubt, the Existing Control Agreement (as defined in the DIP Note) shall be considered a "DIP Loan Document" and a Perfection Act for all purposes hereunder and thereunder.

2.2   Superpriority Administrative Expense.   For all DIP Obligations now existing or hereafter arising pursuant to ~~this~~the Interim Order, this Final Order, the DIP Loan Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter

DOCS_SF:106443.8 92381/001

incurred by the Debtors, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) ~~(subject to entry of the Final Order)~~), 507(a), 507(b), 364(c)(1), 546, 726 or 1114 or any other provision of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment (the "Superpriority Claim"); provided, however, that the Superpriority Claim shall be subject only to the payment of the Carve-Out Expenses.  The Superpriority Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including the proceeds of Avoidance Actions (but not including the proceeds of any (a) successful Objection or any successful affirmative claim of the Debtors and/or their Estates against the MPT Prepetition Lender or the CNH Prepetition Lender or (b) rights or claims for  surcharge under section 506(c) of the Bankruptcy Code with respect to the DIP Collateral, the MPT Prepetition Collateral, or collateral of the CNH Prepetition Lender), subject only to the Carve-Out Expenses ~~and excluding proceeds of Avoidance Actions pending entry of the Final Order~~.  Other than as expressly provided in the DIP Note, the Interim Order, and this ~~Interim~~Final Order with respect to the Carve-Out Expenses, no costs or expenses of administration, including, without limitation, professional fees allowed and payable under sections 326, 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these Cases, or in any Successor Case, and no priority claims are, or will be, senior to, prior to, or on a parity with the Superpriority Claim or the DIP Obligations, or with any other claims of the DIP Lender arising hereunder.

        2.3    Carve-Out Expenses.  Notwithstanding anything in this Final Order, the Interim Order, the DIP Loan Documents, ~~or~~ the MPT Prepetition Transaction Documents, the CNH Prepetition Loan Documents, or any other document to the contrary, ~~upon the delivery by the DIP Lender to the Debtors' lead counsel, the U.S. Trustee, and lead counsel to the Committee (if a Committee has been appointed) of~~ a written notice identifying an Event of Default (a "Carve-Out

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

~~Trigger Notice" and the date upon which a Carve-Out Trigger Notice is delivered to the Debtors'~~

~~lead counsel, the "Carve-Out Trigger Date"),~~(i) the DIP Lender's liens, claims, and security interests

in the DIP Collateral and its Superpriority Claim, and (ii) all liens, claims, and security interests of

the MPT Prepetition Lender in any property of the Debtors or their Estates, including the MPT

Prepetition Lender's Adequate Protection Replacement Liens (defined below) and Adequate

Protection Claim (defined below), shall, in each instance, be subject to the right of payment of the

following expenses (without any duplication of fees and expenses of any professionals in connection

with any services rendered to more than one Debtor) (the "Carve-Out Expenses"):

       a.     all incurred or accrued professional fees and expenses of

professionals for the Debtors and professionals for the Committee to the extent (i) allowed at

any time by the Bankruptcy Court (if required), whether prior to or after the Carve-Out

Trigger Date (defined below) and regardless of whether allowed by interim order, procedural

order, or otherwise, (ii) incurred or accrued through the Carve-Out Trigger Date; and (iii) up

to and as limited by the respective aggregate amounts for each professional for the Debtors

and each professional for the Committee or category of professionals for the Debtors and

category of professionals for the Committee set forth in the Budget, without variance,

through the Carve-Out Trigger Date, less the amount of any prepetition retainers received by

such professionals and not applied to prepetition fees and expenses (for clarity, all

requirements in the foregoing clauses (i) through (iii) must be satisfied for the inclusion of

the fees and expenses described by this clause (a) in the Carve-Out Expenses);

       b.     all accrued and unpaid fees, disbursements, costs, and expenses

incurred by the professionals for the Debtors from and after the date (the "Carve-Out Trigger

Date") that the DIP Lender delivers to the Debtors' lead counsel, the U.S. Trustee, and lead

counsel to the Committee a written notice identifying an Event of Default (a "Carve-Out

Trigger Notice"), to the extent allowed at any time, in an aggregate amount not to exceed

$200,000, without variance, less (i) the remaining amount of prepetition retainers received by

such professionals not previously applied to the fees, disbursements, costs, and expenses set

DOCS_SF:106443.8 92381/001

forth in clause (a)(ii) above, and (ii) the amount funded to amounts remaining in the

Professional Fee Trust Account for the professionals of the Debtors in excess of the accrued

and incurred not previously applied or to be applied to the fees, disbursements, costs, and

expenses set forth in clause (a) above ((i) and (ii) collectively, the "Debtor Excess Retainer

and Trust Fees"), which Debtor Excess Retainer and Trust Fees shall be applied to the fees,

disbursements, costs and expenses due to be paid from the Professional Fee Trust Account as

of the Carve-Out Trigger Date that would otherwise be payable under this clause (b);

    c.    all accrued and unpaid fees, disbursements, costs, and

expenses incurred by the professionals for the Committee from and after the Carve-Out

Trigger Date, to the extent allowed at any time, in an aggregate amount not to exceed

$50,000, without variance, less the amount funded to remaining in the Professional Fee Trust

Account for the professionals of the Committee in excess of the accrued and incurred not

previously applied or to be applied to the fees, disbursements, costs, and expenses set forth in

clause (a) above (the "Committee Excess Trust Fees"), which Committee Excess Trust Fees

shall be applied to the fees, disbursements, costs and expenses due to be paid from the

Professional Fee Trust Account as of the Carve-Out Trigger Date that would otherwise be

payable under this clause (c); and

    d.    allowed administrative expenses for (i) fees payable to the

Office of the U.S. Trustee pursuant to 28 USC §1930(a)(6), as determined by agreement of

the U.S. Trustee or by final order of the Bankruptcy Court, (ii) fees required to be paid to the

Clerk of the Bankruptcy Court pursuant to 28 U.S.C. § 156(c), and (iii) allowed fees and

expenses up to $25,000 incurred by any trustee appointed in these cases under chapter 7 of

the Bankruptcy Code; and

    e.    all postpetition expenses of the Debtors and their Estates

incurred in the ordinary course of the Debtors' operations to the extent such amounts were (i)

due and payable prior to the Carve-Out Trigger Date under the Budget and (ii) not paid

during the applicable Budget period(s), and up to and as limited by the amounts set forth in

Case 21-51477 Doc# 207 Filed 01/17/22 Entered: 01/17/22 14:38:00 Page 19 of 47

the Budget, subject to the permitted variance as set forth in the DIP Loan Documents, through the Carve-Out Trigger Date.

Prior to the Carve-Out Trigger Date: (A) an amount sufficient to pay the Carve-Out Expenses set forth in clause (a) above may be funded by the Debtors on a weekly basis into a trust account held by Debtors' counsel (the "Professional Fee Trust Account") in accordance with the approved Budget, (B) the Debtors shall be permitted to borrow under the DIP Note to fund the Professional Fee Trust Account in the amounts contemplated under clause (a) above, and (C) the Debtors shall be permitted to pay, and all amounts contemplated under clause (a) shall be paid, from the Professional Fee Trust Account, as and when the same may become due and payable, the allowed professional fees of each Debtor and Committee professional. Following the Carve-Out Trigger Date, the Debtors shall be permitted to borrow under the DIP Note to fund the Professional Fee Trust Account for all Carve-Out Expenses set forth in clause (a) above to the extent not previously funded. The funding of and paid, including by deposit in the Professional Fee Trust Account shall dollar-for-dollar reduce the DIP Lender's obligation, if any, to fund any Carve-Out Expenses from the DIP Note following the Carve-Out Trigger Notice. Any excess amounts remaining in the Professional Fee Trust Account after payment of the Carve-Out Expenses shall be released to the DIP Lender. Notwithstanding the foregoing, none of the Carve-Out Expenses, proceeds from the DIP Facility or Cash Collateral may be used (i) to investigate (other than by a the Committee and its professionals, subject to a cap of $25,000 50,000, and further subject to the limitations contained in Section 9.1, below) or challenge in any respect the validity, perfection, priority, extent, or enforceability of any of the MPT Prepetition Transaction Documents or the liens or security interests securing the obligations arising under the MPT Prepetition Transaction Documents; (ii) to delay, challenge, or impede any rights of the DIP Lender under any of the DIP Loan Documents, the Interim Order, or this Interim Final Order or to object to or oppose any action authorized under the DIP Loan Documents, this the Interim Order, or the this Final Order; or (iii) to pursue any claims or causes of action of any kind against the DIP Lender, the MPT Prepetition Lender or MPT of Watsonville, LLC in their respective capacities under the DIP Loan Documents or MPT Prepetition Transaction

DOCS_SF:106443.8 92381/001

Documents, as the case may be.  For the avoidance of doubt, the Professional Fee Trust Account shall be held at an authorized depository compliant with Bankruptcy Code section 345.

       2.4    Use of Cash Collateral; Adequate Protection.

       2.4.1    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this ~~Interim~~Final Order, the DIP Note and the other DIP Loan Documents, the Debtors shall be and are hereby authorized to use, in accordance with the Budget, Cash Collateral subject to the MPT Prepetition Liens ~~and the liens granted to the CNH Prepetition Lender as described in the CNH Prepetition Loan Documents (as defined below) (the "CNH Prepetition Liens")~~ to, (a) upon entry of ~~the~~this Final Order, immediately repay the outstanding MPT Prepetition Obligations up to the sum of $9,250,000, (b) ~~repay~~pay fees and expenses related to the DIP Note and the other DIP Loan Documents, and (c) fund working capital in the ordinary course of the business of the Debtors and other general corporate purposes, in each case, to the extent set forth in the Budget and permitted under DIP Loan Documents.  In addition, pursuant to the Interim Order, the Debtors were authorized to use Cash Collateral  to repay, and following entry of the Interim Order did repay, from ongoing receipts (aside from Applicable Managed Care QAF Payments (as defined in the DIP Note)) the outstanding principal balance, together with all accrued and unpaid interest thereon and all other sums due under that certain Credit and Security Agreement, dated as of June 22, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition CNH Credit Agreement" and, together with any additional agreements, documents, instruments and certificates executed, and any orders in connection therewith, or otherwise delivered in connection therewith or evidencing or securing any of the obligations thereunder, the "CNH Prepetition Loan Documents"), by and between WHC and the CNH Prepetition Lender (such obligations, the "CNH Prepetition Obligations")~~, (c) pay fees and expenses related to the DIP Note and the other DIP Loan Documents, and (d) fund working capital in the ordinary course of the business of the Debtors and other general corporate purposes, in each case, to the extent set forth in the Budget and permitted under DIP Loan Documents.  The Debtors shall repay the CNH Prepetition Obligations with the proceeds of the CNH Priority Collateral in accordance with the Budget until the CNH Prepetition Obligations are~~

DOCS_SF:106443.8 92381/001

repaid in full. Nothing in this ~~Interim~~Final Order shall authorize the disposition of any assets of the Debtors or their Estates outside the ordinary course of business ~~(except with respect to the authorization to use the proceeds of the DIP Loans to repay the obligations set forth in clauses (a) of this Section 2.4.1)~~, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as permitted in ~~this~~the Interim Order, this Final Order, the DIP Note, the other DIP Loan Documents, or the Budget. In accordance with the provisions of the DIP Note (and without limiting the Debtors' obligations thereunder), the Debtors shall timely deliver to the DIP Lender updated cash flow forecasts and Variance Reports (as defined in the DIP Note) and comply with all other reporting covenants and obligations described in the DIP Note; provided, however that, for purposes of calculating the Permitted Variance (as defined in the DIP Note) (i) the testing period set forth in Section 2(c) of the DIP Note is hereby increased from the most recently ended two (2) week period to the most recently ended four (4) week period, (ii) any cash flow positive variance shall be a Permitted Variance, (iii) the permitted fifteen percent (15%) aggregate adverse Permitted Variance described in Section 2(c)(2) of the DIP Note shall be measured by comparing aggregate collections and aggregate disbursements for the applicable testing period, and (iv) any cash flow positive variance for any testing period may be carried forward to the subsequent testing period. The Debtors shall provide the Committee the same reports and/or information as the Debtors provide to the DIP Lender in satisfaction of the Debtors' reporting covenants and obligations under the DIP Note, and provide such reports and/or information to the Committee at the same time as the Debtor provides them to the DIP Lender.

2.4.2   MPT Prepetition Adequate Protection.

a.   *Adequate Protection Replacement Liens.* As adequate protection for ~~the~~any diminution in value of its interests in the MPT Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such MPT Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay, the incurrence of the DIP Obligations, and the subordination to the Carve-Out Expenses, the MPT Prepetition Lender in respect of the MPT Prepetition Obligations, is hereby granted, solely to the extent

DOCS_SF:106443.8 92381/001

of any such diminution in value and pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all DIP Collateral (the "Adequate Protection Replacement Liens"); provided, however, that to the extent that any lease prohibits the granting of a lien thereon, or otherwise prohibits hypothecation of the leasehold interest, then in such event the MPT Prepetition Lender shall be granted an Adequate Protection Replacement Lien only on the economic value of, proceeds of sale or other disposition of, and any other proceeds and products of such leasehold interests. The Adequate Protection Replacement Liens shall be junior and subordinate only to (i) the DIP Liens, (ii) the Permitted Priority Liens, (iii) the Carve-Out Expenses, and (iv) any other liens permitted to be senior to the DIP Liens by the DIP Loan Documents. The Adequate Protection Replacement Liens and the Adequate Protection Claim (as defined below) (A) shall not be subject to sections 510, 542, 549, 550, or 551 of the Bankruptcy Code, (subject to entry of a Final Order) the "equities of the case" exception of section 552 of the Bankruptcy Code or, subject to Section 9.3 or this Interim Order, section 506(c) of the Bankruptcy Code, (B) shall be senior in priority and right of payment to (x) any lien that is avoided and preserved for the benefit of the Debtors and their Estates under section 551 of the Bankruptcy Code or otherwise or (y) any intercompany or affiliate liens or claims of the Debtors, and (C) shall be continuing, binding, valid, perfected, unavoidable, and enforceable against any trustee or any other estate representative appointed or elected in the Cases or any Successor Case, and/or upon the dismissal of any of the Cases or any Successor Case. Notwithstanding any of the foregoingFor the avoidance of doubt, the attachment of the Adequate Protection Replacement Liens onshall not attach to the proceeds of Avoidance Actions (other than the proceeds of Avoidance Actions arisingany (a) successful Objection or any successful affirmative claim of the Debtors and/or their Estates against the MPT Prepetition Lender or the CNH Prepetition Lender or (b) rights or claims for surcharge under section 549506(c) of the Bankruptcy Code, with respect to which the Adequate Protection Replacement Liens shall attach immediately) shall be subject to the

DOCS_SF:106443.8 92381/001

~~entry~~DIP Collateral, the MPT Prepetition Collateral, or collateral of the ~~Final  Order~~CNH Prepetition Lender.

        b.     *Prepetition Section 507(b) Priority Claim*.  To the extent that the Adequate Protection Replacement Liens are insufficient protection against the diminution in value of their interests in the MPT Prepetition Collateral (including Cash Collateral) on account of the Debtors' use of such MPT Prepetition Collateral (including Cash Collateral), the incurrence of the DIP Obligations, the imposition of the automatic stay, and the subordination to the Carve-Out Expenses, the MPT Prepetition Lender, in respect of the MPT Prepetition Obligations, is hereby granted, solely to the extent of any such diminution of value and pursuant to section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases with priority over all administrative expense claims and unsecured claims against the Debtors or their Estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c~~) (subject to entry of the Final Order~~), 507(a), 507(b), 364(c)(1), 546, 726 or 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Claim"); provided, however, that the Adequate Protection Claim shall be junior and subordinate only to (i) the right of payment of the DIP Obligations owing to the DIP Lender, (ii) the Superpriority Claim granted in favor of the DIP Lender pursuant to this ~~Interim~~Final Order, and (iii) the Carve-Out Expenses.  The Adequate Protection Claim shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered an administrative expense allowed under section 503(b) of the Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, ~~excluding~~including the proceeds of Avoidance Actions ~~pending entry of the Final Order~~(but not including the proceeds of any (a) successful Objection or any successful affirmative claim of the Debtors and/or their Estates against the MPT Prepetition Lender or the CNH

DOCS_SF:106443.8 92381/001

Prepetition Lender or (b) rights or claims for surcharge under section 506(c) of the Bankruptcy Code with respect to the DIP Collateral, the MPT Prepetition Collateral, or collateral of the CNH Prepetition Lender), subject only to (i) the right of payment of the DIP Obligations owing to the DIP Lender, (ii) the Superpriority Claim granted in favor of the DIP Lender, pursuant to this ~~Interim~~Final Order, and (iii) the Carve-Out Expenses.

c.    *Accrual of Fees, Costs and Expenses*:  The Debtors shall accrue as part of the DIP Obligations and the DIP Lender may choose to pay and add to the DIP Obligations, at least ten (10) business days following receipt by the Debtors of any invoice (which may be provided in summary fashion or redacted to protect privilege) therefore, with a copy to the Committee ~~(or the 35 Largest Unsecured Creditors if no Committee has been appointed)~~ and U.S. Trustee: the reasonable and documented fees and out-of-pocket expenses for the professionals advising the DIP Lender, including KTBS Law LLP and Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, and any other advisors to the DIP Lender and the MPT Prepetition Lender; provided, however, that such fees and expenses shall not be added to the DIP Obligations or paid by the DIP Lender if an objection is made by the Debtors, the Committee, or the U.S. Trustee within such ten (10) business day period (except to the extent such fees and expenses are not subject to the objection) unless consensually resolved by the affected professional and objecting party or approved by the Court.  The fees and expenses accrued or paid hereunder shall not otherwise be subject to separate approval by the Court or to the United States Trustee Guidelines.

d.    *Payment of Post-Petition Interest*.  To the extent it is later determined by an order of the Court that the MPT Prepetition Obligations were oversecured, interest shall accrue on all of the outstanding MPT Prepetition Obligations at the default rate from and after the Petition Date.

e.    *Reservation of Rights*.  Notwithstanding any other provision hereof, the grant of adequate protection pursuant to the terms of this ~~Interim~~Final Order is without prejudice to the right of the MPT Prepetition Lender to seek modification of the

DOCS_SF:106443.8 92381/001

grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors, the Committee, or any other party in interest to contest any such modification.

Section 3.    Authorization to Accrue Professional Fees of DIP Lender.

3.1    Any and all reasonable and documented fees paid or required to be paid in connection with the DIP Loan Documents (including, but not limited to, the fees and expenses of the DIP Lender) are hereby authorized and shall be accrued as set forth in the DIP Note and Section 2.4.2.c, above. Notwithstanding anything to the contrary in this Final Order, the Interim Order, or the DIP Loan Documents, the Debtors are not authorized to pay, or accrue as part of the DIP Obligations, any fees or expenses, including legal fees and expenses, related to the DIP Lender or MPT Prepetition Lender's unsuccessful defense of (i) any Objection, (ii) affirmative claim of the Debtors and/or their Estates, or (iii) rights or claims for surcharge under section 506(c) of the Bankruptcy Code with respect to the DIP Collateral, the MPT Prepetition Collateral, or collateral of the CNH Prepetition Lender.

Section 4.    Sale Process.

4.1    Sale Process.    The Debtors have indicated that they intend to conduct a process to sell (the "Sale") substantially all of their assets (the "Acquired Assets"). Subject to the entryprovisions of thethis Final Order, including Section 10.9, the Debtors are authorized and directed to immediately and indefeasibly distribute directly (or cause any purchaser of the Acquired Assets to immediately and indefeasibly distribute directly) to the DIP Lender the proceeds from the Sale of the Acquired Assets, up to the amount of the DIP Obligations and, to the extent applicable in accordance with the Term Sheet (defined below), the MPT Prepetition Obligations outstanding as of the closing of the Sale, including, but not limited to, principal, accrued and unpaid interest, and all outstanding fees and expenses.

4.2    Chapter 11 Milestones.    As a condition to funding under the DIP Facility, the Debtors shall achieve the following timeline milestones (the "Chapter 11 Milestones"), in each case

DOCS_SF:106443.8 92381/001

in a manner satisfactory to the DIP Lender or such later dates as may be agreed in writing by the DIP Lender in its discretion:

a. entry, no later than January 7, 2022 of an order of the Court, satisfactory to the DIP Lender approving certain bid protections and sale procedures, approving the form and manner of notice of the Sale and assumption and assignment of executory contracts and unexpired leases in connection therewith, and scheduling (i) the final date for the submission of qualified bids (and for the Debtors to designate the "stalking-horse" bid from Pajaro Valley Healthcare District Project as a qualified bid) no later than February 9, 2022, (ii) the auction for a Sale (if more than one qualified bid is received) no later than February 16, 2022, and (iii) the hearing to approve the Sale no later than two (2) business days after the auction for the Sale;

b. entry of an order of the Court, satisfactory to the DIP Lender approving the Debtors' retention of an investment banking firm acceptable to the DIP Lender no later than January 7, 2022 (it being understood that Cowen and Company, LLC is acceptable);

a. c. entry of an order of the Court, satisfactory to the DIP Lender approving the Sale (the "Sale Order") no later than one business day after the sale hearing; and

b. d. consummation of the Sale as soon as practicable after entry of the Sale Order and in no event later than August 31, 2022.

4.3 Credit Bid Rights. Subject to entry of the Final Order, inIn connection with any sale of all or substantially all of the Acquired Assets (excluding the "stalking-horse" bid from Pajaro Valley Healthcare District Project once deemed to be a qualified bid), the DIP Lender shall have the right to credit bid any portion or all of the Debtors' outstanding obligations under the MPT Prepetition Note pursuant to Bankruptcy Code section 363(k), subject to the Committee's Objection rights, and any bid submitted by the DIP Lender shall be deemed a "qualified bid" under the bid procedures for a potential Sale.

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Section 5.      Cash Management System; Control Over Debtors' Accounts.  The Debtors shall maintain their existing cash management system unless the DIP Lender, in its sole and absolute discretion, consents in writing to any proposed modification to such cash management system; provided, however, that the Debtors shall be authorized, at the direction of the DIP Lender to enter into amendments to their existing cash management agreements and any such amendments shall be subject to any order of this Court authorizing the Debtors' maintenance of its cash management system.  From and after the date of the entry of ~~this~~the Interim Order, all collections and proceeds of any DIP Collateral and all Cash Collateral which shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be promptly deposited in a bank account in accordance with the DIP Note~~; provided, however, that anything herein to the contrary notwithstanding, prior to the payment in full of the CNH Prepetition Obligations, any Cash Collateral constituting CNH Priority Collateral shall be promptly deposited in the same bank accounts into which collections and collateral proceeds were deposited under the CNH Prepetition Loan Documents, and such Cash Collateral constituting CNH Priority Collateral shall be subject to the terms of the CNH Prepetition Loan Documents, it being understood that pursuant to the terms thereof, any such Cash Collateral so deposited will be swept to CNH's bank accounts and credited against the CNH Prepetition Obligations until the CNH Prepetition Obligations are paid in full~~.  In addition, the DIP Lender shall be deemed without any further action of any kind, to have "control" over all of the Debtors' bank accounts within the meaning of Sections 8-106, 9-104, 9-105, 9-106, 9-107 and 9-314 of the New York Commercial Code~~; provided, that with respect to any bank accounts constituting CNH Priority Collateral, the DIP Lender shall only be deemed to have such control from and after~~ payment in full of the CNH Prepetition Obligations.

Section 6.      Proof of Claim.  Any order entered, or to be entered, by the Court concerning the establishment of a bar date in any of the Cases or in any Successor Cases shall not apply to the DIP Lender.

   6.1      MPT Prepetition Obligations.  The MPT Prepetition Lender ~~shall be~~was, pursuant to the Interim Order, deemed to have filed a timely proof of claim in the Cases in an

DOCS_SF:106443.8 92381/001

amount equal to no less than $~~37,812,665~~40,132,813, inclusive of principal and all accrued and unpaid interest, exclusive of costs, expenses, and fees owed to the MPT Prepetition Lender on account of the MPT Prepetition Obligations. The MPT Prepetition Lender shall not be required to file any other proof of claim in the Cases on behalf of itself setting forth the MPT Prepetition Obligations, or any portion thereof. Notwithstanding any provision to the contrary in any order to be entered by the Court concerning the establishment of a bar date in any of the Cases or in any Successor Cases, the MPT Prepetition Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it deems appropriate) one or more proofs of claim in each of the Cases or in any Successor Cases for any claim allowed herein. Subject to ~~Section~~Sections 9.1 and 9.1.1 hereof, any and all payments made to and accepted by the MPT Prepetition Lender, whether prepetition or postpetition, in connection with the MPT Prepetition Obligations ~~or this~~, the Interim Order, or this Final Order are final and not subject to avoidance or recovery by the Debtor or any other entity under chapter 5 of the Bankruptcy Code or otherwise.

Section 7.    Default; Rights and Remedies; Relief from Stay.

7.1    Events of Default. The occurrence and continuation of any of the following events, unless waived by the DIP Lender in its sole discretion, shall constitute an "Event of Default" under this ~~Interim~~Final Order and the DIP Loan Documents, and the DIP Lender shall provide notice of any such Event of Default to the Debtors, the U.S. Trustee, and lead counsel to the Committee (if a Committee has been appointed):

~~a.    the Debtors' failure to obtain entry of a Final Order within 30 days after entry of this Interim Order (by January 7, 2022 would be sufficient);~~

a.    ~~b.~~the Debtors' failure to timely achieve any of the Chapter 11 Milestones;

b.    ~~c.~~ a plan of reorganization or liquidation is proposed which does not provide for termination of the commitment under the DIP Facility and payment in full of the DIP Obligations ~~and the MPT Prepetition Obligations in cash on the effective date of such plan~~;

c.    ~~d.~~ any other superpriority administrative expense claim or lien senior to or *pari passu* with the DIP Obligations, the DIP Liens, the Adequate Protection Claim or the Adequate Protection Replacement Liens shall be granted, approved, imposed, or otherwise created;

d.    ~~e.~~ subject to Sections 9.1 and 9.1.1 below, any of the Debtors seeks to obtain additional financing under section 364(c) or 364(d) of the Bankruptcy Code or to grant any lien other than liens permitted under the DIP Note without the prior written consent of the DIP Lender;

e.    ~~f.~~ subject to sections 9.1 and 9.1.1 below, any Debtor files, or any representative of any Debtors' Estate files, any action challenging the validity, perfection, priority, extent, or enforceability of the DIP Loan Documents or the DIP Liens and claims granted thereunder;

f.    ~~g.~~ any Debtor commences any action against the MPT Prepetition Lender or MPT of Watsonville, LLC with respect to the MPT Prepetition Obligations or the Lease including, without limitation, any action to avoid, modify, dispute, challenge, or subordinate any of the MPT Prepetition Obligations or any MPT Prepetition Liens, or entry of an order in any action by any other party granting such relief;

g.    ~~h.~~ the entry of an order dismissing any of the Cases that does not provide for the termination of the commitment under the DIP Facility and payment in full of the DIP Obligations ~~and MPT Prepetition Obligations in cash prior to dismissal~~;

h.    ~~i.~~ any DIP Collateral becoming subject to an order of surcharge or marshaling;

i.    ~~j.~~ the entry of an order of the Court granting relief from the

DOCS_SF:106443.8 92381/001

automatic stay with respect to any DIP Collateral or assets of any Debtor that have an aggregate value equal to or exceeding $250,000;

j. ~~k.~~ any material contract of the Debtors is rejected or otherwise terminated (other than in accordance with its terms or any material property of the Debtors is sold outside the ordinary course of business (other than pursuant to the Sale), in each instance, other than as expressly permitted under the terms of the DIP Note, without the express written consent of the DIP Lender;

k. ~~l.~~ the Debtors terminate the Chief Restructuring Officer of the Debtors or amend or otherwise modify the services or duties thereof unless such termination (and any replacement Chief Restructuring Officer) or modifications is acceptable to the DIP Lender;

l. ~~m.~~ any Debtor's failure to perform, in any respect, any of the terms, conditions or covenants or their obligations under this ~~Interim~~Final Order; or

m. ~~n.~~ any other "Event of Default" as defined in and under the DIP Note or any of the other DIP Loan Documents.

7.2    <u>Rights and Remedies Upon Event of Default</u>.    Upon the occurrence and during the continuance of an Event of Default, (i) the Debtors shall be bound by all restrictions, prohibitions, and other terms as provided in this ~~Interim~~Final Order, the DIP Note, and the other DIP Loan Documents, (ii) the DIP Lender shall be entitled to take any act or exercise any right or remedy (subject to Section 7.4 below) as provided in this ~~Interim~~Final Order or the DIP Loan Documents, including, without limitation, immediately suspending or immediately terminating the DIP Facility pending further order of the Court and (iii) the Debtors' right to use Cash Collateral shall thereupon immediately and without further action of any kind terminate pending further order of the Court; <u>provided</u>, <u>however</u>, that none of the foregoing shall restrict the payment of the Carve-Out Expenses or postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of such Event of Default. The DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of the Debtors, or provide any other financial accommodations to the

DOCS_SF:106443.8 92381/001

Debtors, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default, except to fund the Carve-Out Expenses and postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of the Event of Default.

7.3    Expiration of Commitment.  Upon the earlier of (i) expiration of the Debtors' authority to borrow and obtain other credit accommodations from the DIP Lender pursuant to the terms of this ~~Interim~~Final Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of the DIP Lender in its sole and absolute discretion, which consent shall not be implied or construed from any action, inaction, or acquiescence by the DIP Lender) and (ii) the occurrence and continuance of an Event of Default which results in the delivery by the DIP Lender of an Enforcement Notice (as defined below), all of the DIP Obligations shall automatically become due and payable ~~and the DIP Lender shall be automatically and completely relieved from the effect of any stay under section 362 of the Bankruptcy Code, any other restriction on the enforcement of their liens upon and security interests in the DIP Collateral or any other rights granted to the DIP Lender pursuant to the terms and conditions of the DIP Loan Documents or this Interim Order~~, and the DIP Lender, in its sole discretion, may suspend additional advances under the DIP Facility (except to fund the Carve-Out Expenses) and seek relief from stay to take any and all actions and remedies provided to it in this ~~Interim~~Final Order, the DIP Loan Documents or applicable law which the DIP Lender may deem appropriate and to proceed against and realize upon the DIP Collateral or any other property of the Debtors' Estates following five (5) Business Days (as defined in the DIP Note) after delivery of an Enforcement Notice by the DIP Lender.  All rights, objections, and defenses of the Debtors, the Estates, and the Committee are reserved and preserved with respect to any application for relief from the automatic stay under this Section 7.3.

7.4    Relief from Automatic Stay.  Subject to the terms hereof, the automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit the DIP Lender to perform any act authorized or

Case 21-51477  Doc# 207  Filed 01/17/22  Entered: 01/17/22 14:38:00  Page 32 of 47

permitted under or by virtue of this ~~Interim~~Final Order or the DIP Loan Documents, including, without limitation, (a) to implement the postpetition financing arrangements authorized by this ~~Interim~~Final Order and pursuant to the terms of the DIP Loan Documents, and (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP Collateral. In addition, and without limiting the foregoing, upon the occurrence and continuance of an Event of Default and after providing five (5) Business Days prior written notice to counsel for the Debtors, counsel for the Committee ~~(if appointed)~~, and the U.S. Trustee (the "Enforcement Notice"), the DIP Lender shall be entitled to seek relief from stay to take any action and exercise all rights and remedies provided to it by this ~~Interim~~Final Order, the DIP Loan Documents, or applicable law as the DIP Lender may deem appropriate in its sole discretion to, among other things, proceed against and realize upon the DIP Collateral or any other assets or properties of Debtors' Estates upon which the DIP Lender has been or may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all DIP Obligations. ~~The~~All rights, objections, and defenses of the Debtors, the Estates, and the Committee are reserved and preserved with respect to any application for relief from the automatic stay under this Section 7.4; provided, however, that the Debtors shall not object to the DIP Lender seeking a hearing before this Court on shortened notice during the five (5) Business Day period after an Enforcement Notice is delivered. For the avoidance of doubt, during the five (5) Business Day period referenced above, the DIP Lender shall have no obligation to make any additional advances under the DIP Loan Documents, except to fund the Carve-Out Expenses and postpetition accrued and unpaid payroll expenses to the extent set forth in the Budget as of the date of the Event of Default~~, and shall further be permitted to exercise control over the Debtors' cash and bank accounts (including the right to sweep and apply cash) in accordance with the DIP Loan Documents, subject to the foregoing exception~~.

Section 8.  Good Faith.  The terms of this ~~Interim~~Final Order were negotiated in good faith and at arm's length by and among the Debtors and the DIP Lender. The DIP Lender shall be entitled to the full protections of section 364(e) of the Bankruptcy Code with respect to the new money advances under the DIP Facility.

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Section 9.    Representations; Covenants; and Waivers.

       9.1    Objections to MPT Prepetition Obligations.  Any action, claim or defense (hereinafter, an "Objection") that seeks to object to, challenge, contest, or otherwise invalidate or reduce, whether by setoff, recoupment, affirmative claim, counterclaim, deduction, subordination, disgorgement, cure, reinstatement, or claim of any kind: (a) the existence, validity, nonavoidability, priority, or amount of the MPT Prepetition Obligations, or (b) the extent, legality, validity, priority, perfection, nonavoidability, or enforceability of the MPT Prepetition Liens, shall be filed with the Court (x) if a~~by~~ the Committee ~~is appointed by the U.S. Trustee, within sixty (60) days from the date of appointment of the Committee by the U.S. Trustee (but~~, which shall have standing to file, pursue, prosecute, negotiate, and/or settle any such Objection, and by no other party, by no later than ~~seventy-five~~the earlier to occur of (~~75~~x) ~~days from~~the date that is one (1) day before the date of ~~entry of~~the "Sale Hearing" as defined in this ~~Interim~~Court's *Order*~~), or (y) in the event no Committee is appointed, within seventy-five (75) days from the date of entry of this Interim Order~~ *(A) Approving Bidding Procedures for the Sale of Substantially All Assets; (B) Approving Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Approving Related Notice Procedures; (D) Scheduling a Sale Hearing; and (E) Granting Certain Related Relief* [Docket No. 91] (the "Committee Objection Deadline") and (y) March 9, 2022; provided, however, that the ~~deadlines set forth in clauses (x) and (y)~~foregoing deadline may be extended, in writing, by the DIP Lender, or as ordered by the Court for cause shown.  If any such Objection is timely filed, nothing in this ~~Interim~~Final Order shall prevent the Court from granting appropriate relief with respect to the MPT Prepetition Obligations or the MPT Prepetition Liens in the MPT Prepetition Collateral.  If no Objection is timely filed, or if an Objection is timely filed but denied, (a) the MPT Prepetition Obligations shall be deemed allowed in full, shall not be subject to any setoff, recoupment, counterclaim, avoidance, subordination, deduction, cure, reinstatement, or claim of any kind, and shall not be subject to any further objection or challenge by any party at any time, and the MPT Prepetition Liens in favor of the DIP Lender in the MPT Prepetition Collateral shall be deemed legal, valid, perfected, enforceable, and non-avoidable, for all purposes and of first and senior

Case 21-51477 Doc# 207-2 Filed 01/17/22 Entered 01/17/22 14:38:00 Page 34 of 47

priority, subject to only the Carve-Out Expenses, the Permitted Priority Liens, and the DIP Liens, and (b) the MPT Prepetition Lender and MPT of Watsonville, LLC and each of their respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns, solely in their capacities as such, shall be deemed released and discharged from any and all claims and causes of action related to or arising out of the MPT Prepetition Transaction Documents and shall not be subject to any further objection or challenge by any party at any time.

9.1.1   The Committee is granted standing to file, pursue, prosecute, negotiate, and/or settle any and all of the Estates' claims and causes of action (including any Objection) against the MPT Prepetition Lender, the CNH Prepetition Lender, and their respective affiliates.

9.1.2   The MPT Prepetition Lender shall reasonably cooperate (the "MPT Cooperation Obligation") (including with respect to any reasonable formal or informal requests for nonprivileged documents and information) with the Committee's investigation of (i) the existence, validity, extent, amount, perfection, priority, or enforceability of the MPT Prepetition Obligations and the CNH Prepetition Obligations and (ii) any and all affirmative claims of the Debtors and/or their Estates against the MPT Prepetition Lender and the CNH Prepetition Lender.

9.1.3   Nothing in this Final Order, the Interim Order, the DIP Loan Documents, the MPT Prepetition Transaction Documents, the CNH Prepetition Loan Documents, the Intercreditor Agreement, or any other document or order shall constitute an admission or acknowledgment by the Committee regarding any prepetition liens, claims, or causes of action against the MPT Prepetition Lender or the CNH Prepetition Lender.

9.2   Debtors' Waivers.  It shall be an immediate event of default under the DIP Facility if, at any time during the Cases, the Debtors seek authority to use Cash Collateral of the DIP Lender under section 363 of the Bankruptcy Code without the written consent of the DIP Lender in its sole and absolute discretion; provided, however, that no such consent shall be implied from any action, inaction, or acquiescence by the DIP Lender; provided, further, upon entry of the Final Order, the Debtors waive any right to use Cash Collateral of the DIP Lender or the MPT Prepetition Lender

DOCS_SF:106443.8 92381/001

under section 363 of the Bankruptcy Code without the written consent of the DIP Lender or the MPT Prepetition Lender, as applicable, in their respective sole and absolute discretion. At all times during the Cases, and whether or not an Event of Default has occurred, the Debtors irrevocably waive any right that they may have to (a) obtain postpetition loans or other financial accommodations pursuant to section 364 of the Bankruptcy Code, other than from the DIP Lender or as may be otherwise expressly permitted pursuant to the DIP Loan Documents, (b) challenge the application of any payments authorized by ~~this Interim Order~~the Financing Orders, (c) propose, support or file a plan of reorganization or liquidation that does not provide for the indefeasible payment in cash in full and satisfaction of all DIP ~~Obligations and all MPT Prepetition~~ Obligations on the effective date of such plan in accordance with the terms and conditions set forth in the DIP Note, or (d) seek relief under the Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the extent any such relief would directly restrict or impair the rights and remedies of the DIP Lender under ~~this Interim Order~~the Financing Orders and the DIP Loan Documents or the DIP Lender's exercise of such rights or remedies; provided, however, that the DIP Lender, in its sole and absolute discretion, may otherwise consent in writing, but no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender.

9.3     Section 506(c) Claims. ~~Subject to the entry of the Final Order, except~~Except to the extent of the Carve-Out Expenses, during the periods for which the use of Cash Collateral is authorized, no costs or expenses of administration which have or may be incurred in the Cases ~~at any time~~ shall be charged against the DIP Lender or its claims or interests, the DIP Collateral and/or MPT Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the DIP Lender in its sole and absolute discretion, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender. For the avoidance of doubt, any waiver of or limitation on the Debtors' or Estates' rights under section 506(c) shall not be applicable to any expenses incurred in any period following the expiration or termination of the Debtors' and Estates' authority to use Cash Collateral.

DOCS_SF:106443.8 92381/001

9.4    <u>Collateral Rights</u>.    Until all of the DIP Obligations shall have been indefeasibly paid and satisfied in full:

9.4.1    no other party shall foreclose or otherwise seek to enforce any junior lien or claim in any DIP Collateral ~~except for the CNH Prepetition Lender solely in respect of the CNH Priority Collateral until the CNH Prepetition Obligations are repaid in full~~; and

9.4.2    upon and after the occurrence of an Event of Default, and subject to the DIP Lender providing five (5) Business Days prior written notice as set forth in Section 7.4, above, the DIP Lender (or any of its employees, agents, consultants, contractors, or other professionals) shall have the right, ~~at the sole cost and expense of Debtors~~<u>subject to applicable state and federal law</u>, to: (a) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests, or warehouse arrangements owned or leased by Debtors, and (b) use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are or were used by any of the Debtors.  <u>All rights, objections, and defenses of the Committee with respect to any such action are reserved and preserved.</u>

9.5    <u>QAF Payments</u>.    The Debtors shall timely pay all outstanding amounts with respect to the California Department of Health Care Service's Hospital Quality Assurance Fee Program IV and V (or any successor thereto) (or any similar or equivalent program pursuant to which any Debtor is entitled to receive supplemental payments from the State of California for providing inpatient or outpatient health care services).  The DIP Lender may, but shall have no obligation to, pay any such amounts not paid by the Debtors and charge such payments to the DIP Facility as DIP Obligations under the DIP Loan Documents.

Section 10.    <u>Other Rights and Obligations</u>.

10.1    <u>No Modification or Stay of This ~~Interim~~<u>Final</u> Order</u>.    Notwithstanding (a) any stay, modification, amendment, supplement, vacating, revocation, or reversal of this ~~Interim~~<u>Final</u> Order, any of the DIP Loan Documents or any term hereunder or thereunder~~, (b) the failure to obtain a Final Order pursuant to Bankruptcy Rule 4001(c)(2),~~ or (<u>e</u><u>b</u>) the dismissal or conversion of one or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

more of the Cases (each, a "Subject Event"), (i) the acts taken by the DIP Lender in accordance with this ~~Interim~~Final Order, and (ii) the DIP Obligations incurred or arising prior to the DIP Lender's actual receipt of written notice from Debtors expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this ~~Interim~~Final Order, and the acts taken by the DIP Lender in accordance with this ~~Interim~~Final Order, and the liens granted to the DIP Lender in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Lender pursuant to this ~~Interim~~Final Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code with respect to the new money advances under the DIP Facility.

10.2 Power to Waive Rights; Duties to Third Parties. The DIP Lender, in its sole and absolute discretion, shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this ~~Interim~~Final Order in respect of the DIP Lender (the "DIP Lender Rights"), with any such waiver to be made in writing by the DIP Lender, and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Rights. Any waiver by the DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver. Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert a defense to any obligation owed by the Debtors to the DIP Lender.

10.3 Setoff and Return of Goods. The Debtors shall not, without the consent of the DIP Lender in its sole and absolute discretion, (a) enter into any agreement to return any goods to any of their creditors for application against any prepetition indebtedness under any applicable provision of section 546 of the Bankruptcy Code, or (b) consent to any creditor taking any setoff against any of its prepetition indebtedness based upon any such return of goods (pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise).

10.4 Reservation of Rights. The terms, conditions, and provisions of this ~~Interim~~Final Order are in addition to and without prejudice to the rights of the DIP Lender to pursue

~~DOCS_SF:106443.8 92381/001~~

any and all rights and remedies under the Bankruptcy Code, the Interim Order, the DIP Loan Documents, or any other applicable agreement or law, including, without limitation, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtors' Estates.

10.5    Binding Effect of ~~Interim~~Final Order.

10.5.1  Immediately upon entry by this Court, this ~~Interim~~Final Order shall be valid and binding upon and inure to the benefit of the DIP Lender, the Debtors, and the property of the Debtors' Estates, all other creditors of any of the Debtors, ~~any~~the Committee, and all other parties in interest and their respective successors and assigns (including any chapter 11 or chapter 7 trustee or any other fiduciary hereafter appointed as a legal representative of the Debtors), in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

10.5.2  Any order dismissing one or more of the Cases or any Successor Case under section 1112 or otherwise shall, subject to the rights of the Committee under Sections 9.1 through 9.1.3 above and to the extent consistent with applicable law, be deemed to provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim, the DIP Liens, the MPT Prepetition Liens, the Adequate Protection Replacement Liens, and the Adequate Protection Claim shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and MPT Prepetition Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction to the greatest extent permitted by applicable law, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim, the DIP Liens, the MPT Prepetition Liens, the Adequate Protection Replacement Liens, and the Adequate Protection Claim. ~~In the event any Court modifies any of the provisions of this Interim Order or the DIP Loan Documents following a Final Hearing, (i) such modifications shall not affect the rights or priorities of the DIP Lender pursuant to this Interim Order with respect to the DIP Collateral and/or MPT Prepetition Collateral, or any portion of the DIP Obligations which arises or is incurred or is~~

~~advanced prior to such modifications, and (ii) this Interim Order shall remain in full force and effect~~

~~except as specifically amended or modified at such Final Hearing.~~

10.6    <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>. All postpetition advances and other financial accommodations under the DIP Note and the other DIP Loan Documents are made in reliance on ~~this Interim Order~~<u>the Financing Orders</u> and there shall not at any time be entered in the Cases, or in any Successor Case, any order ~~(other than the Final Order)~~ which (a) authorizes the use of Cash Collateral of the Debtors in which the DIP Lender has an interest, or the sale, lease, or other disposition of property of any Debtor's Estate subject to a lien or security interest granted to the DIP Lender, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which the DIP Lender holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to the DIP Lender, herein unless, in each instance (i) the DIP Lender shall have given its express prior written consent with respect thereto (such consent to be in the DIP Lender's absolute and sole discretion and no such consent being implied from any other action, inaction, or acquiescence by the DIP Lender), or (ii) such other order requires that all DIP Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Note and the other DIP Loan Documents, including, without limitation, all debts and obligations of the Debtors to the DIP Lender which arise or result from the obligations, loans, security interests, and liens authorized herein, on terms and conditions acceptable to the DIP Lender.  The security interests and liens granted to or for the benefit of the DIP Lender hereunder and the rights of the DIP Lender pursuant to this ~~Interim~~<u>Final</u> Order shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of <u>the</u> Debtors without the express prior written consent of the DIP Lender (such consent to be in the DIP Lender's absolute and sole discretion).

10.7    <u>No Owner/Operator Liability</u>.  In determining to make any loan under the DIP Note or any Financing Order, or in exercising any rights or remedies as and when permitted pursuant

DOCS_SF:106443.8 92381/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

to the DIP Note or any Financing Order, the DIP Lender shall not be deemed to be in control of the operations of any of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of any of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar or other federal or state statute).

10.8    Marshalling/552(b).  The MPT Prepetition Lender ~~(subject to entry of the Final Order)~~ and the DIP Lender shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the DIP Collateral or the MPT Prepetition Collateral ~~(subject to entry of the Final Order)~~.  The DIP Lender and the MPT Prepetition Lender shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and ~~(subject to entry of a Final Order)~~ the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lender or the MPT Prepetition Lender with respect to proceeds, products, offspring, or profits of any of the DIP Collateral and/or MPT Prepetition Collateral.

10.9    <u>Committee Term</u>~~; Termination~~.  ~~Notwithstanding any provision of this Interim Order to the contrary, the term of the financing arrangements among the Debtors~~ <u>Sheet.  The Committee</u> and the DIP Lender ~~authorized by~~<u>consent to the entry of</u> this ~~Interim~~<u>Final</u> Order ~~may be terminated pursuant to~~<u>subject to the terms of the Term Sheet attached as **Exhibit C** hereto,</u> the terms of ~~the DIP Note~~<u>which are hereby approved</u>.

10.10    <u>Objections Overruled</u>.  All objections to the entry of this ~~Interim~~<u>Final</u> Order are, to the extent not withdrawn or resolved, hereby overruled.

Section 11.    <u>Findings and Conclusions.</u>  This ~~Interim~~<u>Final</u> Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable, as of the Petition Date, immediately upon execution hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this ~~Interim~~<u>Final</u> Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this ~~Interim~~<u>Final</u> Order.

~~DOCS_SF:106443.8 92381/001~~

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
~~LOS ANGELES~~ SAN FRANCISCO, CALIFORNIA

Section 12.      ~~Interim~~Final  Order Governs.    In the event that any provision of this ~~Interim~~Final Order conflicts with any term of the Interim Order, the DIP Loan Documents, the MPT Prepetition Transaction Documents, the CNH Prepetition Loan Documents, the Intercreditor Agreement, or any other document or order, this ~~Interim~~Final Order shall govern.

Section 13.      No Prejudice.  This ~~Interim~~Final Order shall not prejudice, impair, or adversely affect any of the MPT Prepetition Lender's rights in connection with any of the MPT Prepetition Transaction Documents, except as specifically set forth herein.

Section 14.      Retention of Jurisdiction.  The Court has and will retain jurisdiction to interpret and enforce the provisions of this ~~Interim~~Final Order.

~~Section 15.      Final Hearing and Response Dates.   The Final Hearing on the Motion pursuant to Bankruptcy Rule 4001(c)(2) is scheduled for **January 5, 2022, at 10:00 a.m.** (prevailing Pacific time) before this Court (the "Final Hearing").   The Debtors shall promptly mail copies of this Interim Order to the Notice Parties, and to any other party that has filed a request for notices with this Court and to any Committee after same has been appointed, or Committee counsel, if same shall have filed a request for notice.   Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (a) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, One Market Plaza, Spear Tower, 40th Floor, San Francisco, CA 94105, Attn: Debra Grassgreen; (b) counsel for the DIP Lender, KTBS Law LLP, 1801 Century Park East, 26th Floor, Los Angeles, CA 90067, Attn: Thomas E. Patterson,; (c) counsel to any Committee or if no Committee has been appointed, the 35 Largest Creditors; and (d) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the Northern District of California, in each case, to allow actual receipt of the foregoing no later than seven (7) days prior to the Final Hearing by 4:00 p.m. prevailing Pacific time.~~

***END OF ORDER***

## COURT SERVICE LIST

All ECF Recipients

**EXHIBIT A**

**DIP Note**

## EXHIBIT B

## Budget

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**EXHIBIT C**

**Committee Term Sheet**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Document comparison by Workshare 10.0 on Monday, January 17, 2022
12:42:12 PM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/106617/1 |
| Description | DOCS_SF-#106617-v1-WHC_-_MPT_Final_DIP_Order |
| Document 2 ID | PowerDocs://DOCS_SF/106617/7 |
| Description | DOCS_SF-#106617-v7-WHC_-_MPT_Final_DIP_Order |
| Rendering set | Standard |

| Legend: | |
|---|---|
| <span style="color:blue">Insertion</span> | |
| <span style="color:red">Deletion</span> | |
| <span style="color:green">Moved from</span> | |
| <span style="color:green">Moved to</span> | |
| Style change | |
| Format change | |
| <span style="color:brown">Moved deletion</span> | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 267 |
| Deletions | 231 |
| Moved from | 12 |
| Moved to | 12 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 522 |