Thomas E. Patterson (State Bar No. 130723)
Robert J. Smith (State Bar No. 293901)
Sasha M. Gurvitz (State Bar No. 301650)
KTBS LAW LLP
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:   310-407-4000
Facsimile:   310-407-9090
Email:   tpatterson@ktbslaw.com
         rsmith@ktbslaw.com
         sgurvitz@ktbslaw.com

*Attorneys for MPT of Watsonville Lender, LLC
and MPT of Watsonville, LLC*

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>WATSONVILLE HOSPITAL CORPORATION, et al.,<br><br>Debtors. | Case No. 21-51477<br><br>Chapter 11<br><br>**DIP LENDER'S REPLY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL; (III) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; AND (VI) GRANTING RELATED RELIEF** |

MPT of Watsonville Lender, LLC (in such capacity, the "DIP Lender") hereby replies in support of the motion (the "Motion")[1] filed by the debtors and debtors in possession (collectively,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the "Debtors") in the above-captioned bankruptcy cases (the "Bankruptcy Cases") for the entry of a final order, pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1), 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1 and 4001-1 of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules"), authorizing the Debtors to obtain up to $30,750,000 of secured, superpriority postpetition financing (the "DIP Facility") under the *Senior Secured Superpriority Debtor in Possession Promissory Note*, dated December 5, 2021, by and among the Debtors and the DIP Lender (as may be modified, supplemented, amended, or restated from time to time, the "DIP Note", and together with any other DIP Facility loan document, the "DIP Loan Documents"). The DIP Lender is also the Debtors' primary prepetition secured lender (in such capacity, the "MPT Prepetition Lender") and an affiliate thereof, MPT of Watsonville, LLC ("MPT Lessor" and together with the MPT Prepetition Lender, "MPT"), is the lessor of the real estate underlying Watsonville Community Hospital (the "Hospital"). The valid and perfected liens of the MPT Prepetition Lender fully encumber substantially all of the Debtors' assets.

## I. PRELIMINARY STATEMENT

The Debtors, the Committee and the DIP Lender have reached agreement on the relief sought in the DIP Motion. The U.S. Trustee has objected to the DIP Motion on eight grounds. At least three of the U.S. Trustee's grounds for objections are resolved by changes the DIP Lender has agreed to make to the form of Final Order. First, the form of Final Order has been revised to make clear that the "Professional Fee Trust Account" shall be held at an authorized depository compliant with Bankruptcy Code section 345. Second, the form of Final Order has been revised to reflect that the carveout for quarterly fees under 28 U.S.C. § 1930(a)(6) is not limited to "allowed administrative expenses." Third, the Budget been revised to allocate additional funds to the Committee's professionals' fees, and the DIP Lender has also agreed to increase from $25,000 to $50,000 the amount that the Committee's professionals' may incur in fees to investigate MPT's liens and claims. The U.S. Trustee's remaining objections to the DIP Motion are not well taken

under the circumstances of these Bankruptcy Cases and should be overruled in their entirety, particularly given the support of the Committee for the relief sought in the DIP Motion.

The Debtors' ability to keep the Hospital open, to pursue a value maximizing going concern sale, to fund these Bankruptcy Cases, and even to potentially return some value to unsecured creditors is all made possible by (i) the DIP Facility funding being provided by the DIP Lender and (ii) the lease and prepetition debt concessions being agreed to by MPT. More than a year and a half before the Petition Date and thereafter, the Debtors defaulted under the MPT Prepetition Transaction Documents, including by misappropriating certain Quality Assurance Fee ("QAF") monies that were dedicated as the source for repayment to MPT under the MPT Prepetition Transaction Documents. Nevertheless, MPT agreed to extend the Debtors additional prepetition financing and to forbear from exercising certain remedies to give the Debtors time to attempt to turnaround operations and find a potential buyer for the Hospital. Just over the course of the last year, the Hospital has lost approximately $32.5 million dollars, most of which has been funded by loan advances from MPT. In the months prior to the Petition Date, when the Project pulled out of negotiations, leaving the Debtors without a defined path forward, MPT again stepped up for the Hospital, agreeing to provide debtor-in-possession financing (when no other party, including the Project, was willing to fund), which helped to bring the Project back to the table as a buyer. Without the DIP Facility and the concessions on MPT's prepetition lease and debt entitlements, the Hospital would have been forced to close its doors and liquidate months ago.

The terms of the DIP Note and the relief sought by the proposed Final Order approving the DIP Motion are reasonable and appropriate by any metric, but are even more so viewed in light of the foregoing facts. The DIP Note does not contain fees, nor does it require the payment of professional expenses or interest on a current basis. Simply put, the protections afforded in the DIP Note and the proposed Final Order represent the minimum safeguards that are absolutely necessary for the DIP Lender to provide financing in these circumstances. No more, no less.

## II. ARGUMENT

**A.  The Challenge Period and Carve-Out for Investigation Are Sufficient.**

As reflected in the revised form of Final Order, the Challenge Period gives the Committee until one day prior to the sale hearing (which is approximately two months from the date of the appointment of the Committee) to investigate the MPT Prepetition Documents, and the DIP Lender has agreed to increase the carve-out from $25,000 to $50,000 to fund the Committee's investigation.  Not only are these provisions acceptable to the Committee, they are also standard and sufficient in a case of this size.[2]  Moreover, the term of the challenge period is in line with the timeframe for the sale process of the Hospital.  As discussed further below, it is imperative that the sale-related milestones in these Bankruptcy Cases are met, otherwise the funding needs of the Hospital and these Bankruptcy Cases will outstrip the DIP Lender's willingness to lend.

**B.  The Modest Roll-Up of Prepetition Debt Is Appropriate.**

The Final Order contemplates a roll-up of $9,250,000 of the MPT Prepetition Obligations (the "<u>Emergency MPT Advances</u>").  The amount of the proposed roll-up is modest, both in absolute terms, considering the roll-ups that have been approved in other chapter 11 cases,[3] and in

---

[2] *See, e.g.*, *In re Alamo Drafthouse Cinema Holdings, LLC* (Bankr. D. Del. Apr. 1, 2021) [Docket No. 249] (approving a challenge period of 71 days from the interim order and a carve-out of $50,000); *In re Muji U.S.A. Limited* (Bankr. D. Del. Aug. 11, 2020) [Docket. No. 105] (approving a challenge period of 60 days following appointment of a committee and a carve-out of $25,000); *In re Avenue Stores, LLC* (Bankr. D. Del. Sept. 13, 2019) [Docket No. 223] (approving a challenge period of 60 days following appointment of a committee and a carve-out of $50,000); *In re Center City Healthcare, LLC* (Bankr. D. Del. Aug. 23, 2019) [Docket No. 557] (approving challenge period of 60 days following appointment of a committee and a carve-out of $50,000); *In re Shiekh Shoes, LLC*, Case No. 17-24626 (Bankr. C.D. Cal. Dec. 1, 2017) [Docket Nos. 74, 332] (approving challenge period of 75 days from interim order and carve out of $25,000).

[3] *See, e.g.*, *In re Avenue Stores, LLC* (Bankr. D. Del. Sept. 13, 2019) [Docket No. 223] (approving roll-up of entire $15 million prepetition claim as part of a $12 million postpetition financing); *In re Channel Techs. Grp., LLC*, Case No. 16-11912 (Bankr. C.D. Cal. Nov. 9, 2016) [Docket No. 110] (approving roll-up of entire $2.8 prepetition facility as part of a $5 million postpetition financing); *In re Freedom Commc'ns, Inc.*, Case No. 15-15311 (Bankr. C.D. Cal. Dec. 16, 2015) [Docket No. 223] (approving roll-up of entire $17.2 million prepetition facility as part of $4.5 new money postpetition financing).  *See also* 3 COLLIER ON BANKRUPTCY ¶ 364.06[2] (16th ed. 2021) ("The portion of prepetition 'rolled up' debt varies, but is often proportional to

comparative terms, considering the aggregate amount of the MPT Prepetition Obligations (approximately $40 million) and the aggregate amount of the new postpetition financing (approximately $21 million). It is also eminently justified, as a matter of fact and applicable law.

"[P]repetition secured claims can be paid off through a 'roll-up' " because "[t]here is no per se rule against paying pre-petition secured claims outside of a plan of reorganization." *In re Capmark Fin. Group, Inc.*, 438 B.R. 471, 510–511 (Bankr. D. Del. 2010). Courts consider a variety of factors in determining whether to approve postpetition financing under Bankruptcy Code section 364, including whether: (i) the proposed financing is an exercise of sound and reasonable business judgment; (ii) the financing is in the best interests of the estate and its creditors; (iii) the credit transaction is necessary to preserve the assets of the estate, and necessary, essential, and appropriate for continued operation of the debtors' business; (iv) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtors and the lender; and (v) the financing agreement was negotiated in good faith and at arms' length between the debtors and the lender. *See, e.g.*, *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003). These factors all militate in favor of approving the roll-up here.

The Emergency MPT Advances were all funded in the month leading up to the Petition Date. The Debtors were facing a liquidity crisis and faced a decision point—file an immediate bankruptcy, with no negotiated sale transaction in place and no clear exit other than a probable shut down and liquidation of the Hospital, or obtain an emergency bridge loan to buy a few additional weeks of operations during which to negotiate a term sheet with the Project and enter bankruptcy a month later, as an operating entity, to pursue a going concern sale of the Hospital. With no other parties willing to lend, the Debtors requested that MPT provide the emergency loans. Had MPT refused to fund the Emergency MPT Advances, the Debtors, in all likelihood, would have filed an immediate (and much less optimistic) bankruptcy, and any additional funds MPT would have lent thereafter would have been postpetition financing. Instead, MPT chose to fund the Emergency MPT Advances on a prepetition basis, and those loans were used to fund the

---

the amount of postpetition financing provided, such as one dollar of roll-up for each dollar of postpetition financing.").

Debtors' significant operating losses, to prepare for these Bankruptcy Cases, to negotiate with stakeholders and creditors, and to reach a term sheet for a stalking horse bid from the Project. Accordingly the roll-up of the Emergency MPT Advances is warranted because the Emergency MPT Advances were necessary to the continued operation of the Hospital and the Debtors' estates, the Watsonville community, and the Debtors' workforce, creditors, and other stakeholders are all better off as a result of MPT's willingness to make the Emergency MPT Advances.

Moreover, this is not a circumstance where prepetition unsecured debt is jumping ahead in priority to secured debt. The MPT Prepetition Lenders' senior liens already fully encumber substantially all the Debtors' assets. The Debtors other significant secured lender, CNH, has already been paid off in full. In these circumstances, there is really no appreciable improvement in the position of the MPT Prepetition Lender's prepetition claim as a result of the proposed roll-up. Finally, and very significantly, the Committee does not oppose the roll-up here. The roll-up of the Emergency MPT Advances is therefore appropriate and should be approved.

## C. The Chapter 11 Milestones Are Necessary Conditions of Financing.

The DIP Note includes certain events of default, including some which the U.S. Trustee considers objectionable. In particular the U.S. Trustee contends that the events of default tied to terminating the Chief Restructuring Officer and assuming or rejecting the Lease, without the DIP Lender's consent, improperly interfere with the Debtors' exercise of business judgment. In negotiating the DIP Facility, the parties were not writing on a blank slate. The Debtors' former executive officers seriously mismanaged the Hospital's payables and misappropriated the QAF monies in violation of the MPT Prepetition Transaction Documents. Amidst this backdrop, it is perfectly reasonable that the DIP Lender would demand that its borrowers and its collateral be overseen by a qualified and effective chief restructuring officer in whom the DIP Lender has confidence. The Debtors are not required to retain Mr. Rosenthal, they are permitted to exercise their discretion in selecting a CRO, but any CRO must be acceptable to the DIP Lender.

Likewise, the DIP Lender may reasonably condition its willingness to extend postpetition financing on the Debtors' commitment to not dispose of material assets, including material contract rights, without the consent of the DIP Lender. These are appropriate safeguards that are

necessary for the protection of the DIP Lender's collateral. Although not pressed by the U.S. Trustee in its objection, the inclusion of the various sale milestones in the events of default under the DIP Note is also appropriate in the circumstances of these Bankruptcy Cases. After over a year of funding significant operating losses, MPT has worked with the Debtors and the Project to negotiate a reasonable and realistic time frame for executing a going concern sale. Given the Debtors' operating history, further delay in achieving that sale will result in ballooning costs that the DIP Lender is simply not willing to fund. Accordingly, the events of default represent measured and necessary protections in exchange for the DIP Lender's willingness to lend.

**D.     The Other Objections Should Be Overruled in These Circumstances.**

The U.S. Trustee takes issue with two additional aspects of the DIP Facility—the fact that proceeds of Avoidance Actions are subject to the DIP Lender's lien and superpriority claim and the waiver of and grant of a lien on the estate's rights under Bankruptcy Code section 506(c). First, it is important to note that the DIP Lender has agreed to certain concessions to these provisions in connection with negotiations with the Committee. First, the DIP Lender and MPT have agreed that the DIP Lender's liens and superpriority claim and the MPT Prepetition Lender's adequate protection liens shall not cover the proceeds of any Avoidance Action or surcharge claim that may be successfully asserted against MPT. Second, the DIP Lender agreed to look to the proceeds of Avoidance Actions as collateral of last resort. Third, the DIP Lender has agreed to limit the section 506(c) waiver to the periods for which the use of Cash Collateral is authorized. With these modifications, the Committee does not oppose the relief sought in the DIP Motion. More generally, the DIP Lender has agreed to a host of other concessions that are favorable to the Debtors and their Estates, as summarized in the Debtors' reply in support of the Motion.

The provisions of the proposed Final Order challenged by the U.S. Trustee are appropriate on the facts presented in these Bankruptcy Cases. The postpetition liens on the proceeds of avoidance actions granted under the DIP Note here are consistent with the protections bargained for under the MPT Prepetition Transaction Documents, as MPT's prepetition liens likewise extend to the proceeds of general intangibles. Moreover, there is no outright prohibition on a secured lender recovering from the proceeds of avoidance actions. *Cf. In re Enserv Co.*, 64 B.R. 519, 521

KTBS LAW LLP
1801 CENTURY PARK EAST, TWENTY-SIXTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

(9th Cir. B.A.P. 1986) ("In the instant case the preference is being recovered for the benefit of the estate even though it is used to pay a secured creditor. There is nothing abusive in this."); *Gonzales v. Nabisco Div. of Kraft Foods, Inc. (In re Furrs)*, 294 B.R. 763, 776-77 (Bankr. N.M. 2003) (finding that "even if all the recoveries [of avoidance actions] were to go to the [secured] Lenders, there is adequate authority that permits that result if there has been or will be some benefit to the estate").

With respect to the waiver of the estate's rights under Bankruptcy Code section 506(c), the fact of the matter is that MPT has already been funding the necessary costs and expenses of preserving the Hospital by funding the vast majority of the $32.5 million dollars in losses that have been sustained to keep the Hospital open and operating over the last year. It is simply unreasonable to expect MPT to lend additional funds, while its cash collateral is authorized to be used by the Debtors, if MPT will remain at risk for surcharge.

### III. CONCLUSION

Accordingly, for the reasons set forth herein and in the Debtors' reply in support of the Motion, the DIP Lender respectfully submits that any objections to entry of the Final Order should be overruled and the relief requested in the DIP Motion should be granted on a final basis.

DATED: January 17, 2022

/s/ Sasha M. Gurvitz
Thomas E. Patterson
Robert J. Smith
Sasha M. Gurvitz
KTBS LAW LLP

*Attorneys for MPT of Watsonville Lender, LLC and MPT of Watsonville, LLC*