Debra I. Grassgreen (CA Bar No. 169978)
Maxim B. Litvak (CA Bar No. 215852)
Steven W. Golden (admitted *pro hac vice*)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone:    415.263.7000
Facsimile:    415.263.7010
E-mail:    dgrassgreen@pszjlaw.com
         mlitvak@pszjlaw.com
         sgolden@pszjlaw.com

Attorneys for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re: | Case No. 21-51477 (MEH) |
| WATSONVILLE HOSPITAL CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | **GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGY, AND DISCLAIMERS REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS** |

Watsonville Hospital Corporation, and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors"), have filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the Northern District of California, San Jose Division (the "Bankruptcy Court"). The Debtors, with the assistance of their Chief Restructuring Officer ("CRO"), prepared the Schedules and Statements in accordance with section 521 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure.

Jeremy Rosenthal has signed each set of the Schedules and Statements. Mr. Rosenthal serves as the CRO of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Rosenthal has necessarily relied upon the efforts, statements, and representations of the Debtors' personnel and professionals. Given the scale of the Debtors' business and complexity of the Debtors' financial affairs covered by the Schedules and Statements, Mr. Rosenthal has not (and could not have) personally verified the accuracy of each such statement and representation, including statements and representations concerning amounts owed to creditors.

---

[1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. In particular, the Debtors note that they have limited ability to access and assess information related to Watsonville Hospital Corporation ("WHC") and Watsonville Hospital Management, LLC ("WHM") prior to the Quorum Acquisition.[2] Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their CRO, agents, and attorneys do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their CRO, agents, and attorneys expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event shall the Debtors or their officers, employees, agents, or professionals be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their officers, employees, agents, attorneys, or their professionals are advised of the possibility of such damages.

## Global Notes and Overview of Methodology

1.  **Description of Cases**. On December 5, 2021, (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 6, 2021, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 24]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The information provided herein, except as otherwise noted, is reported as of the Petition Date.

2.  **Global Notes Control**. These Global Notes pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof. In the event that the Schedules and Statements conflict these Global Notes, these Global Notes shall control.

3.  **Confidentiality**. Specific disclosure of certain claims, names, addresses, or amounts may be subject to certain disclosure restrictions contained in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), or otherwise, and in any event, are of a particularly personal and private nature. To the extent the Debtors believe a claim, name, address, or amount falls under the purview of HIPAA, such claims, name, address, or amount (as

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Jeremy Rosenthal, Chief Restructuring Officer, in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 17] (the "First Day Declaration").

applicable) is not included in these Schedules and Statements, or is included in these Schedules and Statements in a redacted form.

4. **<u>Reservations and Limitations</u>**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

a. **No Admission**. Nothing contained in the Schedules and Statements is intended or should be construed as an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

b. **Recharacterization**. Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

c. **Classifications**. Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

d. **Claims Description**. Any failure to designate a claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve all rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated" or object to the extent, validity, enforceability, priority, or avoidability of any claim. Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors. The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3

e.  **Estimates and Assumptions**.  The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.  Actual results could differ from such estimates.

f.  **Intellectual Property Rights**.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

g.  **Insiders**.  The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved.  Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for the purposes of determining control of the Debtors, the extent to which any individual exercised management responsibilities or functions, corporate decision-making authority over the Debtors, or whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or any other purpose.

h.  **Unknown Addresses**.  The Debtors have made and continue to make their best efforts to collect all addresses for all parties in interest; not all addresses for parties on these Schedules and Statements have been obtained.  The Debtors continue to pursue complete notice information and will provide updated information as reasonably practicable.

5.  **Methodology**.

a.  **Basis of Presentation**.  The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.  The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis except as noted on the applicable Schedules/Statements or herein.

b.  **Duplication**.  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

c.   **Net Book Value**.  In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect estimates of net book values as of the Petition Date.  Market values may vary materially, from net book values.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain the current market values of all their property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined.  Amounts ultimately realized may vary materially from net book value (or whatever value was ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement or adjust the asset values set forth herein.  Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.

d.   **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are valued at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  To the extent possible, any such leases are listed in the Schedules and Statements.  Nothing in the Schedules and Statements is, or should be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

e.   **Allocation of Liabilities**.  The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change.

f.   **Undetermined Amounts**.  The description of an amount as "unknown" is not intended to reflect upon the materiality of such amount.

g.   **Unliquidated Amounts**.  Amounts that could not be fairly quantified by the Debtors are scheduled as "unliquidated" or "unknown."

h.   **Totals**.  All totals that are included in the Schedules and Statements represent totals of all known amounts.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

i.   **Intercompany Claims**.  Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records.  The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise.  These claims are subject to reconciliation and the amounts listed may be materially misstated and subject to material adjustment upon the conclusion of a reconciliation. Intercompany claims are scheduled as the net amount owed between the two Debtors after taking into account each Debtors' books and records.

5

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

j.    **Guarantees and Other Secondary Liability Claims**.  The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements.  Where guarantees have been identified, they have been included in the relevant Schedule G with respect to leases and Schedule H with respect to credit agreements for the affected Debtor or Debtors.  The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights to amend the Schedules and Statements if additional guarantees are identified.

k.    **Excluded Assets and Liabilities**.  The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: certain deferred rent charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; and certain accrued liabilities including, but not limited to, employee benefits.   Other immaterial assets and liabilities may also have been excluded.

l.    **Liens**.  The inventories, property, and equipment listed in the Schedules and Statements are presented without consideration of any liens.

m.    **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

n.    **Setoffs**.  The Debtors incur setoffs and net payments in the ordinary course of business.  Such setoffs and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, deposits received from customer, and amounts due from customers that may also be vendors.  These normal, ordinary course setoffs and nettings are due to the nature of the Debtors customer and supplier relationships.  Such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.  In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

o.    **Cash Management System**.  Details with respect to the Debtors' cash management system and bank accounts are provided in the *Motion for Entry of Interim and Final Orders (I) Authorizing Maintenance of Existing Bank Accounts; (II) Authorizing Continuance of Existing Cash Management System; (III) Granting Limited Waiver of Section 345(b) Deposit Requirements; and (IV) Granting Related Relief* [Docket No. 14] (the "Cash Management Motion") and any orders of the Bankruptcy Court granting the Cash Management Motion.

As described in the Cash Management Motion, Debtor WHM serves as a management services organization for non-Debtor Coastal Health Partners, P.C. ("CHP").  In that capacity, and pursuant to the CHP Management Agreement (as defined in the Cash Management Motion), CHP's revenues are swept into the Debtors' bank accounts and

6

WHM remits all of CHP's salary and expense payments out of the Debtors' bank accounts on CHP's behalf and primarily using CHP's property.

6. **Specific Schedules Disclosures**.

   a. **Schedule A/B; Part 2**. The Bankruptcy Court, pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 366 and 105(a): (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures Providing Adequate Assurance and Resolving Objections of Utility Providers, and (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Service* [Docket No. 165], has authorized the Debtors to provide adequate assurance of payment for future utility services. Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

   b. **Schedule A/B; Part 2; #8.** Amounts are as reflected in the Debtors' books and records as of November 30, 2021.

   c. **Schedule A/B; Part 4; #15.** Ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors, and may differ significantly from their net book value.

   d. **Schedule A/B; Part 5; #22.** Amounts are as reflected in the Debtors' books and records as of November 30, 2021.

   e. **Schedule A/B; Part 7.** Dollar amounts are presented net of accumulated depreciation and other adjustments.

   f. **Schedule A/B; Part 11.** Dollar amounts are presented net of impairments and other adjustments.

   g. **Schedule A/B; Part 11; #74, 75.** The Debtors continue to investigate all claims and causes of action and reserve all rights with respect thereto. Neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claim or cause of action. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' bankruptcy cases, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant nonbankruptcy laws to recover assets or avoid transfers.

   h. **Schedule A/B; Part 11; #75.** In the ordinary course of business, the Debtors routinely request reversals of, or changes to, various Medicare and Medi-Cal policies that impact payment, such as hospital "disproportionate share" payment calculations. These so-called "appeals" may be made by individual Debtor hospitals alone or, more likely, as part of a national group of hospitals. If successful, the Debtors may realize additional revenue but outcomes related to such appeals are speculative.

   In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with their payors and vendors. Additionally, certain of the Debtors may be party to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff and/or as a plaintiff or putative plaintiff in class action lawsuits, or counter-claims and/or cross-claims as a defendant. Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

i.   **Schedule D - Creditors Who Have Claims Secured by Property**. Except as otherwise set forth in any stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D. Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

As more fully set forth and described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 10], as of the Petition Date, the MPT Prepetition Obligations, which include all amounts due and owing under the MPT Prepetition Transaction Documents and Lease, totaled no less than $40,132,813 and were secured by liens on substantially all of the Debtors' assets. Accordingly, the Debtors have not separately identified the obligations due to the MPT Lessor in Schedule D. Capitalized terms used in this paragraph shall have the meaning set forth in the DIP Motion.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

j.   **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*. Pursuant to the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, and Other Compensation, and (B) Pay and Honor Benefits and Other Workforce Obligations; (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing; and (III) Granting Related Relief* [Docket No. 185], the Debtors received final authority to pay certain prepetition obligations, including to pay compensation and benefits to their workforce

8

in the ordinary course of business. To the extent that the Debtors made the aforementioned payments, the respective employee claims are not listed in Schedule E/F.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims***. The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on each individual Debtors' books and records. All of the known Schedule E/F, Part 2 liabilities as of the Petition Date are listed on Schedule E/F, Part 2.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F, Part 2, contains liabilities associated with employees' paid time off that was accrued but unpaid prior to the Petition Date. Such amounts are included as reflected in the Debtors' books and records as of November 30, 2021.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases

As of the time of filing of the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights to amend Schedules D and E/F if and as they receive such invoices.

*Refund Claims*: As part of the Debtors' normal business operations, insurance companies and other payors (including patients) from time to time overpay amounts due to the Debtors. Only the estimated amount of such overpayments are recorded in the Debtors' accounting records because determination of the exact amount of the overpayments is a time-consuming, manual process. The Debtors only calculate the exact amount of the insurance company overpayments if and when the payor requests a refund.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

k. **Schedule G - Executory Contracts and Unexpired Leases**. While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements, amendments, and letter agreements, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in an individual Debtor's Schedule G. Multiple listings, if any, may reflect distinct agreements between the applicable Debtor and such supplier or provider. In addition, in some cases, an agreement may appear on the Schedule G of more than one Debtor, in which event each such Debtor may be party to said agreement.

Certain agreements may, by their terms, have been made between one Debtor and a third-party counterparty but performed under in the ordinary course by a different Debtor or by CHP. In such case, the agreement is listed in the Schedule G of the Debtor that appears on the face of such agreement. Omission of such agreement from the Schedule G of another Debtor does not constitute an admission that such Debtor does not have rights and/or obligations under such agreement or that the Debtor counterparty to such agreement is the Debtor on whose Schedule G such agreement is listed. In addition, certain agreements may, by their terms, have been made between CHP and a third-party counterparty, but performed in the ordinary course by a Debtor pursuant to the CHP Management Agreement. In such case, the agreement is not listed in any Debtor's Schedule G.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

l.   **Schedules E/F and H (Watsonville Hospital Management, LLC).**   As noted in paragraph 5(o), under the CHP Management Agreement, WHM remits payments to CHP's creditors on CHP's behalf.  In that respect, all payables on WHM's books and records (with the exception of amounts due to WHM's employees) are solely CHP's and, accordingly, do not appear on Schedule E/F.

7.   **Specific Statements Disclosures.**

a.   **Statements; Part 2; #3 (Watsonville Hospital Corporation).**   As described in the Cash Management Motion, the Debtors utilize a centralized Cash Management System, which includes certain bank accounts held in the name of non-operating Debtor Watsonville Hospital Holdings, Inc. ("WHH") but that are included in the books and records of operating Debtor WHC. Those bank accounts are reflected in the Schedules of WHH, however certain of the payments listed in response to WHC's SOFA #3 were made from such accounts and accordingly appear in WHC's books and records.

b.   **Statements; Part 2; #3 (Watsonville Hospital Management, LLC).**   Further to paragraph 5(o) above, all payments listed in response to WHM's SOFA #3, though made from a bank account in WHM's name, were made on behalf of CHP to satisfy CHP's obligations and are included in the Statements in the interest of full disclosure.

c.   **Statements; Part 2; # 6.**   For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 5(n) of these Global Notes.

d.   **Statements; Part 2; #3, 4, 30.**   On September 27, 2021, Jeremy Rosenthal received an erroneous payment from the Debtors for $25,000 which was immediately wired back to the Debtors on October 1, 2021.  Accordingly, such payment is not reflected in the Statements.

e.   **Statements, Part 2, # 4 and Part 13, # 30.**   Distributions by the Debtors to their directors and officers are listed on the attachment to Question 4.  Certain of the Debtors' executive officers received payments net of tax withholdings in the year preceding the Petition Date.  The amounts listed under Questions 4 and 30 reflect the gross amounts paid to such executive officers, rather than the net amounts after deducting for tax withholdings.  Intercompany transfers between Debtors are not reflected in response to Question 4.

f.   **Statements; Part 6; # 11.**   All payments related to bankruptcy were made by Debtor WHH on behalf of itself and its Debtor affiliates and are reflected solely in WHH's response.

g.   **Statements; Part 7; # 14.**   Addresses for ancillary facilities, such as storage facilities, are not included in this response.

h.   **Statements; Part 11; #21.**   As described in further detail in the Cash Management Motion, non-Debtor CHP's revenues are swept into the Debtors' Concentration Account (as defined in the Cash Management Motion), but remain CHP's property.

Through the Debtors' cash management system, such amounts are used to pay CHP's expenses pursuant to the CHP Management Agreement. In addition, certain Debtors hold other Debtors' cash in bank accounts as a result of the operation of the Cash Management System.

i. **Statements; Part 13; #28.** As explained in the First Day Declaration, 100% of Debtor Halsen Healthcare, LLC's membership interests are held by non-Debtor Halsen Holdings, LLC ("Halsen Holdings"). Pursuant to the Proxy Exercise (as defined and discussed in the First Day Declaration), the Former Managers (affiliated with Halsen Holdings) were removed and replaced with independent directors and managers, as applicable.

DOCS_DE:232405

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 21-51477 |
| WATSONVILLE HOSPITAL CORPORATION, *et al.*, | Chapter 11 |
| Debtors.[1] | Jointly Administered |

**STATEMENT OF FINANCIAL AFFAIRS FOR
WATSONVILLE HEALTHCARE MANAGEMENT, LLC
(CASE NO. 21-51478)**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

**Fill in this information to identify the case:**

Debtor name: Watsonville Healthcare Management, LLC

United States Bankruptcy Court for the: Northern District of California, San Jose

Case number: 21-51478

☐ Check if this is an amended filing

## Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/19

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).

**Part 1:** **Income**

**1. Gross revenue from business**

☑ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:** From 1/1/2021 to Filing Date | ☑ Operating a business<br>☐ Other | _____ |
| **For prior year:** From 1/1/2020 to 12/31/2020 | ☑ Operating a business<br>☐ Other | _____ |
| **For the year before that:** From 1/1/2019 to 12/31/2019 | ☑ Operating a business<br>☐ Other | _____ |

**2. Non-business revenue**

Include revenue regardless of whether that revenue is taxable. Non-business income may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

| | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
|---|---|---|
| **From the beginning of the fiscal year to filing date:** From 1/1/2019 to Filing Date | _____ | _____ |
| **For prior year:** From 1/1/2019 to 12/31/2020 | _____ | _____ |
| **For the year before that:** From 1/1/2019 to 12/31/2019 | _____ | _____ |

Debtor    Watsonville Healthcare Management, LLC
     Name
     Case number *(if known)* 21-51478

## Part 2:    List Certain Transfers Made Before Filing for Bankruptcy

### 3. Certain payments or transfers to creditors within 90 days before filing this case

List payments or transfers - including expense reimbursements - to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☐ None

| Creditor's name and address | Dates | Total amount or value | Reasons for payment or transfer<br>Check all that apply |
|---|---|---|---|
| 3.1<br><br>See Attached SOFA 3 Exhibit | | $242,638.39 | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other |

### 4. Payments or other transfers of property made within 1 year before filing this case that benefited any insider

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

☑ None

| Insider's name and address | Dates | Total amount or value | Reasons for payment or transfer |
|---|---|---|---|
| 4.1<br><br>Relationship to debtor | | | ☐ Secured debt<br>☐ Unsecured loan repayments<br>☐ Suppliers or vendors<br>☐ Services<br>☐ Other |

### 5. Repossessions, foreclosures, and returns

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.
Do not include property listed in line 6.

☑ None

| Creditor's name and address | Description of the property | Date | Value of property |
|---|---|---|---|
| 5.1 | | | |

### 6. Setoffs

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| 6.1<br><br> | Last 4 digits of account number | | |

| **Part 3:** | **Legal Actions or Assignments** |
| --- | --- |

---

**7. Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

☑ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
| --- | --- | --- | --- |
| 7.1     **Name** _____ <br><br> **Case number** _____ | _____ | Name _____ <br><br> Street _____ <br><br> City _____ State ____ Zip _____ | ☐ Pending <br> ☐ On appeal <br> ☐ Concluded |

**8. Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

| Custodian's name and address | Description of the property | Value |
| --- | --- | --- |
| 8.1   Custodian's name and address <br> _____ <br> Street _____ <br> City _____ State ___ Zip ___ | Case title _____ <br><br> Case number _____ <br><br> Date of order or assignment _____ | Court name and address <br> Name _____ <br> Street _____ <br> City _____ State ___ Zip ___ |

| **Part 4:** | **Certain Gifts and Charitable Contributions** |
| --- | --- |

---

**9. List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

☑ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
| --- | --- | --- | --- |
| 9.1   Recipient's name <br> _____ <br> Street _____ <br> City _____ State ___ Zip ___ <br><br> **Recipient's relationship to debtor** <br> _____ | _____ | _____ | _____ |

## Part 5:   Losses

**10. All losses from fire, theft, or other casualty within 1 year before filing this case**

☑ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received. List unpaid claims on Official Form 106A/B (Schedule A/B: Assets – Real and Personal Property). | Date of loss | Value of property lost |
|---|---|---|---|
| 10.1 | | | |

## Part 6:   Certain Payments or Transfers

**11. Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☑ None

| Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|
| 11.1 | | | |
| _____<br>Email or website address<br>_____<br>Who made the payment, if not debtor?<br>_____ | | | |

**12. Self-settled trusts of which the debtor is a beneficiary**

List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.

Do not include transfers already listed on this statement.

☑ None

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|
| 12.1 | | | |
| _____<br>Trustee | | | |

**13. Transfers not already listed on this statement**

List any transfers of money or other property☐by sale, trade, or any other means☐made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

| Who received transfer? | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|
| 13.1 | | | |
| _____<br>Relationship to debtor | | | |

| Part 7: | Previous Locations |
|---|---|

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

| Address | Dates of occupancy |
|---|---|

14.1

| Street | | | | From | | to | |
|---|---|---|---|---|---|---|---|
| City | | State | Zip | | | | |

| Part 8: | Health Care Bankruptcies |
|---|---|

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

☐ diagnosing or treating injury, deformity, or disease, or

☐ providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to part 9.

☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

15.1

| Street | | | | | | | |
|---|---|---|---|---|---|---|---|
| City | | State | Zip | **Location where patient records are maintained** (if different from facility address). If electronic, identify any service provider | | **How are records kept?** Check all that apply: ☐ Electronically ☐ Paper | |

| Part 9: | Personally Identifiable Information |
|---|---|

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.

☐ Yes. State the nature of the information collected and retained. _____

       Does the debtor have a privacy policy about that information?

         ☐ No

         ☐ Yes

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☐ No. Go to Part 10.

☑ Yes. Does the debtor serve as plan administrator?

     ☑ No. Go to Part 10.

     ☐ Yes. Fill in below:

     **Name of plan**                        **Employer identification number of the plan**

     Has the plan been terminated?

     ☑ No

     ☐ Yes

---

**Part 10:    Certain Financial Accounts, Safe Deposit Boxes, and Storage Units**

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred? Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

| Financial institution name and address | Last 4 digits of account number | Type of account | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| 18.1 <br><br> Name <br><br> Street <br><br> City   State   Zip | _____ | ☐ Checking <br> ☐ Savings <br> ☐ Money market <br> ☐ Brokerage <br> ☐ Other <br><br> _____ | _____ | _____ |

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

| Depository institution name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| 19.1 <br><br> Name <br><br> Street <br><br> City   State   Zip | Address | | ☐ No <br> ☐ Yes |

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Does debtor still have it? |
|---|---|---|---|
| 20.1 Name _____ Street _____ City ___ State ___ Zip ___ | Address _____ | _____ | ☐ No ☐ Yes |

## Part 11: Property the Debtor Holds or Controls that the Debtor Does Not Own

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property

☐ None

| Owner's name and address | Location of the property | Description of the property | Value |
|---|---|---|---|
| 21.1 See Global Notes for Details | _____ | _____ | _____ |

## Part 12: Details About Environmental Information

**For the purpose of Part 12, the following definitions apply:**

- *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

- *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

- *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?** Include settlements and orders

☑ No.

☐ Yes. Provide details below.

| Case title | Court or agency name and address | Nature of the case | Status of case |
|---|---|---|---|
| 22.1 Case Number _____ | Name _____ Street _____ City ___ State ___ Zip ___ | _____ | ☐ Pending ☐ On appeal ☐ Concluded |

Debtor __Watsonville Healthcare Management, LLC__    Name     Case number *(if known)* __21-51478__

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| 23.1 Name<br><br>Street<br><br>City   State   Zip | Name<br><br>Street<br><br>City   State   Zip | | |

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|
| 24.1 Name<br><br>Street<br><br>City   State   Zip | Name<br><br>Street<br><br>City   State   Zip | | |

**Part 13:** **Details About the Debtor's Business or Connections to Any Business**

**25. Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

| Business name and address | Describe the nature of the business | Employer Identification number<br>Do not include Social Security number or ITIN. |
|---|---|---|
| 25.1 | | EIN<br><br>**Dates business existed**<br>From     to |

**26. Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|
| 26a.1    Don Kreitz<br>3415 S Sepulveda Blvd, 9th Floor<br>Culver City, CA 90034 | From    to<br>1/22/2021    6/30/2021 |
| 26a.2    Edward King<br>5351 N Eagles View Drive<br>Lehi, UT 84043 | From    to<br>10/1/2019    2/1/2021 |

26a.3

Julia White
75 Nielson St
Watsonville, CA 95076

| From | to |
|---|---|
| 2/10/2020 | Present |

26a.4

Kyle Kim
3415 S Sepulveda Blvd, 9th Floor
Culver City, CA 90034

| From | to |
|---|---|
| 2/1/2021 | 9/20/2021 |

26a.5

Louis Jarrell
75 Nielson St
Watsonville, CA 95076

| From | to |
|---|---|
| 10/1/2019 | 8/31/2020 |

26a.6

Sumer Sharma
75 Nielson St
Watsonville, CA 95076

| From | to |
|---|---|
| 9/20/2021 | Present |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

| Name and address | Dates of service |
|---|---|

26b.1

Moss Adams
2040 Main Street
Irvine, CA 92614

| From | to |
|---|---|
| 10/1/2019 | Present |

26b.2

Alta Hospitals System LLC
3415 South Sepulveda Blvd
9th Floor
Los Angeles, CA 90034

| From | to |
|---|---|
| 10/1/2019 | Present |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case was filed.

☑ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26c.1

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

| Name and address |
|---|

26d.1

CNH Finance Fund 1, LP
6151 Wilson Mills Road
Suite 310
Highland Heights, OH 44143

26d.2

Guidehouse Managed Services Inc.
4511 Paysphere Circle
Chicago, IL 60674

26d.3

Mazuma Capital Corp
274 West 12300 South
Draper, UT 84020

26d.4

MPT of Watsonville Lender LLC
c/o MPT Operating Partnership, L.P.
1000 Urban Center Drive
Suite 501
Birmingham, AL 35242

26d.5

MPT of Watsonville Lender LLC
c/o MPT Operating Partnership, L.P.
1000 Urban Center Drive
Suite 501
Birmingham, AL 35242

26d.6

Owen's & Minor
PO Box 53523
Los Angeles, CA 90074

26d.7

Philips Medical Capital, LLC
1111 Old Eagle School Road
Wayne, PA 19087

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No

☐ Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name and Address | Position and nature of any interest | % of interest, if any |
|---|---|---|
| 28.1 Dave Gordon 21 Saint Maxime Laguna Nigel, CA 92677 | Independent Director | 0.0% |
| 28.2 Frank Williams 40 Brookridge Dr Greenwich, CT 06830 | Independent Director | 0.0% |

| 28.3 | | | |
|---|---|---|---|
| | Jennifer West<br>6111 Hart Glen<br>San Antonio, TX 78249 | Chief Nursing Officer | 0.0% |

| 28.4 | | | |
|---|---|---|---|
| | Jeremy Rosenthal<br>147 South Fairfax Ave, Suite 200<br>Los Angeles, CA 90036 | Chief Restructuring Officer | 0.0% |

| 28.5 | | | |
|---|---|---|---|
| | Matko Vranjes<br>75 Nielson St.<br>Watsonville, CA 95076 | Chief Operating Officer | 0.0% |

| 28.6 | | | |
|---|---|---|---|
| | Steven Salyer<br>75 Nielson St.<br>Watsonville, CA 95076 | Chief Executive Officer | 0.0% |

| 28.7 | | | |
|---|---|---|---|
| | Sumer Sharma<br>75 Nielson St.<br>Watsonville, CA 95076 | Chief Financial Officer | 0.0% |

| 28.8 | | | |
|---|---|---|---|
| | Watsonville Hospital Holdings, Inc.<br>75 Nielson St.<br>Watsonville, CA 95076 | Member | 100% |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No

☑ Yes. Identify below.

| Name and Address | Position and nature of any interest | Period during which position or interest was held | |
|---|---|---|---|
| 29.1 | | | |
| Bruce Grimshaw<br>3415 S Sepulveda Blvd, 9th Floor<br>Culver City, CA 90034 | Chief Executive Officer | From<br>1/18/2021 | to<br>7/6/2021 |
| 29.2 | | | |
| Daniel Brothman<br>1872 Sharon Lane<br>Santa Ana, CA 92705-5910 | Chairman | From<br>10/1/2019 | to<br>2/10/2021 |
| 29.3 | | | |
| Don Kreitz<br>3415 S Sepulveda Blvd, 9th Floor<br>Culver City, CA 90034 | Chief Financial Officer, Treasurer and Secretary | From<br>1/22/2021 | to<br>6/30/2021 |

29.4

Edward King
5351 N Eagles View Drive
Lehi, UT 84043

Chief Financial Officer

| From | to |
|------|----|
| 10/1/2019 | 2/10/2021 |

29.5

Jeremy Rosenthal
147 South Fairfax Ave, Suite 200
Los Angeles, CA 90036

Independent Member

| From | to |
|------|----|
| 1/11/2021 | 9/7/2021 |

29.6

Kyle Kim
3415 S Sepulveda Blvd, 9th Floor
Culver City, CA 90034

Chief Financial Officer

| From | to |
|------|----|
| 2/1/2021 | 9/20/2021 |

29.7

Mary Straley
1023 Escalona Drive
Santa Cruz, CA 95060

Chief Nursing Officer

| From | to |
|------|----|
| 10/1/2019 | 1/25/2021 |

29.8

Paulette Heitmeyer
8851 Cliffside Drive
Huntington Beach, CA 92646

Chief Nursing Officer

| From | to |
|------|----|
| 1/25/2021 | 8/1/2021 |

29.9

Sean Fowler
24 Cayman Ct
Manhattan Beach, CA 90266

Chief Executive Officer

| From | to |
|------|----|
| 10/1/2019 | 2/10/2021 |

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No

☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
|---|---|---|---|
| 30.1 | | | |
| **Relationship To Debtor** | | | |

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No

☑ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
|---|---|
| 31.1    Watsonville Hospital Holdings Inc. | EIN    84-1941118 |

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the pension fund |
|---|---|
| 32.1 | EIN |

**Fill in this information to identify the case:**

Debtor name: Watsonville Healthcare Management, LLC

United States Bankruptcy Court for the: Northern District of California, San Jose

Case number: 21-51478

☐ Check if this is an amended filing

**WARNING** - Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on
01/19/2022

_____

Signature of individual signing on behalf of debtor

Chief Restructuring Officer
_____
Position or relationship to debtor

Jeremy Rosenthal
_____
Printed name

**Are additional pages to Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy (Official Form 207) attached?**

☐ No
☑ Yes

| | Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Payment Date | Payment Amount | Reason for Payment or Transfer |
|---|---|---|---|---|---|---|---|---|---|
| 3.1 | ABBVIE INC | 12207 COLLECTIONS CENTER | | CHICAGO | IL | 60693-0000 | 09/20/21 | $2,304.00 | Supplies or vendors |
| 3.2 | ABBVIE INC | 12207 COLLECTIONS CENTER | | CHICAGO | IL | 60693-0000 | 10/12/21 | $3,072.00 | Supplies or vendors |
| 3.3 | ABBVIE INC | 12207 COLLECTIONS CENTER | | CHICAGO | IL | 60693-0000 | 11/17/21 | $2,688.00 | Supplies or vendors |
| 3.4 | ABBVIE INC | 12207 COLLECTIONS CENTER | | CHICAGO | IL | 60693-0000 | 11/22/21 | $3,456.00 | Supplies or vendors |
| | | | | | | | | **$11,520.00** | |
| 3.5 | ATHENAHEALTH, INC | PO BOX 415615 | | BOSTON | MA | 02241-0000 | 09/27/21 | $13,557.11 | Supplies or vendors |
| 3.6 | ATHENAHEALTH, INC | PO BOX 415615 | | BOSTON | MA | 02241-0000 | 10/04/21 | $13,608.97 | Supplies or vendors |
| 3.7 | ATHENAHEALTH, INC | PO BOX 415615 | | BOSTON | MA | 02241-0000 | 10/28/21 | $15,302.73 | Supplies or vendors |
| 3.8 | ATHENAHEALTH, INC | PO BOX 415615 | | BOSTON | MA | 02241-0000 | 11/17/21 | $13,338.96 | Supplies or vendors |
| | | | | | | | | **$55,807.77** | |
| 3.9 | DIABLO INFECTIOUS DISEASES | 3509 PORTOLA DRIVE | | SANTA CRUZ | CA | 95062-0000 | 09/07/21 | $11,400.00 | Supplies or vendors |
| 3.10 | DIABLO INFECTIOUS DISEASES | 3509 PORTOLA DRIVE | | SANTA CRUZ | CA | 95062-0000 | 09/14/21 | $10,700.00 | Supplies or vendors |
| 3.11 | DIABLO INFECTIOUS DISEASES | 3509 PORTOLA DRIVE | | SANTA CRUZ | CA | 95062-0000 | 09/20/21 | $9,900.00 | Supplies or vendors |
| 3.12 | DIABLO INFECTIOUS DISEASES | 3509 PORTOLA DRIVE | | SANTA CRUZ | CA | 95062-0000 | 09/27/21 | $11,300.00 | Supplies or vendors |
| 3.13 | DIABLO INFECTIOUS DISEASES | 3509 PORTOLA DRIVE | | SANTA CRUZ | CA | 95062-0000 | 10/12/21 | $11,500.00 | Supplies or vendors |
| 3.14 | DIABLO INFECTIOUS DISEASES | 3509 PORTOLA DRIVE | | SANTA CRUZ | CA | 95062-0000 | 11/11/21 | $12,100.00 | Supplies or vendors |
| | | | | | | | | **$66,900.00** | |
| 3.15 | FOLEY & LARDNER, LLP. | 555 SOUTH FLOWER ST | STE 3300 | LOS ANGELES | CA | 90071-0000 | 10/28/21 | $5,000.00 | Supplies or vendors |
| 3.16 | FOLEY & LARDNER, LLP. | 555 SOUTH FLOWER ST | STE 3300 | LOS ANGELES | CA | 90071-0000 | 11/11/21 | $2,500.00 | Supplies or vendors |
| 3.17 | FOLEY & LARDNER, LLP. | 555 SOUTH FLOWER ST | STE 3300 | LOS ANGELES | CA | 90071-0000 | 11/22/21 | $2,500.00 | Supplies or vendors |
| | | | | | | | | **$10,000.00** | |
| 3.18 | HOSPICE OF SANTA CRUZ COUNTY | 940 DISC DRIVE | | SCOTTS VALLEY | CA | 95066-0000 | 11/30/21 | $11,970.00 | Supplies or vendors |
| | | | | | | | | **$11,970.00** | |
| 3.19 | LABORIE MEDICAL TECH CORP | PO BOX 734615 | | CHICAGO | IL | 60673-0000 | 09/07/21 | $3,039.10 | Supplies or vendors |
| 3.20 | LABORIE MEDICAL TECH CORP | PO BOX 734615 | | CHICAGO | IL | 60673-0000 | 09/27/21 | $3,025.06 | Supplies or vendors |
| 3.21 | LABORIE MEDICAL TECH CORP | PO BOX 734615 | | CHICAGO | IL | 60673-0000 | 10/04/21 | $4,245.14 | Supplies or vendors |
| | | | | | | | | **$10,309.30** | |
| 3.22 | MARIO COLE, MD | 3 LAUREL DRIVE | | CARMEL VALLEY | CA | 93924-0000 | 09/27/21 | $7,297.21 | Supplies or vendors |
| 3.23 | MARIO COLE, MD | 3 LAUREL DRIVE | | CARMEL VALLEY | CA | 93924-0000 | 10/12/21 | $4,723.40 | Supplies or vendors |
| 3.24 | MARIO COLE, MD | 3 LAUREL DRIVE | | CARMEL VALLEY | CA | 93924-0000 | 11/11/21 | $8,526.66 | Supplies or vendors |
| 3.25 | MARIO COLE, MD | 3 LAUREL DRIVE | | CARMEL VALLEY | CA | 93924-0000 | 11/30/21 | $8,280.35 | Supplies or vendors |
| | | | | | | | | **$28,827.62** | |
| 3.26 | NEVEN DEVELOPMENT LLC | 23 C AIRPORT BLVD | | FREEDOM | CA | 95019-0000 | 09/20/21 | $7,382.00 | Supplies or vendors |
| 3.27 | NEVEN DEVELOPMENT LLC | 23 C AIRPORT BLVD | | FREEDOM | CA | 95019-0000 | 11/04/21 | $7,382.00 | Supplies or vendors |
| | | | | | | | | **$14,764.00** | |
| 3.28 | THE DOCTOR'S COMPANY | 1955 PAJARO LANE APT 222 | | FREEDOM | CA | 95019-0000 | 11/11/21 | $4,000.00 | Supplies or vendors |
| 3.29 | THE DOCTOR'S COMPANY | 1955 PAJARO LANE APT 222 | | FREEDOM | CA | 95019-0000 | 12/02/21 | $11,264.30 | Supplies or vendors |
| | | | | | | | | **$15,264.30** | |
| 3.30 | TRAVELERS | PO BOX 660317 | | DALLAS | TX | 75266-0317 | 10/12/21 | $6,343.30 | Supplies or vendors |
| 3.31 | TRAVELERS | PO BOX 660317 | | DALLAS | TX | 75266-0317 | 11/02/21 | $5,600.90 | Supplies or vendors |
| 3.32 | TRAVELERS | PO BOX 660317 | | DALLAS | TX | 75266-0317 | 11/22/21 | $5,331.20 | Supplies or vendors |
| | | | | | | | | **$17,275.40** | |

In re: Watsonville Healthcare Management, LLC
Case No. 21-51478