1  Debra I. Grassgreen (CA Bar No. 169978)
   Maxim B. Litvak (CA Bar No. 215852)
2  Steven W. Golden (admitted *pro hac vice*)
   PACHULSKI STANG ZIEHL & JONES LLP
3  One Market Plaza, Spear Tower, 40th Floor
   San Francisco, CA  94105-1020
4  Telephone:    415.263.7000
   Facsimile:    415.263.7010
5  E-mail:       dgrassgreen@pszjlaw.com
                 mlitvak@pszjlaw.com
6                sgolden@pszjlaw.com

7  Attorneys for Debtors and Debtors in Possession

8              **UNITED STATES BANKRUPTCY COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN JOSE DIVISION**

11 In re:                                Case No. 21-51477 (MEH)

12 WATSONVILLE HOSPITAL                  Chapter 11
   CORPORATION, *et al.*,
13                                        **GLOBAL NOTES AND STATEMENT OF**
                          Debtors.[1]     **LIMITATIONS, METHODOLOGY, AND**
14                                        **DISCLAIMERS REGARDING THE**
                                          **DEBTORS' SCHEDULES OF ASSETS**
15                                        **AND LIABILITIES AND STATEMENTS**
                                          **OF FINANCIAL AFFAIRS**
16

17         Watsonville Hospital Corporation, and certain of its affiliates, as debtors and debtors in
18  possession in the above-captioned chapter 11 cases (the "Debtors"), have filed their respective
    Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the
19  "Statements") in the United States Bankruptcy Court for the Northern District of California, San Jose
    Division (the "Bankruptcy Court").  The Debtors, with the assistance of their Chief Restructuring
20  Officer ("CRO"), prepared the Schedules and Statements in accordance with section 521 of chapter
    11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules
21  of Bankruptcy Procedure.

22         Jeremy Rosenthal has signed each set of the Schedules and Statements.  Mr. Rosenthal serves
    as the CRO of the Debtors.  In reviewing and signing the Schedules and Statements, Mr. Rosenthal
23  has necessarily relied upon the efforts, statements, and representations of the Debtors' personnel and
    professionals.  Given the scale of the Debtors' business and complexity of the Debtors' financial affairs
24  covered by the Schedules and Statements, Mr. Rosenthal has not (and could not have) personally
    verified the accuracy of each such statement and representation, including statements and
25  representations concerning amounts owed to creditors.

26
27  ---
    [1] The Debtors in these cases, along with the last four digits of each Debtors' federal tax identification number,
    are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville
28  Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson
    Street, Watsonville, CA 95076.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. In particular, the Debtors note that they have limited ability to access and assess information related to Watsonville Hospital Corporation ("WHC") and Watsonville Hospital Management, LLC ("WHM") prior to the Quorum Acquisition.[2] Although the Debtors have made every reasonable effort to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve their rights to amend and supplement the Schedules and Statements as may be necessary or appropriate.

The Debtors and their CRO, agents, and attorneys do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and shall not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein. While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist. The Debtors and their CRO, agents, and attorneys expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or re-categorized, except as required by applicable law. In no event shall the Debtors or their officers, employees, agents, or professionals be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtors or their officers, employees, agents, attorneys, or their professionals are advised of the possibility of such damages.

## Global Notes and Overview of Methodology

1. **Description of Cases**. On December 5, 2021, (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On December 6, 2021, an order was entered directing procedural consolidation and joint administration of these chapter 11 cases [Docket No. 24]. Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedules and Statements. The information provided herein, except as otherwise noted, is reported as of the Petition Date.

2. **Global Notes Control**. These Global Notes pertain to and comprise an integral part of each of the Debtors' Schedules and Statements and should be referenced in connection with any review thereof. In the event that the Schedules and Statements conflict these Global Notes, these Global Notes shall control.

3. **Confidentiality**. Specific disclosure of certain claims, names, addresses, or amounts may be subject to certain disclosure restrictions contained in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), or otherwise, and in any event, are of a particularly personal and private nature. To the extent the Debtors believe a claim, name, address, or amount falls under the purview of HIPAA, such claims, name, address, or amount (as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the *Declaration of Jeremy Rosenthal, Chief Restructuring Officer, in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 17] (the "First Day Declaration").

2

applicable) is not included in these Schedules and Statements, or is included in these Schedules and Statements in a redacted form.

4. **Reservations and Limitations**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, as noted above, inadvertent errors or omissions may exist. The Debtors reserve all rights to amend and supplement the Schedules and Statements as may be necessary or appropriate. Nothing contained in the Schedules and Statements constitutes a waiver of any of the Debtors' rights or an admission of any kind with respect to these chapter 11 cases, including, but not limited to, any rights or claims of the Debtors against any third party or issues involving substantive consolidation, equitable subordination, or defenses or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable bankruptcy or non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation of rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

a. **No Admission**. Nothing contained in the Schedules and Statements is intended or should be construed as an admission or stipulation of the validity of any claim against the Debtors, any assertion made therein or herein, or a waiver of the Debtors' rights to dispute any claim or assert any cause of action or defense against any party.

b. **Recharacterization**. Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

c. **Classifications**. Listing (i) a claim on Schedule D as "secured," (ii) a claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to recharacterize or reclassify such claim or contract.

d. **Claims Description**. Any failure to designate a claim on a given Debtor's Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve all rights to dispute, or assert offsets or defenses to, any claim reflected on their respective Schedules and Statements on any grounds, including, without limitation, liability or classification, or to otherwise subsequently designate such claims as "disputed," "contingent," or "unliquidated" or object to the extent, validity, enforceability, priority, or avoidability of any claim. Moreover, listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or by any of the Debtors. The Debtors reserve all rights to amend their Schedules and Statements as necessary and appropriate, including, but not limited to, with respect to claim description and designation.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3

DOCS_DE:237497.7

e. **Estimates and Assumptions**. The preparation of the Schedules and Statements required the Debtors to make reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities, the amount of contingent assets and contingent liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods. Actual results could differ from such estimates.

f. **Intellectual Property Rights**. Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

g. **Insiders**. The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for the purposes of determining control of the Debtors, the extent to which any individual exercised management responsibilities or functions, corporate decision-making authority over the Debtors, or whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or any other purpose.

h. **Unknown Addresses**. The Debtors have made and continue to make their best efforts to collect all addresses for all parties in interest; not all addresses for parties on these Schedules and Statements have been obtained. The Debtors continue to pursue complete notice information and will provide updated information as reasonably practicable.

5. **Methodology**.

a. **Basis of Presentation**. The Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of each Debtor. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment. The Schedules and Statements reflect the Debtors' reasonable efforts to report the assets and liabilities of each Debtor on an unconsolidated basis except as noted on the applicable Schedules/Statements or herein.

b. **Duplication**. Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Statements and Schedules. To the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

4

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

c.     **Net Book Value**.  In certain instances, current market valuations for individual items of property and other assets are neither maintained by, nor readily available to, the Debtors.   Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect estimates of net book values as of the Petition Date.  Market values may vary materially, from net book values.  It would be prohibitively expensive, unduly burdensome, and an inefficient use of estate assets for the Debtors to obtain the current market values of all their property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined.  Amounts ultimately realized may vary materially from net book value (or whatever value was ascribed).  Accordingly, the Debtors reserve all rights to amend, supplement or adjust the asset values set forth herein.  Also, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value.

d.     **Property and Equipment**.   Unless otherwise indicated, owned property and equipment are valued at net book value.  The Debtors may lease furniture, fixtures, and equipment from certain third-party lessors.  To the extent possible, any such leases are listed in the Schedules and Statements.  Nothing in the Schedules and Statements is, or should be construed as, an admission as to the determination of the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect thereto.

e.     **Allocation of Liabilities**.  The Debtors allocated liabilities between the prepetition and postpetition periods based on the information and research conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between the prepetition and postpetition periods may change.

f.     **Undetermined Amounts**.  The description of an amount as "unknown" is not intended to reflect upon the materiality of such amount.

g.     **Unliquidated Amounts**.  Amounts that could not be fairly quantified by the Debtors are scheduled as "unliquidated" or "unknown."

h.     **Totals**.  All totals that are included in the Schedules and Statements represent totals of all known amounts.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

i.     **Intercompany Claims**.  Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records.  The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission of the characterization of such balances as debt, equity, or otherwise.  These claims are subject to reconciliation and the amounts listed may be materially misstated and subject to material adjustment upon the conclusion of a reconciliation. Intercompany claims are scheduled as the net amount owed between the two Debtors after taking into account each Debtors' books and records.

5

DOCS_DE:237447.7

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

j.    **Guarantees and Other Secondary Liability Claims**.  The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, secured financings, and other such agreements.  Where guarantees have been identified, they have been included in the relevant Schedule G with respect to leases and Schedule H with respect to credit agreements for the affected Debtor or Debtors.  The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements.  The Debtors reserve their rights to amend the Schedules and Statements if additional guarantees are identified.

k.    **Excluded Assets and Liabilities**.  The Debtors have excluded the following categories of assets and liabilities from the Schedules and Statements: certain deferred rent charges, accounts, or reserves recorded only for purposes of complying with the requirements of GAAP; and certain accrued liabilities including, but not limited to, employee benefits.   Other immaterial assets and liabilities may also have been excluded.

l.    **Liens**.  The inventories, property, and equipment listed in the Schedules and Statements are presented without consideration of any liens.

m.    **Currency**.  Unless otherwise indicated, all amounts are reflected in U.S. dollars.

n.    **Setoffs**.  The Debtors incur setoffs and net payments in the ordinary course of business.  Such setoffs and nettings may occur due to a variety of transactions or disputes including, but not limited to, intercompany transactions, counterparty settlements, deposits received from customer, and amounts due from customers that may also be vendors.  These normal, ordinary course setoffs and nettings are due to the nature of the Debtors customer and supplier relationships.  Such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary course setoffs are not independently accounted for, and as such, are or may be excluded from the Debtors' Schedules and Statements.  In addition, some amounts listed in the Schedules and Statements may have been affected by setoffs or nettings by third parties of which the Debtors are not yet aware.  The Debtors reserve all rights to challenge any setoff and/or recoupment rights that may be asserted.

o.    **Cash Management System**.  Details with respect to the Debtors' cash management system and bank accounts are provided in the *Motion for Entry of Interim and Final Orders (I) Authorizing Maintenance of Existing Bank Accounts; (II) Authorizing Continuance of Existing Cash Management System; (III) Granting Limited Waiver of Section 345(b) Deposit Requirements; and (IV) Granting Related Relief* [Docket No. 14] (the "Cash Management Motion") and any orders of the Bankruptcy Court granting the Cash Management Motion.

As described in the Cash Management Motion, Debtor WHM serves as a management services organization for non-Debtor Coastal Health Partners, P.C. ("CHP").  In that capacity, and pursuant to the CHP Management Agreement (as defined in the Cash Management Motion), CHP's revenues are swept into the Debtors' bank accounts and

WHM remits all of CHP's salary and expense payments out of the Debtors' bank accounts on CHP's behalf and primarily using CHP's property.

6. **Specific Schedules Disclosures**.

a. **Schedule A/B; Part 2**. The Bankruptcy Court, pursuant to the *Final Order Pursuant to 11 U.S.C. §§ 366 and 105(a): (I) Approving Debtors' Proposed Form of Adequate Assurance of Payment to Utility Providers, (II) Establishing Procedures Providing Adequate Assurance and Resolving Objections of Utility Providers, and (III) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Utility Service* [Docket No. 165], has authorized the Debtors to provide adequate assurance of payment for future utility services. Such deposits are not listed on Schedule A/B, Part 2, which has been prepared as of the Petition Date.

b. **Schedule A/B; Part 2; #8.** Amounts are as reflected in the Debtors' books and records as of November 30, 2021.

c. **Schedule A/B; Part 4; #15.** Ownership interests in subsidiaries have been listed in Schedule A/B, Part 4, as undetermined amounts on account of the fact that the fair market value of such ownership is dependent on numerous variables and factors, and may differ significantly from their net book value.

d. **Schedule A/B; Part 5; #22.** Amounts are as reflected in the Debtors' books and records as of November 30, 2021.

e. **Schedule A/B; Part 7.** Dollar amounts are presented net of accumulated depreciation and other adjustments.

f. **Schedule A/B; Part 11.** Dollar amounts are presented net of impairments and other adjustments.

g. **Schedule A/B; Part 11; #74, 75.** The Debtors continue to investigate all claims and causes of action and reserve all rights with respect thereto. Neither these Global Notes nor the Schedules and Statements shall be deemed a waiver of any such claim or cause of action. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' bankruptcy cases, equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and other relevant nonbankruptcy laws to recover assets or avoid transfers.

h. **Schedule A/B; Part 11; #75.** In the ordinary course of business, the Debtors routinely request reversals of, or changes to, various Medicare and Medi-Cal policies that impact payment, such as hospital "disproportionate share" payment calculations. These so-called "appeals" may be made by individual Debtor hospitals alone or, more likely, as part of a national group of hospitals. If successful, the Debtors may realize additional revenue but outcomes related to such appeals are speculative.

In the ordinary course of their businesses, the Debtors may have accrued, or may subsequently accrue, certain rights to counter-claims, cross-claims, setoffs, or refunds with their payors and vendors. Additionally, certain of the Debtors may be party to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7

pending litigation in which the Debtors have asserted, or may assert, claims as a plaintiff and/or as a plaintiff or putative plaintiff in class action lawsuits, or counter-claims and/or cross-claims as a defendant. Because certain of these claims are unknown to the Debtors and not quantifiable as of the Petition Date, they may not be listed on Schedule A/B, Part 11.

i.  **Schedule D - Creditors Who Have Claims Secured by Property**. Except as otherwise set forth in any stipulation or order entered by the Bankruptcy Court, the Debtors reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a secured creditor listed on Schedule D. Moreover, although the Debtors have scheduled claims of various creditors as secured claims, the Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's claim.

As more fully set forth and described in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic Stay; (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 10], as of the Petition Date, the MPT Prepetition Obligations, which include all amounts due and owing under the MPT Prepetition Transaction Documents and Lease, totaled no less than $40,132,813 and were secured by liens on substantially all of the Debtors' assets. Accordingly, the Debtors have not separately identified the obligations due to the MPT Lessor in Schedule D. Capitalized terms used in this paragraph shall have the meaning set forth in the DIP Motion.

The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens. In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors, and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities.

The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights or inchoate statutory lien rights.

j.  **Schedule E/F - Creditors Who Have Unsecured Claims.**

*Part 1 - Creditors with Priority Unsecured Claims*. Pursuant to the *Final Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, and Other Compensation, and (B) Pay and Honor Benefits and Other Workforce Obligations; (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing; and (III) Granting Related Relief* [Docket No. 185], the Debtors received final authority to pay certain prepetition obligations, including to pay compensation and benefits to their workforce

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

in the ordinary course of business. To the extent that the Debtors made the aforementioned payments, the respective employee claims are not listed in Schedule E/F.

The listing of a claim on Schedule E/F, Part 1, does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims***. The liabilities identified in Schedule E/F, Part 2, are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed claims or the correct amount of all unsecured claims.

Schedule E/F, Part 2 reflects liabilities based on each individual Debtors' books and records. All of the known Schedule E/F, Part 2 liabilities as of the Petition Date are listed on Schedule E/F, Part 2.

Schedule E/F, Part 2, contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "unknown" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements.

Schedule E/F, Part 2, contains liabilities associated with employees' paid time off that was accrued but unpaid prior to the Petition Date. Such amounts are included as reflected in the Debtors' books and records as of November 30, 2021.

Schedule E/F, Part 2, reflects certain prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption or assumption and assignment of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2, does not include claims that may arise in connection with the rejection of any executory contracts or unexpired leases

As of the time of filing of the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights to amend Schedules D and E/F if and as they receive such invoices.

*Refund Claims*: As part of the Debtors' normal business operations, insurance companies and other payors (including patients) from time to time overpay amounts due to the Debtors. Only the estimated amount of such overpayments are recorded in the Debtors' accounting records because determination of the exact amount of the overpayments is a time-consuming, manual process. The Debtors only calculate the exact amount of the insurance company overpayments if and when the payor requests a refund.

9

k. **Schedule G - Executory Contracts and Unexpired Leases**. While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal, and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as supplemental agreements, amendments, and letter agreements, which documents may not be set forth in Schedule G.

Certain of the agreements listed on Schedule G may have expired or terminated pursuant to their terms, but are listed on Schedule G in an abundance of caution.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same supplier or provider may appear multiple times in an individual Debtor's Schedule G. Multiple listings, if any, may reflect distinct agreements between the applicable Debtor and such supplier or provider. In addition, in some cases, an agreement may appear on the Schedule G of more than one Debtor, in which event each such Debtor may be party to said agreement.

Certain agreements may, by their terms, have been made between one Debtor and a third-party counterparty but performed under in the ordinary course by a different Debtor or by CHP. In such case, the agreement is listed in the Schedule G of the Debtor that appears on the face of such agreement. Omission of such agreement from the Schedule G of another Debtor does not constitute an admission that such Debtor does not have rights and/or obligations under such agreement or that the Debtor counterparty to such agreement is the Debtor on whose Schedule G such agreement is listed. In addition, certain agreements may, by their terms, have been made between CHP and a third-party counterparty, but performed in the ordinary course by a Debtor pursuant to the CHP Management Agreement. In such case, the agreement is not listed in any Debtor's Schedule G.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

DOCS_DE:332470.5

The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

l. **Schedules E/F and H (Watsonville Hospital Management, LLC).** As noted in paragraph 5(o), under the CHP Management Agreement, WHM remits payments to CHP's creditors on CHP's behalf. In that respect, all payables on WHM's books and records (with the exception of amounts due to WHM's employees) are solely CHP's and, accordingly, do not appear on Schedule E/F.

7. **Specific Statements Disclosures.**

a. **Statements; Part 2; #3 (Watsonville Hospital Corporation).** As described in the Cash Management Motion, the Debtors utilize a centralized Cash Management System, which includes certain bank accounts held in the name of non-operating Debtor Watsonville Hospital Holdings, Inc. ("WHH") but that are included in the books and records of operating Debtor WHC. Those bank accounts are reflected in the Schedules of WHH, however certain of the payments listed in response to WHC's SOFA #3 were made from such accounts and accordingly appear in WHC's books and records.

b. **Statements; Part 2; #3 (Watsonville Hospital Management, LLC).** Further to paragraph 5(o) above, all payments listed in response to WHM's SOFA #3, though made from a bank account in WHM's name, were made on behalf of CHP to satisfy CHP's obligations and are included in the Statements in the interest of full disclosure.

c. **Statements; Part 2; # 6.** For a discussion of setoffs and nettings incurred by the Debtors, refer to paragraph 5(n) of these Global Notes.

d. **Statements; Part 2; #3, 4, 30.** On September 27, 2021, Jeremy Rosenthal received an erroneous payment from the Debtors for $25,000 which was immediately wired back to the Debtors on October 1, 2021. Accordingly, such payment is not reflected in the Statements.

e. **Statements, Part 2, # 4 and Part 13, # 30.** Distributions by the Debtors to their directors and officers are listed on the attachment to Question 4. Certain of the Debtors' executive officers received payments net of tax withholdings in the year preceding the Petition Date. The amounts listed under Questions 4 and 30 reflect the gross amounts paid to such executive officers, rather than the net amounts after deducting for tax withholdings. Intercompany transfers between Debtors are not reflected in response to Question 4.

f. **Statements; Part 6; # 11.** All payments related to bankruptcy were made by Debtor WHH on behalf of itself and its Debtor affiliates and are reflected solely in WHH's response.

g. **Statements; Part 7; # 14.** Addresses for ancillary facilities, such as storage facilities, are not included in this response.

h. **Statements; Part 11; #21.** As described in further detail in the Cash Management Motion, non-Debtor CHP's revenues are swept into the Debtors' Concentration Account (as defined in the Cash Management Motion), but remain CHP's property.

Through the Debtors' cash management system, such amounts are used to pay CHP's expenses pursuant to the CHP Management Agreement. In addition, certain Debtors hold other Debtors' cash in bank accounts as a result of the operation of the Cash Management System.

i. **Statements; Part 13; #28.** As explained in the First Day Declaration, 100% of Debtor Halsen Healthcare, LLC's membership interests are held by non-Debtor Halsen Holdings, LLC ("Halsen Holdings"). Pursuant to the Proxy Exercise (as defined and discussed in the First Day Declaration), the Former Managers (affiliated with Halsen Holdings) were removed and replaced with independent directors and managers, as applicable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

12

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

In re

WATSONVILLE HOSPITAL
CORPORATION, *et al*.,

                        Debtors.[1]

Case No. 21-51477

Chapter 11

Jointly Administered

**SCHEDULES OF ASSETS AND LIABILITIES FOR
WATSONVILLE HOSPITAL HOLDINGS, INC.
(CASE NO. 21-51479)**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

☐ Check if this is an amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

**1. Schedule A/B: Assets - Real and Personal Property** (Official Form 206A/B)

| | |
|---|---|
| 1a. **Real property:** | $0.00 |
| Copy line 88 from Schedule A/B | |
| 1b. **Total personal property:** | $22,277,310.79 |
| Copy line 91A from Schedule A/B | |
| 1c. **Total of all property:** | $22,277,310.79 |
| Copy line 92 from Schedule A/B | |

| | |
|---|---|
| **2. Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D) | $45,904,237.18 |
| Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D | |

**3. Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

| | |
|---|---|
| 3a. **Total claim amounts of priority unsecured claims:** | $0.00 |
| Copy the total claims from Part 1 from line 5a of Schedule E/F | |
| 3b. **Total amount of claims of nonpriority amount of unsecured claims:** | $9,338,127.13 |
| Copy the total of the amount of claims from Part 2 from line 5b of Schedule E/F | |

| | |
|---|---|
| **4. Total Liabilities** | $55,242,364.31 |
| Lines 2 + 3a + 3b | |

☐ Check if this is an amended filing

## Official Form 206A/B

## Schedule A/B: Assets — Real and Personal Property 12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1: Cash and Cash Equivalents

**1. Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.

☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
|---|---|---|---|
| **2. Cash on hand** | | | |
| 2.1 | | | $0.00 |
| **3. Checking, savings, money market, or financial brokerage accounts** *(Identify all)* | | | |
| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account # | |
| 3.1 Farmers & Merchants | Payroll Account | 0979 | $0.00 |
| 3.2 Farmers & Merchants | FSA / Medical Account | 3854 | $0.00 |
| 3.3 Farmers & Merchants | Concentration Account | 4192 | $515,545.00 |
| 3.4 Farmers & Merchants | Concentration Account | 0811 | $618,943.26 |
| **4. Other cash equivalents** *(Identify all)* | | | |
| 4.1 | | | $0.00 |

**5. Total of Part 1**

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| | $1,134,488.26 |
|---|---|

## Part 2:   Deposits and prepayments

**6. Does the debtor have any deposits or prepayments?**

☑ No. Go to Part 3.

☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

**7. Deposits, including security deposits and utility deposits**
Description, including name of holder of deposit

| 7.1 | $0.00 |
|---|---|

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**
Description, including name of holder of prepayment

| 8.1 | $0.00 |
|---|---|

**9. Total of Part 2**

Add lines 7 through 8. Copy the total to line 81.

$0.00

## Part 3:   Accounts receivable

**10. Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

**11. Accounts receivable**

| 11a. | 90 days old or less: | _____ face amount | − | _____ doubtful or uncollectible accounts | = ........ ➜ | $0.00 |
|---|---|---|---|---|---|---|
| 11b. | Over 90 days old: | _____ face amount | − | _____ doubtful or uncollectible accounts | = ........ ➜ | $0.00 |

**12. Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

$0.00

## Part 4:   Investments

**13. Does the debtor own any investments?**

☐ No. Go to Part 5.

☑ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14. Mutual funds or publicly traded stocks not included in Part 1**
Name of fund or stock:

| 14.1 | | $0.00 |
|---|---|---|

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                            % of ownership:

| | | | |
|---|---|---|---|
| 15.1 | Watsonville Healthcare Management, LLC | 100.0% | None | Undetermined |
| 15.2 | Watsonville Hospital Corporation | 100.0% | None | Undetermined |

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1 _____   _____   $0.00

**17. Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

Undetermined

## Part 5:  Inventory, excluding agriculture assets

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☑ No. Go to Part 6.

☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| 19.1 | | | | $0.00 |
| **20. Work in progress** | | | | |
| 20.1 | | | | $0.00 |
| **21. Finished goods, including goods held for resale** | | | | |
| 21.1 | | | | $0.00 |
| **22. Other inventory or supplies** | | | | |
| 22.1 | | | | $0.00 |

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$0.00

**24. Is any of the property listed in Part 5 perishable?**

☑ No

☐ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes     Book value _____   Valuation method _____   Current value _____

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☑ No

☐ Yes

**Part 6:   Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| 28.1 | | | $0.00 |
| **29. Farm animals** *Examples:* Livestock, poultry, farm-raised fish | | | |
| 29.1 | | | $0.00 |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| 30.1 | | | $0.00 |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| 31.1 | | | $0.00 |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| 32.1 | | | $0.00 |

**33. Total of Part 6**

Add lines 28 through 32. Copy the total to line 85.                                                          $0.00

**34. Is the debtor a member of an agricultural cooperative?**

☑ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

    ☐ No

    ☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes        Book value _____   Valuation method _____   Current value _____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☑ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☑ No. Go to Part 8.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**39. Office furniture**

39.1 | | | | $0.00

**40. Office fixtures**

40.1 | | | | $0.00

**41. Office equipment, including all computer equipment and communication systems equipment and software**

41.1 | | | | $0.00

**42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

42.1 | | | | $0.00

**43. Total of Part 7**

Add lines 39 through 42. Copy the total to line 86.            $0.00

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☑ No. Go to Part 9.

☐ Yes. Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

47.1 | | | | $0.00

**48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

48.1 | | | | $0.00

**49. Aircraft and accessories**

49.1

$0.00

**50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

50.1

$0.00

**51. Total of Part 8.**

Add lines 47 through 50. Copy the total to line 87.

$0.00

**52. Is a depreciation schedule available for any of the property listed in Part 8?**

☑ No

☐ Yes

**53. Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 9: | Real Property |
|---|---|

**54. Does the debtor own or lease any real property?**

☑ No. Go to Part 10.

☐ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 | | | | $0.00 |

**56. Total of Part 9.**

Add the current value of all lines in question 55 and entries from any additional sheets. Copy the total to line 88.

$0.00

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets** | | | |
| 60.1 | | | $0.00 |
| **61. Internet domain names and websites** | | | |
| 61.1 | | | $0.00 |
| **62. Licenses, franchises, and royalties** | | | |
| 62.1 | | | $0.00 |
| **63. Customer lists, mailing lists, or other compilations** | | | |
| 63.1 | | | $0.00 |
| **64. Other intangibles, or intellectual property** | | | |
| 64.1 | | | $0.00 |
| **65. Goodwill** | | | |
| 65.1 | | | $0.00 |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$0.00

**67. Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?

☑ No

☐ Yes

**68. Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No

☐ Yes

**69. Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No

☐ Yes

**Part 11:**   **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.

☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

**71. Notes receivable**

Description (include name of obligor)

71.1      _____   _____   −   _____   =   →   $0.00

                     total face amount              doubtful or uncollectible amount

**72. Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

72.1
     Federal Net Operating Loss, 9/30/20 tax return      Tax year   2020       $17,635,694.00

**73. Interests in insurance policies or annuities**

73.1
     See Attached AB 73 Exhibit      $0.00

**74. Causes of action against third parties (whether or not a lawsuit has been filed)**

74.1
     See Global Notes      $0.00

Nature of Claim

Amount requested

**75. Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

75.1
     See Global Note      $0.00

Nature of Claim

Amount requested

**76. Trusts, equitable or future interests in property**

76.1
     $0.00

**77. Other property of any kind not already listed** *Examples:* Season tickets, country club membership

77.1
     InterCompany AR - Watsonville Healthcare Management LLC      $2,617,564.40

77.2
     Coastal Health Partners Receivable      $889,564.13

**78. Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.      $21,142,822.53

**79. Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☑ No

☐ Yes

| **Part 12:** | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| **80. Cash, cash equivalents, and financial assets.** Copy line 5, Part 1. | $1,134,488.26 | |
| **81. Deposits and prepayments.** Copy line 9, Part 2. | $0.00 | |
| **82. Accounts receivable.** Copy line 12, Part 3. | $0.00 | |
| **83. Investments.** Copy line 17, Part 4. | Undetermined | |
| **84. Inventory.** Copy line 23, Part 5. | $0.00 | |
| **85. Farming and fishing-related assets.** Copy line 33, Part 6. | $0.00 | |
| **86. Office furniture, fixtures, and equipment; and collectibles.** Copy line 43, Part 7. | $0.00 | |
| **87. Machinery, equipment, and vehicles.** Copy line 51, Part 8. | $0.00 | |
| **88. Real property.** Copy line 56, Part 9. | ➔ | $0.00 |
| **89. Intangibles and intellectual property..** Copy line 66, Part 10. | $0.00 | |
| **90. All other assets.** Copy line 78, Part 11. | $21,142,822.53 | |
| **91. Total. Add lines 80 through 90 for each column** 91a. | $22,277,310.79 | 91b. $0.00 |

**92. Total of all property on Schedule A/B.** Lines 91a + 91b = 92.      $22,277,310.79

# SCHEDULE AB 73 ATTACHMENT

| NO. | COVERAGE DESCRIPTION | INSURER | POLICY NO. | CURRENT POLICY PERIOD | COVERAGE LIMITS[1] | CLAIMS MADE OR OCCURRENCE BASIS |
|---|---|---|---|---|---|---|
| 1 | General and Professional Liability | BETA Healthcare Group | HCL-21-1212 | 10/01/2021 – 10/01/2022 | $15,000,000 per claim, $25,000,000 in the aggregate | Professional Liability – Claims Made General Liability – Occurrence |
| 2 | Automobile | Travelers | BA-0R320535-21-43-G | 10/01/2021 – 10/01/2022 | $1,000,000 | Occurrence |
| 3 | Commercial Property | Travelers | P-630-9M557624-TIL-21 | 10/01/2021 – 10/01/2022 | $96,074,085 | Occurrence |
| 4 | Workers' Compensation Insurance | Travelers | UB0N29692121 | 10/01/2021 – 10/01/2022 | Statutory workers' compensation coverage, $1,000,000 employer liability | Occurrence |
| 5 | Management Liability | Crum & Forster Specialty Insurance Company | PCF-100635 | 10/01/2021 – 03/31/2022 | $3,000,000 | Claims Made |
| 6 | Cyber Liability | Crum & Forster Specialty Insurance Company | CYB-103121 | 10/01/2021 – 10/01/2022 | $2,500,000 Quota Share | Claims Made |
| 7 | Cyber Liability | Ambridge - Lloyds of London | ACR1011721 | 10/01/2021 – 10/01/2022 | $2,500,000 Quota Share | Claims Made |
| 8 | Cyber Excess Liability | Corvus – Accredited Specialty Insurance Company | 2C1ACA17ES010407600 | 10/01/2021 – 10/01/2022 | $5,000,000 excess of $5,000,000 | Claims Made |
| 9 | Crime | Beazley Insurance Company | V28DF8210301 | 10/01/2021 – 10/01/2022 | $1,000,000 | Occurrence |
| 10 | Non-Owned Helicopter Liability Policy | Starr Indemnity & Liability Company | 100023895803 | 10/01/2021 – 10/01/2022 | $5,000,000 | Occurrence |
| 11 | Above-Ground Pollution | Tokio Marine Specialty Insurance Company | PPK2043682 | 10/01/2019 - 10/01/2022 | $2,000,000 | Claims Made |
| 12 | Underground – Pollution Liability | Tokio Marine Specialty Insurance Company | PPK2189212 | 10/01/2021 – 10/01/2022 | $2,000,000 | Occurrence |
| 13 | Excess Automobile Liability | BETA Healthcare Group | XAL-21-1212 | 10/01/2021 – 10/01/2022 | $10,000,000 | Occurrence |

[1] The coverage limits stated herein are the maximum amounts covered under a particular policy, and the amount of actual coverage for a particular covered event (if any) may be lower than the maximum coverage limits stated herein, all as more fully set forth in the policies and any amendments, endorsements, or other modifications thereto.

☐ Check if this is an amended filing

## Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property

**Be as complete and accurate as possible.**

**Part 1:**  **List Creditors Who Have Claims Secured by Property**

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor`s other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in the information below.

**2. List creditors who have secured claims.**If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | *Column A* **Amount of Claim** Do not deduct the value of collateral. | *Column B* **Value of collateral that supports this claim** |
|---|---|---|---|

2.1

MPT of Watsonville Lender LLC
c/o MPT Operating Partnership, L.P.
1000 Urban Center Drive
Suite 501
Birmingham, AL 35242

**Describe debtor's property that is subject to the lien:**
See Global Note

**Describe the lien**
Promissory Note

**Is the creditor an insider or related party?**
☑ No
☐ Yes

| Amount of Claim | Value of collateral |
|---|---|
| $40,132,813.00 | Undetermined |

**Date debt was incurred?**
9/30/2019

**Last 4 digits of account number**

**Is anyone else liable on this claim?**
☐ No
☑ Yes. Fill out Schedule H: Codebtors(Official Form 206H)

**Do multiple creditors have an interest in the same property?**
☐ No
☑ Yes. Specify each creditor, including this creditor, and its relative priority.
See Global Note

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

2.2

| MPT of Watsonville LLC | Describe debtor's property that is subject to the lien: | See Global Notes | Undetermined |
|---|---|---|---|

MPT of Watsonville LLC
1000 Urban Center Drive
Suite 501
Birmingham, AL 35242

**Date debt was incurred?**
9/30/2019

**Last 4 digits of account number**

**Do multiple creditors have an interest in the same property?**
☐ No

☑ Yes. Specify each creditor, including

this creditor, and its relative priority.
See Global Note

**Describe debtor's property that is subject to the lien:**
See Global Note

**Describe the lien**
Facility Lease

**Is the creditor an insider or related party?**
☑ No

☐ Yes

**Is anyone else liable on this claim?**
☐ No

☑ Yes. Fill out Schedule H: Codebtors(Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**                                                            $45,904,237.18

| **Part 2:** | **List Others to Be Notified for a Debt That You Already Listed** |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| 3.5 MPT of Watsonville Lender, LLC and MPT of Watsonville, LLC c/o KTBS Law LLP Attn: Thomas E Patterson, Robert J Smith, Sasha M Gurvitz 1801 Century Park East 26th Floor Los Angeles, CA 90067 | Line 2.2 | |
| 3.6 MPT of Watsonville, LLC c/o MPT Operating Partnership, L.P. Legal Dept. 1000 Urban Center Drive Suite 501 Birmingham, AL 35242 | | |
| 3.7 MPT of Watsonville, LLC c/o Baker, Donelson, Bearman, Caldwell & Berkowitz, PC Attn: Luther P. Crull, III 420 20th Street North Suite 1400 Birmingham, AL 35203 | | |

**Fill in this information to identify the case:**

Debtor name: Watsonville Hospital Holdings, Inc.

United States Bankruptcy Court for the: Northern District of California, San Jose

Case number: 21-51479

☐ Check if this is an amended filing

Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**    List All Creditors with PRIORITY Unsecured Claims

**1. Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).

☑ No. Go to Part 2.

☐ Yes. Go to line 2.

**2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | Total claim | Priority amount |
|---|---|---|

2.1

Date or dates debt was incurred

Last 4 digits of account number

Specify Code subsection of PRIORITY unsecured claim:
11 U.S.C. § 507(a) (__)

As of the petition filing date, the claim is:
*Check all that apply.*

☐ Contingent

☐ Unliquidated

☐ Disputed

Basis for the claim:

Is the claim subject to offset?

☐ No

☐ Yes

Total claim: _____   Priority amount: $0.00

| **Part 2:** | List All Creditors with NONPRIORITY Unsecured Claims |

**3. List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | **Amount of claim** |
|---|---|---|

**3.1**

ASD Specialty Healthcare, LLC
27550 NETWORK PLACE
FREEDOM, CA 606730000

**Date or dates debt was incurred**

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:**
Pending litigation

**Is the claim subject to offset?**
☑ No
☐ Yes

Unknown

**3.2**

Peritus Advisors
22431 Antonio Parkway
STE B160-675
Rancho Santa Margarita, CA 92688

**Date or dates debt was incurred**
Various

PTUS

As of the petition filing date, the claim is:
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:**
Filed Lawsuit

**Is the claim subject to offset?**
☑ No
☐ Yes

$171,618.80

**3.3**

Watsonville Hospital Corporation
75 Nielson St.
Watsonville, CA 95076

**Date or dates debt was incurred**
Various

As of the petition filing date, the claim is:
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**
Intercompany claim

**Is the claim subject to offset?**
☑ No
☐ Yes

$9,166,508.33

## Part 3:   List Others to Be Notified About Unsecured Claims

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

**If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.**

| Name and mailing address | On which line in Part 1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| 4.1 | Line | |
| | ☐ Not listed. Explain | |

## Part 4:   Total Amounts of the Priority and Nonpriority Unsecured Claims

**5. Add the amounts of priority and nonpriority unsecured claims.**

|  |  | Total of claim amounts |
|---|---|---|
| 5a. **Total claims from Part 1** | 5a. | $0.00 |
| 5b. **Total claims from Part 2** | 5b. | $9,338,127.13 |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $9,338,127.13 |

Check if this is an amended filing ☐

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

| Schedule G: | Executory Contracts and Unexpired Leases |
|---|---|

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|

2.1 **State what the contract or lease is for and the nature of the debtor's interest**    Master Agreement

**State the term remaining**    Unknown

**List the contract number of any government contract**

The SSI Group, LLC
4721 Morrison Drive
Mobile, AL 36609

☐ **Check if this is an amended filing**

## Official Form 206H
## Schedule H: Codebtors

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Does the debtor have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G*.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| *Column 1:* **Codebtor** | | *Column 2:* **Creditor** | |
|---|---|---|---|
| **Name** | **Mailing Address** | **Name** | **Check all schedules that apply:** |
| 2.1 <br> Halsen Healthcare, LLC | Halsen Healthcare, LLC <br> 75 Nielson St. <br> Watsonville, CA 95076 | MPT of Watsonville Lender, LLC | ☑ D <br> ☐ E/F <br> ☐ G |
| 2.2 <br> Halsen Healthcare, LLC | Halsen Healthcare, LLC <br> 75 Nielson St. <br> Watsonville, CA 95076 | MPT of Watsonville, LLC | ☑ D <br> ☐ E/F <br> ☐ G |
| 2.3 <br> Halsen Healthcare, LLC | Halsen Healthcare, LLC <br> 75 Nielson St. <br> Watsonville, CA 95076 | Peritus Advisors | ☐ D <br> ☑ E/F <br> ☐ G |
| 2.4 <br> Watsonville Hospital Corporation | Watsonville Hospital Corporation <br> 75 Nielson St. <br> Watsonville, CA 95076 | MPT of Watsonville Lender, LLC | ☑ D <br> ☐ E/F <br> ☐ G |
| 2.5 <br> Watsonville Hospital Corporation | Watsonville Hospital Corporation <br> 75 Nielson St. <br> Watsonville, CA 95076 | MPT of Watsonville, LLC | ☑ D <br> ☐ E/F <br> ☐ G |

2.6
Watsonville Hospital
Corporation

Watsonville Hospital Corporation
75 Nielson St.
Watsonville, CA 95076

Peritus Advisors

☐ D
☑ E/F
☐ G

☐ Check if this is an amended filing

## Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑ *Schedule H: Codebtors* (Official Form 206H)

☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ Other document that requires a _____

declaration

I declare under penalty of perjury that the foregoing is true and correct.

01/19/2022
_____
Executed on

_____
Signature of individual signing on behalf of debtor
Jeremy Rosenthal
_____
Printed name
Chief Restructuring Officer
_____
Position or relationship to debtor