PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

**<u>Exhibit 1</u>**
(Purchase Agreement)

# ASSET PURCHASE AGREEMENT

## BY AND AMONG

## HALSEN HEALTHCARE, LLC, WATSONVILLE HOSPITAL HOLDINGS, INC., WATSONVILLE HEALTHCARE MANAGEMENT, LLC, AND WATSONVILLE HOSPITAL CORPORATION, AS SELLER

## AND

## PAJARO VALLEY HEALTHCARE DISTRICT PROJECT, AS BUYER

**Dated as of December 27, 2021**

DOCS_SF:106516.11 92381/001

# TABLE OF CONTENTS

**Page**

ARTICLE I ASSETS AND LIABILITIES ................................................................. 3

    1.1.    Acquired Assets .............................................................................. 3
    1.2.    Excluded Assets .............................................................................. 3
    1.3.    Assumed Liabilities ........................................................................ 4
    1.4.    Excluded Liabilities ........................................................................ 5
    1.5.    Instruments of Transfer .................................................................. 6
    1.6.    Payment of Sales Taxes .................................................................. 6
    1.7.    As Is, Where Is ............................................................................... 6

ARTICLE II PURCHASE PRICE ............................................................................. 6

    2.1.    Consideration / Purchase Price ....................................................... 6
    2.2.    Deposit ............................................................................................ 7
    2.3.    Pro-Rations ..................................................................................... 7
    2.4.    Allocation of Purchase Price .......................................................... 8
    2.5.    Negotiated Value ............................................................................ 8

ARTICLE III CLOSING ........................................................................................... 8

    3.1.    Closing ............................................................................................ 8

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLER ................ 9

    4.1.    Organization, Good Standing and Qualification ............................. 9
    4.2.    Authorization; Binding Obligation ................................................. 9
    4.3.    Consents and Approvals ............................................................... 10
    4.4.    No Violation .................................................................................. 10
    4.5.    Licenses and Permits .................................................................... 10
    4.6.    Acquired Assets ............................................................................ 10
    4.7.    Leases of Personal Property .......................................................... 11
    4.8.    Absence of Certain Events ............................................................ 11
    4.9.    Legal Proceedings ........................................................................ 11
    4.10.    Payment Programs ........................................................................ 11
    4.11.    Compliance with Laws ................................................................. 12
    4.12.    Employees ..................................................................................... 12
    4.13.    Benefit Plan .................................................................................. 12
    4.14.    No Brokers .................................................................................... 12
    4.15.    Taxes ............................................................................................. 12
    4.16.    Contracts ....................................................................................... 13
    4.17.    Leased Real Property .................................................................... 13
    4.18.    Financing Statements .................................................................... 14
    4.19.    Insurance ....................................................................................... 14
    4.20.    Intellectual Property ..................................................................... 14
    4.21.    NO OTHER REPRESENTATIONS OR WARRANTIES .................. 14

ARTICLE V REPRESENTATIONS AND WARRANTIES OF BUYER ................. 14

    5.1.    Organization, Good Standing and Qualification ........................... 15

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 3
of 144

5.2.   Authorization; Binding Agreement..............................................................15
5.3.   Legal Proceedings ......................................................................................15
5.4.   No Brokers ..................................................................................................15
5.5.   No Violation ................................................................................................15

ARTICLE VI COVENANTS ....................................................................................15

6.1.   Conduct of the Business Pending Closing ...................................................15
6.2.   Notice by Seller of Certain Events..............................................................17
6.3.   Efforts and Further Assurances ...................................................................17
6.4.   Preservation of and Access to Information and Records .............................18
6.5.   Access to Information ..................................................................................18
6.6.   Regulatory Agreements ...............................................................................19
6.7.   Employment Matters ...................................................................................19
6.8.   Discovered Contracts ..................................................................................20
6.9.   Management of the Hospital ........................................................................20

ARTICLE VII CONFIDENTIALITY ......................................................................20

7.1.   Confidentiality ............................................................................................20

ARTICLE VIII CONDITIONS PRECEDENT TO BUYER'S PERFORMANCE AND
            TO SELLER'S PERFORMANCE ...............................................22

8.1.   Conditions to Buyer's Obligations...............................................................22
8.2.   Conditions to Seller's Obligations ..............................................................23
8.3.   No Injunction or Action ..............................................................................24

ARTICLE IX MISCELLANEOUS ...........................................................................24

9.1.   Termination .................................................................................................24
9.2.   Notice of Termination; Effect of Termination.............................................25
9.3.   Expense Reimbursement .............................................................................25
9.4.   Survival of Representations and Warranties; Survival of Post-Closing
       Covenants....................................................................................................25
9.5.   Expenses .....................................................................................................25
9.6.   Entire Agreement; Amendment ...................................................................25
9.7.   Assignment .................................................................................................26
9.8.   Counterparts ................................................................................................26
9.9.   Law Governing Agreement; Bankruptcy Court Jurisdiction .......................26
9.10.  Schedules and Exhibits ...............................................................................26
9.11.  Severability .................................................................................................27
9.12.  Notices ........................................................................................................27
9.13.  Representation by Counsel ..........................................................................28
9.14.  Construction ................................................................................................28
9.15.  Certain References .......................................................................................28
9.16.  Waivers .......................................................................................................28
9.17.  Bulk Sales Laws..........................................................................................28

9.18.   Third Parties........................................................................................... 28

9.19.   Specific Performance .......................................................................... 28

ARTICLE X BANKRUPTCY MATTERS AND CONDUCT OF AUCTION ......................... 29

10.1.   Seller's Motions in Bankruptcy Court ............................................... 29

10.2.   Defense of Orders ................................................................................ 30

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 5
of 144

# ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "**Agreement**") is made and entered into as of the 27th day of December, 2021 (the "**Effective Date**"), by and among **HALSEN HEALTHCARE, LLC, WATSONVILLE HOSPITAL HOLDINGS, INC., WATSONVILLE HEALTHCARE MANAGEMENT, LLC, AND WATSONVILLE HOSPITAL CORPORATION** (the foregoing are herein jointly and severally referred to as "**Seller**"), and **PAJARO VALLEY HEALTHCARE DISTRICT PROJECT** ("**Buyer**").

## R E C I T A L S

A. Seller is engaged in the business of providing healthcare services at the Watsonville Community Hospital in Watsonville, California, which offers a 24-hour emergency department, outpatient and inpatient surgical services, obstetrics, neonatal intensive care (NICU), hyperbaric therapies, diagnostic, therapeutic, and rehabilitative services, and community education at the approximately 106 bed acute care hospital at the location described on Schedule 1.0 hereto (collectively, the "**Business**");

B. On December 5, 2021 ("**Petition Date**"), Seller filed voluntary petitions for relief under title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court, Northern District of California, San Jose Division (the "**Bankruptcy Court**"), commencing cases under chapter 11 of the Bankruptcy Code that are proceeding on an administratively consolidated basis under Docket No. 21-51477 (collectively, the "**Bankruptcy Case**");

C. To satisfy a Closing condition and facilitate Buyer's purchase of the Business, MPT of Watsonville, LLC ("**MPT Lessor**"), as lessor, agreed to certain rent concessions under that certain Lease Agreement, dated as of September 30, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "**MPT Lease**"), by and between MPT Lessor and Watsonville Hospital Corporation, and MPT of Watsonville Lender, LLC ("**MPT Prepetition Lender**" and, together with MPT Lessor, "**MPT**") as lender agreed to provide post-petition debtor-in-possession financing to Seller in connection with the Bankruptcy Case, subject to Bankruptcy Court approval. Such financing is set forth in that certain Senior Secured Superpriority Debtor in Possession Promissory Note, dated as of December 5, 2021 (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Note**"), by and among MPT Prepetition Lender and Seller, which DIP Note provides for a multi-draw term loan credit facility in the amount of up to $21,500,000 in new money to fund the working capital requirements of Seller and for other permitted purposes during the pendency of the Bankruptcy Case pursuant to a budget approved in accordance with the DIP Note, with MPT seeking to roll-up prepetition advances made to Seller of $9,250,000 into the post-petition credit facility, which is secured by first priority security interests in substantially all of the Seller's assets as further described in and subject to the terms and conditions set out in the DIP Note and the other DIP Loan Documents (as defined in the DIP Note);

D. Seller has filed a Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection; (V) Modifying the Automatic

- 1 -

Stay; Scheduling a Final Hearing; and (VI) Granting Related Relief, Dkt. No. 10 (the "**DIP Financing Motion**");

E.  On December 7, 2021, the Bankruptcy Court heard the DIP Financing Motion and on an interim basis entered an order dated December 8, 2021, Dkt. No. 54 (the "**Interim DIP Order**") authorizing Seller to borrow up to $16,000,000 in new money under the DIP Note pending a final hearing on the DIP Financing Motion scheduled on January 7, 2022;

F.  It is a condition of Closing that the Bankruptcy Court approve the DIP Loan Documents to fund Seller's projected post-petition expenses through the earlier of (i) March 31, 2022, and (ii) the Closing, in each case on the terms and subject to the conditions set forth in the DIP Loan Documents;

G.  Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, all of the assets, properties and rights of Seller relating to the Business (except for the Excluded Assets) free and clear of all Encumbrances pursuant to section 363(f) of the Bankruptcy Code as provided in a final order of the Bankruptcy Court approving such sale under section 363 of the Bankruptcy Code to be entered in the Bankruptcy Case, and to assume only certain specified liabilities of Seller related thereto, all on the terms and subject to the conditions set forth in this Agreement and in accordance with sections 105, 363, 365 and other applicable provisions of the Bankruptcy Code;

H.  Buyer intends to seek legislative approval to authorize the formation of the Pajaro Valley Healthcare District, a political subdivision of the State of California (the "**District**"), Buyer may designate the District to purchase the Business pursuant to this Agreement, and references to "Buyer" under this Agreement after the District is formed and this Agreement is assigned to the District in accordance with Section 9.7 shall mean the "District;"

I.  As additional consideration, and as a material inducement to Buyer to enter into this Agreement and to consummate the transactions contemplated hereby, Seller desires to make certain representations, warranties, indemnities, covenants and agreements relating to the sale of the Business; and

J.  Capitalized terms used herein not defined elsewhere have the meanings set forth in the Table of Definitions attached hereto as <u>Annex I</u>.

**AGREEMENT**

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

- 2 -

# ARTICLE I
# ASSETS AND LIABILITIES

1.1.    <u>Acquired Assets</u>.

(a)    Subject to the terms and the conditions set forth in this Agreement and on the basis of the representations and warranties herein, Seller shall sell, convey, transfer, assign and deliver to Buyer, and Buyer shall purchase, receive and accept from Seller, all rights, title and interest in and to the assets and properties of every kind, character and description (other than the Excluded Assets) owned or leased by Seller and used in the operation and management of the Business, or otherwise for the benefit of the Business, whether tangible, intangible, real, personal or mixed, movable or fixed, and wherever located (as specified in greater detail in Section 1.1(b), collectively referred to hereinafter as the "**Acquired Assets**").

(b)    With the exception of the Excluded Assets, the Acquired Assets include all of Seller's tangible and intangible property, including all property listed on <u>Schedule 1.1</u> hereto, all cash except Excluded Cash, deferred tax assets, employee advances, prepaid insurance, including prepaid professional liability insurance, accounts (including all accounts receivable), machinery, equipment, inventories, tenant improvements (regardless of whether they are accounted for as an asset on the books of Seller), goodwill of the Business, software and computer programs, hardware, Intellectual Property (including the names "Watsonville Community Hospital" and all other trade names and acronyms under which Seller conducts the Business or by which Seller or the Business is commonly known), prepaid expenses and deposits, Assigned Contracts, Assigned Personal Property Leases, books and records (including all patient charts and records, patient lists and appointment books relating to patients treated by the Business to the extent transferable under applicable law), any Seller policies and procedures relating to the Business, telephone and facsimile numbers, uniform resource locators, email addresses, social media identifiers, all Licenses (for clarity, the Medicare, Medicaid or Medi-Cal provider numbers set forth on <u>Schedule 1.1</u> hereto are Licenses included as Acquired Assets) and permits (including drug and nuclear licenses) to the extent transferable to Buyer, in each case to the extent transferable or otherwise capable of being assumed, sold and assigned, all benefits, proceeds and other amounts payable under any Seller policy of insurance relating to the Business, and proceeds of all of the foregoing assets.

1.2.    <u>Excluded Assets</u>.  Notwithstanding anything contained in **Section 1.1** above, Buyer is not purchasing (i) Seller's contracts and leases that are not Assigned Contracts or Assigned Personal Property Leases and including the proceeds thereof, (ii) the Purchase Price and all rights of the Seller and MPT, respectively, under this Agreement, (iii) any rights, claims or causes of action of any Seller under the Bankruptcy Code, including under chapter 5 of the Bankruptcy Code (or any state analogs) and including all proceeds thereof, (iv) any rights, claims or causes of action of any Seller unrelated to the Business, the Assigned Contracts or the Assigned Personal Property Leases and including the proceeds thereof, (v) all personnel records and other books, records, and files that the Seller is required by law to retain in its possession or that are protected by attorney client privilege, (vi) any patient records with respect to which the applicable patient(s) has objected to a transfer of such patient records to the Buyer, (vii) any Seller's deposit accounts, (viii) any Seller's cash as of the Closing Date that consists of the following: (A) any amounts budgeted to pay, but that have not been paid to applicable parties or funded to the trust account of Seller's

DOCS_SF:106516.11 92381/001

bankruptcy counsel, under the "*Professional Fees*" category of the Budget (as defined in the DIP Note) (for the avoidance of doubt, any amounts that have been funded to the trust account of Seller's bankruptcy counsel also shall be treated as Excluded Assets), plus (B) the sum of $500,000 to fund a wind-down of Seller's estates (subsections (A) and (B) are together the "**Excluded Cash**"), (ix) any tax refunds, benefits, or proceeds relating to periods prior to the Closing Date, (x) any other prepaid assets or properties expressly set forth on Schedule 1.2 hereto, (xi) Seller's federal, state, and local tax obligations, (xi) any rights, claims or causes of action of any Seller against its current or former directors, officers, managers or equity holders, including claims made under any insurance policy covering same and the proceeds thereof, (xii) those items listed on Schedule 1.2 hereto, (xiii) any right and interest, if any, in and to any Letter of Credit or Cash Deposit (each as defined in the MPT Lease) held by MPT prior to the Closing, and (xiv) any books and records relating to any of the foregoing (such assets being referred to collectively as the "**Excluded Assets**").

1.3.    Assumed Liabilities.

a.    As of the Closing Date, subject to **Section 2.3**, Seller shall assign to Buyer and Buyer shall assume only Seller's obligations arising from events occurring on or after the Closing Date under those agreements and contracts designated specifically on Schedule 4.7 attached hereto as "**Assigned Personal Property Leases**," and on Schedule 4.16 attached hereto as "**Assigned Contracts**," and "**Assumed Employee Amounts**," as such term is defined in Section 6.7(b) of this Agreement.    (The Assigned Personal Property Leases, Assigned Contracts, Assumed Employee Amounts, and obligations set forth in **Section 2.3** are together referred to as the "**Assumed Liabilities**").    For clarity and avoidance of doubt, the Assigned Contracts include the MPT Lease as modified by the MPT Lease Amendment.    At or after the Sale Hearing, Seller shall seek authorization to assume and assign to Buyer the Assigned Contracts, the Assigned Personal Property Leases, and the MPT Lease as modified by the MPT Lease Amendment.    The amounts, if any, required to cure all defaults under the Assigned Contracts and the Assigned Personal Property Leases, as required under the Bankruptcy Code or determined by the Bankruptcy Court pursuant to a final order (the "**Cure Costs**"), shall be paid on the Closing Date (except as otherwise agreed to by the applicable counterparty to any Assigned Contract or Assigned Personal Property Lease) by the Buyer directly to the applicable counterparty to each Assigned Contract and Assigned Personal Property Lease.    Attached hereto as Schedule 1.3 is a listing of Seller's good faith estimate of the Cure Costs  as of the Effective Date of this Agreement, which Schedule 1.3 may be updated by Seller and delivered to Buyer, on notice to each applicable counterparty, consistent with the procedures for the assumption and assignment of executory contracts and unexpired leases approved by the Bankruptcy Court in the Bankruptcy Case.    Buyer may remove any Assigned Contract (other than the MPT Lease and the MPT Lease will in all events be listed or deemed listed on Schedule 4.16 for purposes of this Agreement) or any Assigned Personal Property Lease set forth on Schedule 4.16 and Schedule 4.18 at any time up to, and including, the Closing Date.

b.    Collective Bargaining Agreements and Employee Benefit Plans.    Subject to **Section 6.7(a)**, no later than January 14, 2022, Buyer will notify Seller if Buyer intends to assume any CBAs and/or which provisions Buyer will assume or request to modify.    Seller will initiate negotiations under sections 1113 and/or 1114 of the Bankruptcy Code with the Unions to modify or reject the existing CBAs if Buyer so requests.    Achievement of modified CBAs shall not be a

DOCS_SF:106516.11 92381/001

condition of Closing, though Seller agrees to seek modification of any CBA in good faith if Buyer so requests. Seller has the right independently of Buyer to seek modification and/or rejection of any CBA under sections 1113 and/or 1114 of the Bankruptcy Code and nothing in this Agreement waives such right. Buyer understands that it may have to set initial terms and conditions of employment and will not rely on Seller or its labor counsel with respect to post-Closing liabilities to the Unions. With respect to any Seller Employee Benefit Plan, on or before January 14, 2022, Buyer shall inform Seller whether Buyer intends to include any such Employee Benefit Plan as an Assigned Contract. Liabilities arising from any Employee Benefit Plans not designated as an Assigned Contract shall be considered Excluded Liabilities. For clarity and avoidance of doubt, Buyer will on or before January 14, 2022, inform Seller which Seller employee liabilities, if any, will be Excluded Liabilities, including, without limitation, liabilities relating to any pension plans, 401(k) plans, health and welfare plans, post-retirement medical reimbursement plans, and COBRA, and will coordinate transition between plans with the planned Closing.

    1.4.  <u>Excluded Liabilities</u>. Except as expressly set forth in this Agreement, specifically including the obligations assumed by Buyer under the last sentence of **Section 2.1**, **Section 2.3**, and **Section 3.1(b)**, Buyer does not assume and will not be liable for any of the direct or indirect debts, Claims, Interests, Encumbrances, obligations or liabilities of Seller, any Affiliate of Seller, or the Business whenever arising and of whatever type or nature. In particular, but without limiting the foregoing, subject to the obligations assumed by Buyer under the last sentence of **Section 2.1**, **Section 2.3**, and **Section 3.1(b)**, Buyer will not assume, and will not be deemed by anything contained in this Agreement (other than to the extent expressly provided in **Section 1.3** above) to have assumed and will not be liable for any debts, obligations or liabilities of Seller, any Affiliate of Seller or the Business whether known or unknown, contingent, absolute or otherwise and whether or not they would be included or disclosed in financial statements prepared in accordance with GAAP (the "**Excluded Liabilities**"). Without limitation of the foregoing, subject to the obligations assumed by Buyer under the last sentence of **Section 2.1**, **Section 2.3**, and **Section 3.1(b)**, the Excluded Liabilities include debts, Claims, Interests, Encumbrances, liabilities and obligations: (a) under any real estate lease or any contract or agreement to which Seller is a party or by which Seller or the Business is bound that is not, as of the Closing Date, listed as an Assigned Contract on <u>Schedule 4.18</u><s>16</s> or any Personal Property Lease by which Seller or the Business is bound that has not been listed as an Assigned Personal Property Lease on <u>Schedule 4.7</u>; (b) with respect to any Assigned Contract or Assigned Personal Property Lease, arising from the period prior to the Closing Date (except for the Cure Costs); (c), arising out of any arrangements, agreements, understandings or commitments (including any CBAs, except for any such agreements designated as Assigned Contracts) with or on behalf of any employees or independent contractors providing professional medical or nursing services to the Business to which Seller is a party or by which Seller is bound from the period prior to the Closing Date; (d) arising out of Seller's obligation under any of the CBAs or otherwise required under the National Labor Relations Act to engage in effects bargaining with the Unions (unless assumed in this Agreement); (e) for, or relating to, any Employee Benefit Plan (unless designated as an Assigned Contract); (f) for any obligation for Taxes from the period prior to the Closing Date; (g) for any liability for local or state sales, use or transfer tax and taxes that may be imposed upon the sale or assignment of the Acquired Assets pursuant to this Agreement and the Assignment and Assumption and Bill of Sale from the period prior to the Closing Date; (h) for any damages or injuries to persons or property or for any malpractice, tort or strict liability arising from events, actions or inactions in the Business or the operation of the Business prior to the Closing Date; (i) arising out of any litigation arising

- 5 -

with respect to the period prior to the Closing Date, whether or not threatened or pending on or before the Closing Date; (j) incurred by Seller or the Business for borrowed money from the period prior to the Closing Date or that otherwise constitute indebtedness (including the Prepetition Loan Facility); (k) for any accounts payable of Seller or any Affiliate of Seller from the period prior to the Closing Date; and (l) for amounts due or that may become due to Medicare, Medicaid, Medi-Cal or any other health care reimbursement or payment intermediary, or other third-party payor on account of any payment adjustments attributable to any period prior to the Closing Date, or any other form of Medicare or other health care reimbursement recapture, adjustment or overpayment whatsoever, or any violation of any Law by Seller relating to Medicare, Medicaid, Medi-Cal or any other payor program, including fines and penalties, with respect to any period prior to the Closing Date (unless payable as a Cure Cost). The intent and objective of Buyer and Seller is that, except for liabilities explicitly assumed by Buyer hereunder, Buyer does not assume, and no transferee liability will attach to Buyer pertaining to, any of the Excluded Liabilities.

1.5.    Instruments of Transfer. The sale of the Acquired Assets and the assumption of the Assumed Liabilities as herein provided shall be effected at Closing by the "**Assignment and Assumption and Bill of Sale**" in the form attached hereto as **Exhibit A**.

1.6.    Payment of Sales Taxes. Buyer shall pay any and all sales, use or other transfer taxes payable by reason of the transfer and conveyance of the Acquired Assets hereunder unless no such taxes are due and payable pursuant to the Sale Order. Seller will prepare, deliver and if necessary file at or before Closing all transfer tax returns and other filings necessary to vest in Buyer full right, title and interest in the Acquired Assets.

1.7.    As Is, Where Is. Buyer is acquiring the Acquired Assets at the Closing "as is, where is" and, except as otherwise expressly provided in this Agreement, Buyer understands that Seller is making no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets or the Business. Buyer acknowledges that it has conducted an independent inspection and investigation of the physical condition of all Acquired Assets and all such other matters relating to or affecting the Acquired Assets as Buyer deems necessary or appropriate and that in proceeding with its acquisition of the Acquired Assets, except for any representations and warranties expressly provided in this Agreement, Buyer is doing so based solely upon such independent inspections and investigations. Without limiting the foregoing, Seller hereby disclaims any warranty, express or implied, of merchantability or fitness for any particular purpose as to any portion of the Acquired Assets. Notwithstanding the foregoing, subject to and assuming entry of the Sale Order, Buyer is acquiring the Acquired Assets free and clear of all Encumbrances, to the maximum extent permitted under section 363(f) of the Bankruptcy Code and as set forth in the Sale Order.

**ARTICLE II**
**PURCHASE PRICE**

2.1.    Consideration / Purchase Price. In reliance on Seller's representations, warranties and covenants, the purchase price to be paid by Buyer to Seller for the Acquired Assets and the other rights set forth herein (the "**Purchase Price**") shall consist of: (i) the amounts then due under the DIP Loan Documents (including the obligations under the DIP Loan Documents constituting the roll-up of $3,500,000 of the obligations under the Prepetition Loan Facility advanced

thereunder on November 30, 2021, but excluding any other amounts under the Prepetition Loan Facility rolled up as obligations under the DIP Loan Documents) to MPT up to $25,000,000, such amounts to be paid directly to MPT at the Closing by wire transfer of immediately available funds, plus (ii) the payment by Buyer of all Cure Costs to counterparties to the Assigned Contracts and Assigned Personal Property Leases, plus (iii) the Assumed Liabilities, (iv) the Assumed Employee Amounts, plus (v) $9,000,000 to be paid directly to MPT at the Closing by wire transfer of immediately available funds on account of its secured claim against the Seller's personal property assets and MPT's release of its security interests in the Acquired Assets. As additional consideration, if prior to termination of the Agreement a Sale Order is entered approving Buyer as the winning bidder for the Business, pending the Closing, Buyer shall fund Business operations and other administrative obligations of the Business and the Bankruptcy Case, including estate professional fees and any interest accrued and payable in cash under and pursuant to the DIP Loan Documents from and after April 1, 2022, (without recourse to the Seller or MPT) irrespective of whether the Closing is ultimately consummated, pursuant to a budget to be agreed upon by Seller and Buyer, and sufficient to the reasonable satisfaction of Seller and MPT to maintain a patient standard of care and operations of Seller consistent with its current levels (the "**Extended Budget**").

2.2. <u>Deposit</u>. On or before February 14, 2022, Buyer shall pay to Seller or its designee the sum of $4,400,000 in immediately available funds (the "**Deposit**") to be held in accordance with the terms of this Agreement. If the Closing occurs, the Deposit shall be released to Seller or MPT, as applicable, and applied to the Purchase Price. If this Agreement terminates pursuant to **Section 9.1(a), Section 9.1(b), Section 9.1(c)** (solely in the event of Seller's breach of this Agreement), **Section 9.1(d)** (except that the failure of Buyer to have received all Third-Party Consents, Governmental Approvals, and Regulatory Agreements required under **Section 8.1(f)** shall not entitle Buyer to a refund of the Deposit), **Section 9.1(e)**, or **Section 9.1(h)**, the Deposit shall be returned to Buyer. If this Agreement is terminated on any other basis pursuant to Section 9.1 (except **Section 9.1(i)**), the Deposit will be forfeited by Buyer and retained by Seller. Seller shall have no legal or equitable remedies against Buyer for any breaches of this Agreement by Buyer other than retaining the Deposit under this **Section 2.2**.

2.3. <u>No Pro-Rations</u>. Seller shall pay, consistent with its rights, duties and obligations under the DIP Note, all Operating Expenses incurred by Seller in the ordinary course with respect to the Business, as they come due through the earlier of the Closing Date or March 31, 2022. Buyer shall be responsible for funding all obligations under the Extended Budget, including previously incurred Operating Expenses that may be accrued but unpaid as of April 1, 2022, as they come due or are otherwise payable from and after April 1, 2022, as set forth in the last sentence of **Section 2.1** and **Section 3.1(b)**. For purposes of this section, "Operating Expenses" means all budgeted postpetition business expenses under the "*Operations Spend*" category of the Budget (as defined in the DIP Note) for the period from the Petition Date through March 31, 2022. For the avoidance of doubt, from and after the Closing Date, excluding any obligations of Seller to be paid from the Excluded Cash, Buyer shall be responsible for satisfying all accrued, but unpaid, Operating Expenses and any other postpetition accounts payable of Seller from the period prior to the Closing Date, whenever such amounts may come due. Nothing in this section shall alter or affect Buyer's responsibility for those expenses of the Business and the Acquired Assets that are incurred following the Closing Date.

DOCS_SF:106516.11 92381/001

2.4.    Allocation of Purchase Price.  The Purchase Price and any liability or other amount that is properly included in the amount realized by Seller or the cost basis to Buyer with respect to the purchase and sale of the Acquired Assets will be allocated to the Acquired Assets in accordance with Treasury Regulations § 1.1060-1(c) as set forth in an allocation schedule that is provided by the Buyer to the Seller within ninety (90) days after the Closing Date (the "**Allocation**").  Buyer and Seller shall report the transactions contemplated by this Agreement for federal and state income tax purposes in accordance with the Allocation and shall not (and shall cause their respective Affiliates not to) take any position inconsistent with the Allocation.  The parties shall execute all forms required to be filed for tax purposes with any taxing authority in a manner consistent with the Allocation.

2.5.    Negotiated Value.  The Purchase Price, and the Allocation determined pursuant to **Section 2.4**, shall reflect the fair value of the Business and the fair values of the Acquired Assets, respectively, agreed to by the parties hereto as a result of arms' length negotiations.   No consideration is or will be paid for the value of any patient referrals (direct or indirect) to or from Buyer, Seller, or any of their respective Affiliates.

**ARTICLE III**
**CLOSING**

3.1.    Closing.

a.    Subject to **Section 8.1(f)**, the closing of the sale and purchase of the Acquired Assets (the "**Closing**") will take place no later than the fifth (5th) business day following the date on which all of the conditions to closing set forth in **Article VIII** below are fully satisfied (other than the conditions that by their nature are to be satisfied at the Closing), or on such other date as the parties may mutually agree (the "**Closing Date**") at the offices of Buyer's counsel located in Los Angeles, California, or by electronic or facsimile transmission and United States or overnight mail.  Buyer and Seller shall proceed to the Closing as promptly as possible after entry of the Sale Order.  Closing will be deemed to have occurred at 12:01 a.m. Pacific time on the day immediately following the Closing Date.

b.    Closing Extensions and Associated Funding.  Buyer and Seller acknowledge that the Closing Date may occur at any time prior to August 31, 2022, provided the conditions to closing set forth in **Article VIII** have been fully satisfied.  In the event, however, that Buyer is unable to close by March 31, 2022, and seeks additional time to effectuate a Closing, Buyer has agreed to fund Seller's Business operations and the administrative expenses of the Bankruptcy Case, including estate professional fees and interest accrued and payable in cash under the DIP Loan Documents, for any such extension requested by Buyer pursuant to the Extended Budget.  For purposes of this section, "Monthly Funding" means funding in the amount of $2,500,000 per month that is needed by Seller for each month during the period covered by the Extended Budget.  Buyer shall be entitled to extend the Closing Date through August 31, 2022, if Buyer notifies Seller in writing no less than thirty-five (35) days prior to each of April 1, 2022, May 1, 2022, June 1, 2022, July 1, 2022, and August 1, 2022, that Buyer intends to make the Monthly Funding for each applicable month consistent with the Extended Budget (for example, Buyer will notify Seller that Buyer seeks an extension of the Closing Date to April 30, 2022, no later than February 25, 2022).  Assuming that the foregoing monthly notice is timely delivered

- 8 -

by Buyer to Seller, then Buyer shall be required to pay the Monthly Funding so that it is received by Seller by no later than five (5) business days before each of April 1, 2022, May 1, 2022, June 1, 2022, July 1, 2022, and August 1, 2022. If, at any time, Buyer fails to timely provide the applicable Monthly Funding, Seller shall be entitled to terminate this Agreement and retain the Deposit. If the Closing Date occurs before the Monthly Funding applicable to any period has been used for any pre-Closing expenses or reserved for other obligations incurred or accrued through such date under the Extended Budget, the excess amount shall be included in the Acquired Assets, but shall not reduce the Purchase Price.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Each Seller hereby represents and warrants to Buyer, as of the Effective Date and as of the Closing Date (except for those representations and warranties that are made as of the Closing Date only, which are true and correct as of the Closing Date), and only with respect to itself, as follows:

4.1.     Organization, Good Standing and Qualification. Except as set forth on Schedule 4.1, (i) Watsonville Hospital Corporation is a Delaware corporation duly incorporated, validly existing and in good standing under the provisions of the laws of the State of Delaware, and is qualified and licensed to do business in every other jurisdiction in which it conducts business or in which the nature of its business and operations would require qualification as a foreign corporation; (ii) Watsonville Healthcare Management, LLC is a Delaware limited liability company duly organized, validly existing and in good standing under the provisions of the laws of the State of Delaware, and is qualified and licensed to do business in every other jurisdiction in which it conducts business or in which the nature of its business and operations would require qualification as a foreign limited liability company; (iii) Halsen Healthcare, LLC is a California limited liability company duly organized, validly existing and in good standing under the provisions of the laws of the State of California, and is qualified and licensed to do business in every other jurisdiction in which it conducts business or in which the nature of its business and operations would require qualification as a foreign limited liability company; and (iv) Watsonville Hospital Holdings, Inc. is a California corporation duly incorporated, validly existing and in good standing under the provisions of the laws of the State of California, and is qualified and licensed to do business in every other jurisdiction in which it conducts business or in which the nature of its business and operations would require qualification as a foreign corporation. Except as set forth on Schedule 4.1, Seller has all requisite corporate power and authority to own, operate, and to carry on the Business as now conducted. Except as set forth on Schedule 4.1, Seller has all corporate power and authority to enter into all of the Acquisition Agreements to which Seller is a party and to carry out and perform its obligations under the Acquisition Agreements.

4.2.     Authorization; Binding Obligation. Subject to Bankruptcy Court approval, Seller has full legal corporate right, power and authority to execute and deliver the Acquisition Agreements to which Seller is a party, and to carry out the transactions contemplated thereby. Subject to Bankruptcy Court approval, the execution and delivery by Seller of the Acquisition Agreements and all of the documents and instruments required thereby and the consummation of the transactions contemplated thereby have been duly authorized by all requisite action on the part of Seller. The Acquisition Agreements to which Seller is a party and each of the other documents and instruments required thereby or delivered in connection therewith have been duly executed

DOCS_SF:106516.11 92381/001

and delivered by Seller, and constitute the legal, valid and binding obligations of Seller, enforceable against them in accordance with their respective terms, subject to Bankruptcy Court approval.

4.3.    Consents and Approvals.

(a)    Governmental Consents and Approvals.    Except for the Regulatory Agreements and Licenses and subject to Bankruptcy Court approval, and except as set forth on Schedule 4.3(a) attached hereto, no notice, registration or filing with, or consent or approval of, or other action by, any federal, state or other governmental agency or instrumentality is or will be necessary for the valid execution, delivery and performance of this Agreement by Seller and the transfer of the Acquired Assets to Buyer (each, a "**Governmental Approval**").

(b)    Third-Party Consents.    Except for Regulatory Agreements and Licenses and subject to Bankruptcy Court approval, and except as set forth on Schedule 4.3(b) attached hereto, no notice to, consent, approval or authorization of, any non-governmental third party is required to consummate the transactions or perform the related covenants and agreements contemplated hereby or to vest full right, title and interest in the Acquired Assets free and clear of any Encumbrances upon Buyer, all without any change in the Acquired Assets and all rights therein after Closing (each, a "**Third-Party Consent**").

4.4.    No Violation.    The execution, delivery, compliance with and performance by Seller of the Acquisition Agreements and each of the other documents and instruments delivered in connection therewith do not and will not (a) violate or contravene the organizational certificates, documents and agreements, as amended to date, of Seller, (b) subject to and assuming entry of the Sale Order, violate or contravene any law, statute, rule, regulation, order, judgment or decree to which Seller is subject, (c) subject to and assuming entry of the Sale Order and except as set forth on Schedule 4.3(b), conflict with or result in a breach of or constitute a default by any party under any contract, agreement, instrument or other document to which Seller is a party or by which Seller or any of its assets or properties are bound or subject or to which any entity in which Seller has an interest, is a party, or by which any such entity is bound, or (d) result in the creation of any Lien upon the Acquired Assets or the Business therein; other than, as to clauses (b) and (c), such violations, conflicts, breach, default, fees, payments, increases, charges, modifications, terminations, cancellations, accelerations or losses that would not have, individually or in the aggregate, a Seller Material Adverse Effect.

4.5.    Licenses and Permits.    Schedule 4.5 attached hereto contains a true, correct and complete list and summary description of all Licenses that have been issued to Seller in connection with the Acquired Assets or the Business (the "**Seller Licenses**").    Schedule 4.5 specifies the holder of each Seller License.

4.6.    Acquired Assets.    Seller is the sole and exclusive legal and equitable owner of all right, title and interest in, and has good, clear, indefeasible, insurable and marketable title to, all of the Acquired Assets free of all Liens, except for those capital leases and other indebtedness set forth on Schedule 4.6 attached hereto.    The Acquired Assets together with the Excluded Assets include all assets, properties and rights used or found useful by Seller in connection with the Business.

- 10 -

4.7.    Leases of Personal Property.  For purposes of this Agreement, "**Personal Property Leases**" means any lease, conditional or installment sale contract, Lien or similar arrangement to which any tangible personal property used by Seller in connection with the operation of the Business is subject.  Except as set forth on Schedule 4.7 attached hereto, none of the tangible personal property used by Seller in connection with the operation of the Business is subject to a Personal Property Lease.  Seller has delivered to Buyer a complete and correct copy of each Personal Property Lease listed on Schedule 4.7.  Buyer may agree to assume at the Closing any Personal Property Lease separately designated on Schedule 4.7 (each, an "**Assigned Personal Property Lease**").

4.8.    Absence of Certain Events.  Except as noted on Schedule 4.8 attached hereto, since January 1, 2021, with respect to the Business, to Seller's Knowledge there has not been:

(a)    any material damage or destruction of any of the assets utilized in the Business by fire or other casualty, whether or not covered by insurance;

(b)    any change in any of the accounting principles adopted by Seller, or any change in Seller's policies, procedures, or methods with respect to applying such principles; or

(c)    any action that if taken after the Effective Date would constitute a breach of any of the covenants in **Section 6.1** below.

4.9.    Legal Proceedings.  Other than the Bankruptcy Case or as listed on Schedule 4.9, there is no action, suit, litigation, proceeding or investigation pending or, to Seller's Knowledge, threatened by or against Seller, relating directly or, to Seller's Knowledge, indirectly to the Business or the Acquired Assets that could result in a Seller Material Adverse Effect, and Seller has not received any written or oral claim, complaint, incident, report, threat or notice of any such proceeding or claim and there is no basis therefore, except for payment defaults and demands for payment.  There are no outstanding orders, writs, judgments, injunctions or decrees of any court, governmental agency or arbitration tribunal against, involving or affecting Seller, the Business or the Acquired Assets that could result in a Seller Material Adverse Effect.  To Seller's Knowledge, neither Seller nor the Business is in default with respect to any order, writ, injunction or decree known to or served upon it from any court or any federal, state, municipal or other governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, that could result in a Seller Material Adverse Effect.

4.10.   Payment Programs.

(a)    All Payment Programs in which Seller has participated at any time during the last three (3) years are listed on Schedule 4.10 attached hereto (the "**Seller Payment Programs**").  Buyer acknowledges that Payment Programs may also be identified on Schedule 4.16.

(b)    Neither Seller, nor, to Seller's Knowledge, any of its respective officers, managers, directors or employees has been or is currently suspended, excluded or debarred from contracting with any governmental authority or from participating in any Payment Program or has been or is subject to any fine, penalty, or sanction by any governmental authority or pending or

- 11 -

threatened investigation, audit or proceeding by any governmental authority that could result in such suspension, exclusion, or debarment.

4.11. <u>Compliance with Laws</u>.

(a)     <u>Schedule 4.11</u> attached hereto lists all written claims and statements (including all correspondence or communications with governmental agencies, contractors, intermediaries or carriers) concerning or relating to any federal or state government funded health care program that involves, relates to or alleges (i) any material violation of any applicable rule, regulation, policy or requirement of any such program or any irregularity with respect to any activity, practice or policy of Seller or the Business; or (ii) any material violation of any applicable rule, regulation, policy or requirement of any such program or any irregularity with respect to any claim for payment or reimbursement made by Seller or the Business or any payment or reimbursement paid to Seller or the Business.

(b)     Seller has not received any notice to the effect that, or otherwise been advised that, Seller or the Business is not in material compliance with any Laws, except as set forth on <u>Schedule 4.11</u> attached hereto.

4.12. <u>Employees</u>.

(a)     Seller has provided to Buyer a true and accurate list of each Seller Employee as of the Effective Date, together with such person's position, date of hire, current salary, and accrued paid time off, and amount of any other accrued benefits to which such person may be entitled or for which such person has made either written or oral claim to Seller. Except as indicated on such list, no Seller Employee has an employment agreement with Seller.

(b)     Except as set forth on <u>Schedule 4.12(b)</u>, Seller is not a party to any collective bargaining contracts or any other contracts, agreements or understandings with any labor unions or other representatives of the Seller Employees.

4.13. <u>Benefit Plan</u>. <u>Schedule 4.13</u> attached hereto sets forth a list of each Employee Benefit Plan.

4.14. <u>No Brokers</u>. Except for Cowen and Company, LLC, Seller has not directly or indirectly, or incurred any liability to, any broker, finder or other agent in connection with the transactions contemplated by this Agreement. Seller and its Affiliates shall indemnify and hold harmless Buyer from any claims brought by any broker, finder or other agent claiming to have acted on behalf of Seller or an Affiliate of Seller in connection with the purchase and sale of the Acquired Assets or the Business.

4.15. <u>Taxes</u>. Except as set forth on <u>Schedule 4.15</u> attached hereto, Seller has filed, or has caused to be filed, on a timely basis and subject to all permitted extensions, all Tax Returns with the appropriate governmental agencies in all jurisdictions in which such Tax Returns are required to be filed.

DOCS_SF:106516.11 92381/001

4.16. <u>Contracts</u>.

(a) For purposes of this Agreement, "**Contracts**" means all agreements, contracts and commitments, written or oral, directly related to the Business, to which Seller is a party or by which Seller or the Acquired Assets or the Business is bound including (i) notes, loans, credit agreements, mortgages, indentures, security agreements, operating leases, capital leases and other agreements and instruments relating to the borrowing of money or extension of credit and any contract of suretyship or guaranty; (ii) all employment and consulting agreements and arrangements (including agreements for medical director services), and all bonus, compensation, pension, insurance, retirement, deferred compensation and other plans, agreements, trusts, funds and other arrangements for the benefit of employees; (iii) agreements with health care providers, including visiting nurses associations, health maintenance organizations, hospitals and long-term care facilities; (iv) agreements, orders or commitments for the purchase by Seller of inventories and supplies that involve annual purchases exceeding $10,000; (v) agreements, orders or commitments for the sale or lease to customers of goods or services that involve annual sales exceeding $10,000; (vi) licenses of patents, copyrights, trademarks and other intangible property rights; (vii) agreements or commitments for capital expenditures in excess of $10,000 for any single project; (viii) provider and supplier agreements with Payment Programs; (ix) any joint venture, partnership or other agreement involving a share of profits or losses; (x) any contract, agreement or arrangements with any Affiliate; (xi) any agreement restricting competition or the business activities of any person or entity; (xii) any agreement for the purchase or sale of any Acquired Asset; (xiii) [reserved]; and (xiv) any other agreements or obligations pursuant to which Seller receives any payment in excess of $10,000 per year (*e.g.*, any clinical study program). <u>Schedule 4.16</u> contains a complete and correct list of Contracts, including a complete description for any oral Contracts. Each Contract listed on <u>Schedule 4.16</u> is a Contract that Seller has agreed to assign and that Buyer may agree to assume at the Closing (each, an "**Assigned Contract**").

(b) Seller has made no prepayments or deposits under any Contract except as set forth on <u>Schedule 4.16</u>.

4.17. <u>Leased Real Property</u>.

(a) <u>Schedule 4.17(a)</u> sets forth each parcel of real property leased by Seller and used in the conduct of the Business as currently conducted (together with all rights, title and interest of Seller in and to leasehold improvements relating thereto, including security deposits, reserves or prepaid rents paid in connection therewith, collectively, the "**Leased Real Property**"), and a true and complete list of all leases, subleases, licenses, concessions and other agreements (whether written or oral), including all amendments, extensions renewals, guaranties and other agreements with respect thereto, pursuant to which Seller holds any Leased Real Property (collectively, the "**Leases**"). Seller has delivered to Buyer a true and complete copy of each Lease. With respect to each Lease, except as set forth on <u>Schedule 4.17(a)</u>:

(i) Seller has not subleased, assigned or otherwise granted to any Person the right to use or occupy such Leased Real Property or any portion thereof; and

(ii) Seller has not pledged, mortgaged or otherwise granted an Encumbrance on its leasehold interest in any Leased Real Property.

(b)     Except as set forth on Schedule 4.17(b), since January 1, 2021, Seller has not received any written notice of (i) material violations of building codes and/or zoning ordinances or other governmental or regulatory Laws affecting the Real Property, (ii) existing, pending or threatened condemnation proceedings affecting the Real Property, or (iii) existing, pending or threatened zoning, building code or other moratorium proceedings, or similar matters which could reasonably be expected to adversely affect the ability to operate the Real Property as currently operated.  Neither the whole nor any material portion of any Real Property has been damaged or destroyed by fire or other casualty.

4.18.   Financing Statements.  To Seller's Knowledge, there are no financing statements under the Uniform Commercial Code that name Seller as debtor or lessee filed in any state, except as set forth on Schedule 4.18 attached hereto.  Except for those no longer in effect, Seller has not signed any financing statement or any security agreement under which a secured party thereunder may file any such financing statement.

4.19.   Insurance.  Seller is, and will through the Closing Date be, insured with insurers (including general liability insurance coverage of the Acquired Assets and Premises and professional liability coverage) against risks normally insured against by similar businesses under similar circumstances.  Schedule 4.19 attached hereto correctly describes, by type, carrier, policy number, limits, premium and expiration date, the insurance coverage carried by Seller, which insurance will remain in full force and effect in accordance with policy terms, with respect to all events occurring prior to the Closing Date.  Schedule 4.19 also states whether each such policy is carried on a "*claims made*" or "*occurrence*" basis.  All such insurance policies are owned by and payable solely to Seller, unless other or additional beneficiaries are identified in the applicable policy.

4.20.   Intellectual Property.  Schedule 4.20 attached hereto sets forth a list of Intellectual Property owned, controlled or used by Seller, together in each case with a brief description of the nature of such right.  Except as set forth on Schedule 4.20, Seller has not granted any person or entity any right or license to use any of the Intellectual Property for any purpose.

4.21.   NO OTHER REPRESENTATIONS OR WARRANTIES.  EXCEPT FOR THE REPRESENTATIONS NOR AND WARRANTIES CONTAINED IN THIS ARTICLE IV, NONE OF THE SELLERS NOR ANY OTHER PERSON ON BEHALF OF THE SELLERS MAKES ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO ANY OF THE SELLERS OR WITH RESPECT TO ANY OTHER INFORMATION PROVIDED TO BUYER IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING AS TO THE PROBABLE SUCCESS OR PROFITABILITY OF THE OWNERSHIP, USE OR OPERATION OF THE BUSINESS, OR THE ACQUIRED ASSETS FOLLOWING THE CLOSING.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents, warrants and covenants to Seller, as of the Effective Date and as of the Closing Date, as follows:

- 14 -

5.1.    <u>Organization, Good Standing and Qualification</u>.  Buyer is a nonprofit public benefit corporation organized under the California Nonprofit Public Benefit Corporation Law for public purposes and is validly existing and in good standing under the laws of the State of California. Buyer has all requisite corporate power and authority to enter into this Agreement and to carry out and perform its obligations under the Acquisition Agreements to which Buyer is a party.

5.2.    <u>Authorization; Binding Agreement</u>.  Buyer has the corporate power and authority to execute and deliver this Agreement, and to carry out the transactions contemplated hereby.  The execution and delivery by Buyer of the Acquisition Agreements to which Buyer is a party and all of the documents and instruments required thereby and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite company action on the part of Buyer.  The Acquisition Agreements to which Buyer is a party and each of the other documents and instruments required hereby have been duly executed and delivered by Buyer and constitute the valid and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms.

5.3.    <u>Legal Proceedings</u>.  There are no actions, suits, litigation, or proceedings pending or, to Buyer's knowledge without inquiry, threatened against Buyer that could materially adversely affect Buyer's ability to perform its obligations under this Agreement or the consummation of the transactions contemplated by this Agreement.

5.4.    <u>No Brokers</u>.  Buyer has not employed, either directly or indirectly, or incurred any liability to, any broker, finder or other agent in connection with the transactions contemplated by this Agreement.  Buyer shall indemnify Seller for any claims brought by any broker, finder or other agent claiming to have acted on behalf of Buyer in connection with this sale.

5.5.    <u>No Violation</u>.  The execution, delivery, compliance with and performance by Buyer of the Acquisition Agreements to which Buyer is a party and each of the other documents and instruments delivered in connection therewith do not and will not (a) violate or contravene the articles of organization or operating agreement, as amended to date, of Buyer, (b) to Buyer's knowledge without inquiry, violate or contravene any law, statute, rule, regulation, order, judgment or decree to which Buyer is subject, or (c) conflict with or result in a breach of or constitute a default under any contract, agreement, instrument or other document or contract to which Buyer is a party or by which Buyer or any of its assets or properties are bound or to which Buyer or any of its assets or properties are subject.

**ARTICLE VI**
**COVENANTS**

6.1.    <u>Conduct of the Business Pending Closing</u>.  Between the Effective Date and the Closing Date, and subject to any limitations and restrictions created by the lack of available funds or the provisions of the Bankruptcy Code, unless Buyer consents in writing, (i) Seller shall conduct the Business only in, and Seller shall not take any action except in, the ordinary course of business consistent with past practice, (ii) Seller shall use commercially reasonable efforts to keep available the services of Seller Employees and to preserve the current relationships of the Business with such of the patients, suppliers, physicians and other persons with which Seller has significant business relations so to preserve substantially intact the Business, and (iii) Seller shall use

- 15 -

commercially reasonable efforts to preserve intact the Acquired Assets. By way of amplification and not limitation, between the Effective Date and the Closing Date, the Seller shall not, and shall neither cause nor permit any of Seller's Affiliates, officers, directors, managers, employees and agents to, directly or indirectly, do, or agree to do, any of the following with respect to the Business or the Acquired Assets, without the prior written consent of Buyer, except as permitted by an order of the Bankruptcy Court:

(a)    Sell, pledge, dispose of, grant, transfer, lease, license, guarantee, encumber, or authorize the sale, pledge, disposition, grant, transfer, lease, license, guarantee or encumbrance of the Business, or any membership interests of Seller, or any of the Acquired Assets except in the ordinary course of business and in a manner consistent with past practice; *provided that* the aggregate amount of any such sale or disposition (other than a sale or disposition of products or other inventory in the ordinary course of business consistent with past practice, as to which there will be no restriction on the aggregate amount), or pledge, grant, transfer, lease, license, guarantee or encumbrance of such property or assets will not exceed $10,000;

(b)    Acquire (including by merger, consolidation or acquisition of stock or assets) for or in connection with the Business any interest in any corporation, partnership, other business organization, person or any division thereof or any assets, other than (i) acquisitions of assets in the ordinary course of business consistent with past practice, or (ii) purchases of inventory for resale or consumption (whether for cash or pursuant to an exchange) in the ordinary course of business and consistent with past practice;

(c)    Enter into, amend, terminate, cancel or make any material change in any Contract or Personal Property Lease except in the ordinary course of business and in a manner consistent with past practice, but shall not assume or reject any such Contract or Personal Property Lease without Buyer's consent;

(d)    Make or authorize any dividends or distributions to holders of equity or membership interests in Seller;

(e)    Increase the compensation payable or to become payable to any Seller Employee, except in the ordinary course of business and in a manner consistent with past practice, but shall not assume or reject any Contract with an Employee without Buyer's consent, or grant any rights to severance or termination pay to, or enter into any employment or severance agreement with, any Seller Employee, or establish, adopt, enter into or amend any collective bargaining, bonus, profit sharing, thrift, compensation, pension, retirement, deferred compensation, employment, termination, severance or other plan, agreement, trust, fund, policy or arrangement for the benefit of any Seller Employee;

(f)    Modify any material accounting policies, procedures or methods;

(g)    Take any action that could result in the representations and warranties set forth in **Article IV** above becoming materially false or inaccurate;

(h)    Fail to maintain a patient standard of care and operate Seller during the Bankruptcy Case consistent with its current level of operations through the Closing Date; or

DOCS_SF:106516.11 92381/001

(i) Take any action or fail to take any action that could result in a Seller Material Adverse Effect.

6.2. <u>Notice by Seller of Certain Events</u>. Between the Effective Date and the Closing Date, except as to any filings in the Bankruptcy Case, Seller shall give prompt written notice to Buyer of (a) any notice or other communication from any person alleging that the consent of such person is or may be required in connection with the consummation of the transactions contemplated by this Agreement; (b) any notice or other communication from any governmental entity in connection with the transactions contemplated by this Agreement; (c) any actions, suits, claims, investigations or proceedings commenced or, to Seller's Knowledge, threatened against, relating to or involving or otherwise affecting Seller, the Business or the Acquired Assets or the transactions contemplated by this Agreement; (d) the occurrence of a breach or default or event that, with notice or lapse of time or both, could become a breach or default under this Agreement or any Contract or Personal Property Lease; (e) any Seller Material Adverse Effect, event or circumstance that is likely to delay or impede the ability of Seller to consummate the transactions contemplated by this Agreement or to fulfill its obligations set forth herein; (f) any incurrence of indebtedness for borrowed money or any issuance of any guarantee for any debt; or (g) any waiver, release, settlement or compromise of any claims or litigation. Buyer's receipt of information pursuant to this **Section 6.2** shall not operate as a waiver or otherwise affect any representation, warranty or agreement given or made by Seller in this Agreement and shall not be deemed to amend or supplement the Schedules hereto.

6.3. <u>Efforts and Further Assurances</u>.

(a) <u>Efforts</u>. Buyer shall use best efforts to (x) obtain prior to the Closing Date all Third-Party Consents, Licenses, Governmental Approvals, and Regulatory Agreements and (y) timely satisfy the Legislative and Funding Milestones. If a Third-Party Consent, License, Governmental Approval, or Regulatory Agreement is not obtained and delivered at Closing and Buyer waives in writing such requirement, (i) neither this Agreement nor any action taken hereunder will be deemed to constitute an assignment of any Acquired Asset or any Contract if such assignment or attempted assignment would constitute a breach, or cause a violation, of any Acquired Asset or Contract or result in the loss or diminution of any rights thereunder or acceleration of any obligations thereunder, and (ii) Seller shall cooperate with Buyer in any reasonable arrangement proposed by Buyer designed to provide Buyer with the benefits of the Acquired Asset and Contract as to which such Third-Party Consent relates, including enforcement by Seller (at Buyer's expense), for the account and benefit of Buyer, of any and all rights of Seller against any other person arising out of the breach or cancellation of any such Acquired Asset or Contract by such other person or otherwise; *provided that* if the Sale Order approves the assignment of an Acquired Asset or Contract without regards to any Third-Party Consent, any such Third-Party Consent need not be consensual.

(b) <u>Further Assurances</u>. Each of the parties hereto shall, from time to time after the Closing Date, upon the reasonable request of any other party hereto and at the expense of such requesting party, duly execute, acknowledge and deliver all such further instruments and documents reasonably required to further effectuate the interests and purposes of this Agreement. The parties hereto agree to assist one another in good faith with respect to the transition of the Acquired Assets to Buyer. From and after the Closing Date, Seller shall cooperate with Buyer and

- 17 -

promptly sign and deliver to Buyer any and such additional documents, instruments, endorsements and related information and take actions as Buyer may reasonably request, for the purpose of effecting the transfer of the Acquired Assets to Buyer and/or carrying out the provisions of this Agreement (including, *inter alia*, delivering post-Closing Date accounts receivable, refunds, and insurance payments to Buyer that constitute Acquired Assets).

6.4.     Preservation of and Access to Information and Records.

(a)     After the Closing, Buyer shall keep and preserve all medical records and other books and records relating to the Business and/or the Acquired Assets existing as of the Closing and that are delivered to Buyer by Seller; *provided that*, subject to the last two (2) sentences of this sub-section, Buyer may dispose of such records in accordance with applicable law or Buyer's records retention and disposition policies from time to time in effect.  Upon reasonable notice, subject to patient confidentiality and during regular business hours and at mutually agreeable times, Buyer will afford the representatives of Seller, including its counsel and accountants, full and complete access to, and copies of (at the sole cost and expense of Seller), the patient medical records and other books and records transferred to Buyer at Closing. Notwithstanding the foregoing, should Buyer wish to destroy such records or any portion thereof, Buyer shall first notify Seller of its intent and Seller will have thirty (30) days following its receipt of such notice to notify Buyer of its intent to reclaim any such records in whole or in part.  Seller shall take possession of such records no later than ten (10) days following Seller's delivery of such notice of intent.

(b)     After the Closing, Seller shall keep and preserve all medical records and other records of the Business as of Closing that are not delivered to Buyer by Seller and that are required to be kept and preserved by applicable Law or in connection with any claim or controversy pending at Closing involving the Business; *provided*, *that*, subject to the last two (2) sentences of this sub-section, Seller may dispose of such records in accordance with Seller's records retention and disposition policies from time to time in effect.  From and after the Closing Date, for such period as is required by Law or in connection with any claim or controversy pending at Closing involving the Business, Buyer and Seller shall retain and make available to representatives of Seller or Buyer, respectively, including its counsel and accountants, upon reasonable notice, subject to patient confidentiality and during regular business hours and at mutually agreeable times, full and complete access to, and copies of (at the sole cost and expense of Buyer), any such records of the Business or relating to the Acquired Assets prior to the Closing Date and access to personnel as may be reasonably necessary to comply with applicable Law, prepare tax returns, or to resolve any such pending dispute.  Notwithstanding the foregoing, should Seller wish to destroy such records or any portion thereof, Seller shall first notify Buyer of its intent and Buyer will have thirty (30) days following its receipt of such notice to notify Seller of its intent to reclaim any such records in whole or in part.  Buyer shall take possession of such records no later than ten (10) days following Buyer's delivery of such notice of intent.

6.5.     Access to Information.  From the date hereof until the Closing, Seller shall (a) afford Buyer and its representatives full and free access to and the right to inspect all of the real property, properties, assets, premises, non-privileged books and records (subject to any limitation imposed by Law), Contracts and other documents and data related to the Business; (b) furnish Buyer and its representatives with such financial, operating and other non-privileged data and

DOCS_SF:106516.11 92381/001

information related to the Business as Buyer or any of its representatives may reasonably request; and (c) instruct the representatives of Seller to cooperate with Buyer in its investigation of the Business. Any investigation pursuant to this **Section 6.5** shall be conducted in such manner as not to interfere unreasonably with the conduct of the Business or any other businesses of Seller. No investigation by Buyer or other information received by Buyer shall operate as a waiver or otherwise affect any representation, warranty or agreement given or made by Seller in this Agreement.

6.6.    <u>Regulatory Agreements</u>.   Prior to the Closing Date, Buyer shall negotiate the Regulatory Agreements on terms reasonably acceptable to Buyer, and Buyer shall obtain all Governmental Approvals, Licenses, and Third Party Consents necessary to consummate the transactions contemplated by this Agreement.

6.7.    <u>Employment Matters</u>.

(a)    Effective as of the Closing Date, the District or other designee of Buyer shall offer employment to (i) at least the minimum number of Seller Employees at the Business location as specified on <u>Schedule 6.7(a)</u> attached hereto and who are not represented by any of the Unions, and (ii) each of the Seller Employees who are represented by any of the Unions, and subject to the terms and conditions of those certain Collective Bargaining Agreements by and between Watsonville Hospital Corporation and the respective Unions (collectively, the "**CBAs**"), as such CBAs may be amended, replaced or superseded by agreements with Buyer and the respective Unions. Buyer shall offer employment to all employees who submit an application for employment by any reasonable deadlines set in accordance with the respective CBAs. Buyer shall provide a reasonable amount of time between making the employment offer and the deadline for acceptance of employment. Employment offers shall be mailed and also transmitted via email where available. Alternatively, Buyer may set up an employment portal to process applications and make offers of employment. Effective as of the Closing Date, Seller will terminate the employment of the Seller Employees. Buyer shall cooperate in placing any information in the employment application or offer letter necessary to effectuate the hire of Seller Employees. Those Seller Employees who accept Buyer's offer of employment as of the Closing Date shall be hereinafter referred to as "**Transferring Employees**."

(b)    Except to the extent that such amounts have been paid by Seller prior to the Closing Date, Buyer or Buyer's designee shall assume liability for the following (collectively, the "**Assumed Employee Amounts**"): (i) any compensation, benefits, and corresponding Taxes (including any withholding obligations related thereto) payable to or on behalf of any Seller Employee on or after the Closing Date (whether or not such amounts accrued before, on, or after the Closing Date), and (ii) the obligations set forth in <u>Schedule 6.7(b)</u> attached hereto (the "**Assumed Non-Cash Employee Obligations**").

(c)    All Transferring Employees, other than those represented by any of the Unions, shall be employees at will, subject to Buyer's or its Affiliate's employment policies and offered medical, dental, vision and retirement plan benefits. Nothing herein shall obligate Buyer or an Affiliate of Buyer to employ the Transferring Employees for any specific time period. Nothing in this **Section 6.7** shall be construed to grant any employee any rights as a third-party

- 19 -

beneficiary. Seller shall retain all liabilities with respect to any and all Seller Employees who are not Transferring Employees.

(d) Buyer will not assume any liability or responsibility for any benefit or other obligations arising out of or under any Employee Benefit Plan (unless such plan is an Assigned Contract) to which any Transferring Employee, or any Seller Employee who is not a Transferring Employee, is or may be entitled to without regard to whether such obligation or responsibility arises under the terms of such Employee Benefit Plan or applicable Law. Seller shall retain all liability and responsibility for benefits, administration and compliance with the terms of any and all Employee Benefit Plans and applicable Laws with regard to any and all Employee Benefit Plans.

(e) Buyer has been provided with the CBAs between the Unions and Seller. Buyer has read and understood its Buyer obligations under those CBAs. Buyer will comply with the terms of such CBAs with regard to offering employment to and hiring employees employed by the Seller on the date the transaction closes. By hiring those Union represented employees who accept offers of employment, which the parties expect will be greater than a majority of represented employees, Buyer recognizes the Unions as the collective bargaining agent for each unit of employees. Buyer has the right to set initial terms and conditions of employment, and to negotiate its own Memorandums of Understanding or CBAs consistent with obligations under the Meyers Milias Brown Act (if it is a District) or the National Labor Relations Act (if it is a private employer) with each Union following Closing.

6.8. Discovered Contracts. At any time and from time to time on or before earliest to occur of (i) the ninetieth (90th) day after Closing, (ii) dismissal of the Bankruptcy Case, (iii) conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, and (iv) entry of an order confirming a chapter 11 plan in the Bankruptcy Case, Buyer may designate one or more Discovered Contracts as an Assigned Contract upon ten (10) days' notice to Seller. In such event and at Buyer's written request, Seller shall file the appropriate motion with the Bankruptcy Court for the assumption of such Discovered Contract on notice to any counterparty thereto, and Buyer shall reimburse Seller or its successor for any expense associated with such motion.

6.9. Management of the Hospital. If Buyer is selected as the Successful Bidder, after the time such selection made, Buyer may direct the Seller to reject that certain Management Services Agreement, dated as of January 18, 2021, by and between Watsonville Hospital Corporation and Alta Hospitals System, LLC, on thirty (30) days prior written notice, subject to identification prior to rejection of a replacement interim manager acceptable to Buyer, Seller and MPT to manage the Business through the Closing on terms acceptable to Buyer, Seller and MPT.

## ARTICLE VII
## CONFIDENTIALITY

7.1. Confidentiality.

(a) All information not disclosed to the public by Seller regarding the Business and the medical information of any patient currently receiving treatment or having previously

DOCS_SF:106516.11 92381/001

received treatment at the Business that is compiled by, obtained by, or furnished to Buyer or any of its agents or employees in the course of its due diligence review of the Business is acknowledged to be confidential information, trade secrets and the exclusive property of Seller through the Closing Date, and of Buyer thereafter, and all information not disclosed to the public by Buyer regarding Buyer's business or operations is acknowledged to be confidential information, trade secrets and the exclusive property of Buyer (collectively, "**Confidential Information**").

(b)     Each of the parties shall not divulge, directly or indirectly, any Confidential Information of the other party in any manner contrary to the interests of such party, use or cause or suffer to be used any Confidential Information in competition with such party, or use Confidential Information in violation of the patients' confidentiality rights under HIPAA or any applicable state Law.  Each of the parties acknowledges that the breach or threatened breach of the provisions of this **Section 7.1** would cause irreparable injury to the other party that could not be adequately compensated by money damages.  Accordingly, a party may obtain a restraining order and/or injunction prohibiting a breach or threatened breach of the provisions of this **Section 7.1**, in addition to any other legal or equitable remedies that may be available.  If requested by legal process to disclose any Confidential Information of another party, the party in receipt of such request shall promptly give notice thereof to the other party so that such party may, at its own cost and expense, seek an appropriate protective order or, in the alternative, waive compliance to the extent necessary to comply with such request if a protective order is not obtained.  If a protective order or waiver is granted, the party subject to such legal process may disclose the Confidential Information to the extent required by such court order or as may be permitted by such waiver.  Notwithstanding any part of the foregoing, Buyer may disclose Confidential Information for the purpose of complying with government filing requirements and for the purpose of issuing a press release about the transaction following the Closing Date.

(c)     Seller shall provide employee contact information to Buyer for the purpose of soliciting job applications and making employee offers. Seller shall not release personnel files, medical history or disciplinary history. From and after the Closing, Buyer shall onboard newly hired employees with its own onboarding materials, and follow all required immigration laws without reliance on existing I-9's.

(d)     The term "*Confidential Information*" does not include information that (i) is at the time of disclosure or later becomes generally known to the public or within the industry or segment of the industry to which such information relates without violation by a party of any of its obligations hereunder and not through any action by any of its directors, managers, officers, employees or agents which, if committed by such party, would have constituted a violation by it of any of its obligations hereunder; (ii) at the time of disclosure to the other party was already known by such other party; or (iii) after the time of the disclosure to the other party, is received by such party from a third party which, to such party's best knowledge, is under no confidentiality obligation with respect thereto.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO BUYER'S**
**PERFORMANCE AND TO SELLER'S PERFORMANCE**

8.1.    Conditions to Buyer's Obligations.  The obligations of Buyer under this Agreement are subject to the satisfaction of the following conditions on or prior to the Closing Date, all or any of which may be waived in writing by Buyer:

(a)    All representations and warranties made by Seller in this Agreement and the Schedules attached to and incorporated into the Agreement shall be true and correct as of the Effective Date and as of the Closing Date as though made on such dates, except for any failures of such representations or warranties to be so true and correct that, taken together, do not result in or constitute (and are not reasonably likely to result in or constitute) a Seller Material Adverse Effect.

(b)    Seller shall have performed, satisfied and complied in all material respects with all obligations and covenants required by this Agreement to be performed or complied with by them on or prior to the Closing Date.

(c)    On or before January 10, 2022, Seller shall have obtained from the Bankruptcy Court a final order approving the DIP Financing Motion and approving the DIP Loan Documents to fund Seller's operations through the earlier of (i) March 31, 2022, and (ii) the Closing, in each case, on the terms and subject to the conditions set forth in the DIP Loan Documents.

(d)    Seller shall have executed and delivered to Buyer the Assignment and Assumption and Bill of Sale in the form attached hereto as **Exhibit A**.

(e)    Seller shall have delivered to Buyer all other documents required to be delivered by them hereunder, and all such documents shall have been properly executed by each of them, if applicable.

(f)    Buyer shall have received all Third-Party Consents, listed on Schedule 4.3(b), Governmental Approvals listed on Schedule 4.3(a), and Regulatory Agreements in form and substance satisfactory to Buyer, effective as of the Closing Date.

(g)    Each of the Legislative and Funding Milestones shall have been timely satisfied.

(h)    Buyer shall have received a copy of an amendment to the MPT Lease in substantially the form set forth on **Exhibit B** hereto (the "**MPT Lease Amendment**") executed by MPT.

(i)    The Bankruptcy Court shall have entered an order authorizing the assumption and assignment of the MPT Lease as modified by the MPT Lease Amendment.

(j)    All Schedules and Exhibits attached to this Agreement are delivered to Buyer by Seller pursuant to this Agreement.

DOCS_SF:106516.11 92381/001

(k)     All of the Assigned Contracts and Assigned Personal Property Leases to the maximum extent permitted by applicable law, shall have been validly assumed and assigned under section 365 of the Bankruptcy Code to the District or Buyer's designee pursuant to the Sale Order or subsequent order of the Bankruptcy Court.

(l)     The Bankruptcy Court shall have entered the Bidding Procedures Order in accordance with **Article X** below.

(m)     The Bankruptcy Court shall have entered an order authorizing the sale of the Acquired Assets to Buyer free and clear of all Encumbrances (the "**Sale Order**") in accordance with **Article X** below substantially in the form attached hereto as **Exhibit C** or otherwise in form and substance satisfactory to Buyer and the Sale Order shall not have been stayed.

(n)     No event shall have occurred, that, individually or in the aggregate, could be reasonably expected to be a Seller Material Adverse Event.

8.2.     <u>Conditions to Seller's Obligations</u>.  The obligations of Seller under this Agreement are subject to the satisfaction of the following conditions, on or prior to the Closing Date, all or any of which may be waived in writing by Seller, with MPT's prior written consent:

(a)     All representations and warranties made by Buyer in this Agreement and in any written statements delivered to Seller under this Agreement shall be true and correct in all material respects as of the Effective Date and as of the Closing Date as though made on such date.

(b)     Each of the Legislative and Funding Milestones shall have been timely satisfied.

(c)     Buyer shall have performed, satisfied and complied in all material respects with all obligations and covenants of Buyer required by this Agreement to be performed or complied with by it on or prior to the Closing Date, specifically including Buyer's obligations to fund the Extended Budget.

(d)     Buyer shall have delivered to Seller all documents required to be delivered by Buyer hereunder, and all such documents shall have been properly executed by Buyer, if applicable.

(e)     Buyer shall have executed and delivered to Seller the Assignment and Assumption and Bill of Sale in the form attached hereto as **Exhibit A**.

(f)     The Bankruptcy Court shall have entered an order authorizing the assumption and assignment of the MPT Lease as modified by the MPT Lease Amendment in the form attached hereto as **Exhibit B**.

(g)     The Bankruptcy Court shall have entered the Bidding Procedures Order in accordance with **Article X** below.

DOCS_SF:106516.11 92381/001

(h)     The Bankruptcy Court shall have entered the Sale Order in accordance with **Article X** below substantially in the form attached hereto as **Exhibit C** or otherwise in form and substance satisfactory to MPT and the Sale Order shall not have been stayed.

8.3.     <u>No Injunction or Action</u>.  The obligations of both Buyer and Seller under this Agreement are conditioned upon there being, as of the Closing Date, no preliminary or permanent injunction or other order, decree or ruling issued by a court of competent jurisdiction or by a governmental agency concerning this Agreement that would make illegal or otherwise prevent consummation of this Agreement in accordance with its terms, and no proceeding or action brought by any governmental authority seeking the foregoing shall be pending.

## ARTICLE IX
## MISCELLANEOUS

9.1.     <u>Termination</u>.  This Agreement may be terminated and the transaction contemplated hereby may be abandoned at any time prior to the Closing Date as follows:

(a)     By mutual written consent of Buyer and Seller;

(b)     By Seller, upon or after the entry of a Sale Order approving a transaction with another party that has submitted a Competing Bid that has been accepted by Seller in accordance with **Section 10.1** hereof;

(c)     By either Buyer or Seller, if Closing has not occurred on or before August 31, 2022; *provided that* the right to terminate this Agreement under this **Section 9.1(c)** shall not entitle Buyer to a refund of the Deposit and will not be available to the party whose failure to fulfill any obligation under this Agreement has been the cause of, or resulted in, the failure of Closing to occur on or before such date;

(d)     By either Buyer or Seller, solely to the extent that such party has not breached this Agreement by causing the following to occur, if any order or other legal restraint or prohibition preventing the consummation of the transaction contemplated by this Agreement has been issued by any governmental authority or any Law has been enacted or adopted that enjoins, prohibits or makes illegal consummation of the transaction, *provided that* the failure of Buyer to have received all Third-Party Consents, Governmental Approvals, and Regulatory Agreements required under **Section 8.1(f)** shall not entitle Buyer to a refund of the Deposit;

(e)     By Buyer, upon a breach of, or failure to perform in any material respect (which breach or failure cannot be or has not been cured within thirty (30) days after the giving of notice of such breach or failure), any representation, warranty, covenant or agreement on the part of Seller set forth in this Agreement;

(f)     By Seller or Buyer, if any of the Legislative and Funding Milestones shall fail to be timely satisfied, *provided that* the failure of Buyer to satisfy the Legislative and Funding Milestones required under **Section 8.1(g)** shall not entitle Buyer to a refund of the Deposit; and

(g)     By Seller, (i) upon a breach of, or failure to perform in any material respect (which breach or failure cannot be or has not been cured within thirty (30) days after the giving of

DOCS_SF:106516.11 92381/001

notice of such breach or failure), any representation, warranty, covenant or agreement on the part of Buyer set forth in this Agreement; provided that Buyer shall only have two (2) business days to cure any failure to timely fund the Extended Budget or (ii) if all of the conditions to closing set forth in **Article VIII** above are fully satisfied (other than the conditions that by their nature are to be satisfied at the Closing) or waived and Buyer fails to consummate the Closing within two (2) business days following the date such conditions have been so satisfied or waived;

(h)     By Buyer, if Buyer is not the Successful Bidder at any Auction due to a successful overbid or underbid by another party and such Competing Bid closes; or

(i)     By either Buyer or Seller, if Buyer is not designated as a Qualified Bidder under the Bidding Procedures.

9.2.    Notice of Termination; Effect of Termination.  If this Agreement is terminated by either Buyer or Seller pursuant to **Section 9.1(c)** or **Section 9.1(d)** above, the terminating party will give prompt written notice thereof to the non-terminating party.  Except as set forth in **Section 9.3** below and in respect to the Deposit, in the event of a termination pursuant to **Section 9.1**, this Agreement will be of no further effect, there will be no liability under this Agreement on the part of either Buyer or Seller and all rights and obligations of each party hereto will cease.

9.3.    Expense Reimbursement.  Subject to the terms of the Bidding Procedures Order, if this Agreement is terminated pursuant to **Section  9.1(b)** or **Section 9.1(h)** above and a sale is closed with the Successful Bidder, then Seller shall pay to Buyer all documented fees and expenses actually and reasonably incurred by Buyer, its attorneys, accountants, other professionals and representatives in negotiating and documenting this Agreement and any related documents, and in preserving and protecting Buyer's rights and interests as Buyer in the Bankruptcy Case up to $500,000 in the aggregate payable from the proceeds from the closing of an acquisition by an alternative buyer (the "**Expense Reimbursement**").  The Expense Reimbursement shall constitute an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code.

9.4.    Survival of Representations and Warranties; Survival of Post-Closing Covenants.  The parties hereto agree that the representations and warranties contained in this Agreement shall expire automatically and immediately upon the closing or earlier termination of this Agreement, and shall have no further force and effect after such time.  The parties hereto agree that the covenants contained in this Agreement to be performed at or after the Closing shall survive in accordance with the terms of the particular covenant or until fully performed.

9.5.    Expenses.  Except as otherwise specified herein, each of the parties hereto shall pay its own fees, costs and expenses incurred in connection with the negotiation, preparation, execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

9.6.    Entire Agreement; Amendment.  The Acquisition Agreements, together with their Schedules and Exhibits and all ancillary agreements and exhibits and schedules thereto to be delivered at Closing, contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements, either oral or written.  This Agreement may not be amended, or any term or condition waived, unless signed by the party to be charged or making the waiver and MPT.  Each party to this Agreement acknowledges that no representations,

- 25 -

inducements, promises, or agreements, orally or otherwise, have been made by any other party, or by anyone acting on behalf of any other party, that are not embodied herein, and that no other agreement, statement or promise not contained in this Agreement will be valid or binding.

9.7. <u>Assignment</u>. No party hereto shall assign or otherwise transfer this Agreement or any of its rights hereunder, or delegate any of its obligations hereunder without the prior written consent of the other party and MPT; *provided that* Buyer will be permitted, without the consent of (but on notice to) each of Seller and MPT, to assign or otherwise transfer this Agreement or any of its rights hereunder to the District or any affiliate of Buyer with the demonstrated financial wherewithal to close the transactions contemplated hereby satisfactory to each of Seller and MPT; provided, further, that no such assignment or other transfer by Buyer will relieve Buyer of any of its obligations hereunder. Subject to the foregoing, this Agreement and the rights and obligations set forth herein will inure to the benefit of, and be binding upon the parties hereto, and each of their respective successors, heirs and assigns, without novation.

9.8. <u>Counterparts</u>. This Agreement may be executed in counterparts, any one of which need not contain the signatures of all parties, but all of which counterparts when taken together will constitute one and the same agreement. This Agreement and any signed agreement entered into in connection herewith or contemplated hereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or by .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail, shall be treated in all manner and respects as an original contract and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person. At the request of any party hereto or to any such contract, each other party hereto or thereto shall re-execute original forms thereof and deliver them to all other parties. No party hereto or to any such contract shall raise the use of a facsimile machine or by .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail to deliver a signature or the fact that any signature or contract was transmitted or communicated through the use of facsimile machine or by .pdf, .tif, .gif, .jpeg or similar attachment to electronic mail as a defense to the formation of a contract and each such party forever waives any such defense.

9.9. <u>Law Governing Agreement; Bankruptcy Court Jurisdiction</u>. This Agreement shall be construed and interpreted according to the internal laws of California without regard to any conflicts of law provisions. The parties agree that the Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Agreement, the Bidding Procedures Order, and the Sale Order. With respect to the above jurisdiction, the parties expressly and irrevocably (a) consent and submit to the personal jurisdiction of such court in any such action or proceeding, (b) waive any claim or defense in any such action or proceeding based on any alleged lack of personal jurisdiction, improper venue, or *forum non conveniens* or any similar basis, and (c) waive all rights, if any, to trial by jury with respect to any such action or proceeding.

9.10. <u>Schedules and Exhibits</u>. The Schedules and Exhibits attached hereto are an integral part of this Agreement. All Exhibits and Schedules attached to this Agreement are incorporated herein by this reference and all references herein to this "Agreement" mean this Asset Purchase Agreement together with all such Exhibits and Schedules, and all ancillary agreements and exhibits and schedules thereto to be delivered at Closing.

9.11. <u>Severability</u>. Any provision hereof that is held to be prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be adjusted rather than avoided, if possible, to achieve the intent of the parties to this Agreement to the extent possible without in any manner invalidating the remaining provisions hereof.

9.12. <u>Notices</u>. All notices or other communications required or permitted hereunder must be in writing and will be deemed properly given three (3) business days after being sent by registered or certified mail, postage prepaid, to the parties at the address listed below:

If to Seller:                Halsen Healthcare, LLC and its subsidiaries
c/o Force 10
5271 California Ave, Suite 270
Irvine, California 92617
Attn: Jeremy Rosenthal

-with a copy (which shall not constitute notice) to-

Pachulski Stang Ziehl & Jones LLP
One Market Plaza, Spear Tower
40th Floor
San Francisco, CA 94105-102
Attn: Debra Grassgreen

If to Buyer:                Pajaro Valley Healthcare District Project
Attn: Dorie Rose Inda, Treasurer, CFO
Pajaro Valley Healthcare District Project
23 East Beach Street, No. 214
Watsonville, CA 95076

-with a copy (which shall not constitute notice) to-

Cecilia Montalvo
P.O. Box 1296
Cambria, CA 93428]

And

Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, 36th Floor
Los Angeles, California 90017-5524
Attn: Gerry Hinkley

And

Pillsbury Winthrop Shaw Pittman LLP
Four Embarcadero Center, 22nd Floor
San Francisco, California 94111-5998

- 27 -

DOCS_SF:106516.11 92381/001

9.13.  <u>Representation by Counsel</u>.  Each party hereto acknowledges that it has been advised by legal and any other counsel retained by such party in its sole discretion.  Each party acknowledges that such party has had a full opportunity to review this Agreement and all related Exhibits, Schedules and ancillary agreements and to negotiate any and all such documents in its sole discretion, without any undue influence by any other party hereto or any third party.

9.14.  <u>Construction</u>.  The parties have participated jointly in the negotiations and drafting of this Agreement and if any ambiguity or question of intent or interpretation arises, no presumption or burden of proof will arise favoring or disfavoring any party by virtue of the authorship of any of the provisions of this Agreement.

9.15.  <u>Certain References</u>.  As used in this Agreement, and unless the context requires otherwise: references to "*include*" or "*including*" mean including without limitation and are intended to be illustrative and not restrictive of the word or phrase to which they refer; references to "*partners*" mean general and limited partners of partnerships and members of limited liability companies; references to "*partnerships*" mean general and limited partnerships, joint ventures and limited liability companies; references to any document are references to that document as amended, consolidated, supplemented, novated or replaced by the parties thereto; references to laws generally or to any law specifically are references to that law as amended, supplemented or replaced, and all rules and regulations promulgated thereunder; the gender of all words includes the masculine, feminine and neuter, and the number of all words includes the singular and plural; references to articles or sections are references to articles or sections of this Agreement, unless otherwise expressly stated; and the table of contents, the division of this Agreement into articles and sections, and the use of captions and headings in connection therewith are solely for convenience and have no legal effect in construing this Agreement.

9.16.  <u>Waivers</u>.  No waiver by any party, whether express or implied, of its rights under any provision of this Agreement will constitute a waiver of the party's rights under such provisions at any other time or a waiver of the party's rights under any other provision of this Agreement.  No failure by any party to take any action against any breach of this Agreement or default by another party will constitute a waiver of the former party's right to enforce any provision of this Agreement or to take action against such breach or default or any subsequent breach or default by the other party.  To be effective any waiver must be in writing and signed by the waiving party.

9.17.  <u>Bulk Sales Laws</u>.  Buyer waives compliance by Seller and Seller waives compliance by Buyer, with the provisions of the "bulk sales", "bulk transfer" or similar laws of any state other than any Laws which would exempt any of the transactions contemplated by this Agreement from any Tax liability which would be imposed but for such compliance.<u>Third Parties</u>. Nothing herein, expressed or implied, is intended to or shall confer on any person other than the parties hereto any rights, remedies, obligations or liabilities under or by reason of this Agreement, except that MPT shall be a third-party beneficiary of this Agreement without any liability or obligations hereunder.

9.19.  <u>Specific Performance</u>.  The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that

- 28 -

Buyer, Seller and MPT, as applicable, shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

## ARTICLE X
## BANKRUPTCY MATTERS AND CONDUCT OF AUCTION

10.1.    Seller's Motions in Bankruptcy Court.

(a)      Seller has selected Buyer to serve, and Buyer has consented to its selection and service, as a "Stalking Horse Bidder," whereby this Agreement shall serve as a base by which other offers for a potential transaction may be measured and is subject to qualified competing offers (each a "**Competing Bid**") by way of the auction process (the "**Auction**") contemplated by and more fully set forth in the Bidding Procedures Order, which may include underbids. Buyer acknowledges that Seller filed and served a motion (the "**Bidding Procedures Motion**") requesting that the Bankruptcy Court enter an order approving the procedures proposed in the Bidding Procedures Motion (the "**Bidding Procedures**"), in form and substance satisfactory to Buyer and MPT, including the form and manner of notice of the sale and assumption and assignment of executory contracts and unexpired leases, and that Seller is required to secure an order approving the proposed Bidding Procedures and the form and manner of notice of the sale and assignment and assumption of executory contracts and unexpired leases no later than January 14, 2022 (the "**Bidding Procedures Order**").

(b)      In the Bidding Procedures Motion, Seller seeks (i) approval from the Bankruptcy Court of the Bidding Procedures and the Specified Deadlines (as defined in the DIP Financing Motion) to achieve the Chapter 11 milestones and complete the proposed sale process, (ii) the date of the subsequent hearing to consider the Sale Motion ("**Sale Hearing**"), (iii) approval of the Expense Reimbursement, and (iv) entry of the Sale Order no later than February 25, 2022, as such deadline may be modified with the prior written consent of Buyer and MPT.

(c)      Seller will file and serve a motion seeking entry of the Sale Order (the "**Sale Motion**") and the Sale Hearing shall be held in accordance with the Specified Deadlines. Seller will seek entry of a Sale Order that authorizes the parties to close soon as practicable after entry of the Sale Order, but in no event later than August 31, 2022.  The Sale Motion will request that the sale of the Acquired Assets be free and clear of all Encumbrances to the fullest extent permitted under section 363(f) of the Bankruptcy Code.

(d)      Seller agrees not to withdraw, amend, or otherwise unwind the Bidding Procedures Motion, the Bidding Procedures, or the Sale Motion without the consent of Buyer.

(e)      Seller will provide Buyer with a reasonable opportunity to review and comment upon the Bidding Procedures Order, the Bidding Procedures, the Sale Order and any other pleading pertaining in any way to the transaction contemplated by this Agreement prepared by Seller (including forms of orders and notices to interested parties) prior to the filing thereof with the Bankruptcy Court, each of which shall be in a final form acceptable to Buyer in its reasonable discretion.

(f)      Acceptance of Competing Bid.  If the highest or best offer is submitted at the Auction by a party other than Buyer who presents an acceptable Competing Bid (the

DOCS_SF:106516.11 92381/001
Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 34 of 144

"**Successful Bidder**"), then Seller shall be entitled to terminate this Agreement and close a sale pursuant to such other offer (or, if such other offer does not close, then pursuant to the next highest or best offer) or, alternatively, Seller may elect not to terminate this Agreement and Buyer shall remain bound to this Agreement as a Backup Bidder consistent with the terms of the Bidding Procedures. For the avoidance of doubt, with the consent of MPT, Seller shall be permitted to select a Backup Bidder with a lower bid than Buyer as the Successful Bidder.

    10.2. <u>Defense of Orders</u>. If, following the Closing, the Bidding Procedures Order, the Sale Order, or any other order of the Bankruptcy Court relating to this Agreement shall be appealed (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), Seller, at Seller's expense (to the extent only of its financial resources available therefor), shall take all commercially reasonable steps as may be appropriate to defend against such appeal, petition or motion, and Buyer agrees to cooperate in such efforts, and each party hereto shall endeavor to obtain an expedited resolution of such appeal.

[<i>Signature Pages Follow</i>]

**IN WITNESS WHEREOF**, the parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date first written above.

<u>**BUYER:**</u>

PAJARO VALLEY HEALTHCARE DISTRICT PROJECT

By: _____

Name:    Mimi Hall

Title:    Chair, Board of Directors

[*Signature Page to Asset Purchase Agreement*]

DOCS_SF:106516.11 92381/001

**SELLER**:

HALSEN HEALTHCARE, LLC, WATSONVILLE
COMMUNITY HOSPITAL HOLDINGS, INC.,
WATSONVILLE HEALTHCARE
MANAGEMENT, LLC, AND WATSONVILLE
HOSPITAL CORPORATION

By: _____

Name:    Jeremy Rosenthal

Title:    Chief Restructuring Officer

# TABLE OF EXHIBITS AND SCHEDULES

## [To Be Attached]

Exhibit A – Form of Assignment and Assumption and Bill of Sale
Exhibit B – Form of MPT Lease Amendment
Exhibit C – Form of Sale Order

Annex I – Table of Definitions

Schedule 1.0        - Business Site Locations Being Transferred to Buyer
Schedule 1.1        - Acquired Assets
Schedule 1.2        - Excluded Assets
Schedule 1.3        - Cure Costs
Schedule 4.1        - Corporate Governance
Schedule 4.3(a)     - Governmental Approvals
Schedule 4.3(b)     - Third Party Consents
Schedule 4.5        - Seller Licenses
Schedule 4.6        - Assets Not Presently Owned but to be Conveyed at Closing
Schedule 4.7        - Assigned Personal Property Leases
Schedule 4.8        - Absence of Certain Events
Schedule 4.9        - Legal Proceedings
Schedule 4.10       - Payment Programs
Schedule 4.11       - Compliance with Laws
Schedule 4.12(b)    - Collective Bargaining Agreements
Schedule 4.13       - Benefit Plans
Schedule 4.15       - Tax Returns
Schedule 4.16       - Assigned Contracts
Schedule 4.17(a)    - Leased Real Property
Schedule 4.17(b)    - Notices Regarding Leased Real Property
Schedule 4.18       - Financing Statements
Schedule 4.19       - Insurance
Schedule 4.20       - Intellectual Property
Schedule 6.7(a)     - Employment Matters
Schedule 6.7(b)     - Assumed Employee Amounts

**EXHIBIT A**

**ASSIGNMENT AND ASSUMPTION
AND BILL OF SALE**

This Assignment and Assumption and Bill of Sale (the "**Agreement**") is and entered into and made as of the [●] day of [●], 2022 (the "**Effective Date**"), by and among **Halsen Healthcare, LLC, Watsonville Hospital Holdings, Inc. Watsonville Healthcare Management, LLC, and Watsonville Hospital Corporation** (the foregoing are herein jointly and severally referred to as "**Seller**"), and **Pajaro Valley Healthcare District Project** ("**Buyer**").

**R E C I T A L S**

**WHEREAS,** Seller and Buyer are parties to an Asset Purchase Agreement dated as of December 27, 2021 (the "**Purchase Agreement**"), whereby (i) Seller has agreed to sell, convey, transfer, assign and deliver to Buyer the Acquired Assets (as defined in the Purchase Agreement) and (ii) Seller has agreed to assign and Buyer has agreed to assume, the Assumed Liabilities (as defined in the Purchase Agreement); and

**WHEREAS**, all capitalized terms not defined herein will have the meanings ascribed to such terms in the Purchase Agreement.

**NOW, THEREFORE,** pursuant to the Purchase Agreement, and in consideration of the mutual promises, covenants and agreements therein and hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Bill of Sale.

    (a)     Except for Excluded Assets (as defined in the Purchase Agreement) and subject to the Sale Order, Seller hereby sells, conveys, transfers, assigns and delivers to Buyer, its successors and assigns, free and clear of any pledge, lien, option, security interest, mortgage or other Encumbrance, and Buyer does hereby acquire from Seller, all right, title and interest in, to and under the Acquired Assets. The Acquired Assets will include all rights, privileges, hereditaments and appurtenances belonging, incident or appertaining to the Acquired Assets.

    (b)     Notwithstanding anything contained herein, Buyer is not purchasing from Seller any Excluded Assets.

    (c)     It is understood by both Seller and Buyer that, contemporaneously with the execution and delivery of this Agreement, Seller may be executing and delivering to Buyer certain further assignments and other instruments of transfer, including wire transfers of cash, as applicable, that in particular cover certain of the property and assets described herein or in the Purchase Agreement, the purpose of which is to supplement, facilitate and otherwise implement the transfer intended hereby.

    (d)     Seller does hereby irrevocably constitute and appoint Buyer, its successors and assigns, its true and lawful attorney, with full power of substitution, in its name or otherwise,

and on behalf of Seller, or for its own use, to claim, demand, collect and receive at any time and from time to time any and all Acquired Assets, properties, claims, accounts and other rights, tangible or intangible, hereby sold, transferred, conveyed, assigned and delivered, or intended so to be, and to prosecute the same at law or in equity and, upon discharge thereof, to complete, execute and deliver any and all necessary instruments of satisfaction and release.

2.   Assignment and Assumption of Assumed Liabilities.

(a)   Seller hereby assigns to Buyer, its successors and assigns, and Buyer hereby assumes, in accordance with the terms and conditions of the Purchase Agreement, the Assumed Liabilities.  Notwithstanding anything in this Agreement to the contrary, except as specifically set forth in the Purchase Agreement, Buyer will not assume nor be deemed to have assumed any debt, claim, obligation or other liability of Seller or any Affiliate of Seller, whether known or unknown, accrued or unaccrued, fixed or contingent, natural or unnatural, whether arising out of occurrences, events or actions prior to, at or after the Closing Date.

(b)   If Seller and/or Buyer determines after execution of this Agreement that one or more contracts or agreements between Seller and any third party necessary to operate the Acquired Assets was not designated as an Assigned Contract or an Assigned Personal Property Lease (each an "**Omitted Agreement**"), and the parties consent in writing to the assignment and assumption of such Omitted Agreement, which consent shall not be unreasonably withheld, then, subject to an appropriate order of the Bankruptcy Court, such Omitted Agreement will be deemed assigned by Seller to Buyer as of 12:01 a.m. on the Closing Date and such Omitted Agreement shall be deemed an Assigned Contract or Assigned Personal Property Lease, as applicable.

(c)   Seller hereby authorizes and directs all obligors under any Assigned Contracts and Assigned Personal Property Leases included in the Assumed Liabilities, to deliver any warrants, checks, drafts or payments to be issued or paid to Seller pursuant to the Assigned Contracts or the Assigned Personal Property Leases to Buyer; and Seller further authorizes Buyer to receive such warrants, checks, drafts or payments from such obligors and to endorse Seller's name on them and to collect all funds due or to become due under the Assigned Contracts and the Assigned Personal Property Leases.

(d)   Any payment that may be received by Seller to which Buyer is entitled by reason of this Agreement or the Purchase Agreement will be received by Seller as trustee for Buyer, and will be immediately delivered to Buyer without commingling with any other funds of Seller.

(e)   Notice of the assignment under this Agreement may be given at the option of either party to all parties to the Assigned Contracts and the Assigned Personal Property Leases (other than Seller) or to such parties' duly authorized agents.

(f)   The assumption by Buyer of any Assumed Liabilities will not enlarge the rights of any third party with respect to any Assumed Liabilities, nor will it prevent Buyer, with respect to any party other than Seller, from contesting or disputing any Assumed Liability.

(g)   Seller hereby appoints Buyer, its successors and assigns, as the true and lawful attorney-in-fact of Seller, with full power of substitution, having full right and authority, in

the name of Seller, to collect or enforce for the account of Buyer, liabilities and obligations of third parties under the Assumed Liabilities; to institute and prosecute all proceedings they may deem proper to enforce any claim to obligations owed under the Assumed Liabilities, to defend and compromise any and all actions, suits or proceedings in respect of the Assumed Liabilities, and to do all such acts in relation to the Assumed Liabilities that Buyer may deem advisable. The above-stated powers are coupled with an interest and will be irrevocable by Seller.

3. <u>Consummation of Purchase Agreement</u>. This Agreement is intended to evidence the consummation of the assignment by Seller and assumption by Buyer of the Assumed Liabilities and the sale by Seller and the purchase by Buyer of the Acquired Assets contemplated by the Purchase Agreement. Except as set forth herein, Buyer and Seller by their execution of this Agreement each hereby acknowledges that neither the representations and warranties nor the rights and remedies of any party under the Purchase Agreement will be deemed to be enlarged, modified or altered in any way by this Agreement. Any inconsistencies or ambiguities between this Agreement and the Purchase Agreement will be resolved in favor of the Purchase Agreement.

4. <u>Binding Effect</u>. This Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

5. <u>Further Assurances</u>. After the Closing Date, each party will from time to time, at the other party's request and without further cost to the party receiving the request, execute and deliver to the requesting party such other instruments and take such other action as the requesting party may reasonably request so as to enable it to exercise and enforce its rights under and fully enjoy the benefits and privileges with respect to this Agreement and to carry out the provisions and purposes hereof.

6. <u>Governing Law</u>. This Agreement is governed by and construed in accordance with the laws of the California applicable to agreements made and to be performed in that State without giving effect to conflicts of law principles.

7. <u>Counterparts</u>. This Agreement may be signed in any number of counterparts and all such counterparts will be read together and construed as one and the same document. Facsimile copies of signatures will be deemed originals for all purposes hereof and that a party may produce such copies, without the need to produce original signatures, to prove the existence of this Agreement in any proceeding brought hereunder. This Agreement, and any executed counterpart of a signature page to this Agreement, may be transmitted by fax or e-mail, and delivery of an executed counterpart of a signature page to this Agreement by fax or e-mail will be effective as delivery of a manually executed counterpart of this Agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed, or caused this Agreement to be executed by their duly authorized representatives, as of the date first written above.

<u>**BUYER**</u>:

PAJARO VALLEY HEALTHCARE DISTRICT PROJECT

By: _____
Name:    Mimi Hall
Title:    Chair, Board of Directors

[*Signature Page to Assignment and Assumption and Bill of Sale*]

**<u>SELLER</u>:**

HALSEN HEALTHCARE, LLC, WATSONVILLE
COMMUNITY HOSPITAL HOLDINGS, INC.,
WATSONVILLE HEALTHCARE
MANAGEMENT, LLC, AND WATSONVILLE
HOSPITAL CORPORATION

By: _____
Name:    Jeremy Rosenthal
Title:    Chief Restructuring Officer

*[Signature Page to Assignment and Assumption and Bill of Sale]*

**Annex I**

**TABLE OF DEFINITIONS**

"**Acquired Assets**" has the meaning set forth in **Section 1.1** of this Agreement.

"**Acquisition Agreements**" means this Agreement, the Assignment and Assumption and Bill of Sale, and all other agreements executed in connection with this Agreement and in connection with Closing.

"**Affiliates**" means, as to the Person in question, any Person that directly or indirectly controls, is controlled by, or is under common control with, the Person in question and any successors or assigns of such Person; and the term "control" means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person whether through ownership of voting securities, by contract or otherwise.

"**Agreement**" has the meaning set forth in the first sentence of this Agreement.

"**Allocation**" has the meaning set forth in the **Section 2.4** of this Agreement.

"**Assigned Contract**" has the meaning set forth in **Section 4.16** of this Agreement.

"**Assigned Personal Property Leases**" has the meaning set forth in **Section 4.7** of this Agreement.

"**Assumed Employee Amounts**" has the meaning set forth in **Section 6.7(b)** of this Agreement.

"**Assumed Liabilities**" has the meaning set forth in **Section 1.3** of this Agreement.

"**Assumed Non-Cash Employee Obligations**" has the meaning set forth in **Section 6.7(b)** of this Agreement.

"**Auction**" has the meaning set forth in **Section 10.1(a)** of this Agreement.

"**Backup Bidder**" shall have the meaning set forth in the Bidding Procedures

"**Bankruptcy Case**" has the meaning set forth in the recitals of this Agreement.

"**Bankruptcy Code**" has the meaning set forth in the recitals of this Agreement.

"**Bankruptcy Court**" has the meaning set forth in the recitals of this Agreement.

"**Bidding Procedures**" has the meaning set forth in **Section 10.1(a)** of this Agreement.

"**Bidding Procedures Motion**" has the meaning set forth in **Section 10.1(a)** of this Agreement.

"**Bidding Procedures Order**" has the meaning set forth in **Section 10.1(a)** of this Agreement.

"**Business**" has the meaning set forth in the first recital to this Agreement.

1

DOCS_SF:106516.11 92381/001

"**Buyer**" has the meaning set forth in the preamble to this Agreement.

"**CBA**" has the meaning set forth in **Section 6.7(a)** of this Agreement.

"**Claim**" has the meaning given that term in Section 101(5) of the Bankruptcy Code and includes all rights, claims, causes of action, chose in action, Taxes, defenses, debts, demands, damages, offset rights, setoff rights, recoupment rights, obligations, and liabilities of any kind or nature under contract, at law or in equity, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto.

"**Closing**" has the meaning set forth in the first sentence of **Article III** of this Agreement.

"**Closing Date**" has the meaning set forth in **Article III** of this Agreement.

"**CMS**" means the Centers for Medicare and Medicaid Services.

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Competing Bid**" has the meaning set forth in **Section 10.1** of this Agreement.

"**Confidential Information**" has the meaning set forth in **Section 7.1(a)** of this Agreement.

"**Contract**" has the meaning set forth in **Section 4.16** of this Agreement.

"**Cure Costs**" has the meaning set forth in **Section 1.3** of this Agreement.

"**Deposit**" has the meaning set forth in **Section 2.2** of this Agreement.

"**DIP Financing Motion**" has the meaning set forth in the recitals to this Agreement.

"**DIP Note**" has the meaning set forth in the recitals of this Agreement.

"**Discovered Contracts**" means any Contract of Seller identified following the Closing that was not previously disclosed to Buyer.

"**District**" has the meaning set forth in the recitals to this Agreement.

"**DOJ**" means the United States Department of Justice.

"**Effective Date**" has the meaning set forth in the preamble to this Agreement.

"**Employee Benefit Plans**" means any "employee benefit plan" as defined in Section 3(3) of ERISA (whether or not subject to ERISA) and all bonus, stock or other security option, stock or other security purchase, stock or other security appreciation rights, incentive, deferred compensation, pension, retirement or supplemental retirement, severance, golden parachute, vacation, cafeteria, dependent care, medical care, employee assistance program, education or tuition assistance programs, insurance and other similar fringe or employee benefit plans, programs or arrangements, and any current or former employment or executive compensation or severance agreements or any other plan or arrangement to provide compensation or benefits to an

2

DOCS_SF:106516.11 92381/001

individual, written or otherwise, that either: (i) has ever been sponsored or maintained, contributed to or entered into for the benefit of, or relating to, Seller or any ERISA Affiliate, and determined without regard to whether such individual is a Seller Employee or a Transferring Employee; or (ii) with respect to which Seller or any ERISA Affiliate has any liability or obligation, whether known or unknown, absolute, accrued, contingent or otherwise.

"**Encumbrance**" means any and all Liens (statutory or otherwise), conditions, equitable interests, security interests, community property interests, mortgages, pledges, options, warrants, purchase rights, easements, encroachments, rights of way, deed restrictions, defects or imperfections of title, covenants, restrictions, charges or claims of any kind, rights of first refusal, rights of set-off, or restrictions of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended.

"**ERISA Affiliate**" means any entity (whether or not incorporated) that together with Seller is (or has been) a member of (i) a controlled group of corporations within the meaning of Section 414(b) of the Code; (ii) a group of trades or business under common control within the meaning of Section 414(c) of the Code; (iii) an affiliated service group within the meaning of Section 414(n) of the Code; or (iv) any other person or entity treated as an Affiliate of Seller under Section 4l4(o)of the Code.

"**Excluded Assets**" has the meaning set forth in **Section 1.2** of this Agreement.

"**Excluded Cash**" has the meaning set forth in **Section 1.2** of this Agreement.

"**Excluded Liabilities**" has the meaning set forth in **Section 1.4** of this Agreement.

"**Expense Reimbursement**" has the meaning set forth in **Section 9.3** of this Agreement.

"**Extended Budget**" has the meaning set forth in **Section 2.1** of this Agreement.

"**GAAP**" means accounting principles generally accepted in the United States of America, consistently applied.

"**Governmental Approval**" has the meaning set forth in **Section 4.3(a)** of this Agreement.

"**HIPAA**" means the Health Insurance Portability and Accountability Act of 1996, as amended.

"**Intellectual Property**" means all recipes, patents, inventions, show-how, designs, trade secrets, copyrights, trademarks, trade names, service marks, fictitious and assumed business names, Internet domain names, manufacturing processes, software, formulae, trade secrets, technology or the like, and all applications for any of the foregoing.

"**Interest**" has the meaning ascribed to such term under Section 363(f) of the Bankruptcy Code.

"**Interim DIP Order**" has the meaning set forth in the recitals to this Agreement.

3

"**IRS**" means the United States Internal Revenue Service.

"**Law**" or "**Laws**" means any and all federal, state, and local statutes, codes, licensing requirements, ordinances, laws, rules, regulations, decrees or orders of any foreign, federal, state or local government and any other governmental department or agency, and any judgment, decision, decree or order of any court or governmental agency, department or authority, if applicable to the parties and, in the case of Seller, that are material to the Business.

"**Leased Real Property**" has the meaning set forth in **Section 4.17(a)**.

"**Leases**" has the meaning set forth in **Section 4.17(a)**

"**Legislative and Funding Milestones**" means Buyer shall have obtained (i) legislative authorization for the formation of the District to participate as the buyer in this Agreement and thereafter provide for the operation of the Hospital, and (ii) State of California funding and tax-exempt debt to consummate the Closing.

"**Licenses**" means licenses, permits, consents, approvals, authorizations, registrations, qualifications and certifications of any governmental or administrative agency or authority (whether federal, state or local), including any Medicare, Medicaid, Medi-Cal and other provider numbers, certificates or determinations of need, Clinical Laboratory Improvement Amendments and Drug Enforcement Administration certifications, if applicable.

"**Liens**" means any lien, claim, security interest, mortgage, pledge, restriction, covenant, charge or encumbrance of any kind or character, direct or indirect, whether accrued, absolute, contingent or otherwise, including any lien or claim granted by the Bankruptcy Court pursuant to section 364 of the Bankruptcy Code or otherwise granted by the Bankruptcy Court to a lender to loan funds to Seller after the initiation of the Bankruptcy Case.

"**Medi-Cal**" means the Medicaid programs administered by the California Department of Health Care Services.

"**MPT**" has the meaning set forth in the recitals to this Agreement.

"**MPT Lease**" has the meaning set forth in the recitals to this Agreement.

"**MPT Lease Amendment**" has the meaning set forth in **Section 8.1(h)** of this Agreement.

"**MPT Lessor**" has the meaning set forth in the recitals to this Agreement.

"**MPT Prepetition Lender**" has the meaning set forth in the recitals to this Agreement.

"**Payment Programs**" means Medicare, Medicaid, Tricare, Medi-Cal, Worker's Compensation, Blue Cross/Blue Shield programs, and all other health maintenance organizations, preferred provider organizations, health benefit plans, health insurance plans, and other third-party reimbursement and payment programs.

4

DOCS_SF:106516.11 92381/001

"**Person**" means an individual, a corporation, a limited liability company, a partnership, an association, a trust or any other entity or organization, including a government or political subdivision or any agency or instrumentality thereof.

"**Personal Property Leases**" has the meaning set forth in **Section 4.7** of this Agreement.

"**Petition Date**" has the meaning set forth in the recitals to this Agreement.

"**Premises**" means all real property used by Seller in connection with the Business, as described on Schedule 4.17 to this Agreement.

"**Prepetition Loan Facility**" means that certain Amended and Restated Promissory Note (TRS Acquisition Note) dated as of September 30, 2019, as amended, restated supplemented or otherwise modified from time to time, by and among Watsonville Hospital Corporation and MPT Prepetition Lender with respect to a loan in the original principal amount of $15,000,000, as increased from time to time in accordance with the terms thereof, secured by a continuing lien on Seller's assets and the proceeds thereof.

"**Purchase Price**" has the meaning set forth in **Section 2.1** of this Agreement.

"**Real Property**" means the Leased Real Property.

"**Real Property Leases**" means the real property leases set forth on Schedule 4.17(a) of this Agreement.

"**Regulatory Agreements**" means the approvals and agreements, in form and substance reasonably satisfactory to Buyer, with each of the CMS, Medi-Cal, the DOJ, and the IRS.

"**Sale Hearing**" has the meaning set forth in **Section 10.1(b)** of this Agreement.

"**Sale Motion**" has the meaning set forth in **Section 10.1(c)** of this Agreement.

"**Sale Order**" has the meaning set forth in **Section 8.1(l)** of this Agreement.

"**Seller**" has the meaning set forth in the preamble to this Agreement.

"**Seller Employees**" means the individuals employed by Seller primarily in connection with the operation of the Business immediately prior to the date hereof or the Closing, including in each case all such individuals on leave of absence, vacation, sick leave, short-term disability, military leave, jury duty or bereavement leave.

"**Seller Licenses**" has the meaning set forth in **Section 4.5** of this Agreement.

"**Seller Material Adverse Effect**" means any event, circumstance, change or effect that individually or in the aggregate with all other events, circumstances, changes or effects, is, or could reasonably expected to be, materially adverse to the condition (financial or otherwise), properties, assets, liabilities, businesses, or operations of the Business or the Acquired Assets or to Seller's ability to perform its obligations as contemplated in this Agreement. A Seller Material Adverse

5

DOCS_SF:106516.11 92381/001

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 48 of 144

Effect shall not include any event that is reasonably foreseeable as a result of the Seller's Bankruptcy Case or the circumstances surrounding the bankruptcy filing or Bankruptcy Case including the impact thereof on the relationship of the Seller with employees, customers, distributors, financing sources, service providers and other business partners. In no event shall any event, circumstance, change or effect ("**Change**") arising out of, relating to or resulting from any of the following, alone or in combination, be construed to constitute or be taken into account in determining whether there has been a Seller Material Adverse Effect: (a) Changes in any Law or GAAP, (b) Changes in the international or national, regional or local financial, credit, banking, commodities or securities markets or general economic, political or social conditions in such locations, including changes in interest or exchange rates, except to the extent of any disproportionate impact on the Seller's business as compared to similarly situated businesses, (c) Changes in financial, banking, or securities markets (including any disruption thereof and any decline in the price of any commodity, security or any market index), (d) Changes generally affecting the industries in which the Seller's business is operated, except to the extent of any disproportionate impact on Seller's business as compared to similarly situated businesses in such industry, (e) acts of war, sabotage, terrorism or escalations of hostilities, force majeure events, natural disasters or acts of God, including the ongoing COVID-19 pandemic or any other pandemic or epidemic; (f) the execution, announcement, pendency, performance or consummation of the transactions contemplated in this Agreement (including the announcement of this Agreement or the identities of the Buyer or its Affiliates and the impact thereof on the relationships of the Seller with employees, customers, distributors, financing sources, service providers and other business partners), (g) any unintentional failure by Seller to meet any internal or published budgets, projections, forecasts or predictions of financial performance for any period with respect to Seller's business (it being understood that the facts and circumstances giving rise or contributing to such failure may be taken into account in determining whether there has been a Seller Material Adverse Effect, unless otherwise excluded by any of clauses (a)–(g), (h) any action taken (or omitted to be taken) as required by this Agreement or at the written request or with the written consent of Buyer, (i) any adverse Change that is cured on or prior to the Closing Date, or (j) (1) the commencement of the chapter 11 cases or events that would typically result from the commencement of such chapter 11 cases, (2) any objections in the Bankruptcy Court to (I) this Agreement or any of the transactions contemplated hereby or thereby, (II) the Bidding Procedures Order or (III) the assumption or rejection of any Assigned Contract or Assigned Person Property Lease, or (3) any order of the Bankruptcy Court or any actions or omissions of the Seller in compliance therewith.

"**Seller Payment Programs**" has the meaning set forth in **Section 4.10(a)** of this Agreement.

"**Seller's Knowledge**" means the actual or constructive knowledge of Jeremy Rosenthal, Chief Restructuring Officer; Steven Salver, Chief Executive Officer; Matko Vjarnes, Chief Operating Officer; and Sumer Sharma, Chief Financial Officer.

"**Successful Bidder**" has the meaning set forth in **Section 10.1(f)** of this Agreement.

"**Tax Returns**" means any and all returns, declarations, reports, claims for refunds and information returns or statements relating to Taxes, required to be filed by Seller for itself and for the Employee Benefit Plans of Seller, including all schedules or attachments thereto and including any amendment thereof.

6

"**Taxes**" means all taxes of any type or nature whatsoever assessed by any federal, state, local, or other taxing authority, including income, gross receipts, excise, franchise, property, value added, import duties, employment, payroll, sales and use taxes and any additions to tax and any interest or penalties thereon.

"**Third-Party Consent**" has the meaning set forth in **Section 4.3(b)** of this Agreement.

"**Transferring Employee**" has the meaning set forth in **Section 6.7(a)** of this Agreement.

"**Union**" individually and "Unions" collectively, refers to those unions representing certain of Seller's employees, including the California Nurses Association California Technical Employees' Coalition, General Teamsters, Local 853 (formerly Local 912, and SEIU-United Healthcare Workers West.

DOCS_SF:106516.11 92381/001

## EXHIBIT B

### Form of MPT Lease Amendment

### <u>AMENDMENT TO LEASE AGREEMENT</u>
(Pajaro Valley)

**THIS AMENDMENT TO LEASE AGREEMENT** ("<u>Amendment</u>"), dated this [\_\_\_] day of [_____, 2022], is by and between **MPT OF WATSONVILLE, LLC**, a Delaware limited liability company ( "<u>Lessor</u>"), and **PAJARO VALLEY HEALTH CARE DISTRICT**, a political subdivision of the State of California (as successor by assignment from Watsonville Hospital Corporation) ("<u>Lessee</u>").

### RECITALS:

**WHEREAS**, Lessor and Watsonville Hospital Corporation ("<u>WHC</u>") executed that certain Lease Agreement, dated as September 30, 2019 (the "<u>Lease</u>"), relating to certain land, improvements, and fixtures located in Watsonville, Santa Cruz County, California (including the improvements consisting of a healthcare facility), all as more particularly described in the Lease (the "<u>Leased Property</u>");

**WHEREAS,** on December 5, 2021 (the "<u>Petition Date</u>"), WHC filed voluntary petitions for relief under title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court, Northern District of California, San Jose Division (the "<u>Bankruptcy Court</u>"), commencing cases under chapter 11 of the Bankruptcy Code on an administratively consolidated basis under Docket No. 21-51477 (collectively, the "<u>Bankruptcy Case</u>");

**WHEREAS**, Lessee, certain affiliates of Lessee and WHC are parties to that certain Asset Purchase Agreement, dated as of December 27, 2021 (the "<u>Purchase Agreement</u>"), pursuant to which Lessee will purchase from WHC certain assets, properties and rights of WHC as provided in the final Sale Order (as defined therein) of the Bankruptcy Court, and Lessee will assume certain specified liabilities of WHC in accordance with sections 105, 363, 365 and other applicable provisions of the Bankruptcy Code, and WHC will assume and assign to Lessee WHC's rights and interest under the Lease (subject to the modifications set forth herein) (collectively, the "<u>Sale Transaction</u>");

**WHEREAS**, on [_____, 2022], the Bankruptcy Court entered the Sale Order (as defined in the Purchase Agreement) approving the Sale Transaction; and

**WHEREAS**, contemporaneously herewith, Lessee and WHC have consummated the Sale Transaction and, in connection therewith, Lessor and Lessee desire to amend the Lease to make certain changes to the rent payments and purchase option pursuant to and subject to the terms and conditions of this Amendment.

**NOW, THEREFORE**, in consideration of the mutual covenants, conditions, and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which

are hereby acknowledged, the parties hereto, intending to be legally bound, do hereby covenant and agree as follows:

1.   **Capitalized Terms**. Capitalized terms used and not otherwise defined in this Amendment shall have the meanings ascribed thereto in the Lease.

2.   **Amendments**.  Notwithstanding any provisions of the Lease to the contrary, effective on the Effective Time (as herein defined):

(a) **Amended and Restated Defined Terms**. Article I of the Lease is amended to amend and restate the following defined terms and definitions:

Lease Rate:   A per annum rate equal to Seven and One-Half Percent (7.50%) through December 31, 2025, resulting in Base Rent equal to $250,000 per month through December 31, 2025, after which (and commencing on January 1, 2026) the Escalator set forth in Section 3.1(b) shall apply.

Option Price: An amount equal to either (a) if Lessee closes on the purchase of the Leased Property on or before December 31, 2025, then the Lease Base or (b) if Lessee closes on the purchase of the Lease Property on or after January 1, 2026, the greater of (1) the Fair Market Value Purchase Price of the Leased Property, and (2) the Lease Base.

(b) **Amendment to Section 14.2(a)**. Section 14.2(a) of the Lease is amended to delete the second (2nd) sentence thereof.

(c) **Amended and Restated Section 33.1(a)**. Section 33.1(a) of the Lease is amended and restated in its entirety as follows:

So long as (i) no Event of Default has occurred and is continuing, and no event then exists which with the giving of notice or the passage of time or both would constitute an Event of Default, and (ii) no Event of Default has occurred and is continuing at the time of the closing of the purchase,  after Lessee notifies Lessor of its intent to exercise of such option, at any time during the Term (as the same may be extended pursuant to Article II) Lessee shall have the option, to be exercised by giving written notice of such exercise to Lessor no later than ninety (90) days prior to closing date selected by Lessee (the "Option Date") (or such shorter prior notice period as Lessor may agree to at the time of any such exercise) (provided, that if the Option Date occurs in the final year of the Term, such exercise notice shall be on no less than three hundred sixty-five (365) days' notice prior to the Option Date), to purchase the entire Leased Property, and not less than the entire Leased Property, at a purchase price equal to the Option Price. In the event that Lessee exercises the foregoing purchase option, upon delivery of the exercise notice, all of Lessee's rights to extend the Term under Article II (if any remaining at the time of exercise of the purchase option) shall be forever forfeited and of no further force or effect.

2

3.     **Representations and Warranties**. Each of the parties to this Amendment hereby represent and warrant to the other parties to this Amendment that (a) the execution and delivery of this Amendment and the obligations created hereby have been duly authorized by all necessary proceedings on its part, (b) it has full legal right, power and authority to enter into this Amendment and to incur the obligations provided for herein, (c) this Amendment constitutes its valid and legally binding obligation, enforceable against it in accordance with its terms, subject to bankruptcy, insolvency, reorganization, and similar laws affecting the enforcement of creditor's rights or contractual obligations generally and, as to enforcement, to general principles of equity, regardless of whether applied in a proceeding at law or in equity; and (d) no approval or consent of any foreign, federal, state, county, local or other governmental or regulatory body, and no approval or consent of any other person is required in connection with its execution and delivery of this Amendment or its consummation and performance of the transactions contemplated hereby.

4.     **Conditions to Effectiveness; Binding Effect**. This Amendment is conditioned upon, and shall be effective only upon, the later of (such time, referred to as the "Effective Time"): (i) execution of this Amendment by both parties; (ii) the Closing (as defined in the Purchase Agreement) of the Purchase Agreement with the Lease having been assigned to Lessee. If, for any reason, the Purchase Agreement is terminated without the Closing having occurred or the Closing shall have occurred without the Lease having been assigned to Lessee, this Amendment shall be null and void, and, in such circumstance, Lessor reserves its rights against WHC under the Lease and applicable law, including Section 365 of the Bankruptcy Code; and (iii) the delivery by Lessee to Lessor of a Letter of Credit or Cash Deposit in the amount of $2,600,000 in accordance with Section 38.14 of the Lease. This Amendment shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

5.     **Ratification**. Except as expressly amended hereby, the parties hereby confirm and ratify the Lease in all respects.

6.     **Necessary Action**. Each party shall perform any further acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this Amendment.

7.     **Joint Drafting**. The parties hereto and their respective counsel have participated in the drafting and redrafting of this Amendment and the general rules of construction which would construe any provisions of this Amendment in favor of or to the advantage of one party as opposed to the other as a result of one party drafting this Amendment as opposed to the other or in resolving any conflict or ambiguity in favor of one party as opposed to the other on the basis of which party drafted this Amendment are hereby expressly waived by all parties to this Amendment.

8.     **Governing Law**. This Amendment shall be governed by and construed in accordance with the terms set forth in Section 38.11 of the Lease.

9.     **Interpretation; Severability**. This Amendment, including the exhibits attached hereto, and other written agreements executed and delivered in connection herewith by the parties, shall be interpreted in such manner as to be effective and valid under applicable law, but if any

3

provision of this Amendment is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Amendment, unless the severance of such provision would be in opposition to the parties' intent with respect to such provision.

10. **Entire Agreement; Modification**. This Amendment, together with all exhibits, schedules, and the other documents referred to herein, embody and constitute the entire understanding between the parties with respect to the transactions contemplated herein, and all prior agreements, understandings, representations, and statements (oral and written) are merged into this Amendment. The parties have not relied upon, and shall not be entitled to rely upon, any prior or contemporaneous agreements, understandings, representations, or statements (oral or written) other than this Amendment in effecting the transactions contemplated herein or otherwise. Neither this Amendment, any exhibit or schedule attached hereto, nor any provision hereof or thereof may be modified or amended except by an instrument in writing signed by the parties.

11. **Counterparts**. This Amendment may be executed in multiple counterparts, any of which need not contain the signature of more than one party, but all such counterparts taken together shall constitute one and the same instrument.

**[Intentionally left blank.]**

**[Signatures appear on the following pages.]**

4

**IN WITNESS WHEREOF**, the parties hereto have executed or caused their duly authorized representatives to execute this Amendment as of the date first above written.

<u>**LESSOR**</u>:

**MPT OF WATSONVILLE, LLC**

By: MPT Operating Partnership, L.P.
Its: Sole Member


By: _____
Name: _____
Title: _____


<u>**LESSEE**</u>:

**PAJARO VALLEY HEALTH CARE DISTRICT**


By: _____
Name: _____
Title: _____

Signature Page to Amendment to Lease Agreement

<u>Schedule 1.0 - Business Site Locations Being Transferred to Buyer</u>

Sellers' Business is conducted at 45, 65, 75, and 85 Nielson Street, Watsonville, California 95076.

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 56
of 144

<u>Schedule 1.1 – Acquired Assets</u>

The Acquired Assets include all rights, title and interest in and to the assets and properties of every kind, character and description (other than the Excluded Assets) owned or leased by Seller and used in the operation and management of the Business, or otherwise for the benefit of the Business, whether tangible, intangible, real, personal or mixed, movable or fixed, and wherever located.

With the exception of the Excluded Assets, the Acquired Assets include, in addition to assets listed in the chart below, categories of assets that are not depreciated, including inventory and supplies, all cash except Excluded Cash, employee advances, prepaid insurance, including prepaid professional liability insurance, accounts (including all accounts receivable), inventories, tenant improvements (regardless of whether they are accounted for as an asset on the books of Seller), goodwill of the Business, software and computer programs, hardware, Intellectual Property (including the names "Watsonville Community Hospital" and all other trade names and acronyms under which Seller conducts the Business or by which Seller or the Business is commonly known), prepaid expenses and deposits, Assigned Contracts, Assigned Personal Property Leases, books and records (including all patient charts and records, patient lists and appointment books relating to patients treated by the Business to the extent transferable under applicable law), any Seller policies and procedures relating to the Business, telephone and facsimile numbers, uniform resource locators, email addresses, social media identifiers, all Licenses (including all Medicare, Medicaid, and Medi-Cal provider numbers) and Permits (including drug and nuclear licenses) to the extent transferable to Buyer, in each case to the extent transferable or otherwise capable of being assumed, sold and assigned, all benefits, proceeds and other amounts payable under any Seller policy of insurance relating to the Business, and proceeds of all of the foregoing.

The chart on the following page shows the net book value of categories of certain depreciated Acquired Assets as of November 30, 2021:

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 57 of 144

| G/L Description | 11/30/21 Net Book Value |
|---|---|
| Land | 0.00 |
| Land Improvements | 0.00 |
| *Subtotal - Land* | 0.00 |
| | |
| Building | 0.00 |
| Building Improvements | 6,154.49 |
| *Subtotal - Building* | 6,154.49 |
| | |
| Leasehold Improvement - Property&Equip | 0.00 |
| *Subtotal - Leasehold Improvements* | 0.00 |
| | |
| FURN. & FIX.-PROPERTY AND EQUIP | 57,689.34 |
| Minor Equipment Owned | 115,502.08 |
| Minor Equipment Meaningful Use | 3.50 |
| Major Movable Equipment - Nondesig | 636,959.17 |
| *Subtotal - PPE* | 810,154.09 |
| | |
| ROU-Assets-Fin Lease | 41,949,558.45 |
| *Subtotal - ROU* | 41,949,558.45 |
| | |
| CIP-Build Impr -  2nd Floor Security Sys | 14,415.00 |
| CIP-Fixed Equip- Pharmacy Upgrade | 18,701.01 |
| CIP-Major Movable Equip-Rad Rm 3&4 | 7,057.18 |
| CIP-Build Impr -  2nd Floor Security Sys | 0.00 |
| CIP-Minor Equip-Medhost Implement | 0.00 |
| CIP-Build Impr -  Card Cath Lab Renov | 509,033.32 |
| *Subtotal - CIP* | 549,206.51 |
| | |
| *Grand Total PPE & CIP* | 42,765,867.03 |
| | |

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 58 of 144

<u>Schedule 1.2 – Excluded Assets</u>

In addition to those Excluded Assets set forth in Section 1.2 of the Agreement:

- Sellers' net operating losses or any tax attributes relating thereto; and

- Sellers' interest in the Crum & Forster Specialty Insurance Company Policy # PCF-100635, including all proceeds thereof.

## Schedule 1.3 – Cure Costs

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| 3M Health Information Systems Inc | Watsonville Hospital Corporation | Master Software and Services Agreement | Contract | 10/1/2019 | $119,216.80 | |
| 3M Health Information Systems Inc | Watsonville Hospital Corporation | 2nd Amendment to the Master Software and Services Agreement | Contract | 5/22/2020 | $0.00 | |
| 3M Health Information Systems Inc | Watsonville Hospital Corporation | 3rd Amendment to the Master Software and Services Agreement | Contract | 7/2/2020 | $0.00 | |
| 3M Health Information Systems Inc | Watsonville Hospital Corporation | 4th Amendment to the Master Software and Services Agreement | Contract | 7/9/2020 | $0.00 | |
| 3M Health Information Systems Inc | Watsonville Hospital Corporation | 5th Amendment to the Master Software and Services Agreement | Contract | 4/13/2021 | $0.00 | |
| 3M Health Information Systems Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 12/28/2019 | $0.00 | |
| Abbott Laboratories Inc | Watsonville Hospital Corporation | Facility Participation Agreement for Healthtrust Purchasing Group Members | Contract | 5/13/2019 | $54,646.00 | |
| ABBOTT NUTRITION | Watsonville Hospital Corporation | Contract #246-Version 82-Nutritionals and Formula - Infant and Pediatric | Contract | 7/1/2021 | $0.00 | |
| Accruent, LLC | Watsonville Hospital Corporation | Statement of Work No. Q-142342-1 | Contract | 10/1/2019 | $5,020.00 | |
| Accruent, LLC | Watsonville Hospital Corporation | Quote No. Q-131563-3 | Contract | 10/1/2019 | $0.00 | |
| ADEX Medical Staffing, LLC | Watsonville Hospital Corporation | Temporary to Permanent Recruitment Agreement | Contract | 6/24/2020 | $102,060.74 | |
| ADP | Watsonville Hospital Corporation | Statement of Work | Contract | 10/1/2020 | $0.00 | |
| ADP | Watsonville Hospital Corporation | Master Services Agreement | Contract | 6/4/2019 | $157,777.00 | |
| Advanced Cardiovascular Specialists Inc. | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions (CW2273180) | Contract | 5/1/2018 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Advanced Sterilization Products Services, Inc. | Watsonville Hospital Corporation | Service Agreement Quotation | Contract | 4/30/2019 | $49,951.00 | |
| AESCULAP INC | Watsonville Hospital Corporation | Contract #695-Version 102-INSTRUMENTS - SURGICAL - GENERAL AND SPECIALTY | Contract | 2/1/2019 | $5,254.00 | |
| AESCULAP INC | Watsonville Hospital Corporation | Contract #1339-Version 50-STERILIZATION CONTAINERS AND SUPPLIES | Contract | 2/1/2019 | $0.00 | |
| Aetna Health of California, Inc. | Watsonville Hospital Corporation | Managed Care Agreement | Contract | 10/15/2002 | $0.00 | |
| AGILITI HEALTH INC | Watsonville Hospital Corporation | Contract #37039-Version 7-Rental - Moveable Medical Equipment | Contract | 8/1/2021 | $63,325.00 | |
| Agiliti Surgical Equipment Inc. | Watsonville Hospital Corporation | Contract #4512 (Version 17) | Contract | 7/1/2021 | $2,919.00 | |
| Airgas Healthcare | Watsonville Hospital Corporation | Facility Agreement | Contract | 9/10/2020 | $63,690.00 | |
| Albert Crevello, MD | Watsonville Hospital Corporation | Specialty On-Call Coverage Agreement Between Hospital and Physician | Contract | 6/15/2021 | $0.00 | |
| ALLERGAN USA INC | Watsonville Hospital Corporation | Contract #2639-Version 42-Implants-Breast and Tissue Expanders | Contract | 8/1/2020 | $18,966.00 | |
| Allied Universal Company | Watsonville Hospital Corporation | Security Professional Service Agreement | Contract | 12/1/2021 | $122,851.00 | |
| ALLOSOURCE | Watsonville Hospital Corporation | Contract #:43614-Version 3-Osteobiologics | Contract | 12/1/2019 | $8,864.00 | |
| ALPHATEC SPINE INC | Watsonville Hospital Corporation | Contract #: 7635-Version 35-Implants-Spine | Contract | 12/1/2019 | $0.00 | |
| Alta Hospitals System LLC | Watsonville Hospital Corporation | Management Services Agreement | Contract | 1/18/2021 | $0.00 | |
| Alta Hospitals System LLC | Watsonville Hospital Corporation | Business Associate Addendum | Contract | 1/18/2021 | $0.00 | |

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 61 of 144

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| AMBU INC | Watsonville Hospital Corporation | Contract #: 2512-Version 45-RESUSCITATION AND HYPERINFLATION BAGS | Contract | 1/1/2019 | $0.00 | |
| American Data Network, LLC | Watsonville Hospital Corporation | Compliance Services (Service Agreement) | Contract | 6/9/2020 | $0.00 | |
| American Data Network, LLC | Watsonville Hospital Corporation | System Access and Services Agreement | Contract | 6/9/2020 | $41,800.00 | |
| American Messaging Services, LLC | Watsonville Hospital Corporation | Customer Agreement (#M7-028788) | Contract | 11/4/2016 | $1,215.00 | |
| American Red Cross | Watsonville Hospital Corporation | American Red Cross Blood Services Agreement | Contract | 10/1/2020 | $97,270.00 | |
| API Healthcare Corporation | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 4/27/2020 | $0.00 | |
| API Healthcare Corporation | Watsonville Hospital Corporation | Workforce Management License and Service Agreement | Contract | 4/27/2020 | $34,234.06 | |
| APPLIED MEDICAL DISTRIBUTION | Watsonville Hospital Corporation | Contract #: 5207-Version 32-Trocars - Disposable | Contract | 5/1/2019 | $9,162.00 | |
| Applied Statistics & Management Inc | Watsonville Hospital Corporation | Master Agreement | Contract | 10/7/2019 | $2,827.00 | |
| Applied Statistics & Management Inc | Watsonville Hospital Corporation | Subscription Service Addendum to Master Agreement | Contract | 10/7/2019 | $0.00 | |
| Aptos Surgery Center, LLC | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 1/7/2015 | $0.00 | |
| Aquity Solutions, LLC | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 12/3/2019 | $0.00 | |
| Arcus Data Security Inc. (c/o Iron Mountain) | Watsonville Hospital Corporation | Data Storage and Service Agreement | Contract | 1/1/1999 | $565.04 | |
| Aretaeus Telemedicine Inc. | Watsonville Hospital Corporation | Professional Services Agreement for Tele-ICU Services | Contract | 8/1/2020 | $1,300.00 | |
| ARGON MEDICAL DEVICES INC | Watsonville Hospital Corporation | Contract #: 7030-Version 24-Specialty Procedure Trays and Biopsy Needles | Contract | 11/1/2018 | $740.00 | |

DOCS_DE:237400.6 92381/002

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Arjo Inc. | Watsonville Hospital Corporation | Contract #60432 (Version 6) | Contract | 4/7/2020 | $30,430.00 | |
| Artifact Health Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 10/1/2019 | $0.00 | |
| Artifact Health Inc | Watsonville Hospital Corporation | Master Subscription Agreement | Contract | 10/1/2019 | $21,255.00 | |
| Associated Pathology Medical Group | Watsonville Hospital Corporation | Pathology Department Professional Services Agreement | Contract | 11/1/2014 | $3,875.00 | |
| athenahealth, Inc. | Watsonville Healthcare Management | Service Proposal | Contract | 12/4/2019 | $0.00 | |
| B BRAUN MEDICAL INC | Watsonville Hospital Corporation | Contract #: 361-Version 100-TRAYS - ANESTHESIA AND PAIN MANAGEMENT | Contract | 10/1/2019 | $0.00 | |
| B BRAUN MEDICAL INC | Watsonville Hospital Corporation | Contract #: 778-Version 46-CATHETERS, IV SAFETY | Contract | 3/1/2019 | $0.00 | |
| B BRAUN MEDICAL INC | Watsonville Hospital Corporation | Contract #: 7678-Version 53-INFUSION PUMPS, SOLUTIONS, SETS, AND NEEDLELESS PRODUCTS | Contract | 1/1/2022 | $0.00 | |
| Baer, Negrin & Troff LLP | Watsonville Hospital Corporation | Engagement to Perform Legal Services | Contract | 11/21/2019 | $8,946.00 | |
| Bard Access Systems | Watsonville Hospital Corporation | Contract #: 279-Version 111-PICCs | Contract | 6/1/2021 | $92,843.00 | |
| BARD PERIPHERAL VASCULAR INC | Watsonville Hospital Corporation | Contract #: 39054-Version 6-Specialty Procedure Trays and Biopsy Needles | Contract | 11/1/2018 | $0.00 | |
| BARD PERIPHERAL VASCULAR INC | Watsonville Hospital Corporation | Contract #: 1142-Version 54-Catheters - Dialysis | Contract | 4/1/2019 | $0.00 | |
| Barstow Healthcare Management Inc | Watsonville Healthcare Management | Assignment and Assumption and Consent | Contract | 7/30/2015 | $0.00 | |
| Barstow Healthcare Management Inc | Watsonville Healthcare Management | Management Agreement | Contract | 4/23/2013 | $0.00 | |
| Bartko Zankel Bunzel Miller | Halsen Healthcare LLC | Attorney-Client Engagement Agreement | Contract | 1/9/2020 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| BAXTER HEALTHCARE/BIOSURGERY DIV | Watsonville Hospital Corporation | Contract #: 1140-Version 99-Biosurgical Hemostatic Agents | Contract | 8/1/2019 | $9,745.00 | |
| BAXTER HEALTHCARE/BIOSURGERY DIV | Watsonville Hospital Corporation | Contract #: 44256-Version 31-INFUSION PUMPS, SETS, SOLUTIONS, AND NEEDLELESS PRODUCTS | Contract | 1/1/2022 | $251.00 | |
| Bayer Healthcare LLC | Watsonville Hospital Corporation | Contract #500173 (Version 38) | Contract | 10/1/2019 | $8,714.00 | |
| Bayview Gastroenterology | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions- GI | Contract | 2/1/2017 | $0.00 | |
| Bayview Gastroenterology | Watsonville Hospital Corporation | 1st Amendment of Call Coverage Agreement Standard Terms and Conditions- GI | Contract | 2/1/2019 | $0.00 | |
| BD CAREFUSION 2200 (V MUELLER) | Watsonville Hospital Corporation | Contract #: 696-Version 94-INSTRUMENTS - SURGICAL - GENERAL AND SPECIALTY | Contract | 6/1/2015 | $16,922.00 | |
| BD CAREFUSION 2200 (V MUELLER) | Watsonville Hospital Corporation | Contract #: 990-Version 79-INFUSION PUMPS, SETS, AND NEEDLELESS PRODUCTS | Contract | 1/1/2022 | $7,818.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Virtual Test System Agreement | Contract | 1/5/2010 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Master Agreement | Personal Property Lease | 9/30/2019 | $124,274.84 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Rental Agreement and Support Agreement | Personal Property Lease | 2/10/2009 | $7,818.30 | |
| BD Carefusion Solutions, LLC | Watsonville Hospital Corporation | Customer Order | Personal Property Lease | 10/19/2014 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Amendment to Customer Order | Personal Property Lease | 11/30/2020 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Amendment to Customer Order | Personal Property Lease | 9/24/2020 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Customer Order Attachment | Personal Property Lease | 9/24/2020 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Amendment to Customer Order | Personal Property Lease | 9/24/2020 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Customer Agreement | Personal Property Lease | 11/27/2018 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Customer Agreement | Personal Property Lease | 1/15/2018 | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Customer Order | Personal Property Lease | | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Customer Order | Personal Property Lease | | $0.00 | |
| BD CareFusion Solutions, LLC | Watsonville Hospital Corporation | Customer Order | Personal Property Lease | 8/26/2020 | $0.00 | |
| BD MEDICAL | Watsonville Hospital Corporation | Contract #: 687-Version 49-NEEDLES & SYRINGES - SAFETY | Contract | 5/1/2015 | $0.00 | |
| BD MEDICAL | Watsonville Hospital Corporation | Contract #: 915-version 53-Catheters - IV Safety | Contract | 5/1/2015 | $0.00 | |
| BD MEDICAL | Watsonville Hospital Corporation | Contract #: 980-Version 52-Skin Prep Applicators and Swabsticks | Contract | 12/1/2021 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| BD MEDICAL | Watsonville Hospital Corporation | Contract #: 38882-Version 10-Specialty Procedure Trays and Biopsy Needles | Contract | 11/1/2018 | $0.00 | |
| Beckman Coulter, Inc. | Watsonville Hospital Corporation | DxS Service Agreement #S102271US | Contract | 8/23/2021 | $0.00 | |
| Beckman Coulter, Inc. | Watsonville Hospital Corporation | Rental Agreement No. 2019-1018845959 | Personal Property Lease | 6/25/2020 | $19,188.83 | |
| Beckman Coulter, Inc. | Watsonville Hospital Corporation | Lease Agreement (#69004US) | Personal Property Lease | 7/22/2014 | $8,735.65 | |
| BioFire | Watsonville Hospital Corporation | Diagnostic System Extended Warranty Agreement (Q-20213) | Contract | 7/29/2021 | $73,076.00 | |
| BIOMET MICROFIXATION | Watsonville Hospital Corporation | Contract #: 22196-Version 16-THORACIC FIXATION PRODUCTS | Contract | 7/1/2020 | $0.00 | |
| Blue Cross of California | Watsonville Hospital Corporation | Blue Cross of California Comprehensive Contracting Hospital Agreement | Contract | 5/15/1996 | $0.00 | |
| Blue Cross of California | Watsonville Hospital Corporation | First Amendment to the Blue Cross of California Comprehensive Contracting Hospital Agreement | Contract | 11/8/1997 | $0.00 | |
| Blue Cross of California | Watsonville Hospital Corporation | Second Amendment to the Blue Cross of California Comprehensive Contracting Hospital Agreement | Contract | 7/1/1998 | $0.00 | |
| Blue Cross of California | Watsonville Hospital Corporation | Third Amendment to the Blue Cross of California Comprehensive Contracting Hospital Agreement | Contract | 7/1/2001 | $0.00 | |
| Blue Cross of California | Watsonville Hospital Corporation | Fourth Amendment to the Blue Cross of California Comprehensive Contracting Hospital Agreement | Contract | 7/1/2004 | $0.00 | |
| Blue Cross of California | Watsonville Hospital Corporation | Blue Cross of California Quality-in-Sights Hospital Incentive Program Agreement | Contract | 6/1/2009 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Blue Cross of California | Watsonville Hospital Corporation | Blue Cross Medicare Advantage Hospital Services Agreement | Contract | 6/1/2009 | $0.00 | |
| Blue Cross of California d/b/a Anthem Blue Cross | Watsonville Hospital Corporation | Fifth Amendment to the Comprehensive Contracting Agreement | Contract | 6/1/2009 | $0.00 | |
| Blue Cross of California d/b/a Anthem Blue Cross | Watsonville Hospital Corporation | Amendment to the Anthem Blue Cross Comprehensive Contracting Agreement | Contract | 6/1/2013 | $0.00 | |
| Board of Trustees of the Leland Stanford Junior University (on behalf of its School of Medicine, Stanford University), Lucile Salter Packard Children's Hospital | Watsonville Hospital Corporation | 1st Amendment to Mid-Coastal California Perinatal Outreach Program Participation Agreement | Contract | 1/1/2020 | $0.00 | |
| BOSTON SCIENTIFIC CORP | Watsonville Hospital Corporation | Contract #: 447-Version 89-UROLOGY - INTERVENTIONAL | Contract | 11/1/2018 | $51,627.00 | |
| BOSTON SCIENTIFIC CORP | Watsonville Hospital Corporation | Contract #: 5171-Version 49-ENDOSCOPE AND INSTRUMENT CARE - CLEANING TRANSPORT AND RELATED SUPPLIES | Contract | 2/1/2019 | $0.00 | |
| BOSTON SCIENTIFIC CORP | Watsonville Hospital Corporation | Contract #: 41466-Version 11-Female Pelvic Products | Contract | 12/1/2021 | $0.00 | |
| BOSTON SCIENTIFIC CORP | Watsonville Hospital Corporation | Contract #: 2880-Version 37-Adult - Enteral Feeding Tubes and Accessories | Contract | 5/1/2018 | $0.00 | |
| Cabrillo Community College District | Watsonville Hospital Corporation | Agreement for Furnishing Clinical Experience and the Use of Clinical Facilities | Contract | 8/27/2018 | $0.00 | |
| California Department of Health Care Services | Watsonville Hospital Corporation | Medi-Cal Provider Agreement (Institutional Provider) | Contract | 10/7/2009 | $5,790,036.00 | Yes |
| California Nurses Association | Watsonville Hospital Corporation | Agreement Between Watsonville and California Nurses Association | Contract | 5/18/2020 | $0.00 | Yes |
| California Nurses Association | Watsonville Hospital Corporation | Vacation Cash Out Agreement for California Nurses Association | Contract | 4/1/2020 | $0.00 | Yes |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| California Physicians' Service, Inc. d/b/a Blue Shield of California | Watsonville Hospital Corporation | Tricare Institution Provider Contract | Contract | 7/1/2004 | $0.00 | |
| California Physicians' Service, Inc. d/b/a Blue Shield of California | Watsonville Hospital Corporation | Blue Shield of California Fee for Service Hospital Agreement | Contract | 9/1/2009 | $14,178.78 | |
| California Physicians' Service, Inc. d/b/a Blue Shield of California | Watsonville Hospital Corporation | 1st Amendment to FFS Hospital Agreement | Contract | 1/1/2014 | $0.00 | |
| California State University - Monterey Bay | Watsonville Hospital Corporation | Affiliation Agreement | Contract | 8/16/2021 | $0.00 | |
| California Technical Employees Coalition | Watsonville Hospital Corporation | Agreement Between Watsonville and CALTEC | Contract | 5/20/2020 | $0.00 | Yes |
| CALSTAR Air Medical Services LLC | Watsonville Hospital Corporation | Agreement for Patient Transfer and Related Services | Contract | 2/15/2017 | $0.00 | |
| Canteen Vending Services | Watsonville Hospital Corporation | Vending Machine Agreement | Contract | 4/28/2009 | $0.00 | |
| Cardinal Health 110, LLC | Watsonville Hospital Corporation | Facility Commitment Agreement (Contract No. 00216021.0) | Contract | 10/1/2019 | $0.00 | |
| Cardinal Health 110, LLC | Watsonville Hospital Corporation | Retail Source Letter of Participation | Contract | 10/1/2019 | $0.00 | |
| Cardinal Health 110, LLC | Watsonville Hospital Corporation | AcuteSource Letter of Participation | Contract | 10/1/2019 | $0.00 | |
| Cardinal Health 110, LLC | Watsonville Hospital Corporation | Primary (Generic) Drugs Commitment Agreement (Contract No. 00312820.0) | Contract | 10/22/2021 | $323,298.06 | |
| Cardinal Health 110, LLC | Watsonville Hospital Corporation | Specialty Pharmaceuticals Commitment Agreement | Contract | 10/22/2021 | See above | |
| CARDINAL HEALTH 200 LLC | Watsonville Hospital Corporation | Contract #: 689-Version 62-NEEDLES & SYRINGES - SAFETY | Contract | 5/1/2015 | $233,626.00 | |
| CARDINAL HEALTH 200 LLC | Watsonville Hospital Corporation | Contract #: 6666-Version 33-NEONATAL - ENTERAL FEEDING TUBES AND ACCESSORIES | Contract | 12/1/2015 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| CARDINAL HEALTH 200 LLC | Watsonville Hospital Corporation | Contract #: 7394-Version 30-PERSONAL PROTECTIVE GOWNS & APPAREL (PPE) DISPOSABLE | Contract | 11/1/2019 | $0.00 | |
| CARDINAL HEALTH 200 LLC | Watsonville Hospital Corporation | Contract #: 5684-Version 32-ADULT ENTERAL FEEDING TUBES AND ACCESSORIES | Contract | 10/1/2013 | $0.00 | |
| CARDINAL HEALTH 200 LLC | Watsonville Hospital Corporation | Contract #: 160-Version 39-RADIOPHARMACEUTICALS-UNIT DOSE | Contract | 3/1/2019 | $27,400.00 | |
| Cardinal Health 414, LLC | Watsonville Hospital Corporation | Full-Service Hardware & Software SYNtrac Agreement | Contract | 11/11/2008 | $28,552.59 | |
| Cardinal Health 414, LLC | Watsonville Hospital Corporation | SYNtrac Integration Tools Agreement Terms and Conditions | Contract | 8/1/2014 | See above | |
| Cardinal Health 414, LLC | Watsonville Hospital Corporation | Purchase Agreement | Contract | 8/1/2014 | See above | |
| Carrier | Watsonville Hospital Corporation | Carrier Service Agreement No. 035A10886 | Contract | 6/9/2021 | $0.00 | |
| Carrier | Watsonville Hospital Corporation | Commercial Service HVAC Maintenance Plan | Contract | 3/5/2020 | $117,076.00 | |
| CEP America- Neurology, PC, d/b/a Vituity | Watsonville Hospital Corporation | Professional Services Agreement | Contract | 7/1/2018 | $33,333.00 | |
| CEP America-California, d/b/a Vituity | Watsonville Hospital Corporation | Scribe Services Addendum to Emergency Professional Services Agreement | Contract | 5/9/2018 | $0.00 | |
| Change Healthcare | Watsonville Hospital Corporation | Contract Supplement (CS #34098) | Contract | 10/1/2019 | $0.00 | |
| CIGNA Healthcare of California Inc. | Watsonville Hospital Corporation | Amendment to the Hospital Agreement | Contract | 10/1/2004 | $0.00 | |
| CIGNA Healthcare of California Inc. | Watsonville Hospital Corporation | Hospital Agreement | Contract | 1/1/1986 | $0.00 | |
| Clean Harbors Environmental Services Inc | Watsonville Hospital Corporation | Quote for Waste Management (#3600954) | Contract | 11/2/2020 | $4,232.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| CMRE Financial Services, Inc. | Watsonville Hospital Corporation | Collection Services Agreement | Contract | 8/1/2021 | $0.00 | |
| CMRE Financial Services, Inc. | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 8/1/2021 | $0.00 | |
| CNH Finance Fund 1, LP | Watsonville Hospital Corporation | Credit and Security Agreement (Revolving Credit) | Contract | 6/22/2021 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Healthcare Management | 1st Amendment to Management Agreement | Contract | 3/1/2020 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | 5th Amendment to Call Coverage Agreement | Contract | 3/1/2018 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | 4th Amendment to Call Coverage Agreement | Contract | 4/15/2017 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | 3rd Amendment to Call Coverage Agreement | Contract | 8/1/2016 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | 2nd Amendment to Call Coverage Agreement | Contract | 4/1/2016 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | 1st Amendment to Call Coverage Agreement | Contract | 3/1/2016 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions | Contract | 2/1/2015 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | Medical Office Space Lease | Real Property Lease | 4/1/2017 | $0.00 | |
| Coastal Health Partners, P.C. | Watsonville Hospital Corporation | 2nd Amendment to Medical Office Space Lease | Real Property Lease | 10/1/2020 | $0.00 | |
| Coastal Healthcare Administrators | Watsonville Hospital Corporation | Hospital Service Agreement | Contract | 1/1/1995 | $0.00 | |
| Coastal Healthcare Administrators | Watsonville Hospital Corporation | Hospital Preferred Provider Agreement | Contract | 3/1/2006 | $0.00 | |
| Colin Construction Company | Watsonville Hospital Corporation | Prime Contract Change Order #001: Prime 1 | Contract | 9/1/2021 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Colin Construction Company | Watsonville Hospital Corporation | Project Work Scope | Contract | 9/30/2020 | $0.00 | |
| Compass MSA Linen | Watsonville Hospital Corporation | Master Textile Service Agreement | Contract | 5/1/2015 | $0.00 | |
| Complianceline, LLC | Watsonville Hospital Corporation | ComplianceLine Agreement | Contract | 10/1/2019 | $1,287.00 | |
| Complianceline, LLC | Watsonville Hospital Corporation | Agreement Amendment | Contract | 11/13/2019 | $0.00 | |
| Connecticut General Life Insurance Company | Watsonville Hospital Corporation | Hospital Managed Care Agreement | Contract | 5/1/1994 | $0.00 | |
| Constellation NewEnergy-Gas Division, LLC | Watsonville Hospital Corporation | Purchasing Agreement (Agreement No. AES05173) and Transaction Agreement | Contract | 4/1/2019 | $57,857.87 | |
| Continuant Inc | Watsonville Hospital Corporation | Statement of Work | Contract | 6/1/2021 | $4,236.00 | |
| Contra Costa Medical Career College | Watsonville Hospital Corporation | Externship Agreement | Contract | 4/23/2019 | $0.00 | |
| COOK MEDICAL LLC | Watsonville Hospital Corporation | Contract #: 32402-Version 7-Staple Line Reinforcement | Contract | 3/1/2018 | $4,958.00 | |
| COOK MEDICAL LLC | Watsonville Hospital Corporation | Contract #: 18589-Version 11-DURA REPAIR PRODUCTS | Contract | 6/1/2020 | $0.00 | |
| CORCYM INC | Watsonville Hospital Corporation | Contract #: 4705-Version 30-VALVE, TISSUE | Contract | 4/1/2018 | $0.00 | |
| CORCYM INC | Watsonville Hospital Corporation | Contract #: 4706-Version 20-VALVE, MECHANICAL | Contract | 4/1/2018 | $0.00 | |
| County of Santa Cruz | Watsonville Hospital Corporation | Hospital Services Agreement | Contract | 9/22/1998 | $0.00 | |
| County of Santa Cruz | Watsonville Hospital Corporation | First Amendment to the Hospital Services Agreement | Contract | | $0.00 | |
| County of Santa Cruz | Watsonville Hospital Corporation | Second Amendment to the Hospital Services Agreement | Contract | | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| County of Santa Cruz | Watsonville Hospital Corporation | Third Amendment to the Hospital Services Agreement | Contract | | $0.00 | |
| County of Santa Cruz | Watsonville Hospital Corporation | Fourth Amendment to the Hospital Services Agreement | Contract | 6/29/2021 | $0.00 | |
| County of Santa Cruz | Watsonville Hospital Corporation | Fifth Amendment to the Hospital Services Agreement | Contract | 12/7/2021 | $0.00 | |
| County of Santa Cruz | Watsonville Hospital Corporation | Lease of Storage Space | Contract | 11/1/2017 | $0.00 | |
| COVIDIEN | Watsonville Hospital Corporation | Contract #:12420-Version 21-Cerebral Oximetry, Stand Alone | Contract | 8/1/2017 | $0.00 | |
| COVIDIEN SALES LLC | Watsonville Hospital Corporation | Contract #: 7175-Version 24-Electrosurgery - Smoke Evacuation Equipment & Supplies | Contract | 2/1/2019 | $2,039.00 | |
| COVIDIEN SALES LLC | Watsonville Hospital Corporation | Contract #: 5755-Version 29-SUTURE - BARBED | Contract | 3/1/2019 | $0.00 | |
| COVIDIEN SALES LLC | Watsonville Hospital Corporation | Contract #: 23944-Version 17-Surgical Sponge Counting Equipment and Supplies | Contract | 10/1/2021 | $0.00 | |
| COVIDIEN SALES LLC | Watsonville Hospital Corporation | Contract #: 4738-Version 45-ADVANCED ENERGY - ADVANCED BIPOLAR EQUIPMENT & SUPPLIES | Contract | 2/1/2019 | $0.00 | |
| COVIDIEN SALES LLC | Watsonville Hospital Corporation | Contract #: 4735-Version 41-Electrosurgery - Monopolar, Bipolar & Argon Enhanced | Contract | 2/1/2019 | $0.00 | |
| COVIDIEN SALES LLC | Watsonville Hospital Corporation | Contract #: 435-Version 68-CATHETERS - DIALYSIS | Contract | 4/1/2019 | $0.00 | |
| CR Bard DAVOL INC | Watsonville Hospital Corporation | Contract #: 21665-Version 12-Biosurgical Hemostatic Agents | Contract | 5/1/2017 | $0.00 | |
| CR Bard DAVOL INC | Watsonville Hospital Corporation | Contract #: 961-Version 41-HERNIA FIXATION DEVICES | Contract | 11/1/2019 | $83,065.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| CR Bard DAVOL INC | Watsonville Hospital Corporation | Contract #: 7538-Version 10-SYNTHETIC ABSORBABLE | Contract | 11/1/2019 | $0.00 | |
| Crothall Laundry Services Inc. | Watsonville Hospital Corporation | Statement of Work | Contract | 4/1/2016 | $82,725.00 | |
| Dell Financial Services LLC | Watsonville Hospital Corporation | Contract 001-9010028-001 | Personal Property Lease | 6/25/2020 | $0.00 | |
| Dell Financial Services LLC | Watsonville Hospital Corporation | Contract 001-9010028-002 | Personal Property Lease | 8/18/2020 | $13,490.00 | |
| Delta Dental of California | Watsonville Hospital Corporation | Dental Administrative Services Contract | Contract | 10/1/2019 | $0.00 | |
| Delta Dental of California | Watsonville Hospital Corporation | 1st Amendment | Contract | 1/1/2020 | $0.00 | |
| Delta Dental of California | Watsonville Hospital Corporation | 2nd Amendment | Contract | 10/1/2020 | $0.00 | |
| Department of Health and Human Services, Center for Medicare & Medicaid Services | Watsonville Hospital Corporation | Health Insurance Benefit Agreement | Contract | | $526,177.41 | Yes |
| Diablo Infectious Diseases Consultative Services Medical Group | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 10/20/2020 | $0.00 | |
| Diagnostica Stago, Inc. | Watsonville Hospital Corporation | Service Agreement | Contract | 10/23/2020 | $32,262.00 | |
| Dignity Health d/b/a Dominican Hospital | Watsonville Hospital Corporation | Patient Transfer Agreement (Hospital to Hospital) | Contract | 6/18/2018 | $0.00 | |
| Dignity Health Medical Foundation | Watsonville Hospital Corporation | Ancillary Services Agreement | Contract | 9/1/2017 | $0.00 | |
| Dominican Hospital | Watsonville Hospital Corporation | Laboratory Services Agreement | Contract | 1/9/2018 | $0.00 | |
| Dominican Hospital | Watsonville Hospital Corporation | 1st Amendment to Laboratory Services Agreement | Contract | 10/4/2019 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Dominican Hospital | Watsonville Hospital Corporation | 2nd Amendment to Laboratory Services Agreement | Contract | 1/29/2020 | $222,993.00 | |
| Dominican Hospital | Watsonville Hospital Corporation | Third Amendment to Laboratory Services Agreement | Contract | 2/1/2022 | $0.00 | |
| Duke University Health System, Inc. | Watsonville Hospital Corporation | Graduate Student Clinical Rotation Affiliation Agreement | Contract | 6/28/2018 | $0.00 | |
| Easy Choice Health Plan | Watsonville Hospital Corporation | Letter of Agreement | Contract | 1/1/2012 | $0.00 | |
| Easy Choice Health Plan, Inc. | Watsonville Hospital Corporation | Easy Choice Health Plan Hospital Services Agreement | Contract | 1/1/2013 | $0.00 | |
| ECMO PRN LLC | Watsonville Hospital Corporation | Extracorporeal Membrane Oxygenation Services and Interfacility Ambulance Service Provider One Time Emergency Service Agreement | Contract | 8/6/2021 | $36,825.00 | |
| EDWARDS LIFESCIENCES LLC | Watsonville Hospital Corporation | Contracts #: 4763-Version 63-VALVE - TISSUE | Contract | 4/1/2018 | $87.00 | |
| Elite Anesthesia Group, Inc. | Watsonville Hospital Corporation | Service Agreement (CW2087874) | Contract | 4/4/2013 | $0.00 | |
| Elite Anesthesia Group, Inc. | Watsonville Hospital Corporation | 1st Amendment to Service Agreement | Contract | 4/4/2013 | $0.00 | |
| Elite Anesthesia Group, Inc. | Watsonville Hospital Corporation | 2nd Amendment to Service Agreement | Contract | 8/29/2019 | $0.00 | |
| enBio | Watsonville Hospital Corporation | Imaging Equipment Services Agreement | Contract | 6/7/2021 | $80,872.00 | |
| enBio | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 6/7/2021 | $0.00 | |
| EndoSoft, LLC | Watsonville Hospital Corporation | Annual Subscription | Contract | 1/14/2021 | $0.00 | |
| Epiphany Healthcare Data Management, LLC | Watsonville Hospital Corporation | Purchase Order | Contract | 1/1/2021 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| eSolutions, Inc. | Watsonville Hospital Corporation | eSolutions Services Agreement | Contract | 6/15/2020 | $26,085.00 | |
| eSolutions, Inc. | Watsonville Hospital Corporation | eSolutions Business Associate Agreement | Contract | 6/15/2020 | $0.00 | |
| ETHICON ENDO-SURGERY INC | Watsonville Hospital Corporation | Contracts #: 743-Version 101-Endomechanical Products Disposable | Contract | 11/1/2019 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 439-Version 72-ADVANCED ENERGY - ULTRASONIC EQUIPMENT & SUPPLIES | Contract | 2/1/2019 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 7375-Version 21-ADVANCED ENERGY - ADVANCED BIPOLAR EQUIPMENT & SUPPLIES | Contract | 11/1/2018 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 42355-Version 6-Electrosurgery - Smoke Evacuation Equipment & Supplies | Contract | 2/1/2019 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 1482-Version 94-Biosurgical Hemostatic Agents | Contract | 4/1/2015 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 42539-Version 10-Electrosurgery - Monopolar, Bipolar & Argon Enhanced | Contract | 2/1/2019 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 5206-Version 41-Topical Skin Adhesives | Contract | 6/1/2021 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 5205-Version 41-TROCARS - DISPOSABLE | Contract | 5/1/2019 | $0.00 | |
| ETHICON US LLC | Watsonville Hospital Corporation | Contract #: 5759-Version 35-SUTURE - BARBED | Contract | 3/1/2019 | $0.00 | |
| Evoqua Water Technologies | Watsonville Hospital Corporation | Water Purification System Proposal (Quote # 2019-344671) | Contract | 9/4/2019 | $3,943.00 | |
| Experian Health Inc | Watsonville Hospital Corporation | Master Customer Agreement | Contract | 11/7/2019 | $8,258.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Experian Health Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 11/12/2019 | $0.00 | |
| Firm Revenue Cycle Management Services, Inc. | Watsonville Hospital Corporation | Master Service Agreement | Contract | 10/10/2019 | $592,069.00 | |
| First Alarm Security & Control | Watsonville Hospital Corporation | First Alarm Security & Control Agreement | Contract | 6/30/2015 | $5,967.00 | |
| First Health Group Corp. | Watsonville Hospital Corporation | Participating Hospital Agreement | Contract | | $0.00 | |
| First Health Group Corp. | Watsonville Hospital Corporation | Amendment | Contract | 8/1/2008 | $0.00 | |
| First Insurance Funding | Watsonville Hospital Corporation | Premium Finance Agreement | Contract | 11/1/2021 | $0.00 | |
| FISHER HEALTHCARE | Watsonville Hospital Corporation | Contract #: 885-Version 114-DISTRIBUTION - LABORATORY | Contract | 1/1/2022 | $54,318.00 | |
| FISHER&PAYKEL HEALTHCARE INC | Watsonville Hospital Corporation | Contract #: 7287-Version 20-Respiratory Heaters and Accessories | Contract | 12/1/2017 | $6,135.00 | |
| Foley & Lardner LLP | Watsonville Hospital Corporation | Engagement Letter Agreement | Contract | 7/8/2020 | $0.00 | |
| Foodbuy LLC | Watsonville Hospital Corporation | Contract #: 43973-Version 7-Food procurement and distribution management services | Contract | 8/1/2019 | $0.00 | |
| Foothill College DeAnza Community College District | Watsonville Hospital Corporation | Non Exclusive Student Affiliation Agreement | Contract | 3/1/2018 | $0.00 | |
| GE Healthcare IITS USA Corp` | Watsonville Hospital Corporation | Centricity Support Maintenance Agreement (OBEHR) | Personal Property Lease | 6/1/2021 | $40,039.00 | |
| GE HFS, LLC | Watsonville Hospital Corporation | Equipment Schedule to Master Lease Agreement | Personal Property Lease | 4/4/2016 | $12,727.00 | |
| GE HFS, LLC | Watsonville Hospital Corporation | Early Buy-Out Option Addendum | Personal Property Lease | 4/4/2016 | $7,962.00 | |

DOCS_DE:237400.6 92381/002

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| General Electric Capital Corporation | Watsonville Hospital Corporation | Master Lease Agreement | Personal Property Lease | 7/5/2012 | $0.00 | |
| General Electric Capital Corporation | Watsonville Hospital Corporation | Equipment Schedule to Master Lease Agreement | Personal Property Lease | 7/5/2012 | $0.00 | |
| General Electric Capital Corporation | Watsonville Hospital Corporation | Early Buy-Out Option Addendum | Personal Property Lease | 7/5/2012 | $0.00 | |
| General Electric Capital Corporation | Watsonville Hospital Corporation | Interim Loan and Security Agreement | Personal Property Lease | 7/5/2012 | $0.00 | |
| General Teamsters Local 912 | Watsonville Hospital Corporation | Collective Bargaining Agreement with General Teamsters Local 912 | Contract | 10/12/2020 | $0.00 | Yes |
| GETINGE USA SALES LLC | Watsonville Hospital Corporation | Contract #: 4717-Version 26-CARDIAC ASSIST DEVICES - INTRA-AORTIC BALLOON PUMP | Contract | 4/1/2018 | $12,974.00 | |
| GETINGE USA SALES LLC | Watsonville Hospital Corporation | Contract #: 4777-Version 26-ENDOSCOPIC VEIN HARVESTING | Contract | 4/1/2018 | $0.00 | |
| Global Healthcare Exchange Inc. | Watsonville Hospital Corporation | Purchase Order Form | Contract | 11/24/2019 | $0.00 | |
| Global Healthcare Exchange Inc. | Watsonville Hospital Corporation | SOW Terms and Conditions | Contract | 10/11/2019 | $0.00 | |
| Global Healthcare Exchange Inc. | Watsonville Hospital Corporation | Purchaser User Agreement | Contract | 10/11/2019 | $0.00 | |
| GOJO INDUSTRIES INC | Watsonville Hospital Corporation | Contract #: 5470-Version 56-HAND HYGIENE - SOAPS LOTIONS AND SANITIZERS | Contract | 2/1/2017 | $0.00 | |
| Golden Age Convalescent Hospital | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 5/23/2016 | $0.00 | |
| Golden State Heart and Vascular Associates Inc. | Watsonville Hospital Corporation | Call Coverage Agreement | Contract | 5/1/2018 | $7,957.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Good Samaritan Hospital, L.P. | Watsonville Hospital Corporation | Facility Transfer Agreement | Contract | 1/2/2017 | $0.00 | |
| Good Samaritan Hospital, L.P. d/b/a Good Samaritan Hospital<br><br>San José Healthcare System, L.P. d/b/a Regional Medical Center of San José | Watsonville Hospital Corporation | Telemedicine Agreement | Contract | 7/1/2015 | $0.00 | |
| Good Samaritan Hospital, L.P. d/b/a Good Samaritan Hospital<br><br>San José Healthcare System, L.P. d/b/a Regional Medical Center of San José | Watsonville Hospital Corporation | Telemedicine Agreement (First Amendment) | Contract | 8/1/2016 | $0.00 | |
| Good Samaritan Hospital, L.P. d/b/a Good Samaritan Hospital<br><br>San José Healthcare System, L.P. d/b/a Regional Medical Center of San José | Watsonville Hospital Corporation | Telemedicine Agreement (Second Amendment) | Contract | 1/1/2019 | $0.00 | |
| Good Samaritan Hospital, L.P. d/b/a Good Samaritan Hospital<br><br>San José Healthcare System, L.P. d/b/a Regional Medical Center of San José | Watsonville Hospital Corporation | Amendment to Telemedicine Agreement | Contract | 12/23/2021 | $0.00 | |
| Good Samaritan Hospital, L.P. d/b/a Good Samaritan Hospital<br><br>San José Healthcare System, L.P. d/b/a Regional Medical Center of San José | Watsonville Hospital Corporation | Care Collaboration Agreement | Contract | 7/1/2015 | $0.00 | |

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 78 of 144

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| GQR Global Markets | Watsonville Hospital Corporation | Registered Nurse & Allied Health Professionals Staffing Services Agreement | Contract | 10/5/2021 | $0.00 | |
| Greenberg Traurig LLP | Watsonville Hospital Corporation | Engagement Letter | Contract | 11/1/2019 | $18,218.00 | |
| GUERBET LLC | Watsonville Hospital Corporation | Contract #: 33263-Version 16-Contrast Media - MR | Contract | 10/1/2021 | $0.00 | |
| Guidehouse Managed Services Inc. (Navigant Cymetrix Corporation) | Watsonville Hospital Corporation | Statement of Work #2 | Contract | 9/19/2019 | $0.00 | |
| Guidehouse Managed Services Inc. (Navigant Cymetrix Corporation) | Watsonville Hospital Corporation | Statement of Work #1 | Contract | 9/19/2019 | $0.00 | |
| Guidehouse Managed Services Inc. (Navigant Cymetrix Corporation) | Watsonville Hospital Corporation | Amendment to Statement of Work #1 | Contract | 12/16/2021 | $0.00 | |
| Guidehouse Managed Services Inc. (Navigant Cymetrix Corporation) | Watsonville Hospital Corporation | Master Services Agreement | Contract | 10/1/2019 | $2,078,625.37 | |
| Halo Unlimited Inc. (d/b/a Infant Hearing Screening Specialists) | Watsonville Hospital Corporation | Auditory Services Agreement | Contract | 2/1/2015 | $4,650.00 | |
| Halo Unlimited Inc. (d/b/a Infant Hearing Screening Specialists) | Watsonville Hospital Corporation | First Amendment to Auditory Services Agreement | Contract | 8/1/2021 | $0.00 | |
| Health Net Federal Services, LLC | Watsonville Hospital Corporation | Facility Provider Agreement- Tricare Program | Contract | 2/1/2018 | $0.00 | |
| Health Net Federal Services, LLC | Watsonville Hospital Corporation | Amendment to the Facility Professional Provider Agreement-Tricare Program | Contract | 2/1/2018 | $0.00 | |
| Health Net of California, Inc. | Watsonville Hospital Corporation | HNI Hospital Provider Services Agreement | Contract | 10/8/2017 | $0.00 | |
| Health Value Management, Inc. d/b/a ChoiceCare Network | Watsonville Hospital Corporation | Hospital Participation Agreement | Contract | 8/1/2003 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Healthicity, LLC | Watsonville Hospital Corporation | Master Services Agreement | Contract | 10/4/2019 | $11,800.00 | |
| Healthicity, LLC | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 10/4/2019 | $0.00 | |
| Healthicity, LLC | Watsonville Hospital Corporation | Order Form | Contract | 10/4/2019 | $0.00 | |
| HealthStream Inc | Watsonville Hospital Corporation | Master Services Agreement | Contract | 11/25/2019 | $10,514.00 | |
| HealthStream Inc | Watsonville Hospital Corporation | Order Form (ORD-0732790) | Contract | 2/17/2021 | $0.00 | |
| HealthStream Inc | Watsonville Hospital Corporation | Order Form (ORD-0732790) | Contract | 3/8/2021 | $0.00 | |
| HealthTronics Mobile Solutions, LLC | Watsonville Hospital Corporation | Standardization Incentive Program - Facility Acknowledgement Form - Discounts | Contract | 6/1/2016 | $6,691.98 | |
| HealthTrust Purchasing Group, L.P. | Watsonville Hospital Corporation | Participation Agreement | Contract | 3/29/2021 | $0.00 | |
| HealthTrust Workforce Solutions LLC | Watsonville Hospital Corporation | HealthTrust Purchaser Managed Services Program Agreement | Contract | 5/5/2020 | $3,052,355.00 | |
| Hearts and Hands Post Acute Care and Rehab Center | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 5/23/2016 | $0.00 | |
| HEROIC Security LLC | Watsonville Hospital Corporation | Master Services Agreement | Contract | 11/18/2019 | $466,435.75 | |
| HEROIC Security LLC | Watsonville Hospital Corporation | Statement of Work and Service Level Agreement | Contract | 11/18/2019 | Included in above | |
| HEROIC Security LLC | Watsonville Hospital Corporation | 1st Amendment to Statement of Work and Service Level Agreement | Contract | 8/3/2021 | Included in above | |
| HEROIC Security LLC | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 11/18/2019 | $0.00 | |

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 80 of 144

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Highland Capital Corporation | Watsonville Hospital Corporation | Equipment Financing Agreement | Personal Property Lease | 9/17/2020 | $4,473.00 | |
| Highland Capital Corporation | Watsonville Hospital Corporation | Prepayment Amendment to Finance Agreement | Personal Property Lease | 9/16/2020 | $0.00 | |
| HILL-ROM CO INC | Watsonville Hospital Corporation | Contract #: 5332-Version 36-BEDS - PATIENT | Contract | 6/1/2021 | $23,895.00 | |
| HILL-ROM CO INC | Watsonville Hospital Corporation | Contract #: 5320-Version 31-REPLACEMENT MATTRESSES - PADS - AND COVERS | Contract | 4/1/2021 | $0.00 | |
| HOLOGIC INC | Watsonville Hospital Corporation | Service Quote (#Q-102509) | Contract | 11/18/2018 | $765.00 | |
| HOLOGIC INC | Watsonville Hospital Corporation | Contract #: 6242-Version 26-Hysteroscopic, Morcellation and Fluid Management | Contract | 7/1/2020 | $0.00 | |
| HOLOGIC INC | Watsonville Hospital Corporation | Disposables Agreement for HealthTrust Members | Contract | 9/4/2015 | $0.00 | |
| HOLOGIC INC | Watsonville Hospital Corporation | Disposables Agreement for HealthTrust Members | Contract | 9/21/2015 | $0.00 | |
| ICU MEDICAL SALES INC | Watsonville Hospital Corporation | Contract #: 7679-Version 55-Infusion Sets, Solutions and Needleless Products | Contract | 1/1/2022 | $0.00 | |
| ICU MEDICAL SALES INC | Watsonville Hospital Corporation | Contract #: 39581-Version 6-Catheters, IV Safety | Contract | 11/1/2018 | $0.00 | |
| Igoe & Company Incorporated | Watsonville Hospital Corporation | COBRA Administrative Services Agreement | Contract | 10/21/2020 | $0.00 | |
| Igoe & Company Incorporated | Watsonville Hospital Corporation | Assignment of Fee Payment Responsibility Agreement | Contract | 10/21/2020 | $0.00 | |
| Imprivata, Inc. | Watsonville Hospital Corporation | End User License Agreement for Imprivata Software | Contract | 4/29/2020 | $333.17 | |
| INTEGRA LIFESCIENCES SALES/NEURO | Watsonville Hospital Corporation | Contract #: 26855-Version 14-Dura Sealants | Contract | 6/1/2020 | $6,773.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| INTEGRA LIFESCIENCES SALES/NEURO | Watsonville Hospital Corporation | Contract #: 18529-Version 15-DURA REPAIR PRODUCTS | Contract | 6/1/2020 | $0.00 | |
| INTEGRA SPECIALTY SURGICAL SOLNS | Watsonville Hospital Corporation | Contract #: 891-Version 66-INSTRUMENTS - SURGICAL - GENERAL AND SPECIALTY | Contract | 2/1/2019 | $4,710.00 | |
| International Business Machines Corporation | Watsonville Hospital Corporation | Proof of Entitlement | Contract | 10/10/2019 | $0.00 | |
| International Business Machines Corporation | Watsonville Hospital Corporation | Cloud Services Agreement | Contract | 10/17/2019 | $4,206.00 | |
| Intuitive Surgical Inc | Watsonville Hospital Corporation | Service Agreement | Contract | 3/14/2019 | $140,188.00 | |
| Iron Mountain Secure Shredding, Inc. | Watsonville Hospital Corporation | Secure Shredding Services Facility Agreement (#4008379) | Contract | 11/11/2019 | $7,233.92 | |
| Jobvite, Inc. | Watsonville Hospital Corporation | Master Subscription Agreement | Contract | 6/1/2021 | $8,500.00 | |
| Jobvite, Inc. | Watsonville Hospital Corporation | Order No. Q-049340 | Contract | 6/7/2021 | $0.00 | |
| Johnson Controls Fire Protection LP | Watsonville Hospital Corporation | Service Solution Agreement (#659393) | Contract | 12/1/2018 | $0.00 | |
| Johnson Controls Fire Protection LP | Watsonville Hospital Corporation | Purchaser Agreement | Contract | 1/1/2019 | $678.00 | |
| JOHNSON&JOHNSON HEALTH CARE SYS | Watsonville Hospital Corporation | Contract #: 7006-Version 77-IMPLANTS - TRAUMA - INTERNAL AND EXTERNAL FIXATION | Contract | 6/1/2018 | $29,239.00 | |
| JOHNSON&JOHNSON HEALTH CARE SYS | Watsonville Hospital Corporation | Contract #: 22111-Version 15-THORACIC FIXATION PRODUCTS | Contract | 6/30/2020 | $0.00 | |
| JOHNSON&JOHNSON HEALTH CARE SYS | Watsonville Hospital Corporation | Contract #: 7156-Version 27-Craniomaxillofacial | Contract | 2/1/2019 | $0.00 | |
| Kaiser Foundation Hospitals | Watsonville Hospital Corporation | Health Care Services Agreement | Contract | 1/1/2016 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Kindred Nursing and Transitional Care - Santa Cruz | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 1/6/2016 | $0.00 | |
| Konica Minolta Business Solutions USA, Inc. | Watsonville Hospital Corporation | Software Financing Agreement | Contract | 8/15/2017 | $0.00 | |
| Konica Minolta Business Solutions USA, Inc. | Watsonville Hospital Corporation | Master Premier Lease Schedule | Personal Property Lease | 10/24/2017 | $0.00 | |
| Konica Minolta Business Solutions USA, Inc. | Watsonville Hospital Corporation | Master Premier Lease Schedule | Personal Property Lease | 10/5/2017 | $0.00 | |
| Konica Minolta Business Solutions USA, Inc. | Watsonville Hospital Corporation | Master Premier Lease Agreement and Premier Finance Waiver | Personal Property Lease | 8/15/2017 | $11,231.00 | |
| Leasing Associates of Barrington, Inc | Watsonville Hospital Corporation | Addendum No. 12768001 to Lease Agreement No. 12768000 | Personal Property Lease | 3/18/2019 | $0.00 | |
| Leroy Rasi MD | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions - Orthopedics | Contract | 12/1/2014 | $4,200.00 | |
| Leroy Rasi MD | Watsonville Hospital Corporation | Amendment to Call Coverage Agreement | Contract | 2/1/2019 | $0.00 | |
| Leroy Rasi MD | Watsonville Hospital Corporation | Amendment to Call Coverage Agreement | Contract | 6/1/2015 | $0.00 | |
| Li Kuo Kong, MD | Watsonville Hospital Corporation | Consultant Services Agreement | Contract | 10/1/2020 | $0.00 | |
| Lifelinc Anesthesia VI, P.C. | Watsonville Hospital Corporation | Anesthesia Services With Medical Directorship Agreement | Contract | 6/9/2021 | $363,838.02 | |
| Lifelinc Anesthesia VI, P.C. | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 6/8/2021 | $0.00 | |
| Lifelinc Anesthesia VI, P.C. | Watsonville Hospital Corporation | Electronic Medical Record Use and Access Agreement | Contract | 6/4/2021 | $0.00 | |
| Lifelinc Anesthesia VI, P.C. | Watsonville Hospital Corporation | 1st Amendment of Anesthesia Services With Medical Directorship Agreement | Contract | 6/9/2021 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| LIFENET HEALTH | Watsonville Hospital Corporation | Contract #: 4094-Version 72-OSTEOBIOLOGICS | Contract | 12/1/2019 | $13,388.00 | |
| LIVANOVA USA INC | Watsonville Hospital Corporation | Contract #: 45700-Version 2-Autotransfusion - Cell Saver Products | Contract | 5/1/2019 | $0.00 | |
| LIVANOVA USA INC | Watsonville Hospital Corporation | Contract #: 6968-Version 19-PERFUSION - CANNULAS | Contract | 5/1/2019 | $0.00 | |
| LIVANOVA USA INC | Watsonville Hospital Corporation | Contract #: 3930-Version 35-PERFUSION EQUIPMENT | Contract | 5/1/2019 | $0.00 | |
| Lucile Packard Children's Hospital at Stanford | Watsonville Hospital Corporation | Medical Director and Professional Services Agreement | Contract | 12/1/2001 | $0.00 | |
| Lucile Packard Children's Hospital at Stanford | Watsonville Hospital Corporation | 1st Agreement to Participation Agreement | Contract | 1/1/2020 | $0.00 | |
| Lucile Packard Children's Hospital at Stanford | Watsonville Hospital Corporation | 2nd Amendment to Service Agreement | Contract | 1/1/2013 | $0.00 | |
| Mako Surgical Corp | Watsonville Hospital Corporation | Equipment Purchase Agreement | Contract | 6/30/2020 | $0.00 | |
| Marsh & McLennan Insurance Agency LLC | Watsonville Hospital Corporation | Employee Benefits Consulting Agreement | Contract | 10/1/2019 | $0.00 | |
| Masimo America Inc | Watsonville Hospital Corporation | Contract #1331-Version 58- Pulse Oximetry And Capnography Equipment And Supplies | Contract | 4/10/2020 | $0.00 | |
| Masimo America Inc | Watsonville Hospital Corporation | Deferred Equipment Agreement (Contract ID #20US1521) | Contract | 9/11/2020 | $9,679.00 | |
| Matko Vranjes | Watsonville Hospital Corporation | Employment Agreement | Contract | 11/24/2021 | $0.00 | |
| MCN Healthcare | Watsonville Hospital Corporation | Amendment Number 1 to Policy Manager Agreement | Contract | 4/4/2020 | $0.00 | |
| MCN Healthcare | Watsonville Hospital Corporation | MCN Healthcare ellucid Policy Manager Agreement | Contract | 7/15/2013 | $0.00 | |
| MEAD JOHNSON&COMPANY LLC | Watsonville Hospital Corporation | Contract #: 56-Version 79-Nutritionals and Formula - Infant and Pediatric | Contract | 7/1/2021 | $302.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Med-Data, Inc. | Watsonville Hospital Corporation | Master Services Agreement | Contract | 8/15/2021 | $0.00 | |
| Med-Data, Inc. | Watsonville Hospital Corporation | Statement of Work- First Placement Eligibility Services | Contract | 8/15/2021 | $0.00 | |
| Med-Data, Inc. | Watsonville Hospital Corporation | Statement of Work- Patient Pay Services | Contract | 8/15/2021 | $0.00 | |
| Medela LLC | Watsonville Hospital Corporation | Contract #500161 (Version 84) | Contract | 3/15/2017 | $511.00 | |
| Medely | Watsonville Hospital Corporation | Services Agreement | Contract | 8/10/2021 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | HIPAA Business Associate Agreement | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Master Services Agreement | Contract | 11/22/2019 | $361,158.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Master Products and Services Agreement | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Application Services Provider Agreement | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Purchase Order | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Sales Order (# WA - 000214086) | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Sales Order (# WA - 000214030) | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Statement of Work (WA - 000214032) | Contract | 10/15/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Software License & Support End User Agreement | Contract | 11/22/2019 | $0.00 | |
| MEDHOST Direct Inc | Watsonville Hospital Corporation | Sales Order (# WA - 000214033) | Contract | 11/22/2019 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| MediaMedia | Watsonville Healthcare Management | Independent Subcontractor Agreement | Contract | 11/4/2020 | $0.00 | |
| MEDIVATORS INC | Watsonville Hospital Corporation | Contract #: 4941-Version 48-Endoscope and Instrument Care - Cleaning, Transport, and Related Supplies | Contract | 2/1/2019 | $0.00 | |
| MEDLINE INDUSTRIES LP | Watsonville Hospital Corporation | Contract #: 6071-Version 40-RESPIRATORY HEATERS AND ACCESSORIES | Contract | 12/1/2017 | $45,913.00 | |
| Medsurant, LLC | Watsonville Hospital Corporation | Services Agreement | Contract | 4/13/2021 | $2,160.00 | |
| MEDTRONIC SOFAMOR DANEK USA | Watsonville Hospital Corporation | Contract #: 981-Version 103-PERCUTANEOUS VERTEBRAL AUGMENTATION (KYPHOPLASTY AND VERTEBROPLASTY) | Contract | 3/1/2020 | $31,756.00 | |
| MEDTRONIC USA/CARDIAC SURGERY | Watsonville Hospital Corporation | Contract #: 46423-Version 2-Autotransfusion - Cell Saver Products | Contract | 5/1/2019 | $0.00 | |
| MEDTRONIC USA/CARDIAC SURGERY | Watsonville Hospital Corporation | Contract #: 4652-Version 63-VALVE, TISSUE | Contract | 4/1/2018 | $0.00 | |
| MEDTRONIC USA/CARDIAC SURGERY | Watsonville Hospital Corporation | Contract #: 6976-Version 21-VALVE, MECHANICAL | Contract | 4/1/2018 | $0.00 | |
| MEDTRONIC USA/SURGICAL TECH | Watsonville Hospital Corporation | Contract #: 18600-Version 13-DURA REPAIR PRODUCTS | Contract | 6/1/2020 | $0.00 | |
| Melissa Lopez Bermejo MD | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions - Pulmonary Medicine/Critical Care | Contract | 9/1/2016 | $28,600.00 | |
| Meritain Health Inc | Watsonville Hospital Corporation | Administrative Services Agreement | Contract | 10/1/2020 | $0.00 | |
| Mid-Coastal Perinatal Outreach Program | Watsonville Hospital Corporation | Mid-Coastal California Perinatal Outreach Program Participation Agreement | Contract | 1/1/2016 | $0.00 | |
| Mid-Coastal Perinatal Outreach Program | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 1/1/2016 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Miller's Transfer & Storage | Watsonville Hospital Corporation | Miller's Transfer and Storage Services Agreement | Contract | 7/1/2014 | $27,555.00 | |
| Mills Peninsula Health Services | Watsonville Hospital Corporation | Hospital Services Agreement | Contract | | $0.00 | |
| Mills Peninsula Health Services | Watsonville Hospital Corporation | First Amendment to the Hospital Services Agreement | Contract | 8/3/2015 | $0.00 | |
| MIMEDX GROUP INC | Watsonville Hospital Corporation | Contract #: 7330-Version 49-Regenerative Tissue, Wound Care | Contract | 4/1/2019 | $90,609.00 | |
| Mindray DS USA, Inc. | Watsonville Hospital Corporation | Mindray North America Service Contract (#C031094) | Contract | 3/23/2019 | $3,540.00 | |
| MModal Services Ltd. | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 12/11/2019 | $0.00 | |
| MModal Services Ltd. Aquity Solutions, LLC | Watsonville Hospital Corporation | Master Agreement (Agreement No. 00417895) | Contract | 11/25/2019 | $0.00 | |
| MOLNLYCKE HEALTH CARE US LLC | Watsonville Hospital Corporation | Contract #: 2799-Version 29-SKIN PREP SOLUTIONS | Contract | 10/1/2020 | $0.00 | |
| MOLNLYCKE HEALTH CARE US LLC | Watsonville Hospital Corporation | Contract #: 552-Version 57-GLOVES - SURGEON | Contract | 10/1/2020 | $0.00 | |
| Monterey Bay Heart Center | Watsonville Hospital Corporation | Professional Services Agreement | Contract | 2/1/2020 | $15,960.00 | |
| Monterey Peninsula Surgery Center d/b/a Capitola Surgery Center | Watsonville Hospital Corporation | Transfer Agreement | Contract | 9/20/2021 | $0.00 | |
| Moran Printing Inc (Emprint) | Watsonville Hospital Corporation | Contract of Services | Contract | 10/1/2019 | $3,965.00 | |
| MorCare LLC | Watsonville Hospital Corporation | Subscription Agreement | Contract | 3/22/2020 | $0.00 | |
| Moss Adams | Halsen Healthcare LLC | Professional Services Agreement | Contract | 12/18/2020 | $12,650.00 | |
| MultiPlan, Inc. | Watsonville Hospital Corporation | MPI Participating Facility Agreement | Contract | 5/1/2017 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Natividad Medical Center | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 8/1/2015 | $0.00 | |
| NDSC | Watsonville Hospital Corporation | Order (Contract # 1305) | Contract | 10/30/2020 | $0.00 | |
| NELLCOR PURITAN BENNETT/ASPECT | Watsonville Hospital Corporation | Contract #: 500226-Version 54-CONSCIOUSNESS MONITORING EQUIPMENT | Contract | 8/1/2012 | $0.00 | |
| NEOMED INC | Watsonville Hospital Corporation | Contract #: 6667-Version 30-Neonatal - Enteral Feeding Tubes and Accessories | Contract | 5/1/2018 | $0.00 | |
| Neven Development LLC | Watsonville Hospital Corporation | Master Lease Agreement | Real Property Lease | 11/21/2003 | $420.00 | |
| Neven Development LLC | Watsonville Hospital Corporation | Sublease Agreement | Real Property Lease | 3/25/2004 | $0.00 | |
| Neven Development LLC | Watsonville Hospital Corporation | 1st Amendment to Sublease Agreement | Real Property Lease | 8/18/2004 | $0.00 | |
| Neven Development LLC | Watsonville Hospital Corporation | 2nd Amendment to Sublease Agreement | Real Property Lease | 11/17/2004 | $0.00 | |
| Neven Development LLC | Watsonville Hospital Corporation | 3rd Amendment to Sublease Agreement | Real Property Lease | 6/26/2018 | $0.00 | |
| Neven Development LLC | Watsonville Hospital Corporation | 3rd Amendment to Sublease Agreement #125 | Real Property Lease | 6/26/2018 | $0.00 | |
| NFS Leasing, Inc. (assignee of GE HFS, LLC) | Watsonville Hospital Corporation | Amended and Restated Equipment Schedule to Master Lease Agreement | Personal Property Lease | 6/14/2017 | $35,940.00 | |
| NOVO SURGICAL INC | Watsonville Hospital Corporation | Contract #: 7032-Version 18-INSTRUMENTS - SURGICAL - GENERAL AND SPECIALTY | Contract | 2/1/2019 | $0.00 | |
| NUVASIVE INC | Watsonville Hospital Corporation | Contract #: 43535-Version 11-Implants - Spine | Contract | 12/1/2019 | $51,830.00 | |
| NX Health Network | Watsonville Hospital Corporation | Participating Facility Agreement | Contract | 1/1/2017 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Olympus America Inc. | Watsonville Hospital Corporation | Full Service Agreement | Contract | 5/14/2021 | $37,751.00 | |
| Optum360, LLC | Watsonville Hospital Corporation | License Agreement | Contract | 10/8/2020 | $0.00 | |
| ORGANOGENESIS INC | Watsonville Hospital Corporation | Contract #: 7331-Version 19-Regenerative Tissue, Wound Care | Contract | 4/1/2019 | $0.00 | |
| OrthoNorCal, Inc. | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions - Orthopedic Surgery | Contract | 8/1/2014 | $0.00 | |
| OrthoNorCal, Inc. | Watsonville Hospital Corporation | Amendment to Call Coverage Agreement | Contract | 6/1/2015 | $0.00 | |
| OrthoNorCal, Inc. | Watsonville Hospital Corporation | Amendment to Call Coverage Agreement | Contract | 2/1/2019 | $0.00 | |
| Owens & Minor Distribution, Inc. | Watsonville Hospital Corporation | Primary Commitment Agreement for Acute Care & Surgery Centers | Contract | 10/1/2017 | $43,150.00 | |
| P&A PICC, LLC | Watsonville Hospital Corporation | PICC Line Services Agreement | Contract | 11/1/2020 | $9,595.00 | |
| P&A PICC, LLC | Watsonville Hospital Corporation | PICC Business Associate Agreement | Contract | 11/1/2020 | $0.00 | |
| Pacific Coast Trane Service | Watsonville Hospital Corporation | Scheduled Services Agreement (L#10052) | Contract | 5/22/2017 | $5,123.00 | |
| Packard Children's Health Alliance, Inc | Watsonville Hospital Corporation | Professional Services Agreement | Contract | 8/1/2019 | $2,750.00 | |
| PARA HealthCare Analytics, LLC | Watsonville Hospital Corporation | PARA Service Agreement | Contract | 1/23/2020 | $128,356.00 | |
| Pension Assurance LLP | Watsonville Hospital Corporation | Audit Engagement Agreement (Watsonville Community Hospital 401(k) and Money Purchase Plan) | Contract | 8/31/2021 | $0.00 | |
| Pension Assurance LLP | Watsonville Hospital Corporation | Audit Engagement Agreement (Watsonville Community Hospital Cash Balance Pension Plan) | Contract | 8/31/2021 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| PENUMBRA INC | Watsonville Hospital Corporation | Contract #: 7183-Version 18-Mechanical Embolectomy Thrombectomy | Contract | 9/1/2018 | $0.00 | |
| PERITUS Advisors | Halsen Healthcare LLC | Consulting Agreement | Contract | 11/19/2018 | $171,619.00 | |
| Pharmacy OneSource Inc | Watsonville Hospital Corporation | Subscription Purchase Agreement | Contract | 9/30/2019 | $27,000.00 | |
| Pharmacy OneSource Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 10/1/2019 | $0.00 | |
| Philips Healthcare Informatics, Inc. (f/k/a Carestream Health, Inc.) | Watsonville Hospital Corporation | Service Agreement (Quote No. 5179328) | Contract | 8/5/2020 | $6,863.00 | |
| PHILIPS IMAGE GUIDED THERAPY | Watsonville Hospital Corporation | Contract #: 35128-Version 9-Atherectomy | Contract | 5/1/2018 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Statement of Work (Cath Lab Construction) | Contract | 11/24/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Agreement | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Addendum to Master Lease Agreement | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Schedule #1 (1) DS Azurion 7 M20 per quote #1-27A1PJH | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Schedule #2 (2) MobileDiagnost per quote #1-202p8R3 | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Schedule #3 (1) Philips CombDiagnost per quote #1-202YCKH | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Schedule #4 (1) Philips CombDiagnost per quote #1-202YCKH | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Schedule #5 (2) Philips EPIQ Elite GI per quote #1-285KDCE | Contract | 9/22/2020 | $0.00 | |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Master Lease Schedule #6 (1) Philips Xper per quote #1-26F9ZWH | Contract | 9/22/2020 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | Statement of Work (Quotation Number: 1-26F9ZWH Rev 3)- Xper IM with Shared IBE Broker | Contract | 6/19/2020 | $0.00 | |
| Picis Clinical Solutions Inc | Watsonville Hospital Corporation | Supplemental Software Subscription and Services Agreement | Contract | 3/3/2021 | $46,451.61 | |
| Picis Clinical Solutions Inc | Watsonville Hospital Corporation | 2nd Amendment to the Supplemental Agreement | Contract | 3/3/2021 | $0.00 | |
| Picis Clinical Solutions Inc | Watsonville Hospital Corporation | 1st Amendment to the Software License and Services Agreement | Contract | 6/18/2020 | $0.00 | |
| Pinehurst Hospitalist Medical Group, Inc. | Watsonville Hospital Corporation | Hospitalist Physician Services Agreement | Contract | 10/10/2020 | $10,430.08 | |
| Pinehurst Hospitalist Medical Group, Inc. | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 4/13/2020 | $0.00 | |
| Pinnacle Medical Group, Inc. | Watsonville Hospital Corporation | Independent Contractor Agreement | Contract | 8/20/2021 | $35,275.00 | |
| Pinnacle Medical Group, Inc. | Watsonville Hospital Corporation | Professional Services Agreement | Contract | 4/1/2017 | $0.00 | |
| Pipeline Health Holdings LLC d/b/a PipelineRx | Watsonville Hospital Corporation | Master License and Services Agreement | Contract | 10/1/2019 | $49,763.00 | |
| Pipeline Health Holdings LLC d/b/a PipelineRx | Watsonville Hospital Corporation | Order Form | Contract | 10/1/2019 | $0.00 | |
| Pipeline Health Holdings LLC d/b/a PipelineRx | Watsonville Hospital Corporation | Amendment to Agreement for Remote Pharmacist Services | Contract | 4/10/2020 | $0.00 | |
| Pipeline Health Holdings LLC d/b/a PipelineRx | Watsonville Hospital Corporation | Amendment to Agreement for Remote Pharmacist Services | Contract | 4/10/2021 | $0.00 | |
| Pitney Bowes | Watsonville Hospital Corporation | Master Agreement | Personal Property Lease | 1/20/2017 | $0.00 | |
| Pony Express Distribution and Delivery | Watsonville Hospital Corporation | Amendment to Independent Contractor Agreement | Contract | 12/7/2016 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Pony Express Distribution and Delivery | Watsonville Hospital Corporation | Independent Contractor Agreement | Contract | 2/12/2015 | $2,680.00 | |
| Premier Healthcare Solutions, Inc. | Watsonville Hospital Corporation | PerformanceSuite Solutions Subscription Agreement | Contract | 7/1/2020 | $31,111.00 | |
| Press Ganey Associates Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 10/1/2019 | $0.00 | |
| Press Ganey Associates Inc | Watsonville Hospital Corporation | Patient Experience Statement of Work | Contract | 10/1/2019 | $0.00 | |
| Press Ganey Associates, Inc | Watsonville Hospital Corporation | Master Services Agreement | Contract | 10/1/2019 | $3,053.00 | |
| ProviderTrust, Inc. | Watsonville Hospital Corporation | ExclusionCheck Agreement | Contract | 11/15/2019 | $0.00 | |
| QUIDEL CORP | Watsonville Hospital Corporation | Contract #: 30231-Version 11-MOLECULAR DIAGNOSTIC TESTING - INFECTIOUS DISEASE (POC) | Contract | 4/15/2018 | $0.00 | |
| QUIDEL CORP | Watsonville Hospital Corporation | Contract #: 5317-Version 40-RAPID TEST - INSTRUMENTED | Contract | 11/1/2021 | $0.00 | |
| R4 Solutions Inc | Watsonville Hospital Corporation | Master Service Agreement | Contract | 4/16/2021 | $32,787.00 | |
| R4 Solutions Inc | Watsonville Hospital Corporation | Task Order | Contract | 5/3/2021 | $0.00 | |
| R4 Solutions Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 4/16/2021 | $0.00 | |
| R4 Solutions Inc | Watsonville Hospital Corporation | Statement of Work | Contract | 6/23/2021 | $0.00 | |
| Radiology Medical Group of Santa Cruz County, Inc. | Watsonville Hospital Corporation | Radiology Department Professional Services Agreement | Contract | 12/1/2014 | $2,160.00 | |
| Rahul Dixit, M.D. | Watsonville Healthcare Management | Administrative Consulting Agreement | Contract | 2/1/2020 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Rehab Practice Management, LLC | Watsonville Hospital Corporation | Rehabilitation Program Services Agreement | Contract | 1/1/2009 | $384,589.77 | |
| Rehab Practice Management, LLC | Watsonville Hospital Corporation | Amendment | Contract | 5/1/2016 | $0.00 | |
| Restorix Health Inc | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 8/1/2021 | $0.00 | |
| Restorix Health Inc | Watsonville Hospital Corporation | Administrative Services and Professional Staff Agreement | Contract | 8/1/2021 | $31,412.11 | |
| RevSpring, Inc. | Watsonville Hospital Corporation | Professional Services Agreement | Contract | 10/1/2019 | $819.00 | |
| REVUP, LLC | Watsonville Hospital Corporation | Consulting Services Agreement | Contract | 6/4/2020 | $0.00 | |
| Rezult Group Inc | Watsonville Hospital Corporation | Standard Services Agreement | Contract | 11/7/2019 | $0.00 | |
| Roy Martinez | Watsonville Hospital Corporation | Chief of Staff Physician Agreement | Contract | 9/1/2020 | $0.00 | |
| Royal Cup Inc | Watsonville Hospital Corporation | Equipment Rental | Contract | 9/1/2020 | $1,922.00 | |
| RxBenefits, Inc | Watsonville Hospital Corporation | Administrative Services Agreement | Contract | 10/1/2020 | $0.00 | |
| RxBenefits, Inc | Watsonville Hospital Corporation | Addendum to Administrative Services Agreement | Contract | 10/1/2020 | $0.00 | |
| RxBenefits, Inc | Watsonville Hospital Corporation | Addendum to Administrative Services Agreement | Contract | 12/1/2020 | $0.00 | |
| Ryan Brandt MD | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions | Contract | 5/1/2019 | $0.00 | |
| Salem & Green, A Professional Corporation | Watsonville Hospital Corporation | Physician Advisor Agreement | Contract | 9/17/2020 | $0.00 | |
| Salinas Valley Memorial Hospital | Watsonville Hospital Corporation | Hospital Services Agreement | Contract | 12/1/1996 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Salud Para La Gente | Watsonville Hospital Corporation | Transfer Agreement | Contract | 3/1/2021 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Medical Director Agreement Standard Terms and Conditions | Contract | 3/1/2016 | $46,624.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | 1st Amendment to Medical Director Agreement | Contract | 1/18/2017 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions | Contract | 1/1/2014 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Amendment to Agreement | Contract | 3/1/2015 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Medical Office Space Lease | Real Property Lease | 1/30/2004 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Letter Agreement to Amend Lease | Real Property Lease | 7/29/2004 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | 2nd Amendment to Part Time Lease | Real Property Lease | 7/28/2009 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Medical Office Space Lease | Real Property Lease | 4/1/2016 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Addendum to Medical Office Space Lease | Real Property Lease | 4/1/2016 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Medical Office Space Lease | Real Property Lease | 2/1/2018 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | Addendum to Medical Office Space Lease | Real Property Lease | 2/1/2018 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | 1st Amendment to Medical Office Space Lease | Real Property Lease | 11/1/2018 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | 2nd Amendment to Medical Office Space Lease | Real Property Lease | 4/1/2019 | $0.00 | |
| Salud Para La Gente Inc | Watsonville Hospital Corporation | 2nd Amendment to Medical Office Space Lease | Real Property Lease | 5/31/2019 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Sanderling Renal Services-USA LLC | Watsonville Hospital Corporation | Medical Office Space Lease | Real Property Lease | 5/15/2018 | $0.00 | |
| Sanderling Renal Services-USA LLC | Watsonville Hospital Corporation | Leasehold Improvements Agreement | Real Property Lease | 4/23/2018 | $0.00 | |
| Sanderling Renal Services-USA LLC | Watsonville Hospital Corporation | Addendum to Medical Office Space Lease | Real Property Lease | 4/23/2018 | $0.00 | |
| Santa Cruz Health Information Exchange LLC | Watsonville Hospital Corporation | Participation Agreement | Contract | 10/1/2013 | $0.00 | |
| Santa Cruz/Monterey Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Primary Hospital Services Agreement | Contract | 1/1/2006 | $0.00 | |
| Santa Cruz/Monterey Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | First Amendment to the Primary Hospital Services Agreement | Contract | 1/1/2008 | $0.00 | |
| Santa Cruz/Monterey Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Second Amendment to the Primary Hospital Services Agreement | Contract | 2/1/2009 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Third Amendment to the Primary Hospital Services Agreement | Contract | 8/1/2009 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Fourth Amendment to the Primary Hospital Services Agreement | Contract | 9/1/2009 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Fifth Amendment to the Primary Hospital Services Agreement | Contract | 1/1/2009 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Sixth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 11/1/2010 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Seventh Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 8/9/2011 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Eighth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 2/1/2012 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Ninth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 6/1/2017 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Tenth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 6/1/2017 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Eleventh Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 6/1/2017 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Twelfth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 7/1/2017 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Thirteenth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 7/1/2018 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Fourteenth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 7/1/2018 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Fifteenth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 7/1/2019 | $0.00 | |
| Santa Cruz-Monterey-Merced Managed Medical Care Commission d/b/a Central Coast Alliance for Health | Watsonville Hospital Corporation | Sixteenth Amendment to the Primary Hospital and Outpatient Laboratory Services Agreement | Contract | 6/18/2021 | $0.00 | |
| Satellite Healthcare, Inc. | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 9/15/2015 | $0.00 | |
| SC JOHNSON PROFESSIONAL USA INC | Watsonville Hospital Corporation | Contract #: 337-Version 59-HAND HYGIENE - SOAPS, LOTIONS AND SANITIZERS | Contract | 2/1/2017 | $0.00 | |
| SCG Capital Corporation (assignee of GE HFS, LLC) | Watsonville Hospital Corporation | Equipment Schedule to Master Lease Agreement | Personal Property Lease | 6/12/2017 | $32,036.00 | |
| SEIU United Healthcare Workers- West | Watsonville Hospital Corporation | Professional Unit Collective Bargaining Agreement with SEIU United Healthcare Workers- West | Contract | 2/28/2021 | $0.00 | Yes |
| SEIU United Healthcare Workers- West | Watsonville Hospital Corporation | Service & Maintenance Unit Collective Bargaining Agreement with SEIU United Healthcare Workers- West | Contract | 8/26/2021 | $0.00 | Yes |
| Siemens Healthcare Diagnostics, Inc | Watsonville Hospital Corporation | Scope of Work and Licensing Agreement | Contract | 7/29/2020 | $9,869.00 | |
| SMITH&NEPHEW WOUND | Watsonville Hospital Corporation | Contract #: 2751-Version 42-ANTHROSCOPY | Contract | 7/1/2021 | $652.00 | |
| SMITH&NEPHEW WOUND | Watsonville Hospital Corporation | Contract #: 67261-Version 1-ENDOSCOPY AND ARTHROSCOPY | Contract | 7/1/2021 | $30,006.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| SMITH&NEPHEW WOUND | Watsonville Hospital Corporation | Contract #: 24201-Version 35-WOUND CARE | Contract | 8/1/2021 | $7,866.00 | |
| SMITHS MEDICAL ASD INC | Watsonville Hospital Corporation | Contract #: 880-Version 28-Kits - Arterial Blood Gas | Contract | 12/1/2018 | $84.00 | |
| SMITHS MEDICAL ASD INC | Watsonville Hospital Corporation | Contract #: 1351-Version 74-INFUSION PUMPS - SOLUTIONS AND SETS | Contract | 1/1/2022 | $0.00 | |
| SMITHS MEDICAL ASD INC | Watsonville Hospital Corporation | Contracts #: 44177-Version 11-RESPIRATORY - GENERAL - BRONCHIAL HYGIENE | Contract | 3/1/2019 | $0.00 | |
| South Florida Utilization Review | Watsonville Hospital Corporation | South Florida Utilization Review (SFUR) Contract | Contract | 12/11/2019 | $1,750.00 | |
| South Florida Utilization Review | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 12/12/2019 | $0.00 | |
| SPECTRANETICS LLC | Watsonville Hospital Corporation | Contract #: 36599-Version 7-Atherectomy | Contract | 5/1/2018 | $0.00 | |
| SPECTRANETICS LLC | Watsonville Hospital Corporation | Contract #: 35124-Version 5-Chronic Total Occlusion | Contract | 5/1/2018 | $0.00 | |
| SPECTRANETICS LLC | Watsonville Hospital Corporation | Contract #: 6534-Version 24-Specialty Balloons | Contract | 5/1/2018 | $0.00 | |
| Spectrio LLC | Watsonville Hospital Corporation | Spectrio Services and Hardware Agreement For Business Establishments (Contract # 33047) | Contract | 11/12/2019 | $0.00 | |
| Spineology Inc | Watsonville Hospital Corporation | Product Contract for products used in spinal surgery of the cervical, thoracic or lumbar spinal regions to replace missing bone or to repair/support damaged bone in the spine | Contract | 12/1/2020 | $54,100.00 | |
| Stanford Hospital and Clinics | Watsonville Hospital Corporation | Affiliation Agreement for Visiting Residents and Fellows | Contract | 8/1/2014 | $0.00 | |
| Stanford Hospital and Clinics | Watsonville Hospital Corporation | Extension to Affiliation Agreement | Contract | 7/1/2016 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Stanford Hospital and Clinics | Watsonville Hospital Corporation | Second Amendment to Affiliation Agreement for Visiting Residents and Fellows | Contract | 10/16/2018 | $0.00 | |
| Stanford Hospital and Clinics | Watsonville Hospital Corporation | Third Amendment to the Affiliation Agreement for Visiting Residents and Fellows | Contract | 7/1/2021 | $0.00 | |
| State of California, California Emergency Medical Services Authority | Watsonville Hospital Corporation | California Contracted Medical Staff Services Agreement | Contract | 9/30/2021 | $0.00 | |
| Stericycle, Inc. | Watsonville Hospital Corporation | Master Service Agreement | Contract | 9/1/2021 | $27,775.00 | |
| STERIS CORP | Watsonville Hospital Corporation | Contract #: 4675-Version 44-STERILIZERS - STEAM WASHERS WARMING CABINETS AND EQUIPMENT | Contract | 1/1/2022 | $0.00 | |
| STERIS CORP | Watsonville Hospital Corporation | Agreement # 1-5850656487/1 | Contract | 7/1/2020 | $25,617.00 | |
| Sterling Infosystems, Inc. | Watsonville Hospital Corporation | Service Agreement | Contract | 12/13/2019 | $9,509.00 | |
| Steve Clark & Associates, Inc | Watsonville Hospital Corporation | Consulting Services Agreement | Contract | 5/10/2021 | $32,843.00 | |
| Steven Salyer | Watsonville Hospital Corporation | Employment Agreement | Contract | 11/24/2021 | $0.00 | |
| Streck, Inc. | Watsonville Hospital Corporation | Streck ESR Warranty Agreement (Order No. 252 4385) | Contract | 11/22/2021 | $0.00 | |
| STRYKER CRANIOMAXILLOFACIAL | Watsonville Hospital Corporation | Contract #: 7157-Version 36-Craniomaxillofacial | Contract | 2/1/2019 | $0.00 | |
| STRYKER CRANIOMAXILLOFACIAL | Watsonville Hospital Corporation | Contract #: 18607-Version 8-DURA REPAIR PRODUCTS | Contract | 6/1/2020 | $0.00 | |
| Stryker MAKO | Watsonville Hospital Corporation | Equipment Purchase Agreement | Contract | 6/30/2020 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| STRYKER ORTHOPAEDICS | Watsonville Hospital Corporation | Contract #: 3413-Version 95-IMPLANTS - TRAUMA - INTERNAL AND EXTERNAL FIXATION | Contract | 5/1/2018 | $531,998.00 | |
| Stryker Sales Corporation | Watsonville Hospital Corporation | Rebate Agreement | Contract | 12/23/2020 | $0.00 | |
| Stryker Sales Corporation | Watsonville Hospital Corporation | Product Pricing Agreement | Contract | 12/23/2020 | $0.00 | |
| Stryker Sales Corporation | Watsonville Hospital Corporation | Trauma Inventory Agreement | Contract | 12/23/2020 | $0.00 | |
| Stryker Sales Corporation | Watsonville Hospital Corporation | SurgiCount Software License Agreement SEA #0110115543 | Contract | 11/1/2020 | $0.00 | |
| Stryker Sales Corporation | Watsonville Hospital Corporation | Supplier's Equipment Agreement No. 0110115543 | Contract | 12/23/2020 | $0.00 | |
| STRYKER SALES LLC | Watsonville Hospital Corporation | Contract #: 32315-Version 25-DRILLS, SURGICAL, HIGH SPEED | Contract | 10/1/2021 | $57,711.00 | |
| STRYKER SALES LLC | Watsonville Hospital Corporation | Contract #: 3067-Version 32-PERCUTANEOUS VERTEBRAL AUGMENTATION (KYPHOPLASTY AND VERTEBROPLASTY) | Contract | 3/1/2020 | $0.00 | |
| STRYKER SPINE | Watsonville Hospital Corporation | Contract #: 39432-Version 76-IMPLANTS - SPINE | Contract | 12/1/2019 | $9,437.00 | |
| STRYKER SUSTAINABILITY SOLUTIONS | Watsonville Hospital Corporation | Contract #: 4673-Version 59-REPROCESSING SERVICES-SINGLE USE DEVICES | Contract | 5/19/2020 | $0.00 | |
| STRYKER/ENDOSCOPY | Watsonville Hospital Corporation | Contract #: 2832-Version 24-ENDOSCOPY | Contract | 3/1/2021 | $74,232.00 | |
| STRYKER/MEDICAL | Watsonville Hospital Corporation | Contract #: 500078-Version 59-DEFIBRILLATORS | Contract | 11/1/2018 | $6,782.00 | |
| STRYKER/MEDICAL | Watsonville Hospital Corporation | Contract #: 5597-Version 20-THERAPY SURFACES | Contract | 6/1/2019 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Sumer Sharma | Watsonville Hospital Corporation | Employment Agreement | Contract | 11/30/2021 | $0.00 | |
| Sun Medical Technologies, Inc. | Watsonville Hospital Corporation | Mobile Lithotripsy Services Agreement | Contract | 8/15/2016 | $26,611.58 | |
| Surgical Associates of Monterey Bay Corp | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions | Contract | 1/1/2015 | $0.00 | |
| Surgical Associates of Monterey Bay Corp | Watsonville Hospital Corporation | 1st Amendment to the Call Coverage Agreement | Contract | 8/1/2016 | $0.00 | |
| Surgical Associates of Monterey Bay Medical Corporation | Watsonville Hospital Corporation | Part-Time Lease | Real Property Lease | 8/1/2020 | $0.00 | |
| Surgical Associates of Monterey Bay Medical Corporation | Watsonville Hospital Corporation | 1st Amendment to Part-Time Lease | Real Property Lease | 12/1/2018 | $0.00 | |
| Surgical Associates of Monterey Bay Medical Corporation | Watsonville Hospital Corporation | 2nd Amendment to Part-Time Lease | Real Property Lease | 12/1/2019 | $0.00 | |
| Surgical Associates of Monterey Bay Medical Corporation | Watsonville Hospital Corporation | 3rd Amendment to Part-Time Lease | Real Property Lease | 12/1/2020 | $0.00 | |
| Surgical Associates of Monterey Bay Medical Corporation | Watsonville Hospital Corporation | 4th Amendment to Part-Time Lease | Real Property Lease | 8/1/2020 | $0.00 | |
| Sutter Bay Medical Foundation d/b/a Palo Alto Medical Foundation for Health Care, Research, and Education | Watsonville Hospital Corporation | Hospitalist Coverage and Medical Director Agreement | Contract | 1/6/2017 | $21,500.00 | |
| SYMMETRY SURGICAL INC | Watsonville Hospital Corporation | Contract #: 293-Version 60-INSTRUMENTS - SURGICAL - GENERAL AND SPECIALTY | Contract | 2/1/2019 | $3,045.00 | |
| Taurino Avelar MD | Watsonville Hospital Corporation | Call Coverage Agreement Standard Terms and Conditions | Contract | 1/6/2021 | $0.00 | |
| Team Health Medical Call Center | Watsonville Healthcare Management | Agreement for Medical Call Center Services | Contract | 9/1/2016 | $0.00 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| TERUMO CARDIOVASCULAR SYSTEMS | Watsonville Hospital Corporation | Contract #: 45463-Version 1- AUTOTRANSFUSION- CELL SAVER PRODUCTS | Contract | 5/1/2019 | $0.00 | |
| The Accountable Alliance, Inc. d/b/a USA Senior Care Network, Inc. | Watsonville Hospital Corporation | Medicare Facility Agreement | Contract | 3/8/2017 | $0.00 | |
| The Forerunner Group LLC | Watsonville Hospital Corporation | Master Services and License Agreement | Contract | 10/8/2019 | $0.00 | |
| The Forerunner Group LLC | Watsonville Hospital Corporation | Scope of Work: DSCSA Compliance Platform | Contract | 10/8/2019 | $0.00 | |
| The Forerunner Group LLC | Watsonville Hospital Corporation | Scope of Work: Analytics | Contract | 10/8/2019 | $0.00 | |
| The Forerunner Group LLC | Watsonville Hospital Corporation | Scope of Work: USP800 Monitoring | Contract | 10/8/2019 | $0.00 | |
| The Pajaronian | Watsonville Hospital Corporation | Advertising Agreement | Contract | 10/8/2021 | $0.00 | |
| The Permanente Medical Group, Inc | Watsonville Hospital Corporation | Call Coverage Agreement | Contract | 1/10/2017 | $395,387.10 | |
| The Permanente Medical Group, Inc | Watsonville Hospital Corporation | Amendment to Call Coverage Agreement | Contract | 4/2/2020 | $0.00 | |
| The Permanente Medical Group, Inc | Watsonville Hospital Corporation | Vice Chief of Staff Professional Services Agreement | Contract | 9/1/2020 | $16,500.00 | |
| The SSI Group LLC | Watsonville Hospital Corporation | Order Form #1- Software and Services | Contract | 8/1/2019 | $0.00 | |
| The SSI Group, LLC | Watsonville Hospital Holdings, Inc | Master Agreement | Contract | 9/20/2019 | $4,825.00 | |
| ThyssenKrupp Elevator Corporation | Watsonville Hospital Corporation | Agreement for Dover Master Maintenance Service | Contract | 4/1/1999 | $4,188.00 | |
| Times Publishing Group | Watsonville Hospital Corporation | Proposal for Marketing | Contract | 10/15/2021 | $0.00 | |

DOCS_DE:237400.6 92381/002

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 102 of 144

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Transwestern Insurance Administrators, Inc. | Watsonville Hospital Corporation | Health Care Contract | Contract | 12/1/1987 | $0.00 | |
| TriWest Healthcare Alliance | Watsonville Hospital Corporation | Institution Agreement | Contract | 8/1/2014 | $0.00 | |
| TriWest Healthcare Alliance | Watsonville Hospital Corporation | VA PCCC Amendment to Institution Agreement | Contract | 8/1/2014 | $0.00 | |
| Unilab Corporation d/b/a Quest Diagnostics | Watsonville Hospital Corporation | Rapid Response (STAT) Testing Agreement | Contract | 10/27/2072 | $63,124.00 | |
| United HealthCare Insurance Company | Watsonville Hospital Corporation | Hospital Services Agreement | Contract | 1/1/2004 | $0.00 | |
| United HealthCare Insurance Company | Watsonville Hospital Corporation | Amendment Number One to Hospital Services Agreement | Contract | 1/1/2006 | $0.00 | |
| United HealthCare Insurance Company | Watsonville Hospital Corporation | Facility Participation Agreement | Contract | 1/10/2008 | $16,062.67 | |
| United HealthCare Insurance Company | Watsonville Hospital Corporation | Amendment One (1) to the Facility Participation Agreement | Contract | 4/13/2012 | $0.00 | |
| UnitedHealth Military & Veterans Services, LLC | Watsonville Hospital Corporation | Facility Participation Agreement for Tricare Program | Contract | 4/1/2013 | $0.00 | |
| Valley Convalescent Hospital | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 7/18/2014 | $0.00 | |
| VelocityEHS | Watsonville Hospital Corporation | Customer Order Form | Contract | 10/8/2019 | $0.00 | |
| Verge Solutions LLC | Watsonville Hospital Corporation | Business Associate Agreement | Contract | 9/8/2020 | $0.00 | |
| Verge Solutions LLC | Watsonville Hospital Corporation | Converge Platform Master Services Agreement | Contract | 10/1/2020 | $0.00 | |
| Verge Solutions LLC | Watsonville Hospital Corporation | Contract Supplement | Contract | 10/1/2020 | $0.00 | |
| Vigilance Risk Solutions, Inc. | Halsen Healthcare LLC | Master Services Agreement | Contract | 11/4/2019 | $0.00 | |

DOCS_DE:237400.6 92381/002

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Vigilance Risk Solutions, Inc. | Halsen Healthcare LLC | Halsen Health Statement of Work 1 For Unified Conflict & Violence Prevention System | Contract | 11/4/2019 | $0.00 | |
| Vision Service Plan | Watsonville Hospital Corporation | Group Vision Care Plan Administrative Services Program | Contract | 10/1/2019 | $0.00 | |
| VRC Companies, LLC | Halsen Healthcare LLC | Audit Track Software as a Service Agreement | Contract | 10/1/2019 | $0.00 | |
| VYAIRE MEDICAL INC | Watsonville Hospital Corporation | Contract #: 7023-Version 41-PATIENT MONITORING- ANESTHESIA AND VENTILATOR EQUIPMENT | Contract | 8/5/2020 | $1,070.00 | |
| W.W. Grainger, Inc. | Watsonville Hospital Corporation | Contract #148 (Version 66) | Contract | 6/1/2020 | $15,157.00 | |
| Watsonville Community Hospital (attn: Pajaro Valley Community Health Trust) | Watsonville Hospital Corporation | Lease | Real Property Lease | 9/8/1998 | $0.00 | |
| Watsonville Healthcare Management | Watsonville Hospital Corporation | Clinic Corp Lease-125A | Real Property Lease | 2/1/2019 | $0.00 | |
| Watsonville Hospital Federal Credit Union | Watsonville Hospital Corporation | Office Space Lease | Real Property Lease | 2/1/2003 | $0.00 | |
| Watsonville Nursing Center | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 3/20/2017 | $0.00 | |
| Watsonville Post Acute Center | Watsonville Hospital Corporation | Patient Transfer Agreement | Contract | 6/1/2017 | $0.00 | |
| Watsonville Square LLC | Watsonville Hospital Corporation | Lease | Real Property Lease | 10/1/2010 | $1,343.00 | |
| Watsonville Square LLC | Watsonville Hospital Corporation | 1st Amendment of Lease | Real Property Lease | 10/1/2020 | $0.00 | |
| Western Alliance Equipment Finance, Inc. (assignee of GE HFS, LLC) | Watsonville Hospital Corporation | Equipment Schedule to Master Lease Agreement #9934234-001 | Personal Property Lease | 5/15/2018 | $10,307.25 | |

| Contract Counterparty | Contract / Lease Debtor Party | Contract/Lease Title | Type of Agreement | Date of Contract / Lease | Cure Cost | Assigned |
|---|---|---|---|---|---|---|
| Western Alliance Equipment Finance, Inc. (assignee of GE HFS, LLC) | Watsonville Hospital Corporation | Amended and Restated Equipment Schedule to Master Lease Agreement #9896589-001 | Personal Property Lease | 6/13/2017 | $164,203.18 | |
| Western Growers Assurance Trust Fund | Watsonville Hospital Corporation | Participating Provider Agreement | Contract | 9/1/2013 | $0.00 | |
| WL GORE&ASSOCIATES INC | Watsonville Hospital Corporation | Contract #: 372-Version 43-GRAFTS - VASCULAR AND CARDIOVASCULAR (EPTFE) | Contract | 5/1/2019 | $0.00 | |
| Wound Care Advantage LLC | Watsonville Hospital Corporation | Business Associate Addendum | Contract | 3/5/2012 | $8,400.00 | |
| ZIMMER US INC | Watsonville Hospital Corporation | Contract #814-Version 48: Fluid Waste Management Equipment and Supplies | Contract | 2/10/2019 | $33,953.00 | |
| ZIMMER US INC | Watsonville Hospital Corporation | Contract #6268-Version 32: Arthroscopy Products | Contract | 7/1/2021 | $0.00 | |
| ZIMMER US INC | Watsonville Hospital Corporation | Contract #5702-Version 36: Implants, Small Joint | Contract | 9/1/2021 | $0.00 | |
| ZIMMER US INC | Watsonville Hospital Corporation | Contract #77137-Version 3: Implants, Shoulder | Contract | 9/1/2021 | $0.00 | |

DOCS_DE:237400.6 92381/002

<u>Schedule 4.1 – Corporate Authority</u>

None.

DOCS_DE:237400.6 92381/002

Schedule 4.3(a) – Governmental Approvals

None.

DOCS_DE:237400.6 92381/002

<u>Schedule 4.3(b) – Third Party Consents</u>

None.

Schedule 4.5 – Licenses and Permits

| License/Permit | Issuing Entity | Permit Number | Effective Date | Expiration Date |
|---|---|---|---|---|
| *STATE HEALTH FACILITY LICENSES* | | | | |
| License to Operate and Maintain General Acute Care Hospital | State of California Department of Public Health | License #070000097 | 11/1/2021 | 10/31/2022 |
| *MEDICARE AND MEDICAID* | | | | |
| Medicare Provider Number | Centers for Medicare & Medicaid Services | PTAN: 05-0194 | | |
| Medi-Cal Provider Numbers | California Department of Healthcare Services | # ZZR00194G (inpatient); # HSP40194G (outpatient) | | |
| National Provider Identifier | Centers for Medicare & Medicaid Services | 1710958228 | 2/1/2006 | |
| Approved Medicare Enrollment Record | Centers for Medicare & Medicaid Services | ID #O20061027000009 | 3/12/2010 | |
| *FACILITY ACCREDITATIONS* | | | | |
| Hospital Accreditation Program | The Joint Commission | ID #10184 | 1/26/2019 | 1/25/2022 |
| *LABORATORY* | | | | |
| Certificate of Accreditation | Centers For Medicare and Medicaid Services | CLIA ID Number 05D0607110 | 1/3/2021 | 1/2/2023 |
| Clinical and Public Health Laboratory License | California Department of Public Health | State ID #CDF-00001596 | 2/20/2022 | 2/19/2023 |
| *PHARMACY* | | | | |
| Controlled Substance Registration Certificate (Hospital/Clinic) | United States Department of Justice- Drug Enforcement Administration | DEA Registration No. FW8810613 | 10/4/2019 | 5/31/2022 |
| Controlled Substance Registration Certificate (Retail Pharmacy) | United States Department of Justice- Drug Enforcement Administration | DEA Registration No. FW8810699 | 10/4/2019 | 5/31/2022 |
| Hospital Pharmacy Permit (Renewal Certificate) | California State Board of Pharmacy | License # HSP 57403 | | 10/1/2022 |
| Retail Pharmacy Permit (Renewal Certificate) | California State Board of Pharmacy | License No. PHY 57402 | | 10/1/2022 |

| License/Permit | Issuing Entity | Permit Number | Effective Date | Expiration Date |
|---|---|---|---|---|
| Sterile Compounding License (Renewal Certificate) | California State Board of Pharmacy | License # LSC 101456 | | 10/1/2022 |
| *RADIOLOGY* | | | | |
| Mammographic Imaging Services Certificate | American College of Radiology | | 1/27/2020 | 6/15/2023 |
| Certified Mammography Facility | U.S. Department of Health and Human Services, Food and Drug Administration | Facility ID No. 145862 | | 6/15/2023 |
| Magnetic Resonance Imaging Services Certificate | American College of Radiology | MRAP #01873-02 | 8/13/2019 | 9/6/2022 |
| Nuclear Medicine Services Certification | American College of Radiology | NMAP #52206-01 | 2/14/2020 | 7/29/2023 |
| Radioactive Material License | California Department of Public Health | License #3625-44 | 2/11/2020 | 2/19/2024 |
| Mammography X-Ray Equipment and Facility Accreditation Certificate | California Department of Public Health | Certificate No. 21541 | 6/15/2020 | 6/15/2023z |
| *ENVIRONMENTAL* | | | | |
| Permit to Operate Boiler #HWB-1 (<30) | Monterey Bay Air Resources District | PTO GNR-0018255 | 2/5/2020 | |
| Permit to Operate Boiler #HWB-2 (<30) | Monterey Bay Air Resources District | PTO GNR-0018256 | 2/5/2020 | |
| Permit to Operate #SB-3 (<60) | Monterey Bay Air Resources District | PTO GNR-0018257 | 2/5/2020 | |
| Permit to Operate #SB-4 (<60) | Monterey Bay Air Resources District | PTO GNR-0018258 | 2/5/2020 | |
| Permit to Operate #SB-5 (<60) | Monterey Bay Air Resources District | PTO GNR-0018259 | 2/5/2020 | |
| Permit to Operate Emergency Internal Combustion Engine-Generator Set #1 | Monterey Bay Air Resources District | PTO GNR-0018260 | 2/5/2020 | |
| Permit to Operate Emergency Internal Combustion Engine -Generator Set #2 | Monterey Bay Air Resources District | PTO GNR-0018261 | 2/5/2020 | |

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 110 of 144

| License/Permit | Issuing Entity | Permit Number | Effective Date | Expiration Date |
|---|---|---|---|---|
| Permit to Operate Laboratory Equipment with Ventilation Systems | Monterey Bay Air Resources District | PTO GNR-0018262 | 2/5/2020 | |
| Permit to Operate Boiler #SB-2 (<30) | Monterey Bay Air Resources District | PTO GNR-0018263 | 2/5/2020 | |
| Permit to Operate #SB-1 | Monterey Bay Air Resources District | PTO GNR-0018264 | 2/5/2020 | |
| Permit to Operate Emergency Internal Combustion Engine -Generator Set (600 KW) | Monterey Bay Air Resources District | PTO GNR-0018265 | 2/5/2020 | |
| Underground Storage Tank Program and Hazardous Waste Generator Permits to Operate | Santa Cruz County Environmental Health Service | Account ID #AR0004119 Permit Nos. PR0005674-2113; PR0005673-2122; PR0012807-2202; TA0005678-2300; TA0005679 | 4/1/2021 | 4/1/2022 |
| LQG Acute Care Hospitals 100-199 Beds | Santa Cruz Health Services Agency- Environmental Health Division | Owner ID: OW0001653 Facility ID: FA0001869 Account ID: AR0001915 | 12/31/2021 | 12/31/2022 |
| MISCELLANEOUS | | | | |
| Renewal Certificate for Continuing Education Provider | Board of Registered Nursing | Provider No. CEP499 | | 8/31/2022 |
| Business License | City of Watsonville | No. 992 | 7/1/2021 | 6/30/2022 |
| Radio Station Authorization | Federal Communications Commission, Wireless Communications Bureau | File Number 0009646443; FCC Registration No. (FRN): 0020992509 | 8/4/2021 | 8/4/2031 |
| Food Service 101 Seats or More Permit | Santa Cruz County Health Services Agency- Environmental Health Division | Account ID# AR0003784 | 1/1/2021 | 1/1/2022 |
| Newborn Hearing and Screening Program Recertification | State of California- Health and Human Services Agency- Department of Health Care Services | | 8/10/2017 | 8/10/2022 |

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 111 of 144

| License/Permit | Issuing Entity | Permit Number | Effective Date | Expiration Date |
|---|---|---|---|---|
| Seller's Permit | California State Board of Equalization | 7/1/1950 SR GHD 26058470 | | |
| OSHPD Facility ID | Department of Health Care Access and Information | ID #106444013 | | |

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 112 of 144

<u>Schedule 4.6 – Assets Not Presently Owned but to be Conveyed at Closing</u>

- Pursuant to that certain *Security Agreement*, dated November 10, 2021, by and among Watsonville Hospital Corporation, MPT of Watsonville, LLC, and MPT of Watsonville Lender, LLC and related documents, Seller granted a first-priority security interest in all of Seller's assets, whether then owned or thereafter acquired, and the proceeds thereof.

- Certain of the Personal Property Leases listed on <u>Schedule 1.3</u> hereto and listed on <u>Schedule 4.18</u> may be capital leases.

<u>Schedule 4.7 – Assigned Personal Property Leases</u>

Please see <u>Schedule 1.3</u>.  The Personal Property Leases are those listed on <u>Schedule 1.3</u> as "Personal Property Leases" in the column entitled "Type of Agreement."  Personal Property Leases listed on <u>Schedule 1.3</u> are Assigned Personal Property Leases to the extent indicated by the word "Yes" in the column entitled "Assigned."

<u>Schedule 4.8 – Absence of Certain Events</u>

None.

<u>Schedule 4.9 – Legal Proceedings</u>

<u>Filed Lawsuits</u>

- *ASD Specialty Healthcare, LLC v. Watsonville Hospital Holdings, Inc. et al.*, Case No. 21STCV02536 (Cal. Dist. Ct. Oct. 14, 2021)

- *Frances Brooke Clifford v. Tyler Hensel, M.D., et al.*, Case No. 20CV01206 (Cal. Dist. Ct. May 28, 2020)

- *James Victory et al. v. Watsonville Hospital Corp., et al.*, Case No. 21CV02121 (Cal. Dist. Ct. Aug. 31, 2021)

- *Peritus Advisors v. Halsen Healthcare LLC, et al.*, Case No. 30-2021-01211280-CU-BC-CJC (Cal. Dist. Ct. Aug 9, 2021)

- *Vaco LLC v. Watsonville Hospital Corp.*, Case No. 50509W (Tenn. Ch. Ct. Jun. 11, 2021) (entered into settlement agreement)

- *VRC, LLC v. Halsen Healthcare LLC, et al.*, Case No. 21CV01783 (Cal. Dist. Ct. Jul. 22, 2021)

- *Watsonville Hospital Corp. v. Siddarth V. Malhotra, M.D., et al.*, Case No. 19CV00101 (Cal Dist. Ct. Jan. 10, 2019)

<u>Administrative Matters</u>

- California Department of Fair Employment & Housing O/B/O Marcus Booker, Case No. 202108-1443351, EEOC No. 37A-2021-02746-C (discrimination charge filed by former employee; under review by state agency)

- California Department of Industrial Relations, Division of Occupational Safety and Health, Inspection No. 1492139, Reporting Identification No. 0950612 (citations issued May 26, 2021; appeal pending)

- California Department of Industrial Relations, Division of Occupational Safety and Health, Inspection, Complaint No. 1855031 (letter informing of complaint received on January 18, 2022)

<u>Union Grievances</u>

- California Nurses Association (grievance filed June 24, 2021)

- California Nurses Association (grievance filed Nov. 16, 2021)

- California Nurses Association (grievance filed Dec. 20, 2021)

- California Nurses Association (grievance filed Dec. 31 2021)

- SEIU United Healthcare Workers-West (grievance filed Dec. 2, 2021)

- SEIU United Healthcare Workers-West (grievance filed Dec. 10, 2021)

Demands
- HEROIC Security LLC

- Jennifer Lynn Moncovich-Galvan O/B/O Jose Pedro Galvan Jr.

- Meritain Health, Inc.

- RevUp Group, LLC

- Rezult Group, Inc.

- Sanderling Renal Services-USA LLC (entered into out of court settlement)

- The Permanente Medical Group, Inc.

- TIAA Commercial Finance, Inc. (entered into out of court settlement)

- Total Renal Care, Inc. d/b/a DaVita

- Trius Diagnostic Imaging Inc. (entered into out of court settlement)

- Vigilance Risk Solutions, Inc. d/b/a CommSafe (entered into out of court settlement)

- Western Alliance Equipment Finance, Inc.

<u>Schedule 4.10 – Payment Programs</u>

To Sellers' knowledge, Seller currently participates or has participated, within the past three (3) years, in Payment Programs with the following payors:

- Blue Cross of California (d/b/a Anthem Blue Cross)
- California Physicians' Service, Inc. (d/b/a Blue Shield of California)
- CIGNA Healthcare of California, Inc.
- Easy Choice Health Plan, Inc.
- First Health Group Corp.
- Health Value Management, Inc. (d/b/a ChoiceCare Network)
- Kaiser Foundation Hospitals
- Medi-Cal
- Medicare
- MultiPlan, Inc.
- NX Health Network
- Salinas Valley Memorial Hospital
- Santa Cruz-Monterey-Merced Managed Medical Care Commission (d/b/a Central Coast Alliance for Health)
- The Accountable Alliance, Inc. d/b/a USA Senior Care Network, Inc.
- TriWest Healthcare Alliance Corporation
- Western Growers Assurance Trust Fund

Schedule 4.11 – Compliance With Laws

**(a)**
None.

**(b)**

- California Department of Fair Employment & Housing O/B/O Marcus Booker, Case No. 202108-1443351, EEOC No. 37A-2021-02746-C (discrimination charge filed by former employee; under review by state agency)

- California Department of Industrial Relations, Division of Occupational Safety and Health, Inspection No. 1492139, Reporting Identification No. 0950612 (citations issued May 26, 2021; appeal pending)

- California Department of Industrial Relations, Division of Occupational Safety and Health, Inspection, Complaint No. 1855031 (letter informing of complaint received on January 18, 2022)

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 119 of 144

<u>Schedule 4.12(b) – Collective Bargaining Agreements</u>

- *Agreement Between Watsonville Community Hospital and California Nurses Association*, executed on or about March 12, 2021, for the period from May 18, 2020 to May 17, 2023, and all appendices and side letters thereto (collectively, the "<u>CNA CBA</u>")

- *Collective Bargaining Agreement with Watsonville Community Hospital Service and Maintenance Unit* with United Healthcare Workers-West, Service Employees International Union, executed on or about December 1, 2021, for the period from August 26, 2021 to August 25, 2024 and all appendices and side letters thereto (collectively, the "<u>SEIU-UHW S&M CBA</u>")

- *Collective Bargaining Agreement with Watsonville Community Hospital Professional Unit* with United Healthcare Workers-West, Service Employees International Union, executed on or about March 30, 2021, for the period from February 28, 2021 to February 28, 2024 and all appendices and side letters thereto (collectively, the "<u>SEIU-UHW Professionals CBA</u>")

- *Agreement Between Watsonville Community Hospital and General Teamsters Local 912 [3 Year Contract]*, executed on or about March 2, 2021, and all appendices and side letters thereto (collectively, the "<u>Teamsters CBA</u>")

- *Agreement Between Watsonville Community Hospital and California Technical Employees' Coalition*, executed on or about January 27, 2021, for the period from May 20, 2020 through May 31, 2024 and all appendices and side letters thereto (collectively, the "<u>CalTEC CBA</u>")

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 120 of 144

<u>Schedule 4.13 – Benefit Plans</u>[1]

As of the Petition Date, Seller offered Eligible Employees the following Employee Benefit Plans:

- Seller offers its Eligible Employees and their Dependents the Insurance Benefits Programs pursuant to the following: (i) that certain *Administrative Services Agreement* between Meritain Health, Inc. and Watsonville Hospital Corporation, and other associated documents, effective October 1, 2020; (ii) that certain *Group Agreement for Watsonville Community Hospital* between Kaiser Foundation Health Plan, Inc., Northern California Region and Watsonville Hospital Corporation, and other associated documents, effective October 1, 2021; (iii) that certain *Administrative Services Agreement* between RxBenefits, Inc. and Watsonville Community Hospital, and other associated documents, effective October 1, 2020; (iv) that certain *Dental Administrative Services Contract*, as amended, between Watsonville Community Hospital Corporation and Delta Dental of California, and other associated documents, effective October 1, 2019; and (v) that certain *Group Vision Care Plan Administrative Services Program* between Watsonville Hospital Corporation and Vision Service Plan, and other associated documents, effective October 1, 2019. With respect to Represented Employees, Seller provides the Insurance Benefits Programs in accordance with:

  - under the CNA CBA, as set forth in the CNA CBA, including Article 20 thereof;

  - under the SEIU-UHW S&M CBA, as set forth in the SEIU-UHW S&M CBA, including Article 20 thereof;

  - under the SEIU-UHW Professionals CBA, as set forth in the SEIU-UHW Professionals CBA, including Article 18 thereof;

  - under the Teamsters CBA, as set forth in the Teamsters CBA, including Article 16 thereof; and

  - under the CalTEC CBA, as set forth in the CalTEC CBA, including Article 15 thereof.

- Seller offers its Eligible Employees the Guardian Insurance Benefits as follows: (i) Life Insurance pursuant to that certain *Group Insurance Policy- Term Life Coverage* between Guardian and Watsonville Hospital Corporation, and other associated documents, bearing Group Policy Number G-00563853; (ii) AD&D Insurance pursuant to that certain *Group Insurance Policy-Accidental Death and Dismemberment Coverage* between Guardian and Watsonville Hospital Corporation, and other associated documents, bearing Group Policy Number G-00563853; (iii) long-term disability coverage ("<u>LTD Insurance</u>") pursuant to that

---

[1] Capitalized terms not otherwise defined in this Schedule shall have the meanings ascribed to them in the *Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, and Other Compensation, and (B) Pay and Honor Benefits and Other Workforce Obligations; (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing; and (III) Granting Related Relief* [Docket No. 11] (the "<u>Compensation and Benefits Motion</u>") and in Schedule 4.12(b).

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 121 of 144

certain *Group Insurance Policy- Long Term Disability Income Coverage* between Guardian and Watsonville Hospital Corporation, and other associated documents, bearing Group Policy Number G-00563853; (iv) critical illness coverage ("<u>Critical Illness Insurance</u>") pursuant to that certain *Group Insurance Policy- Critical Illness Insurance Policy* between Guardian and Watsonville Hospital Corporation, and other associated documents, bearing Group Policy Number G-00563853; and (v) accident insurance pursuant to that certain *Group Insurance Policy- Accident Insurance Policy* between Guardian and Watsonville Hospital Corporation, and other associated documents, bearing Group Policy Number G-00563853. With respect to Represented Employees, Seller provides the Guardian Insurance Benefits in accordance with:

- o under the CNA CBA, as set forth in the CNA CBA, including Article 21 thereof;

- o under the SEIU-UHW S&M CBA, as set forth in the SEIU-UHW S&M CBA, including Article 21 thereof;

- o under the SEIU-UHW Professionals CBA, as set forth in the SEIU-UHW Professionals CBA, including Article 19 thereof;

- o under the Teamsters CBA, as set forth in the Teamsters CBA, including Article 17 thereof; and

- o under the CalTEC CBA, as set forth in the CalTEC CBA, including Article 16 thereof.

- Seller's Eligible Employees are entitled to paid vacation time, sick leave, holiday time, and other paid time off as follows:

  - o with respect to Represented Employees under the CNA CBA, as set forth in the CNA CBA, including Articles 17, 18, 19, and 24 thereof and Side Letters re: Vacation Cash Out thereto;

  - o with respect to Represented Employees under the SEIU-UHW S&M CBA, as set forth in the SEIU-UHW S&M CBA, including Articles 17, 18, 19, and 24 thereof;

  - o with respect to Represented Employees under the SEIU-UHW Professionals CBA, as set forth in the SEIU-UHW Professionals CBA, including Articles 15, 16, 17, 21, and 32 thereof and Appendix C thereto;

  - o with respect to Represented Employees under the Teamsters CBA, as set forth in the Teamsters CBA, including Articles 13, 14, 15, and 20 thereof;

  - o with respect to Represented Employees under the CalTEC CBA, as set forth in the CalTEC CBA, including Articles 14 and 20 thereof and Appendices B, C, and D thereto; and

- o with respect to all Employees that are not Represented Employees, pursuant to the *Paid Time Off (PTO) for Non-Union Employees* as found in the Cowen Data Room at 3.3.1.1.1.

- As of the Petition Date, Seller offered the following Retirement Plans to Eligible Employees:

  - o Pursuant to that certain *Watsonville Community Hospital 401(k) and Money Purchase Plan Amendment No. 5*, effective July 20, 2020, and other associated documents, the Seller offers certain Eligible Employees the opportunity to participate in the Watsonville Community Hospital 401(k) and Money Purchase Plan (the "401(k) Plan"). Seller offers the 401(k) Plan to Eligible Employees as follows:

    - ▪ under the CNA CBA, as set forth in the CNA CBA, including Article 22 thereof;

    - ▪ under the Teamsters CBA, as set forth in the Teamsters CBA, including Article 18 thereof;

    - ▪ under the CalTEC CBA, as set forth in the CalTEC CBA, including Article 17 thereof and Appendix E thereto;

    - ▪ under the SEIU-UHW Professionals CBA, as set forth in the SEIU-UHW Professionals CBA, including Article 20 thereof; and

    - ▪ with respect to all Employees that are not Represented Employees, generally those employees who are regular full time or regular part time employees who work 20 hours per week or more.

  - o Pursuant to that certain *Watsonville Community Hospital Cash Balance Pension Plan*, dated December 28, 2015, and other associated documents, the Seller offers certain Eligible Employees the opportunity to participate in the Watsonville Community Hospital Cash Balance Pension Plan (the "Cash Balance Plan"). Seller offers the Cash Balance Plan to Eligible Employees under the SEIU-UHW S&M CBA, as set forth in the SEIU-UHW S&M CBA, including Article 22 thereof.

- Pursuant to that certain *Watsonville Community Hospital Retiree Flex Plan*, dated January 1, 2016, and other associated documents (collectively, the "Flex Plan Documents"),[2] the Seller offers certain retired Represented Employees the opportunity to participate in an employer-provided medical reimbursement plan (the "Flex Plan"). Seller provides the Flex Plan (i) to CNA Represented Employees pursuant to Article 20 of the CNA CBA; and (ii) to SEIU-

---

[2] Including, but not limited to, the *First Amendment to the Watsonville Community Hospital Cash Balance Pension Plan*, dated July 14, 2017 and the *Second Amendment to the Watsonville Community Hospital Cash Balance Pension Plan*, dated March 6, 2018.

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 123 of 144

UHW Represented clinical laboratory scientist Employees pursuant to Article 18(B) of the SEIU-UHW Professionals CBA.

- To the extent not otherwise specifically described herein, Seller's Employees are entitled to (i) all Benefits Programs, as such term is described in the Compensation and Benefits Motion; and (ii) to the extent an Employee is a Represented Employee, all Employee Benefit Plans described in the applicable CBA.

<u>Schedule 4.15 - Taxes</u>[3]

- Sellers have filed the Form 5500 for the 401(k) Plan for the plan year ended December 31, 2020, but have not filed the requisite independent audit report.

- Sellers have filed the Form 5500 for the Cash Balance Plan for the plan year ended December 31, 2020, but have not filed the requisite independent audit report.

- The Retirement Plan Administrator of the Watsonville Community Hospital Money Purchase Plan, which was merged into the 401(k) Plan effective January 29, 2019, received a Notice of Intent to Assess a Penalty dated April 21, 2021 from the Employee Benefits Security Administration.  The penalty asserted was $30,000.  A response was filed on May 12, 2021, which response included Form 5500 for the plan year ended January 31, 2021, together with an independent auditor's report for such plan year.  The response requested an abatement of the penalty asserted.

- Sellers and/or their predecessors-in-interest have not filed Form 5500 for the Retiree Flex Plan since 2014.

---

[3] Capitalized terms in this Schedule not otherwise defined herein shall have the meanings ascribed to them in <u>Schedule 4.13 – Benefit Plans</u>.

Case: 21-51477     Doc# 347-1     Filed: 02/23/22     Entered: 02/23/22 15:01:03     Page 125 of 144

<u>Schedule 4.16 – Assigned Contracts</u>

**(a)**

Please see <u>Schedule 1.3</u>.  The Contracts are those listed on <u>Schedule 1.3</u> as "Contracts" in the column entitled "Type of Agreement."  Contracts listed on <u>Schedule 1.3</u> are Assigned Contracts to the extent indicated by the word "Yes" in the column entitled "Assigned."

**(b)**

<u>Prepayments</u>

| Counterparty | Amount and Frequency |
|---|---|
| LifeLinc | Prepay bimonthly, approx.. $136,000 per payment |
| EnBio | Prepay monthly, approx. $22,000 per payment |

<u>Deposits</u>

| Counterparty | Amount (as of January 10, 2022) |
|---|---|
| PipeLine RX | $12,000 |
| Owens & Minor | $100,000 |
| P&A PICC | $7,000 |

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 126
of 144

<u>Schedule 4.17(a) – Leased Real Property</u>

The Leases pursuant to which Seller leases the Leased Real Property are as follows:

| Lessor | Lessee | Lease Title | Date of Lease | Address of Leased Location |
|---|---|---|---|---|
| MPT of Watsonville, LLC | Watsonville Hospital Corp. | Lease Agreement | 9/30/2019 | 45, 65, 75, and 85 Nielson Street |
| Watsonville Square Tenants in Common (successor to Watsonville Square LLC) | Watsonville Hospital Corp. | Lease | 9/22/2010 | 1820 Main Street |
| | | First Amendment of Lease | 7/15/2020 | |

*(i)*      *<u>Subleases or Assignments</u>*

Seller (or Seller's direct or indirect Sublessee) subleases certain of the Leased Real Property as set forth in the following charts:

***Leased Real Property***: 45 Nielson Street

| Sublessor | Sublessee | Sublease Title | Date of Sublease | Address of Leased Location |
|---|---|---|---|---|
| Watsonville Hospital Corp. | Salud Para La Gente, Inc. | Medical Office Space Lease | 4/1/2016 | 45 Nielson Street |
| | | First Amendment to Medical Office Space Lease | 7/15/2016 | |
| | | Second Amendment to Medical Office Space Lease | 9/20/2019 | |

***Leased Real Property***: 45/65 Nielson Street

| Sublessor | Sublessee | Sublease Title | Date of Sublease | Address of Leased Location |
|---|---|---|---|---|
| Watsonville Hospital Corp. | Sanderling Renal Services-USA LLC | Medical Office Space Lease | 4/15/2018 | 45/65 Nielson Street |

*Leased Real Property*: 65 Nielson Street

| Sublessor | Sublessee | Sublease Title | Date of Agreement | Address of Leased Location |
|---|---|---|---|---|
| Watsonville Hospital Corp. | Neven Development LLC | Master Lease Agreement | 11/21/2003 | 65 Nielson Street |
| Neven Development LLC | Coastal Health Partners, PC | Sublease Agreement | 7/1/2015 | 65 Nielson Street, Suite 135 |
| Coastal Health Partners, PC | Golden State Heart and Vascular Associates, Inc. | Sublease Agreement | 9/10/2020 | |
| Neven Development LLC | Watsonville Hospital Corp. | Sublease Agreement | 3/25/2004 | 65 Nielson Street, Suite 125 |
| | | Amendment #1 | 8/18/2004 | |
| | | Amendment Two (2) to the Sublease Agreement | 11/17/2014 | |
| | | Amendment Three (3) to the Sublease Agreement | 4/25/2018 | |
| Neven Development LLC | Coastal Health Partners, PC (assignee of Barstow Healthcare Management, Inc.) | Sublease Agreement | 11/1/2013 | 65 Nielson Street, Suite 102 |
| | | Amendment One (1) to the Sublease Agreement | 11/28/2018 | |
| Watsonville Hospital Corp. | Watsonville Healthcare Management, LLC | Clinic Corp Lease-Full Time | 2/1/2019 | 65 Nielson Street, Suite 125A |
| Watsonville Hospital Corp. | County of Santa Cruz | Lease of Storage Space | 11/1/2017 | 65 Nielson Street (approx. 560 square feet) |
| Watsonville Hospital Corp. | Watsonville Hospital Federal Credit Union | Office Space Lease | 10/17/2002 | 65 Nielson Street |
| | | QHC Renewal Letter Summary | 1/26/2018 | |

DOCS_DE:237400.6 92381/002

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 128 of 144

**Leased Real Property**: 75 Nielson Street

| Sublessor | Sublessee | Sublease Title | Date of Sublease | Address of Leased Location |
|---|---|---|---|---|
| Watsonville Hospital Corp. | Surgical Associates of Monterey Bay Medical Corp. | Part-Time Lease | 1/1/2018 | 75 Nielson Street, Suite B 1432 |
| | | First Amendment to Part-Time Lease | 12/1/2018 | |
| | | Second Amendment to Part-Time Lease | 12/1/2019 | |
| | | Third Amendment to Part-Time Lease | 12/1/2020 | |
| | | Fourth Amendment to Part-Time Lease | 8/1/2020 | |

**Leased Real Property**: 85 Nielson Street

| Sublessor | Sublessee | Sublease Title | Date of Sublease | Address of Leased Location |
|---|---|---|---|---|
| Watsonville Hospital Corp. | Salud Para La Gente, Inc. | Medical Office Space Lease | 2/1/2018 | 85 Nielson Street |
| | | First Amendment to Medical Office Space Lease | 10/31/2018 | |
| | | Second Amendment to Medical Office Space Lease | 3/4/2019 | |
| Watsonville Hospital Corp. | Pajaro Valley Community Health Trust (as assignee of Watsonville Community Hospital) | Lease | 9/8/1998 | 85 Nielson Street (approx. 1,000 feet on the second floor of the Cafeteria Building) |

**Leased Real Property**: 1820 Main Street

| Sublessor | Sublessee | Sublease Title | Date of Sublease | Address of Leased Location |
|---|---|---|---|---|
| Watsonville Hospital Corp. | Coastal Health Partners PC | Medical Office Space Lease | 7/1/2017 | 1820 Main Street |
| | | Second Amendment to Medical Office Space Lease | 10/1/2020 | |

Case: 21-51477   Doc# 347-1   Filed: 02/23/22   Entered: 02/23/22 15:01:03   Page 129 of 144

*(ii)*     <u>*Encumbrances*</u>

Pursuant to that certain *Security Agreement*, dated September 30, 2019, by and among Watsonville Hospital Corporation, MPT of Watsonville, LLC, and MPT of Watsonville Lender, LLC and related documents, Seller granted, among other things, a first-priority security interest in all of Seller's interest as lessee under the Lease (as defined therein).

Pursuant to that certain *Security Agreement*, dated November 10, 2021, by and among Watsonville Hospital Corporation, MPT of Watsonville, LLC, and MPT of Watsonville Lender, LLC and related documents, Seller granted a first-priority security interest in all of Seller's assets, whether then owned or thereafter acquired, and the proceeds thereof.

On or about January 10, 2022, Colin Construction Company, Inc. recorded a mechanic's lien bearing the number 2022-0000791 with Santa Cruz County with respect to 45 Nielson Street and 75 Nielson Street.

Schedule 4.17(b) – Notices Affecting Leased Real Property

None.

<u>Schedule 4.18 – Financing Statements</u>

| Secured Party | Debtor | Date of Initial Filing | Jurisdiction | Initial Filing No. |
|---|---|---|---|---|
| MPT of Watsonville, LLC; MPT of Watsonville Lender, LLC | Watsonville Hospital Holdings, Inc. | 10/2/2019 | California | 92327290002 |
| MPT of Watsonville, LLC; MPT of Watsonville Lender, LLC | Halsen Healthcare, LLC | 10/2/2019 | California | 82330500002 |
| MPT of Watsonville, LLC; MPT of Watsonville Lender, LLC | Halsen Healthcare, LLC | 10/2/2019 | California | 82331530002 |
| GE HFS, LLC | Watsonville Hospital Corporation | 4/5/2016 | Delaware | 2016 2010559[4] |
| NFS Leasing Inc.[5] | Watsonville Hospital Corporation | 4/4/2017 | Delaware | 2017 2190533 |
| SCG Capital Corp.[6] | Watsonville Hospital Corporation | 6/13/2017 | Delaware | 2017 3876916 |
| Konica Minolta Premier Finance | Watsonville Hospital Corporation | 12/8/2017 | California | 177620717381 |
| Western Alliance Equipment Finance, Inc.[7] | Watsonville Hospital Corporation | 5/16/2018 | Delaware | 2018 3321128 |
| Urban Partnership Bank[8] | Watsonville Hospital Corporation | 3/21/2019 | Delaware | 2019 1973705 |
| MPT of Watsonville, LLC; MPT of Watsonville Lender, LLC | Watsonville Hospital Corporation | 10/2/2019 | Delaware | 2019 6877513[9] |
| Dell Financial Services L.L.C. | Watsonville Hospital Corporation | 6/25/2020 | Delaware | 2020 4393833 |
| Dell Financial Services L.L.C. | Watsonville Hospital Corporation | 8/19/2020 | Delaware | 2020 5721370 |

[4] Continuation Statement filed 10/26/2020 (Amendment No. 2020 7423223)
[5] Assignee of GE HFS, LLC per Amendment No. 2020 3333517 filed 5/11/2020
[6] Assignee of GE HFS, LLC per Amendment No. 2020 3071265 filed 4/30/2020
[7] Assignee of GE HFS, LLC per Amendment No. 2020 3330869 filed 5/11/2020
[8] Assignee of Leasing Associates of Barrington, Inc. per Amendment No. 2019 1974026 filed 3/21/2019
[9] Amendment filed 1/19/2021 (Amendment No. 2021 0460429)

| Secured Party | Debtor | Date of Initial Filing | Jurisdiction | Initial Filing No. |
|---|---|---|---|---|
| Highland Capital Corporation | Watsonville Hospital Corporation | 9/25/2020 | California | U200021675622 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 11/4/2020 | Delaware | 2020 7706528 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 11/4/2020 | Delaware | 2020 7706627 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 11/4/2020 | Delaware | 2020 7706726 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 11/4/2020 | Delaware | 2020 7706924 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 11/4/2020 | Delaware | 2020 7707005 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 11/4/2020 | Delaware | 2020 7707195 |
| Flex Financial, a division of Stryker Sales Corp. | Watsonville Hospital Corporation | 12/30/2020 | Delaware | 2020 9291396 |
| Flex Financial, a division of Stryker Sales LLC | Watsonville Hospital Corporation | 2/16/2021 | Delaware | 2021 1266858 |
| CNH Finance Fund I, L.P. | Watsonville Hospital Corporation | 6/22/2021 | Delaware | 2021 4852191 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 10/8/2021 | Delaware | 2021 8057987 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 10/8/2021 | Delaware | 2021 8058282 |
| Philips Medical Capital, LLC | Watsonville Hospital Corporation | 10/8/2021 | Delaware | 2021 8058290 |
| Cardinal Health 110 LLC | Watsonville Hospital Corporation | 11/30/2021 | Delaware | 2021 9684706 |

DOCS_DE:237400.6 92381/002

## Schedule 4.19 – Insurance

| NO. | COVERAGE DESCRIPTION | INSURER | POLICY NO. | CURRENT POLICY PERIOD | COVERAGE LIMITS[10] | CLAIMS MADE OR OCCURRENCE BASIS | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|---|
| 1 | General and Professional Liability | BETA Healthcare Group | HCL-21-1212 | 10/01/2021 – 10/01/2022 | $15,000,000 per claim, $25,000,000 in the aggregate | Professional Liability – Claims Made<br><br>General Liability – Occurrence | $565,000.00 |
| 2 | Automobile | Travelers | BA-0R320535-21-43-G | 10/01/2021 – 10/01/2022 | $1,000,000 | Occurrence | $2,045.00 |
| 3 | Commercial Property | Travelers | P-630-9M557624-TIL-21 | 10/01/2021 – 10/01/2022 | $96,074,085 | Occurrence | $70,568.00 |
| 4 | Workers' Compensation Insurance | Travelers | UB0N29692121 | 10/01/2021 – 10/01/2022 | Statutory workers' compensation coverage, $1,000,000 employer liability | Occurrence | $1,635,389 |
| 5 | Management Liability | Crum & Forster Specialty Insurance Company | PCF-100635 | 10/01/2021 – 03/31/2022 | $3,000,000 | Claims Made | $166,186.04 |
| 6 | Cyber Liability | Crum & Forster Specialty Insurance Company | CYB-103121 | 10/01/2021 – 10/01/2022 | $2,500,000 Quota Share | Claims Made | $113,575.00 |
| 7 | Cyber Liability | Ambridge - Lloyds of London | ACR1011721 | 10/01/2021 – 10/01/2022 | $2,500,000 Quota Share | Claims Made | $114,091.25 |
| 8 | Cyber Excess Liability | Corvus – Accredited Specialty Insurance Company | 2C1ACA17ES010407600 | 10/01/2021 – 10/01/2022 | $5,000,000 excess of $5,000,000 | Claims Made | $204,636.34 |
| 9 | Crime | Beazley Insurance Company | V28DF8210301 | 10/01/2021 – 10/01/2022 | $1,000,000 | Occurrence | $9,166.00 |
| 10 | Non-Owned Helicopter Liability Policy | Starr Indemnity & Liability Company | 100023895803 | 10/01/2021 – 10/01/2022 | $5,000,000 | Occurrence | $7,150.00 |

---

[10] For the avoidance of doubt, the coverage limits stated herein are the maximum amounts covered under a particular policy, and the amount of actual coverage for a particular covered event (if any) may be lower than the maximum coverage limits stated herein, all as more fully set forth in the policies and any amendments, endorsements, or other modifications thereto.

| NO. | COVERAGE DESCRIPTION | INSURER | POLICY NO. | CURRENT POLICY PERIOD | COVERAGE LIMITS[10] | CLAIMS MADE OR OCCURRENCE BASIS | ANNUAL PREMIUM |
|---|---|---|---|---|---|---|---|
| 11 | Above-Ground Pollution | Tokio Marine Specialty Insurance Company | PPK2043682 | 10/01/2019 - 10/01/2022 | $2,000,000 | Claims Made | $53,304.00 |
| 12 | Underground – Pollution Liability | Tokio Marine Specialty Insurance Company | PPK2189212 | 10/01/2021 – 10/01/2022 | $2,000,000 | Occurrence | $1,122.33 |
| 13 | Excess Automobile Liability | BETA Healthcare Group | XAL-21-1212 | 10/01/2021 – 10/01/2022 | $10,000,000 | Occurrence | $1,000.00 |

DOCS_DE:237400.6 92381/002

## Schedule 4.20 – Intellectual Property

**Domain Names**
- www.watsonvillehospital.com

<u>Schedule 6.7(a) – Employment Matters</u>

[TBD]

<u>Schedule 6.7(b) – Assumed Non-Cash Employee Liabilities</u>[11]

The following (collectively, the "<u>Assumed Non-Cash Employee Liabilities</u>") are Assumed Liabilities, notwithstanding anything to the contrary in the Purchase Agreement:

- all accrued and unpaid vacation, holidays, sick pay and other paid time-off (whether accrued prior to or during the Bankruptcy Cases) (the "<u>PTO Liabilities</u>") to which the Seller Employees who are employed by the Seller immediately prior to the Closing Date are entitled with respect to all periods of service up to and including the Closing Date under the policies and practices of Seller or its Affiliates; *provided, however*, to the extent that any Seller Employee employed in California requires payment of any of the foregoing to such Seller Employee in cash at the Closing in accordance with the Seller Employee's rights under applicable California law, Buyer shall pay such amounts to the applicable Seller Employees in cash at the Closing;

- all unfunded liabilities under the Watsonville Community Hospital Cash Balance Pension Plan (the "<u>Cash Balance Pension Plan Liability</u>");

- all unpaid and incurred but not reported claims for medical or other health and welfare benefits under self-insured medical and other health and welfare plans sponsored and maintained by the Seller as disclosed on <u>Schedule 4.13</u> (the "<u>IBNR</u>");

- all liabilities under the Flex Plan and Flex Plan Documents, as such terms are defined in <u>Schedule 4.13</u> hereto (the "<u>Retiree Flex Benefits</u>");

- all liabilities arising under Sellers' existing incentive bonus programs offered to new employees as an incentive to accept employment with Sellers (the "<u>Sign-On Bonus</u>");

- all liabilities under the incentive bonus programs described under the "Part-time to Full Time Status Change" and "Per Diem to Full Time Incentive" headings in that certain file located in section 3.3.1.2 of the Cowen Data Room entitled "IncentiveBonusMemo_6.29_2021.pdf" (the "<u>Status Change Incentive Bonus</u>"); and

- all liabilities under the incentive bonus programs described under the "Employee Referral Program" heading headings in that certain file located in section 3.3.1.2 of the Cowen Data Room entitled "IncentiveBonusMemo_6.29_2021.pdf" (the "<u>Employee Referral Bonus</u>").

---

[11] Capitalized terms in this Schedule not otherwise defined herein shall have the meanings ascribed to them in the *Motion for Entry of an Order (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, and Other Compensation, and (B) Pay and Honor Benefits and Other Workforce Obligations; (II) Authorizing and Directing the Applicable Bank to Pay All Checks and Electronic Payment Requests Made by the Debtors Relating to the Foregoing; and (III) Granting Related Relief* [Docket No. 11].

Case: 21-51477    Doc# 347-1    Filed: 02/23/22    Entered: 02/23/22 15:01:03    Page 138 of 144

## FIRST AMENDMENT TO ASSET PURCHASE AGREEMENT

This *First Amendment to Asset Purchase Agreement* dated as of February 18, 2022 (the "**Amendment**"), is entered into by and among **HALSEN HEALTHCARE, LLC, WATSONVILLE HOSPITAL HOLDINGS, INC., WATSONVILLE HEALTHCARE MANAGEMENT, LLC, AND WATSONVILLE HOSPITAL CORPORATION** (the foregoing are herein jointly and severally referred to as "**Seller**"), and **PAJARO VALLEY HEALTHCARE DISTRICT PROJECT** ("**Buyer**"). The parties are entering into this Amendment with respect to the following facts and circumstances:

A.      Reference is made to that certain *Asset Purchase Agreement* dated as of December 27, 2021 (the "**Agreement**"), by and between Seller and Buyer. Except for terms specifically defined herein, the capitalized terms used in this Amendment shall have the same meanings as capitalized terms used in the Agreement.

B.      Pursuant to **Section 9.6** of the Agreement and with the consent of MPT, Seller and Buyer desire to amend the Agreement on the terms and conditions set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which each party hereby acknowledges, Seller and Buyer hereby modify and amend the Agreement as follows:

1.      <u>Amendments</u>.

(a)      The words "deferred tax assets" are hereby deleted in their entirety from the first sentence of **Section 1.1(b)** of the Agreement.

(b)      **Section 1.2** of the Agreement is hereby deleted in its entirety and the following is substituted in its place:

> <u>Excluded Assets</u>. Notwithstanding anything contained in **Section 1.1** above, Buyer is not purchasing (i) Seller's contracts and leases that are not Assigned Contracts or Assigned Personal Property Leases and including all proceeds thereof, (ii) the Purchase Price and all rights of the Seller and MPT, respectively, under this Agreement, (iii) any rights, claims or causes of action of any Seller under the Bankruptcy Code, including under chapter 5 of the Bankruptcy Code (or any state analogs) and including all proceeds thereof, (iv) any rights, claims or causes of action of any Seller unrelated to the Assigned Contracts or the Assigned Personal Property Leases and including all proceeds thereof, (v) all rights to any action, suit or claim, whether known or unknown, related to third parties' violations of antitrust or unfair competition laws arising out of conduct that occurred prior to the Closing Date, (vi) all personnel records and other books, records, and files that the Seller is required by law to retain in its possession or that are protected by attorney client privilege, (vii) any patient records with respect to which the applicable patient(s) has objected to a transfer of such patient records to the Buyer, (viii) any Seller's deposit accounts, (ix) any Seller's cash as of the Closing Date that consists of the following: (A) any amounts budgeted to pay, but that have not been paid to

1

Case: 21-51477      Doc# 347-1      Filed: 02/23/22      Entered: 02/23/22 15:01:03      Page 139 of 144

applicable parties or funded to the trust account of Seller's bankruptcy counsel, under the "*Professional Fees*" category of the Budget (as defined in the DIP Note) (for the avoidance of doubt, any amounts that have been funded to the trust account of Seller's bankruptcy counsel also shall be treated as Excluded Assets), plus (B) the sum of $1,500,000 to fund a wind-down of Seller's estates (subsections (A) and (B) are together the "**Excluded Cash**"), (x) any tax refunds, benefits, or proceeds relating to periods prior to the Closing Date, (xi) any other prepaid assets or properties expressly set forth on Schedule 1.2 hereto, (xii) Seller's federal, state, and local tax obligations, (xiii) any rights, claims or causes of action of any Seller against its current or former directors, officers, managers (including, but not limited to, any entity or individual providing management, administrative or other related services to any Seller) or equity holders, including claims made under any insurance policy covering same and all proceeds thereof, (xiv) those items listed on Schedule 1.2 hereto, (xv) any right and interest, if any, in and to any Letter of Credit or Cash Deposit (each as defined in the MPT Lease) held by MPT prior to the Closing, and (xvi) any books and records relating to any of the foregoing (such assets being referred to collectively as the "**Excluded Assets**").

(c)     **Section 1.3(a)** of the Agreement is hereby deleted in its entirety and the following is substituted in its place:

As of the Closing Date, subject to **Section 2.3**, Seller shall assign to Buyer and Buyer shall assume only Seller's obligations arising from events occurring on or after the Closing Date (i) under (A) those agreements and contracts designated specifically on Schedule 4.7 attached hereto as "**Assigned Personal Property Leases**," (B) designated specifically on Schedule 4.16 attached hereto as "**Assigned Contracts**," and (C) the Ordinary Course Agreements; and (ii) "**Assumed Employee Amounts**," as such term is defined in **Section 6.7(b)** of this Agreement. (The Assigned Personal Property Leases, Assigned Contracts, and Ordinary Course Agreements are collectively referred to as the **"Assigned Agreements"** and the Assigned Agreements, Assumed Employee Amounts, and obligations set forth in **Section 2.3** are together referred to as the "**Assumed Liabilities**"). For clarity and avoidance of doubt, the Assigned Contracts include the MPT Lease as modified by the MPT Lease Amendment. At or after the Sale Hearing, Seller shall seek authorization to assume and assign to Buyer the Assigned Agreements and the MPT Lease as modified by the MPT Lease Amendment. The amounts, if any, required to cure all defaults under the Assigned Agreements, as required under the Bankruptcy Code or determined by the Bankruptcy Court pursuant to a final order (the "**Cure Costs**"), shall be paid on the Closing Date (except as otherwise agreed to by the applicable counterparty to any Assigned Agreement) by the Buyer directly to the applicable counterparty to each Assigned Agreement. Attached hereto as Schedule 1.3 is a listing of Seller's good faith estimate of the Cure Costs as of the Effective Date of this Agreement, which Schedule 1.3 may be updated by Seller and delivered to Buyer, on notice to each applicable counterparty, consistent with the procedures for the assumption and assignment of executory contracts and unexpired leases approved by the Bankruptcy Court in the Bankruptcy Case. Buyer may remove any Assigned Contract (other than the MPT Lease and the MPT Lease

DOCS_SF:106921.7

will in all events be listed or deemed listed on Schedule 4.16 for purposes of this Agreement) or any Assigned Personal Property Lease set forth on Schedule 4.16 and Schedule 4.18 at any time up to, and including, the Closing Date; *provided, however* that Buyer may not remove any Ordinary Course Agreement from this Agreement or the Schedules thereto without the express consent of Seller.

(d)     The following shall be inserted after the word "benefits" in **Section 6.7(b)(i)** of the Agreement:

(except any unpaid and unused vacation, holiday, sick pay, and other paid time-off that accrued prior to the Petition Date, solely with respect to Seller Employees who are not Seller Employees immediately prior to Closing)

(e)     The last sentence of **Section 6.7(c)** of the Agreement is hereby deleted in its entirety and the following sentence is substituted in its place:

Except as otherwise provided herein (including, without limitation, **Section 6.7(b)** of the Agreement and Schedule 6.7(b) to the Agreement), Seller shall retain all liabilities with respect to any and all Seller Employees who are not Transferring Employees.

(f)     **Section 6.7(d)** of the Agreement is hereby deleted in its entirety and the following is substituted in its place:

Except as set forth in **Section 6.7(b)** of this Agreement, Buyer will not assume any liability or responsibility for any benefit or other obligations arising out of or under any Employee Benefit Plan (unless such plan is an Assigned Contract) to which any Transferring Employee, or any Seller Employee who is not a Transferring Employee, is or may be entitled to without regard to whether such obligation or responsibility arises under the terms of such Employee Benefit Plan or applicable Law. Except to the extent an Employee Benefit Plan is an Assigned Contract, Seller shall retain all liability and responsibility for benefits, administration and compliance with the terms of any and all Employee Benefit Plans and applicable Laws with regard to any and all Employee Benefit Plans.

(g)     The first sentence of **Section 9.7** of the Agreement is hereby deleted in its entirety and the following sentence is substituted in its place:

No party hereto shall assign or otherwise transfer this Agreement or any of its rights hereunder, or delegate any of its obligations hereunder without the prior written consent of the other party and MPT; *provided that* Buyer will be permitted, without the consent of (but on notice to) each of Seller and MPT, to assign or otherwise transfer this Agreement or any of its rights hereunder to the District or any Affiliate of Buyer or the District (including without limitation a non-profit corporation) with the demonstrated financial wherewithal to close the transactions contemplated hereby satisfactory to each of Seller and MPT; *provided, further*, that no such assignment or other transfer by Buyer will relieve Buyer of any of its obligations hereunder.

3

(h)     Annex I to the Agreement is hereby amended to add the following definition:

"**Ordinary Course Agreement**" means a contract, lease, or other agreement entered into by Seller, after consultation with Buyer (which consultation may be by e-mail to Buyer's counsel), in the ordinary course of Seller's operation of the Business after the Petition Date and before the Closing.

2.      <u>Miscellaneous</u>.  All references herein to Sections shall be deemed references to such parts of the Agreement, unless the context shall otherwise require.  The Section headings in this Amendment are for reference only and shall not affect the interpretation of this Amendment. This Amendment may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts together shall constitute one and the same instrument.  To the extent of any inconsistency between the terms and provisions of this Amendment and the Agreement, this Amendment shall govern and control. Except to such extent, the Agreement shall be unchanged and shall remain in full force and effect.

3.      <u>Incorporation by Reference</u>.  The provisions of **Section 9.5** through **Section 9.14** of the Agreement, except as expressly amended hereby, are incorporated herein by reference and shall apply to the terms and provisions of this Amendment and the parties hereto *mutatis mutandis*.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, Buyer and Seller have executed this Amendment as of the day and year first set forth above.

**BUYER:**

PAJARO VALLEY HEALTHCARE DISTRICT PROJECT

By: _____
Name:    Mimi Hall
Title:    Chair, Board of Directors

DOCS_SF:106921.7

**SELLER:**

HALSEN HEALTHCARE, LLC, WATSONVILLE
COMMUNITY HOSPITAL HOLDINGS, INC.,
WATSONVILLE HEALTHCARE
MANAGEMENT, LLC, AND WATSONVILLE
HOSPITAL CORPORATION

By: _____

Name:    Jeremy Rosenthal

Title:    Chief Restructuring Officer