MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
JASON BLUMBERG (CA SBN 330150)
Trial Attorney
ELVINA ROFAEL (CA SBN 333919)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
280 South First Street, Ste. 268
San Jose, California 95113
Telephone: (408) 535-5525
Facsimile: (408) 535-5532
Email: jason.blumberg@usdoj.gov
      elvina.rofael@usdoj.gov

Attorneys for Acting United States Trustee
Tiffany Carroll[1]

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>WATSONVILLE HOSPITAL CORPORATION, *et al.*,<br><br>Debtors.[2] | Bankruptcy Case No. 21-51477 MEH<br><br>Chapter 11<br><br>Date: June 13, 2022<br>Time: 1:00 p.m.<br>Judge: Honorable M. Elaine Hammond<br>      Courtroom 11, 280 South First St.<br>      San Jose, CA 95113-3099 |

**OBJECTION AND RESERVATION OF RIGHTS OF THE UNITED STATES TRUSTEE TO APPROVAL OF (I) DISCLOSURE STATEMENT AND (II) MOTION TO APPROVE SOLICITATION AND VOTING PROCEDURES**

Tiffany Carroll, the Acting United States Trustee for Region 15 (the "UST"), by and through her undersigned counsel, hereby files this objection (the "Objection") and reservation of

---

[1] Tiffany Carroll, the Acting United States Trustee for Region 15, is acting in this appointment for Tracy Hope Davis, the United States Trustee for Region 17, who has recused herself.

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

rights with respect to (i) the disclosure statement (ECF No. 473) (the "Disclosure Statement") for the joint plan of liquidation filed on May 6, 2022 (ECF No. 472) (the "Plan") filed by the Debtors and the Official Committee of Unsecured Creditors (the "Committee" and together with the Debtors, the "Plan Proponents"), and (ii) the Plan Proponents' joint motion (ECF No. 474) (the "Voting Procedures Motion") for an order approving solicitation and voting procedures for the Disclosure Statement and Plan. In support of her Objection, the UST respectfully represents as follows:

## I. INTRODUCTION

1. The Plan, which hinges upon the expected closing of the sale of the Debtors' hospital, contemplates the creation of a Liquidation Trust[3] to liquidate the Debtors' remaining assets and make distributions to creditors.

2. The Disclosure Statement fails to provide adequate information about the Plan in several important respects. Notably, the Disclosure Statement does not:

   a. disclose the identity or affiliations of the Liquidation Trustee and the Liquidation Trust Oversight Committee members, or include the Liquidation Trust Agreement. This information is highly relevant to creditors' assessment of the Plan, including whether to entrust liquidation to the Liquidation Trustee or a Chapter 7 trustee.

   b. currently contain an estimate of the amount of Class 4 general unsecured claims or their expected recoveries under the Plan.

   c. adequately address the factual and legal bases for *de facto* discharges of the liquidating Debtors, notwithstanding 11 U.S.C. § 1141(d)(3). Although Section XI.A of the Plan provides that the Debtors will not receive discharges, Section XI.C of the Plan would subject creditors to a permanent injunction (without any apparent temporal limitation).

   d. adequately address the payment of interest on unpaid quarterly fees under 28 U.S.C. §1930(a)(6) or the payment of quarterly fees if a case is reopened after entry of a final decree.

---

[3] Capitalized terms not otherwise defined herein shall the meanings ascribed to them in the Plan.

Case: 21-51477    Doc# 536    Filed: 06/06/22    Entered: 06/06/22 13:42:40    Page 2 of 11

3. The UST has conferred with the Plan Proponents regarding the foregoing concerns. As a result of these communications, the UST is hopeful that some of the UST's concerns may be resolved prior to the hearing on the Disclosure Statement and the Voting Procedures Motion.[4] The UST reserves her right to supplement this Objection in the event that the Plan Proponents modify or otherwise supplement the Disclosure Statement and/or the Voting Procedures Motion.

## II. STATEMENT OF FACTS

### A. General Case Background

4. On December 5, 2021, the Debtors commenced voluntary cases under Chapter 11 of the United States Bankruptcy Code. *See* ECF No. 1. The Debtors are currently debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. The Debtors are represented by Pachulski Stang Ziehl & Jones LLP. *See* ECF No. 179.

5. On December 6, 2021, the Court entered an Order directing the joint administration of these cases for procedural purposes only. *See* ECF No. 24.

6. On December 22, 2021, the UST appointed the Committee. *See* ECF No. 97. The Committee is represented by Perkins Coie LLP and Sills Cummis & Gross P.C. *See* ECF Nos. 259, 261.

7. On January 14, 2022, the UST appointed Tamar Terzian as the Patient Care Ombudsman. *See* ECF No. 203. The Court approved the appointment on January 18, 2022. *See* ECF No. 219.

---

[4] Additionally, based on communications with the Plan Proponents, the UST understands that the Plan Proponents will (i) amend § XIV.C of the Plan to remove the Debtors' option of reserving for the payment of outstanding quarterly fees on the Plan's effective date, (ii) add a provision to the Plan requiring the Plan Proponents to file a notice of occurrence of the Plan's effective date within 2 business days of its occurrence, and (iii) remove the request in the Voting Procedures Motion that would authorize the Plan Proponents to deem impaired classes to have accepted the Plan if no holder of a claim or interest in a particular class votes to accept or reject the Plan.

8. The meeting of creditors under 11 U.S.C. § 341(a) was first held on January 5, 2022, and it was concluded on February 2, 2022. *See* case docket generally.

9. According to the first day declaration of Jeremy Rosenthal (ECF No. 17), the Debtors operate a 106 bed hospital in Watsonville, California. *See* ECF No. 17, at pp. 3, 7 of 46.

10. On January 20, 2022, the Court entered a final order authorizing the Debtors to obtain DIP financing from MPT of Watsonville Lender, LLC (together with MPT of Watsonville, LLC, "MPT"). *See* ECF No. 232. The DIP facility provided the Debtors with funding through March 31, 2022 in the amount of $30,750,000 (inclusive of a roll-up of $9,250,000). *See* Disclosure Statement, at p. 26 of 73.

11. On February 23, 2022, the Court approved the sale (the "Asset Sale") of substantially all the Debtors' assets to the Pajaro Valley Healthcare District Project (or its assignee) (the "Buyer"). *See* ECF No. 347. The deadline to close the sale is August 31, 2022. *See* Disclosure Statement, at p. 28 of 73. Among the conditions to closing are the Buyer's receipt of required licenses and adequate funding. *Id*.

**B.     The Plan**

12. The Plan contemplates the formation of a Liquidation Trust, which will be funded with (among other assets) the Estate Post-Closing Cash on Hand and Retained Causes of Action (including avoidance actions). *See* Plan, at pp. 12-13, 16, 28, 30, 37 of 61 (§§ I.B.54, I.B.64, I.B.91, V.A, V.F, and V.R).

13. The Plan further contemplates substantive consolidation of the Debtors' estates "for purposes of classifying and treating all Claims under the Plan, including for voting, confirmation, and distribution purposes." Notwithstanding substantive consolidation, fees payable under 28 U.S.C. § 1930 "shall be due and payable by each individual Debtor." *See* Plan, at pp. 28-29 of 61 (§ V.C).

14. The Plan classifies general unsecured claims in Class 4. Holders of general unsecured claim will receive their *pro rata* share of the Class B Liquidation Trust Interests, which would entitle unsecured creditors to their pro rata share of the Class B Liquidation Trust Assets. *See* Plan, at pp. 25-26 of 61 (§ III.G).

15. The Class B Liquidation Trust Assets would consist of (i) 100% of Net Distributable Assets up to a Minimum Distribution Threshold that is the greater of (A) $3.5 million and (B) an amount equal to 20% of allowed general unsecured claims, and (ii) 50% of Net Distributable Assets above the Minimum Distribution Threshold (with the other 50% going to MPT on account of its Class A Liquidation Trust Interests). *See* Plan, at pp. 10, 16, 25-26 of 61 (§§ I.B.29, I.B.97, and III.G).

16. In its current form, the Disclosure Statement does not provide an estimate of the amount of claims in Class 4 or the projected recovery on account of those claims. *See* Disclosure Statement, at p. 16 of 73.[5]

17. According to the Voting Procedures Motion, the Debtors will file a Plan Supplement no later than July 11, 2022, which is 4 days before the proposed voting deadline of July 15, 2022. *See* Voting Procedures Motion, at p. 11 of 26. The Plan Supplement will include, among other things, (i) the identity and compensation of the Liquidation Trustee and (ii) the identity of the members of the Liquidation Trust Oversight Committee. *See* Plan, at pp. 32, 34 of 61 (§§ V.G, V.I). Presumably, the Plan Supplement will also include the Liquidation Trust Agreement. *See, e.g.*, Plan, at p. 61 of 61 (the agreement is an unfiled exhibit to the Plan).

---

[5] While there are spaces for this information in the Disclosure Statement, the information has not yet been provided. *See* Disclosure Statement, at p. 16 of 73.

18. The closing of the Asset Sale is a condition precedent to the Plan's Effective Date. *See* Plan, at p. 46 of 61 (§ IX.A.c).

19. On the Plan's Effective Date, the Patient Care Ombudsman "shall be terminated and the Patient Care Ombudsman shall be discharged from her duties as Patient Care Ombudsman and shall not be required to File any further reports or perform any additional duties as Patient Care Ombudsman." *See* Plan, at p. 53 of 61 (§ XIV.B).

20. The Debtors will be deemed dissolved upon entry of final decrees closing their respective cases. *See* Plan, at p. 39 of 61 (§ V.U).

C. **Discharges, Releases, Exculpations, and Injunction under the Plan**

21. The Plan contemplates a release by the Debtors of claims "based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date …." *See* Plan, at p. 48 of 61 (§ X.B) (the "Debtor Release").

22. The beneficiaries of the Debtor Release are the "Released Parties." The definition of "Released Parties" includes (i) the Debtors' professionals and certain of the Debtors' officers and directors, (ii) the Committee and its members and professionals, and (iii) MPT and its related persons. *See* Plan, pp. 11, 17, 19, 48 of 61 (§§ I.B.35, I.B.41, I.B.103, I.B.134, and X.B).

23. Section XI.B of the Plan is an exculpation provision. This provision provides, in relevant part, that:

> the Exculpated Parties will neither have nor incur any liability to any Entity or Person for any claims or Causes of Action *arising before*, on or after *the Petition Date* and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to the Chapter 11 Cases [except that[ the foregoing provisions will have no effect on the liability of any Entity or Person that results from any such act or omission that is determined … to have constituted *actual fraud, gross negligence, or willful misconduct* ….

Case: 21-51477    Doc# 536    Filed: 06/06/22    Entered: 06/06/22 13:42:40    Page 6 of 11

*See* Plan, at pp. 49-50 of 61 (§ XI.B) (the "Exculpation") (emphasis added).

24. Similarly, Section X.C of the Plan is a limitation of liability for the benefit of the Liquidation Trustee, the Liquidation Trust Oversight Committee and its members. These parties would not be liable for their acts or omissions, except for gross negligence, willful misconduct, or fraud. *See* Plan, at p. 49 of 61 (§ X.C) (the "Limitation of Liability").

25. The Plan provides that that the Debtors will not receive a discharge. *See* Plan, at p. 49 of 61 (§ XI.A) ("Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtors under section 1141(d)(3) of the Bankruptcy Code.").

26. However, the Plan would permanently enjoin creditors and interest holders from "taking any action in furtherance of such Claim, Equity Interest and/or any other cause of action released and/or discharged under the Plan …." *See* Plan, p. 50 of 81 (§ XI.C) (the "Injunction"). The Injunction would also enjoin actions against the beneficiaries of the release by the Debtor, the Exculpation and the Limitation of Liability "to the extent of the Exculpations, limitations of liability, and Releases granted in this Plan." *Id.*

### D. Quarterly Fees under the Plan

27. The Plan provides for the payment of statutory fees to the UST under 28 U.S.C. § 1930(a)(6) ("Quarterly Fees") as follows:

> Prior to the Effective Date, the Debtors shall pay *or reserve* for the payment of, in full in Cash, any fees due and owing pursuant to 28 U.S.C. § 1930 (the "Statutory Fees") on or before the Effective Date. On and after the Effective Date, the Liquidation Trustee shall pay the applicable Statutory Fees with respect to each Debtor that accrue after the Effective Date (or remain unpaid from the period prior to the Effective Date) until the earlier of (1) a final decree closing such Debtor's Chapter 11 Case or (2) conversion or dismissal of such Debtor's Chapter 11 Case. The Debtors or the Liquidation Trustee shall pay any Statutory Fees due and payable with respect to any disbursements made to the Liquidation Trust on the Effective Date. *The Liquidation Trust shall not owe any Statutory Fees*

Case: 21-51477   Doc# 536   Filed: 06/06/22   Entered: 06/06/22 13:42:40   Page 7 of 11

*with respect to any distributions of Liquidation Trust Assets to Liquidation Trust Beneficiaries.*

*See* Plan, at pp. 53-54 of 61 (§ XIV.C) (emphasis added).

### III. OBJECTION

28. A debtor-in-possession may not solicit creditors to vote on a plan, unless, at the time of such solicitation, the debtor-in-possession provides creditors with a "written disclosure statement approved, after notice and a hearing, by the court as containing *adequate information*." *See* 11 U.S.C. § 1125(b) (emphasis added); *In re Kelley*, 199 B.R. 698, 703 (B.A.P. 9th Cir. 1996).

29. "Adequate information" is defined as information that is in sufficient detail to enable "a hypothetical investor" to make an informed judgment about the Plan. *See* 11 U.S.C. § 1125(a); *In re Commercial Western Finance Corp.*, 761 F.2d 1329, 1331 n.1 (9th Cir. 1985).

30. Even if a disclosure statement provides adequate information, the disclosure statement should not be approved if the plan it describes is patently unconfirmable. *See, e.g.*, *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bank. N.D. Cal. 2003) ("Because the underlying plan is patently unconfirmable, the disclosure statement may not be approved.").

A. **The Disclosure Statement Does Not Provide Adequate Information about the Identity and Affiliations of the Liquidation Trustee and Liquidation Trust Oversight Committee Members.**

31. The proponent of a plan must disclose the identity and affiliations of "any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan." *See* 11 U.S.C. § 1129(a)(5)(A)(1); *In re Go-Go's Greek Grille, LLC*, 617 B.R. 394, 396 (Bankr. M.D. Fla. 2020). Section 1129(a)(5) contains a "blend of disclosure and substantive requirements." *See In re Beyond.com Corp.*, 289 B.R. at 144.

32. Here, neither the Plan nor the Disclosure Statement disclose the identities of the Liquidation Trustee or the Liquidation Trust Oversight Committee members. Rather, the Plan Proponents intend to provide this information in a Plan Supplement to be filed by July 11, 2022. That date is a mere 4 days before the proposed voting deadline of July 15, 2022. *See* ¶ 17, *supra*.

33. The identity and affiliations of the Liquidation Trust's management are highly relevant to creditors' consideration of the Plan and should be disclosed in the Disclosure Statement. *See*, *e.g.*, *In re Affordable Med Scrubs, LLC*, 2016 WL 3693978, at *2 (Bankr. N.D. Ohio July 5, 2016) ("A hypothetical investor cannot make an informed judgment as to whether his interests would be better served by a liquidation conducted by a Chapter 7 trustee … rather than being conducted by the Liquidating Trustee … without information regarding the Liquidating Trustee's experience and credentials and his relationship with FirstMerit.").

34. The Plan Proponents should similarly provide the Liquidation Trust Agreement to creditors with the Disclosure Statement. *See id.* ("[p]roviding … a form of the Liquidating Trust Agreement in a plan supplement before a hearing on confirmation as contemplated in the Disclosure Statement is inadequate.").[6]

**B.** **The Disclosure Statement Fails to Provide Adequate Information About Payments to Class 4 General Unsecured Claims.**

35. The Disclosure Statement does not currently contain an estimate of the amount of general unsecured claims in Class 4 or the expected dividend on account of those claims. *See* ¶ 16, *supra*.

36. The Disclosure Statement should be amended to provide this information. *See In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991) ("[A] proper disclosure statement must clearly

---

[6] To the extent there is an inconsistency between the Plan and the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement "shall govern." *See* Plan, at p. 31 of 61 (§ V.F).

Page -9-

and succinctly inform the average unsecured creditor *what it is going to get, when it is going to get it*, and what contingencies there are to getting its distribution.") (emphasis added).

C. **The Disclosure Statement Does Not Provide Adequate Information about the Legal or Factual Bases for the *De Facto* Discharges of the Debtors.**

37. As discussed above, in accordance with 11 U.S.C. § 1141(d)(3), Section XI.A of the Plan expressly provides that the Debtors will not receive discharges. Conversely, Section XI.C of the Plan would permanently enjoin creditors from taking any action in furtherance of their claims. *See* ¶¶ 25-26, *supra*.

38. Because the Plan's permanent injunction is not subject to an any temporal limit (such as the duration the Plan), it appears to amount to a *de facto* discharge of claims. *Cf. In re S. Edge LLC*, 478 B.R. 403, 408, 417 (D. Nev. 2012) (post-confirmation injunction that prevented satellite litigation only until all estate assets had been administered was not a de facto improper discharge).

39. Accordingly, the Disclosure Statement should be amended to address the basis for this relief. *See* 11 U.S.C. § 1141(d)(3); *In re Dominguez*, 51 F.3d 1502, 1508 (9th Cir. 1995) ("Liquidating corporations … are automatically precluded from discharge.").

D. **The Disclosure Statement Does Not Provide Adequate Information about the Payment of Quarterly Fees.**

40. Neither the Plan nor the Disclosure Statement address (i) whether Quarterly Fees would be payable if a case is reopened after entry of a final decree, or (ii) the payment of statutory interest on unpaid Quarterly Fees. *See* Plan, at pp. 53-54 of 61 (§ XIV.C). The Plan and Disclosure Statement should be amended to address these issues. *Cf.* 31 U.S.C. § 3717 (government claims, including quarterly fees, also include accrued interest); *In re Brown*, 2022 WL 1200783, at *3 (D. Mass. Apr. 22, 2022) ("The bankruptcy court rightly held that the debtor's

obligation to pay fees extended to all quarters in which his case was open, regardless of whether it had been closed and reopened.").

## IV. RESERVATION OF RIGHTS

41. The UST reserves her right to make any and all confirmation objections in connection with any confirmation hearing, including objections with respect to (i) the payment of Quarterly Fees (including the Plan's elimination of the Liquidation Trust's obligation to pay Quarterly Fees on disbursements to Liquidation Trust Beneficiaries), (ii) the filing of Post-Confirmation Quarterly Reports (including compliance with 28 C.F.R. § 58.8), and (iii) the permissibility of the Plan's releases, exculpations, limitations of liability and injunctions. The UST further reserves her right to supplement this Objection in the event that the Plan Proponents modify or otherwise supplement the Disclosure Statement and/or the Voting Procedures Motion.

## V. CONCLUSION

42. Based on the foregoing, the UST respectfully requests that the Court (i) sustain the Objection and (ii) disapprove the Disclosure Statement, unless modified to address the concerns set forth in this Objection.

Dated: June 6, 2022

    Respectfully submitted,

    TIFFANY CARROLL
    ACTING UNITED STATES TRUSTEE
    REGION 15

    By: /s/ Jason Blumberg
    Jason Blumberg
    Trial Attorney for the United States Trustee