Debra I. Grassgreen (CA Bar No. 169978)
Henry C. Kevane (CA Bar No. 125757)
Steven W. Golden (admitted pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP
One Market Plaza, Spear Tower, 40th Floor
San Francisco, CA 94105-1020
Telephone: 415.263.7000
Facsimile: 415.263.7010
E-mail: dgrassgreen@pszjlaw.com
hkevane@pszjlaw.com
sgolden@pszjlaw.com

Attorneys for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| In re: <br><br> WATSONVILLE HOSPITAL CORPORATION, *et al.*, <br><br> Debtors.[1] | Case No. 21-51477 (MEH) <br><br> Chapter 11 <br><br> **STIPULATION FOR ASSUMPTION AND ASSIGNMENT OF MEDICARE PROVIDER AGREEMENT** |

This Stipulation by and among Watsonville Hospital Corporation d/b/a Watsonville Community Hospital ("Hospital"), the U.S. Department of Health and Human Services on behalf of the Centers for Medicare & Medicaid Services ("CMS"), the Pajaro Valley Healthcare District Project ("Project"), and the Pajaro Valley Health Care District Hospital Corporation ("Pajaro Valley Hospital," and together with Hospital, the Project and CMS, the "Parties"), is entered into with reference to the following facts:

A. Hospital is one of the debtors in possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases") commenced on December 5, 2021 ("Petition Date"). The Chapter 11 Cases are presently pending in the United States Bankruptcy Court for the Northern District of California

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Watsonville Hospital Corporation (4113); Watsonville Healthcare Management, LLC (4168); Watsonville Hospital Holdings, Inc. (1118); and Halsen Healthcare, LLC. The Debtors' business address is 75 Nielson Street, Watsonville, CA 95076.

1

(the "Bankruptcy Court"). Hospital's case is being jointly administered with the cases of certain affiliates of Hospital (collectively, the "Debtors") under Case No. 21-51477 (MEH). Hospital operates a 106-bed general acute care hospital that serves patients in the Pajaro Valley area and surrounding communities.

B. The Project is a California nonprofit public benefit corporation and is the Buyer under the APA (as defined below).

C. The Pajaro Valley Health Care District ("District") is a local health care district formed on February 4, 2022, pursuant to the Local Health Care District Law, section 32000 et seq. of the California Health and Safety Code.

D. The District caused the formation of Pajaro Valley Hospital.

E. CMS is the federal agency that administers the Medicare program created under Title XVIII of the Social Security Act to provide health care insurance coverage primarily for the elderly and disabled. Hospital and CMS are parties to a *Health Insurance Benefit Agreement* that has been assigned provider number 05-0194 (the "Medicare Provider Agreement") under which Hospital is authorized to receive reimbursement under the Medicare program for the costs of medical care provided to Medicare beneficiaries.

F. On December 27, 2021, the Debtors filed the *Motion for Entry of an Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 103] to sell substantially all of their assets (the "Sale") to the Project or its designee (the "Buyer") and to assign to the Buyer certain executory contracts and unexpired leases, all pursuant to that certain *Asset Purchase Agreement* dated as of December 27, 2021 (as amended, the "APA").[2]

G. On February 7, 2022, CMS filed the *Creditor Secretary for U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Service's Contract and Sale Objections* [Docket No. 281] (the "CMS Objection").

---

[2] Unless otherwise defined in this Stipulation, a capitalized term used in this Stipulation shall have the meaning set forth in the APA.

H. On February 18, 2022, the Debtors filed the *Second Supplemental Notice of Potential Assumption and Assignment and Cure Amount with Respect to the Executory Contracts and Unexpired Leases of the Debtors in Connection with a Sale of Substantially all of the Debtors' Assets* [Docket No. 317] (the "Second Notice"), listing various executory contracts and unexpired leases that could potentially be assumed by the applicable Debtor and assigned to Buyer in connection with the Sale.

I. On February 23, 2022, the Bankruptcy Court approved the Sale pursuant to its *Order (I) Approving the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens (II) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 347] (the "Sale Order"). Pursuant to the Sale Order, the Parties' rights, claims and defenses with respect to the CMS Objection were fully reserved pending further notice and a hearing.

J. The Medicare Provider Agreement has been identified in the Second Notice as a contract that may be assigned to the Buyer pursuant to the APA. Subject to its ability under the APA to decline an assignment of the Medicare Provider Agreement prior to the Closing of the Sale, Buyer has designated the Medicare Provider Agreement as an Assigned Contract pursuant to the APA. Under the APA, the amounts, if any, required to cure defaults under an Assigned Contract, as required by the Bankruptcy Code or determined by the Bankruptcy Court pursuant to a final order (defined under the APA as "Cure Costs"), shall be paid on the date the sale to Buyer is completed (the "Closing Date") (except as otherwise agreed to by the applicable counterparty to such Assigned Contract,) by the Buyer directly to the applicable counterparty to such Assigned Contract.

K. Hospital has certain appeals under the Provider Agreement relating to cost reporting periods ending prior to July 31, 2019, pending either administratively (including, but not limited to, appeals before the Provider Reimbursement Review Board or the Departmental Appeals Board) or before any Federal court, that are identified on **Exhibit A** to this Stipulation (collectively, the "Appeals"). The value of the Appeals or the anticipated amount of further reimbursement due to the Hospital from CMS, or refunds due to CMS from the Hospital, under the Medicare Provider Agreement is unknown to the Hospital, the Project, Pajaro Valley Hospital, and CMS at this time.

L. Cotiviti, LLC, Recovery Auditor, conducted a recovery audit of certain claims for patient services rendered by Hospital prior to the Petition Date. After the recovery audit was completed, Wisconsin Physicians Service Insurance Corporation, a CMS Medicare contractor ("WPS"), sent a letter dated May 12, 2022, that provided notice to Hospital that it had received certain Medicare reimbursements in error totaling $225,553.55 relating to eleven patient claims (the "WPS Audit Decision"). CMS recouped the entire amount claimed as due in the WPS Audit Decision. On June 10, 2022, Hospital submitted requests for determination and supporting records to appeal the outstanding balance of the WPS Audit Decision. Nine of the eleven redetermination requests were granted. CMS reprocessed these nine patient claims and repaid the Hospital in the aggregate amount of $161,257.30. The two remaining redetermination claims at issue in the WPS Audit Decision in the aggregate amount of $64,296.25 were denied on the grounds of medical necessity or lack of information. The Hospital has 180 days to appeal those denials.

M. As permitted by Section 9.7 of the APA, the Project will designate Pajaro Valley Hospital as the Buyer of the Business and the transferee of the Assigned Contracts under the APA. Upon the Closing Date, Pajaro Valley Hospital intends to convey title to certain of the Acquired Assets to the District subject to a reservation of operating rights, thereby enabling Pajaro Valley Hospital to hold the licenses, permits, and certifications necessary to operate the Business and employ management and staff following the Closing Date.

N. The orderly and uninterrupted assignment of the Medicare Provider Agreement from the Hospital to Pajaro Valley Hospital as of the Closing Date, and the continuity of reimbursement for services provided by the Business to Medicare beneficiaries, is vital to maximize the value of the Sale for the benefit of the Debtors, their creditors and their estates. Accordingly, the Parties desire to specify the terms and conditions for the assumption and assignment of the Medicare Provider Agreement under section 365 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED AS FOLLOWS:**

1. Following the execution of this Stipulation by each of the Parties, Hospital will seek the approval of this Stipulation by the Bankruptcy Court. Each of the Parties will use its reasonable efforts to support the entry by the Bankruptcy Court of an order authorizing their respective

performance under this Stipulation (the "Approval Order"). In the event the Approval Order is not entered, for any reason, (i) this Stipulation shall be deemed null and void and the Parties shall be relieved and released from any obligation hereunder, and (ii) nothing contained in this Stipulation shall be construed to alter or affect either Party's rights or remedies in the Chapter 11 Cases.

2. Upon and following entry of the Approval Order, (a) the CMS Objection shall be deemed resolved and withdrawn, (b) Pajaro Valley Hospital agrees that the Medicare Provider Agreement shall be deemed an Assigned Contract under Section 4.16 of the APA and waives any right under Section 1.3(a) of the APA to remove, or decline an assignment of, the Medicare Provider Agreement as an Assigned Contract, and (c) the Parties shall cooperate to prepare, submit, and expedite the change of ownership application under Form 855A necessary for the transfer of the Medicare Provider Agreement from the Hospital to Pajaro Valley Hospital.

3. The Parties agree that, subject to the consent by CMS of the assignment of the Medicare Provider Agreement from Hospital to Pajaro Valley Hospital, the effectiveness of the assignment of the Medicare Provider Agreement shall be deemed to have occurred as of 12:01 a.m. prevailing Pacific time on the day after the Closing Date pursuant to Section 3.1(a) of the APA (the "Transfer Time").

4. Subject to (a) the entry of the Approval Order, (b) the occurrence of the Closing under the APA, and (c) the consent by CMS of the assignment of the Medicare Provider Agreement from Hospital to Pajaro Valley Hospital, the Sale Order shall, as of the Transfer Time, authorize the assumption by Hospital and the assignment to Pajaro Valley Hospital of the Medicare Provider Agreement pursuant to section 365 of the Bankruptcy Code. CMS (on behalf of itself and any fiscal intermediary or any other administrative or payment contractor) and Hospital agree that (a) there are no outstanding or unpaid reimbursements due from CMS to Hospital under the Medicare Provider Agreement for any and all cost reporting periods ending prior to July 31, 2019, and (b) the amount due to CMS on account of overpayments made by CMS to Hospital under the Medicare Provider Agreement for any and all cost reporting periods ending prior to July 31, 2019, is $60,180.00 (the "Fixed Overpayment Liability"). CMS and Hospital further agree that the Fixed Overpayment Liability constitutes a full and final compromise of all amounts due to or from CMS for all services provided by Hospital under the Medicare Provider Agreement for any cost reporting period ending

prior to July 31, 2019, and that these cost reporting periods shall be deemed fully and finally closed, in accordance with applicable law, except as otherwise expressly provided herein (the "Closed Cost Years").

5. Within 15 calendar days of the Closing Date, Hospital will withdraw the Appeals and agrees not to bring any further appeals thereafter relating to the Closed Cost Years. If, upon notice, the Debtors fail to timely withdraw such appeals, this Stipulation constitutes the consent of Hospital and Pajaro Valley Hospital for such provider's Medicare fiscal intermediary/Medicare Administrative Contractor or for CMS to file such a withdrawal(s) on their behalf.

6. CMS agrees to reduce the Fixed Overpayment Liability to $30,180.00 (the "Cure Payment"). The Cure Payment shall be paid by the Pajaro Valley Hospital to CMS through recoupment in the ordinary course of business commencing after the Transfer Time. Payment of the Cure Payment shall extinguish the Fixed Overpayment Liability.

7. CMS (on behalf of itself and any fiscal intermediary or any other administrative or payment contractor) and Hospital agree that all cost reporting periods for dates of service on and after August 1, 2020, shall remain open and subject to all applicable provisions, regulations, policies and procedures of the Medicare program ("Open Cost Report Periods"). Notwithstanding anything to the contrary in the APA or the Sale Order, upon and following the Transfer Time:

   a. Hospital shall file a terminating cost report for the period commencing August 1, 2021, and ending on the Closing Date, and Pajaro Valley Hospital shall file a partial cost report to cover the period commencing on the Transfer Time through the end of the 2022-2023 fiscal year.

   b. Pajaro Valley Hospital, as the designated successor to Hospital under the Medicare Provider Agreement, acknowledges and agrees that the rights of CMS to offset or recoup any overpayments made by CMS to Hospital on account of reimbursement for services provided by Hospital during the Open Cost Report Periods and prior to the Transfer Time shall remain unaffected and unimpaired;

   c. CMS acknowledges and agrees that any rights of Pajaro Valley Hospital, as the designated successor to Hospital under the Medicare Provider Agreement, to dispute any overpayment determinations, or to pursue any underpayments on account of reimbursement, for services provided by Hospital during the Open Cost Report Periods and prior to the Transfer Time shall remain unaffected and unimpaired;

6

d. CMS acknowledges and agrees that it will only seek recovery from Pajaro Valley Hospital of any overpayments made by CMS to Hospital on account of reimbursement for services provided by Hospital during the Open Cost Report Periods and prior to the Transfer Time and will not assert any such claims against Hospital or the Debtors; and

e. Hospital and Debtors acknowledge and agree that any amounts due from CMS based on the dispute of any overpayment determinations, or the pursuit of any underpayments on account of reimbursement, for services provided by Hospital during the Open Cost Report Periods and prior to the Transfer Time are payable to Pajaro Valley Hospital as the transferee of the Acquired Assets.

8. The Parties acknowledge and agree that all rights and defenses with respect to any remaining appeals of the WPS Audit Decision are fully reserved and shall not be affected by any of the terms of this Stipulation or by the assumption by Hospital and the assignment to the Pajaro Valley Hospital of the Medicare Provider Agreement.

9. Nothing in this Stipulation shall be deemed to alter or amend any rights, responsibilities or obligations of CMS or Pajaro Valley Hospital under the Medicare Provider Agreement related to any services provided by Pajaro Valley Hospital after the Transfer Time.

10. CMS agrees that the treatment of the Medicare Provider Agreement as specified under Paragraph 4 of this Stipulation shall be in full and final settlement, satisfaction, discharge and release of all claims or amounts due in cure of, or compensation for pecuniary loss resulting from, any defaults arising under the Medicare Provider Agreement prior to the Closing Date. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors and their estates shall be relieved from any liability for any breach of the Medicare Provider Agreement occurring on and after the Closing Date. In furtherance of the foregoing, each of CMS and the Hospital agree to waive and release any interest, penalties or attorneys' fees that may be due under the Medicare Provider Agreement based on acts, occurrences or dates of service prior to Closing Date.

11. Notwithstanding any other provision hereof, CMS shall be entitled to audit or reopen Hospital's Medicare cost reports for the Closed Cost Years solely for the purpose of complying with any Act of Congress requiring CMS to rely upon settled cost reports for the Closed Cost Years as a basis for adjusting Federal payment rates to providers participating in Medicare. However, neither CMS, Pajaro Valley Hospital nor Hospital Debtor, shall use such adjustments to seek any further

payments for the Closed Cost Years. CMS shall use such adjustments only to adjust payment rates to Hospital or Pajaro Valley Hospital for fiscal periods arising after the Closed Cost Years as part of adjustments in Federal payment rates applicable to all similarly situated providers participating in Medicare. Nothing in this paragraph shall waive or otherwise affect Pajaro Valley Hospital's ability to appeal or otherwise challenge such adjustments and Federal payment rates on or after the Closing Date.

12. The Parties agree that for the Open Cost Report Periods, to the extent applicable, in accordance with and to the extent permitted under the Medicare statute, regulations, policies and procedures (including 42 C.F.R. § 489.18), successor liability attaches to any claim arising under the Provider Agreement and payments to Pajaro Valley Hospital (or any future assignee under the provisions of Medicare law) and will be adjusted (in accordance with 42 U.S.C. § 1395g(a)) to account for prior overpayments and underpayments which arose, and are related to the Open Cost Report Periods..

13. Upon the Closing Date, nothing in this Agreement as so ordered by the Court shall relieve or be construed to relieve Pajaro Valley Hospital from complying with all procedures, rules and regulations of the Medicare program, including, but not limited to, (a) the requirement that it apply for and obtain HHS/CMS approval of a change of ownership by the filing of Form CMS 855, (b) the requirement that CMS review and adjust as appropriate future payments to be made under the Medicare Provider Agreement for periods on and after the Closing Date, (c) the requirement that it file annual cost reports, and, (d) CMS's right to alter or amend the method of reimbursement to Pajaro Valley Hospital in accordance with applicable law. Furthermore, upon the Closing Date, Pajaro Valley Hospital succeeds to the quality history of the Hospital and shall be treated, for purposes of survey and certification issues, as if it is Hospital and no change of ownership occurred.

14. Each Party hereto agrees that it fully participated in the drafting of this Agreement. The rule of law which provides that ambiguities will be construed against the drafting party in interpreting written instruments shall not be applicable to or used in resolving any dispute over the meaning or intent of this Agreement or any of its provisions.

8

15. This Agreement is the full and complete agreement of the Parties, and this Agreement may not be modified or altered in any manner, except by written agreement of all of the undersigned Parties hereto. The provisions of this Agreement supersede any prior understandings or agreements of the Parties.

16. This Agreement is binding upon the undersigned Parties, their successors, and assigns.

17. Any disputes regarding the rights, claims, defenses, obligations of the Parties to this Agreement hereunder shall be governed by federal law. The Bankruptcy Court has jurisdiction over any dispute arising from or relating to this Agreement.

18. Notwithstanding anything herein, this Agreement does not affect the rights, claims and defenses of any Federal agency other than CMS. This Agreement is not intended to, and does not, constitute a release, waiver or compromise of any tax claims against either Hospital or Pajaro Valley Hospital within the authority of the United States Department of Justice and the United States Attorney's Offices, nor of any criminal, fraud, or tax claims.

19. The Parties executing this Agreement do so without admitting any fault or liability whatsoever. No term or condition of this Agreement is intended to be or shall be deemed or construed as an expression of fault or liability.

20. This Agreement, or any provision hereof, may not be waived, amended or revoked, or the ongoing obligations of any Party terminated, except by a further writing signed by all such Parties.

21. This Agreement is the product of negotiation by and among the Parties, executed voluntarily and without duress or undue influence on the part of or on behalf of any Party hereto. Each of the Parties acknowledges that it has had the opportunity to be represented by its own independent counsel in connection with this Agreement and the transactions contemplated by or referred to in this Agreement. Hence, in any construction to be made of this thereof, the same shall not be construed against any Party.

22. The failure or delay on the part of any Party to enforce or exercise at any time any of the provisions, rights or remedies in this Agreement shall in no way be construed to be a waiver thereof, nor in any way to affect the validity of this Agreement or any part hereof, or the right of such

Party to thereafter enforce each and every such provision, right or remedy. No waiver of any breach of this Agreement shall be held to be a waiver of any other or subsequent breach.

23. Each Party shall pay its own attorneys' fees, costs and expenses in connection with the preparation, negotiation and execution of this Agreement.

24. Subject to obtaining approval from the Bankruptcy Court, each Party hereto hereby represents and warrants to the other Parties that the undersigned representative of such Party has authority to execute this Agreement and to bind such Party to the terms hereof.

25. Each of the Parties hereto acknowledges that no other Party, nor any agent nor any attorney of any other Party has made any promise, representation or warranty whatsoever, express or implied, not contained herein or therein concerning the subject matter hereof to induce said Party to execute or authorize the execution of this Agreement, and each of the Parties hereto further acknowledges that said Party has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein or therein.

26. This Agreement may be executed in counterparts, which shall be considered as a single document. Furthermore, this Agreement may be executed by facsimile copy or other electronic means, and facsimile or other electronic signatures will be treated as original signatures.

27. The Bankruptcy Court shall retain jurisdiction over any dispute regarding the enforcement or implementation of this Stipulation.

(Signature Page Follows)

| | | |
|---|---|---|
| Dated: August 23, 2022 | | PACHULSKI STANG ZIEHL & JONES LLP |

By: */s/ Henry C. Kevane*
Debra I. Grassgreen
Maxim B. Litvak
Steven W. Golden
Henry C. Kevane

Attorneys for Debtors and Debtors in Possession

Dated: August 23, 2022

STEPHANIE M. HINDS
United States Attorney

By: */s/ Michael T. Pyle*
MICHAEL T. PYLE

Attorneys for Creditor Secretary for U.S. Department of Health and Human Services, Centers for Medicare and Medicaid Services

Dated: August 23, 2022

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ Jonathan R. Doolittle*
Jonathan R. Doolittle

Attorneys for Pajaro Valley Healthcare District Project

Dated: August 23, 2022

BEST BEST & KRIEGER LLP

By: */s/ Noel M. Caughman*
Noel M. Caughman

Attorneys for the Pajaro Valley Health Care Hospital Corporation

# EXHIBIT A
Watsonville Hospital Corporation
Provider Reimbursement Board Pending Appeals

Appeal Docket Numbers:

1. 1993 - 14-1708G
2. 1995 - 14-1709G
3. 1997 - 14-2026G
4. 1998 - 14-2046G
5. 2002 - 05-1826GC
6. 2003 - 05-1827GC
7. 2004- 05-1828GC