# Philips Medical Capital

**Master Lease Agreement**
PHONE: (866) 514-4PMC
FAX: (866) 516-4PMC

| LESSEE | | | | | |
|---|---|---|---|---|---|
| Full Legal Name: Watsonville Hospital Corporation | | | | | Phone Number: 8317636040 |
| Carrying on Business as (If Any): Watsonville Community Hospital | | | | | Fax Number: |
| Billing Address: 75 Nielson Street | City: Watsonville | | State: CA | Zip: 95076 | Send Invoice to Attention of: Accounts Payable |

## TERMS AND CONDITIONS

This MASTER LEASE AGREEMENT (as amended, modified or supplemented from time to time in accordance with the terms hereof, this "Agreement"), dated as of **September 22, 2020**, is by and between Philips Medical Capital, LLC, a Delaware limited liability company, with offices located at 1111 Old Eagle School Road, Wayne, Pennsylvania, 19087-1453, (together with its successors and assigns, "Lessor"), and **Watsonville Hospital Corporation**, a **corporation** organized under the laws of the State/Commonwealth of **Delaware** (together with its successors and permitted assigns, "Lessee"). The parties hereto for good and valuable consideration and intending to be legally bound hereby agree as follows:

**1. LEASE OF SYSTEM:** This Agreement establishes the general terms and conditions under which Lessor may, from time to time lease a System (as hereinafter defined) to Lessee as specified in a lease schedule to be entered into from time to time (each a "Lease"). Each Lease shall incorporate the terms and conditions of the Agreement and shall constitute a separate lease agreement as to a System. In the event of a conflict between the provisions of any Lease and the provisions of this Agreement, the provisions of the Lease shall prevail. As used in this Agreement, the terms "Software", "Equipment" and "Maintenance" shall mean all items of software, equipment and maintenance, respectively, specified on a Lease and all of the foregoing and all peripherals and items related thereto provided by Lessor shall be collectively referred to as a "System."

IF THIS LEASE HAS BEEN PROVIDED ELECTRONICALLY AND LESSEE WISHES TO ENTER INTO THIS AGREEMENT AND/OR ANY LEASES ELECTRONICALLY, LESSEE'S ELECTRONIC SIGNATURE WILL CONSTITUTE ITS ACKNOWLEDGEMENT AND AGREEMENT TO DO BUSINESS AND RECEIVE ALL RELATED RECORDS ELECTRONICALLY, INCLUDING, WITHOUT LIMITATION, ELECTRONIC FORMS OF DELIVERY AND ACCEPTANCE CERTIFICATES, IF REQUIRED BY LESSOR. At Lessor's option, Lessor may require an ink signature.

**2. TERM AND PAYMENTS:** The lease term for each System shall be for the time period specified in the Lease (as it may be extended pursuant to the terms hereof or the Lease, the "Lease Term"), and such Lease Term shall commence on the date provided in the Lease (the "Commencement Date"). For the Lease Term, Lessee shall pay to Lessor the payments in the amount, number and in the manner specified in a Lease (each a "Payment" and collectively, "Payments"). If not specified in a Lease, the first Payment is due the first day of the first full month after the Commencement Date and the remaining Payments are due on the same day of each consecutive payment period thereafter for the duration of the Lease Term. A Lease may not be terminated or canceled for any reason whatsoever, except as expressly provided in the Lease. Whenever any sum due hereunder is not paid when due, Lessee agrees to pay to Lessor, on the next due date, a late charge equal to five percent (5%) of the amount of any late payment (but not less than $10.00), but only to the extent permitted by law. If any sum paid by Lessee shall be refused or rejected by the related obligor, Lessor may charge Lessee a returned-check or non-sufficient funds charge in the amount of $25.00 per check or electronics funds transfer to reimburse Lessor for the time and expense incurred with respect thereto. All sums paid by, or on behalf of, Lessee hereunder shall be non-refundable. All sums shall be delivered to Lessor at its address specified above (or such other place as Lessor, in writing, directs) without notice or demand therefore. If and to the extent the Payments include amounts due to Philips Healthcare for service or maintenance, then in the event Lessor quotes a buyout or enters into any settlement agreements arising from a defaulted Agreement, then such buyout amounts and such settlements shall not affect the rights or obligations of Philips Healthcare pursuant to any separate service or maintenance agreements between Lessee and Philips Healthcare. The amount of the Lease Payments on each Lease ("Payments") are based upon the estimated total cost of the System on the applicable Lease. The Payments shall be adjusted proportionately upward or downward if the actual total cost of the System on the applicable Lease exceeds or is less than the estimate and Lessee authorizes Lessor to adjust the Payments by up to fifteen percent (15%) in that event. LESSEE'S OBLIGATION TO MAKE THE PAYMENTS SHALL BE ABSOLUTE AND UNCONDITIONAL AND IS NOT SUBJECT TO ANY ABATEMENT, SET-OFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON WHATSOEVER, INCLUDING, WITHOUT LIMITATION, ANY PRESENT OR FUTURE CLAIMS AGAINST THE LESSOR OR THE PROVIDER OF A SYSTEM. IN THE EVENT THE PAYMENTS INCLUDE THE COST OF MAINTENANCE AND/OR SERVICE BEING PROVIDED BY A MANUFACTURER OR SUPPLIER OF ALL OR A PART OF A SYSTEM AND/OR VENDOR OR PROVIDER OF ALL OR PART OF THE SYSTEM (EACH AND COLLECTIVELY, "PROVIDER"), LESSEE ACKNOWLEDGES THAT LESSOR IS MERELY COLLECTING SUCH AMOUNTS ON BEHALF OF A PROVIDER AND THAT LESSOR IS NOT RESPONSIBLE FOR PROVIDING ANY REQUIRED MAINTENANCE AND/OR SERVICE FOR THE SYSTEM AND LESSEE'S OBLIGATION TO MAKE ALL PAYMENTS SHALL REMAIN UNCONDITIONAL.

**3. INSTALLATION AND DELIVERY:** The Lessee shall at its own expense provide a suitable environment for the System as specified or required by a Provider. Delivery and installation arrangements and costs, unless included in the cost of the System to Lessor, are the sole responsibility of Lessee. Lessee agrees to accept the System when Available for First Use (as defined in the Lease) and to immediately execute the Delivery and Acceptance Certificate supplied by Lessor as evidence thereof. If Lessee has entered into any purchase, licensing or maintenance agreements with a Provider (each an "Acquisition Agreement") covering the System or any portion thereof, Lessee transfers and assigns to Lessor all of Lessee's rights, but none of its obligations (except for Lessee's obligation to pay for the System upon Lessor's acceptance of the Lease) in and to any Acquisition Agreement and Lessee shall execute any documents, instruments or agreements reasonably necessary to effectuate such transfer or assignment. All proceeds of any warranty recovery by Lessee from a Provider shall first be used to repair, maintain, replace or upgrade the affected System and Lessee shall promptly notify Lessor of any such warranty recovery.

**4. USE, MAINTENANCE AND MODIFICATIONS:** Lessee represents, warrants and covenants that the System will be used for solely business purposes and not for personal or household purposes. Lessee will not modify the System in any way without the prior written consent of Lessor except as required by a Provider or in any Acquisition Agreement. Lessee shall not attach or incorporate any portion of the System in such a manner that it becomes or may be deemed to have become an accession to or a part of any other item of equipment or software. At its own expense, Lessee will cause the System to be used and maintained in: (a) a manner recommended by the Provider and/or in any Acquisition Agreement; (b) accordance with all laws, rules and regulations of all applicable governmental or quasi-governmental authorities; and (c) as good operating condition as when delivered to Lessee hereunder, ordinary wear and tear resulting from proper use alone excepted. All equipment, software, upgrades, parts and replacements for or which are added to or become attached to or a part of a System shall be deemed incorporated into the System and become the property of Lessor without further action on its part. Upon reasonable notice, Lessor shall have the right to inspect the System and all maintenance and business records related thereto during Lessee' normal business hours.

**5. DISCLAIMER OF WARRANTY:** LESSEE ACKNOWLEDGES THAT LESSOR HAS NO EXPERTISE OR SPECIAL FAMILIARITY ABOUT OR WITH RESPECT TO THE SYSTEM. LESSEE AGREES THAT THE SYSTEM LEASED HEREUNDER IS LEASED "AS-IS" AND IS OF A SIZE, DESIGN AND CAPACITY SELECTED BY LESSEE AND IS SUITABLE FOR LESSEE'S PURPOSES AND THAT LESSOR HAS MADE NO REPRESENTATION OR WARRANTY WITH RESPECT THERETO, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. LESSOR FURTHER DISCLAIMS ANY LIABILITY FOR LOSS, DAMAGE OR INJURY TO LESSEE OR THIRD PARTIES AS A RESULT OF ANY DEFECTS, LATENT OR OTHERWISE, IN THE SYSTEM WHETHER ARISING FROM THE APPLICATION OF THE LAWS OF STRICT LIABILITY OR OTHERWISE. WITHOUT LIMITING THE FOREGOING, LESSEE HEREBY WAIVES ANY WARRANTIES CONTAINED IN SECTIONS 2A-210, 2A-211, 2A-212 AND 2A-213 OF THE APPLICABLE UNIFORM COMMERCIAL CODE ("UCC") AND ANY RIGHT TO DEEM LESSOR IN DEFAULT PURSUANT THERETO. LESSEE ALSO AGREES TO WAIVE SUCH WARRANTIES, RIGHTS AND REMEDIES OR OTHER APPLICABLE LAW WITH RESPECT TO THE SYSTEM, INCLUDING ITS FREEDOM FROM PATENT OR COPYRIGHT INFRINGEMENT, FREEDOM FROM LATENT DEFECTS (WHETHER OR NOT DISCOVERABLE), OR COMPLIANCE WITH APPLICABLE LAW. If the System is not properly installed, maintained, does not operate as represented or warranted by any Provider, or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against the relevant Provider. So long as Lessee is not in breach or default of this Agreement or any Lease hereunder, Lessor hereby assigns to Lessee, solely for the purpose of making and prosecuting any such claim, any rights which Lessor may have against the Provider for breach of warranty or other representation respecting any item of the System and Lessee shall hold any proceeds of such claim in trust for application as required by this Agreement.

**6. TITLE, PERSONAL PROPERTY, LOCATION AND LIENS:** The System is, and shall at all times be and remain the sole and exclusive property of Lessor, and Lessee, notwithstanding any trade-in or down payment made by Lessee or on its behalf with respect to the System, shall have no right, title or interest therein or thereto, except as to the use thereof subject to the terms and conditions of this Agreement and the related Lease. Notwithstanding the preceding sentence, for Leases with a $1.00 purchase option or where Lessee is required to purchase the System at the end of the Lease Term (a "Put Option"), Lessee shall be deemed to be the owner thereof. Lessee will not directly or indirectly create, incur, assume or allow to exist any lien, claim or encumbrance (each, a "Lien") on or with respect to the System, except such Liens as may arise through the acts or omissions of the Lessor. Lessee, at its own expense, will promptly pay, satisfy or otherwise take such actions as may be necessary to keep the System free and clear of any and all such Liens. The System is and shall at all times shall remain personal property notwithstanding how it or any item thereof may now be or hereafter become affixed, attached, imbedded in resting upon real property or any improvement thereof. If requested by Lessor, Lessee will promptly obtain and deliver to Lessor waivers of interest or Liens in form satisfactory to Lessor from all persons or entities claiming any interest in the real property or improvements where a System is installed or located. The System shall at all times during the Lease Term be kept at the address designated in each Lease and shall not be removed therefrom or released from the possession of the Lessee (except for maintenance by a Provider) without Lessor's prior written consent. Lessor may, at Lessee's expense, attach plates or markings to the System indicating the Lessor's ownership thereof.

**7. ASSIGNMENT:** LESSEE MAY NOT ASSIGN THIS AGREEMENT, ANY LEASE OR THE RIGHTS HEREUNDER, OR SUBLEASE OR LEND ANY SYSTEM OR ALLOW IT TO BE USED BY ANYONE OTHER THAN LESSEE'S EMPLOYEES WITHOUT THE PRIOR WRITTEN CONSENT OF LESSOR. No assignment or sublease shall relieve Lessee of its obligations hereunder or under any Lease and Lessee shall remain primarily liable for such obligations. Any sale, assignment, transfer, encumbrance, delegation or sublease by Lessee not consented to by Lessor shall be void ab initio. Lessor may at any time assign all or part of any interest in any Lease and in each item of the System and monies to become due to Lessor hereunder or grant security interests in the System and/or the Lessor's rights in any Lease. In such events, all the provisions of such Lease for the benefit of Lessor shall inure to the benefit of and be exercised by or on behalf of such assignee, but the assignee shall not be liable for or be required to perform any of Lessor's obligations to Lessee and Lessor shall retain such obligations. Lessee agrees that (a) it will not assert any such defenses, set-offs, counterclaims and claims against any assignee of Lessor that Lessee may have against Lessor at any time; and (b) any such assignment shall not materially change Lessee's duties or obligations under a Lease nor materially increase Lessee's risks or burdens. Subject always to the foregoing, this Lease shall inure to the benefit of, and are binding upon, the successors and assigns of the parties hereto.

**8. RETURN OF SYSTEM, STORAGE:** At the end of the Lease Term Lessee shall, at its sole expense and in accordance with the Lessor's requirements and directions (which will be consistent with the Provider's), arrange for the System to be uninstalled, boxed and crated, shipped to a location designated by Lessor and properly insured while in transit. When an item of a System is surrendered to Lessor it shall be in the condition required in this Agreement. If Lessor reason-

ably determines that any item of a System is not returned in the condition required hereby, Lessor may take all actions necessary to cause the System to achieve such condition and upon demand, Lessee shall promptly reimburse Lessor for all costs reasonably incurred in connection with the foregoing. In addition, Lessee shall deliver to the Lessor with a System all documents related thereto, including any plans, operation manuals, warranties and copies of all Acquisition Agreements. If Lessee does not have an obligation to purchase the System at the end of the Lease Term, Lessee shall provide written notice to Lessor at least 180 days and not more than 270 days before the end of the Lease Term stating Lessee's commitment to: (a) return the System at the end of the Lease Term; (b) enter into a new lease for the System; or (c) purchase the System at its fair market value. Lessee shall remove all patient information from any System prior to return to Lessor in compliance with all applicable state and federal laws. Failure to acquire or return the System as required hereunder shall result in the Lease Term extending on a quarterly basis on the terms and conditions then in effect.

**9. LOSS OR DAMAGE:** Lessee hereby assumes and shall bear the entire risk of loss, destruction or damage to the System from any and every cause whatsoever ("Casualty"), whether or not insured, until the System is returned to Lessor in accordance with the provisions of Section 8 hereof. A Casualty shall not relieve Lessee from any obligation under this Agreement or any Lease. Lessee shall notify Lessor in writing of any Casualty within 5 days thereof and shall, at the option of Lessor: (a) place the System in good repair, condition and working order; (b) replace the System with a like System in a condition acceptable to Lessor and transfer clear title to or a right to use, as appropriate, such System to Lessor, whereupon such System shall be subject to the Lease and be deemed the System for purposes hereof; or (c) on the due date for the next Payment or upon the expiration of the Lease, whichever first occurs, pay to Lessor the "Accelerated Value which shall equal: (1) the "Stipulated Loss Value" (as may be defined in a Lease, if any) plus all unpaid Payments and other sums then due; or (2) if the Lease does not provide for a Stipulated Loss Value, all unpaid Payments and other amounts then due, plus (A) the total of all future Payments for the entire Lease Term, plus (B) the greater of (i) the Lessor's original estimate of the value of the System at the end of the Lease Term or (ii) the fair market value of the System at the end of the originally scheduled Lease Term or the agreed upon purchase option price, if any. In calculating the Accelerated Value, all future Payments and end of Lease Term System values or purchase option prices shall be discounted at the Present Value Rate to the date of actual payment. The Present Value Rate shall be a per annum interest rate equal the lesser of (a) an interest rate equivalent to that of a U.S. Treasury constant maturity obligation (as reported by the U.S. Treasury) that would have a repayment term equal to the remaining Lease Term, all as reasonably determined by Lessor, or (b) three percent (3%). All proceeds of a Casualty received by Lessor shall, where applicable, be applied toward the replacement or repair of the System or the obligations of Lessee hereunder.

**10. INSURANCE:** Lessee shall at all times insure the System against risks of loss or damage from every cause including, without limitation, loss by fire, "mysterious disappearance", natural disasters and such other risks of loss as are customarily insured against on the Equipment leased hereunder by businesses of the type in which Lessee is engaged and in an amount not less than the replacement cost of the System without deductible and without co-insurance. Lessee shall also obtain and maintain comprehensive public liability insurance (with tails) covering liability for bodily injury, including death, and property damage resulting from the use, operation or return of the System with a combined single limit of not less than Three Million Dollars ($3,000,000) per occurrence. If Lessee is a doctor, hospital or other health care provider, Lessee shall obtain and maintain professional liability insurance. All such insurance will be in a form, in an amount and with companies reasonably satisfactory to Lessor. Lessor, its successors or assigns, shall be the sole named lender loss payee (or equivalent) with respect to the property insurance for the System and shall be named as an additional insured on the public liability insurance. Lessee shall deliver to Lessor documents evidencing: (a) the insurance required hereby and (b) an endorsement to the policy or policies required hereunder requiring the related insurer to provide Lessor with not less than 30 days' prior written notice of the effective date of any material alteration, cancellation or non-renewal of a policy. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact (which power shall be deemed coupled with an interest) to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. If Lessee shall fail to procure, maintain, and pay for such insurance, Lessor shall, in addition to its other rights hereunder, have the right, but not the obligation, to obtain insurance against theft and physical damage on behalf of and at the expense of Lessee and Lessor may charge Lessee an incremental fee which incremental fee may include a profit.

**11. INDEMNITY FOR CLAIMS AND TAXES:** Lessee assumes and agrees to indemnify, defend and keep harmless Lessor, its assignees, agents and employees (each, an "Indemnitee") from and against any and all losses, damages, injuries, claims, demands and expenses, including without limitation, legal expenses (other than such as may directly and proximately result from the gross negligence or willful misconduct of such Indemnitee), arising on account of the ownership, operation or return of the System or any portion thereof including, without limitation, any environmental, strict liability and infringement claims. Lessor shall give Lessee prompt notice of any claim or liability hereby indemnified against; provided, however, that the failure to deliver such prompt notice shall not release the Lessee from any of its obligations to indemnify hereunder. After the Lessee has provided a written acknowledgment of its obligation to indemnify hereunder, Lessee shall be entitled to control the defense of a claim with counsel consented to by Lessor, so long as no Event of Default (as hereinafter defined) is outstanding and such claim does not seek material relief against any Indemnitee or its property (other than the System). The obligations under this section shall survive termination of a Lease if it relates to any aspect of the System or its use during the related Lease Term. REGARDLESS OF CAUSE, LESSEE WILL NOT ASSERT ANY CLAIM WHATSOEVER AGAINST LESSOR FOR LOSS OF ANTICIPATORY PROFITS OR ANY OTHER INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE RESPONSIBLE FOR ANY DAMAGES OR COSTS WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OF ANY TRADEMARK, PATENT OR COPYRIGHT. Lessee shall also be responsible for, as and when due, and shall indemnify and hold Lessor harmless from and against all present and future taxes and other governmental charges, or any increases therein (including, without limitation, sales, use, leasing and stamp taxes and license and registration fees) and amounts in lieu of such taxes and charges and any penalties or interest on any of the foregoing, imposed, levied upon, in connection with, or as a result of the purchase, ownership, delivery, leasing, possession or use of a System, or based upon or measured by the Payments or receipts with respect to this Agreement or any Lease hereunder. Lessee shall not, however, be obligated to pay any taxes on or measured by Lessor's net income or net worth. Lessee authorizes Lessor to add to the amount of each Payment any sales, use or other tax that may be imposed on or measured by such Payment. Lessee shall pay Lessor on demand as additional rent for each System: (i) the amount of the personal property tax required to be paid by Lessor as owner of such System, (ii) an administrative fee for processing tax returns, assessments and payments (currently an amount equal to ten percent (10%) of such tax, such amount not to be less than $6 or more than $125) and (iii) interest thereon at the highest legal rate allowed from the date due until fully paid. In the event Lessee does not pay all sums specified above, Lessor has the right, but not the obligation, to pay the same. If Lessor shall so pay any of the aforementioned, then the Lessee shall remit such amount with the next Payment. In addition, Lessor reserves the right to estimate any taxes to be paid hereunder and to invoice Lessee for said sum prior to such taxes being due to the appropriate authority.

**12. TAX TREATMENT:** Unless Lessee has a $1 purchase option or a Put Option, Lessee acknowledges, with respect to each Lease, that Lessor and the consolidated group of which Lessor is a member (all references to Lessor in this section include such consolidated group) intend: (a) to be treated for federal income tax purposes (and to the extent allowable, for state and local tax purposes) as the owner of each System on the relevant Commencement Date; (b) to claim (1) the maximum available accelerated cost recovery deductions for the cost (including installation and delivery) of the System over the number of years indicated on the related Lease by using initially the 200% declining balance method permitted under Section 168 of the Internal Revenue Code of 1986, as amended, and the related regulations ("Code") changing to the straight-line method at such time as will maximize deductions, and the half year convention and no salvage value, unless otherwise required by Code 6 168(d)(3)(A); and (2) amortization deductions over the term of the Lease for Lessor's transaction expenses (collectively, "Recovery Deductions"); (c) to claim interest deductions as permitted by the Code on the aggregate interest paid to any lender which may be an assignee or secured party of or with respect to any Lease ("Interest Deductions"); (d) that it will not, under the Code, be required to include in its gross income, for federal income tax purposes, any amount with respect to any improvement, modification or addition made by Lessee to the System; and (e) that, for federal income tax purposes, all amounts included in the gross income of Lessor with respect to each item of the System will be treated as derived from or allocable to sources within the United States. The tax benefits described in this section shall be determined as to the System covered by a Lease based upon the Code (and any applicable state and local tax laws) in effect as of the date of such Lease. Lessee shall indemnify Lessor, its successors and assigns, promptly on demand, from and against any loss, disallowance, recapture, or unavailability of any Recovery Deductions or Interest Deductions claimed by Lessor with respect to any Lease including all interest, penalties, costs and reasonable attorneys' fees, or other damages arising out of or relating to any act or omission of Lessee that is inconsistent with Lessor's intention as set forth above. It is agreed that Lessor shall have sole control of any audit relating to such benefits and that Lessee may, to the extent permitted under applicable law, participate in any such audit, at its own expense, to the extent that any position it takes is not contrary or adverse to that of Lessor. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THIS AGREEMENT OR ANY LEASE HEREUNDER FOR TAX OR ACCOUNTING PURPOSES.

**13. EVENTS OF DEFAULT:** The term "Event of Default" shall mean any one or more of the following: (a) Lessee shall fail to pay any Payment or other sum when due and such failure is not cured within ten (10) days of such due date; (b) Lessee shall fail to perform or observe any of the covenants set forth in Section 10; (c) Lessee shall fail to perform or observe any other covenant, condition or agreement (not otherwise addressed in this Section 13) to be performed or observed by it hereunder or in any Lease and such failure is not cured within thirty (30) days after the date of notice thereof by Lessor to Lessee; (d) Lessee or any guarantor of Lessee's obligations or liabilities hereunder or under any Lease ("Guarantor") shall enter into any transaction of merger or consolidation in which it is not the surviving entity or sell, transfer or otherwise dispose of all or substantially all of its assets; (e) (1) Lessee or any Guarantor shall commence any action: (A) for relief under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors; or (B) seeking appointment of a receiver, custodian or other similar official for it or for its assets or making a general assignment for the benefit of its creditors; or (2) there shall be commenced against Lessee or Guarantor any action of a nature referred to in subsection 13(e)(1)(A) that results in the entry of an order for relief or any such other relief and remains undismissed or undischarged for a period of 30 days after the occurrence of such event; (f) Lessee or any Guarantor shall die or (if an entity) liquidate or dissolve itself or be liquidated, dissolved or terminated by statute or otherwise; (g) Any representation or warranty made by Lessee or any Guarantor or otherwise furnished Lessor in connection with this Agreement or any Lease hereunder shall prove at any time to have been untrue or misleading in any material respect; (h) Lessee or any Guarantor defaults on any indebtedness for borrowed money, lease, or installment sale obligation, in each case when any applicable grace period for such obligation has expired and regardless of whether such indebtedness has been accelerated or the applicable lender, lessor or creditor has commenced to exercise any remedy, but only if the indebtedness or other obligations, individually or in aggregate, is in an amount equal to or in excess of $50,000; (i) Lessee shall be in default, after any grace or cure period, under any Acquisition Agreement or any loan, lease, guaranty, agreement or contract, of which Lessor or any of its affiliates, is a party or beneficiary; or (j) the pledge, transfer, sale or other exchange of a controlling interest in the ownership of Lessee or any Guarantor.

**14. REMEDIES:** Upon the occurrence of any Event of Default, Lessor may exercise any one or more of the following remedies: (a) Declare the Accelerated Value immediately due and payable and similarly accelerate the balances due under any other Lease and agreements between Lessee and Lessor without notice or demand; (b) Charge Lessee interest on all monies due Lessor at the rate of eighteen percent (18%) per annum from the date of default until indefeasibly paid in full, but in no event more than the maximum rate permitted by law; (c) Require Lessee to assemble all or any part of the System at Lessee's expense, at a place reasonably designated by Lessor; (d) Remove and take possession of any or all items of System, without demand or notice, wherever same may be located, with or without any court order or pre-taking hearing or other process of law; and (e) exercise any other remedy available to Lessor at law or in equity.

Lessor may, at its option, use, ship, store or repair any or all items of the System so removed and shall sell, lease or otherwise dispose of any such System at a private or public sale. In the event Lessor disposes of the System, Lessor shall give Lessee credit for any sums received by Lessor from the sale or lease of the System after deduction of the expenses of sale or lease with such sums discounted at the implicit rate of interest, if appropriate. All remedies of Lessor hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. In addition, Lessee shall be responsible for all costs and expenses incurred by Lessor in the exercise of its remedies hereunder, including without limitation, reasonable attorneys' fees, removal costs and agrees to hold Lessor harmless from and against all claims except those resulting from the gross negligence or willful misconduct of Lessor. No failure on the part of the Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of this Agreement or any Lease hereunder. A waiver of default shall not be a waiver of any other or subsequent default. Lessor's recovery hereunder shall in no event exceed the maximum recovery permitted by law.

**15. UCC FILINGS AND FINANCIAL STATEMENTS:** Lessee authorizes Lessor to file a financing statement or equivalent document (and any and all amendments thereto) without the signature of either the Lessee or the Lessor, and the Lessee hereby ratifies and affirms all such

financing statements filed pursuant to this section. Lessee hereby appoints Lessor as Lessee's attorney-in-fact to do all acts or things which Lessor may deem necessary to protect Lessor's title and interest hereunder. Except for any Lease where the Lessee has a Put Option or a $1 purchase option, it is the intent of the parties that each Lease is a true lease under the UCC, and the filing of a financing statement under the UCC or other applicable law shall not be construed as evidence that any security interest was intended to be created, but only to give public notice of Lessor's ownership of the System. For any Lease where Lessee has a $1.00 purchase option or a Put Option or if this Agreement or any Lease hereunder is otherwise deemed at any time to be one intended as security, then Lessee grants Lessor a security interest in the System (and all accessions thereto and substitutions therefore) and the proceeds from the sale, lease or other disposition of the System; this security interest secures all indebtedness owing under the Lease and all other leasing schedules, whether now existing or hereafter arising, held by the same Lessor at any given point in time.

**16. LESSEE REPRESENTATIONS, WARRANTIES AND COVENANTS:** Lessee hereby represents, warrants and covenants to Lessor the following with respect to this Agreement and each Lease as of the Commencement Date thereof that: (a) Lessee is organized and validly existing under the laws of the jurisdiction of its organization, with adequate power and capacity to enter into the Lease and any other documents, instrument or agreement related to a Lease or a System including, without limitation, any Acquisition Agreement (collectively, "Documents") and is duly qualified to do business wherever necessary to carry on its present business, including all states where the System is to be located; (b) all Documents have been duly authorized, executed and delivered by Lessee and constitute valid, legal and binding agreements, enforceable in accordance with their terms, except to the extent that the enforcement of remedies therein provided may be limited under applicable bankruptcy and insolvency laws; (c) no approval, consent or withholding of objections is required from any federal, state or local governmental authority or instrumentality with respect to the entry into or performance by Lessee of the Documents, except such as have already been obtained; (d) the entry into and performance by Lessee of its obligations under the Documents will not: (1) violate any judgment, order, law, rule or regulation applicable to Lessee; or (2) result in any breach of, constitute a default under any agreement or contract to which Lessee is a party or result in the creation of any Lien (other than in favor of Lessor); (e) there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Lessee, which will have a material adverse effect on the ability of Lessee to fulfill its obligations and liabilities under the Documents; (f) under the laws of the state(s) in which the System is to be located, the System consists solely of personal property and not a fixture; (g) the Lessee is organized under the laws of the State set forth in the preamble to this Lease and its organization number is as set forth on the signature page to this Agreement: the address stated below the signature of Lessee is the chief place of business and chief executive office of Lessee and has been so for the last five years, and Lessee does not conduct business under a trade, assumed or fictitious name' (h) to provide Lessor with Lessee's financial statements or filed tax returns if its financial statements are unaudited, as soon as available, but not more than 120 days from its fiscal year end; (i) all financial statements furnished will be prepared in accordance with generally accepted accounting principles, consistently applied ("GAAP"); (j) no information contained in the Lease or any other documents or written materials furnished by or on behalf of the Lessee to the Lessor pursuant to the terms hereof or any Lease contains any untrue or inaccurate statement of a material fact or omits to state a material fact necessary to make the statement contained herein or therein not misleading in light of the circumstance under which made; and (k) the Lessee and its subsidiaries have filed all Federal, state and other material tax returns and reports required to be filed, and have paid all Federal, state and other material taxes, assessments, fees and other governmental charges levied or imposed upon them or their properties, income or assets otherwise due and payable, except those that are being contested in good faith by appropriate proceedings and for which adequate reserves have been provided in accordance with GAAP and there is no proposed tax assessment against the Lessee or any subsidiary that would, if made, have a material adverse effect on the Lessee or its ability to perform its obligations under this Agreement or a Lease.; and (l) it is Lessee's responsibility to determine under applicable laws, rules and regulations whether or not it is subject to reporting to any state or federal agencies or public health coverage programs such as Medicare, Medicaid, SCHIP or others ("Reporting Obligations").

**17. MISCELLANEOUS:** Any time that Lessor's consent is required under this Agreement such consent shall not be unreasonably withheld. All obligations of the Lessee, if more than one, shall be joint and several. All paragraph headings are inserted for reference purposes only and shall not affect the interpretation or meaning of this Agreement or any Lease hereunder. Lessee will promptly execute and deliver to Lessor such further documents, instruments and assurances and take such further action as Lessor from time to time may reasonably request in order to carry out the intent and purpose of this Agreement or any Lease and to establish and protect the rights and remedies created or intended to be created in favor of Lessor hereunder or thereunder. Lessee shall provide not less than 30 days advance written notice to Lessor of any change in its name, address of its chief executive office or its state of organization. Lessee acknowledges and agrees that Lessee, in executing this Agreement and each Lease hereunder, it has relied solely upon the terms, provisions and conditions contained herein and therein, and any other statements, warranties, or representations, if any, by the Provider, or any salesperson, employee, representative or agent of the Provider, have not been relied upon. Lessee irrevocably authorizes Lessor to fill in descriptive information in this Agreement (including Equipment serial numbers) that is left blank and to correct obvious errors in this Agreement or any Lease or any exhibit or attachment thereto. In the event Lessee has Reporting Obligations and provides Lessor with a written notice requesting information regarding payments under any Lease, Lessor will provide Lessee with a detailed outline of the components of its payment(s) hereunder which may include equipment, service, Lessee's finance terms and other related components related to such Lease(s) provided that in the event that Lessor does not timely provide Lessee with said components, Lessee shall send a subsequent written notice to the attention of "General Counsel, PMC".

**18. NOTICES; CHANGES:** Notices, requests or other communications required under the Lease to be sent to either party shall be in writing and shall be by: (a) United States first class mail, postage prepaid, and addressed to the other party at the address specified above (or to such other address as such party shall have designated by proper notice), (b) personal delivery, or (c) overnight delivery by a nationally recognized courier. Any such notice shall be effective when received.

**19. STATUTORY FINANCE LEASES; PROVIDER WAIVERS:** Lessor and Lessee agree that each Lease is a "Finance Lease" as that term is defined in Article 2A of the UCC. Lessee acknowledges that it selected the System and the Provider thereof, and Lessor has not selected, manufactured or supplied the System. LESSOR HEREBY NOTIFIES LESSEE THAT LESSEE MAY HAVE RIGHTS PURSUANT TO THE CONTRACT WITH THE PROVIDER AND THE LESSEE MAY CONTACT THE PROVIDER FOR A DESCRIPTION OF ANY RIGHTS OR WARRANTIES THAT LESSEE MAY HAVE UNDER SUCH CONTRACT. LESSEE HEREBY WAIVES ANY AND ALL RIGHTS AND REMEDIES GRANTED LESSEE BY SECTIONS 508 THROUGH 522 OF ARTICLE 2A OF THE UCC.

**20. CHOICE OF LAW; WAIVER OF JURY TRIAL:** This Agreement and each Lease hereunder shall be binding and effective when accepted by Lessor at its corporate office in Wayne, Pennsylvania, shall be deemed to have been made in Wayne, Pennsylvania and, except for local filing requirements and laws relating to the conflict of laws, shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, and, as applicable, the Electronic Signatures in Global and National Commerce Act. Lessee hereby consents to and agrees to the non-exclusive jurisdiction of the courts of the Commonwealth of Pennsylvania or the Federal District Court for the Eastern District of Pennsylvania with respect to any provision or dispute arising under this Agreement or any Lease. Lessee agrees that service of process in any action or proceeding may be duly affected upon Lessee by mailing such process via certified mail, return receipt requested or as otherwise provided under applicable law. LESSOR AND LESSEE EACH AGREE TO WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED IN ANY WAY TO THIS AGREEMENT, ANY LEASE OR ANY SYSTEM.

**21. ENTIRE AGREEMENT, NON-WAIVER AND SEVERABILITY:** This Agreement and each Lease contain the entire agreement and understanding between Lessee and Lessor relating to the subject matter thereof. No term or provision of this Agreement or any Lease may be modified unless set forth in writing and signed by both parties. LESSEE ACKNOWLEDGES THAT NO PROVIDER NOR ANY SALESPERSON, EMPLOYEE, REPRESENTATIVE OR AGENT OF A PROVIDER IS AN AGENT OR REPRESENTATIVE OF LESSOR, AND THAT NONE OF THE ABOVE IS AUTHORIZED TO WAIVE OR ALTER ANY TERM, PROVISION OR CONDITION OF THIS AGREEMENT OR ANY LEASE, OR MAKE ANY REPRESENTATION WITH RESPECT TO THIS AGREEMENT, ANY LEASE OR THE SYSTEM ON BEHALF OF LESSOR. Time is of the essence in this Agreement and each Lease hereunder. No waiver by Lessor of any breach or default shall constitute a waiver of any additional or subsequent breach or default by Lessor nor shall it be a waiver of any of Lessor's rights. Any provision of this Agreement or any Lease hereunder which for any reason may be held unenforceable in any one jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions of this Agreement or any Lease hereunder, and any such unenforceability in any one jurisdiction shall not render such provision unenforceable in any other jurisdiction. This Agreement and all of the Leases may be executed in any number of counterparts and by different parties hereto or thereto on separate counterparts, each of which, when so executed and delivered, shall be an original, but all such counterparts shall together consist of but one and the same instrument; provided, however, that to the extent that any Lease would constitute chattel paper, as such term is defined in the UCC as in effect in any applicable jurisdiction, no security interest herein or therein may be created through the transfer or possession of this Agreement in and of itself without the transfer or possession of the original of such Leases and incorporating this Agreement by reference; and no security interest in a Lease may be created by the transfer or possession of any counterpart of such a Lease other than the original thereof, which shall be identified as the document marked "Original" and all other counterparts shall be marked "Duplicate".

At Lessor's option, Lessor may accept a facsimile copy of this Agreement and related schedules, guaranties, and other documents. However, it is agreed that only a facsimile copy with Lessor's ink signature shall be deemed as original for the purposes of determining who is the holder of the chattel paper.

IN WITNESS WHEREOF, the parties hereto have caused this Master Lease Agreement to be duly executed by their authorized representatives as of the date first above written. Lessee agrees that an electronic version of this Agreement and/or any delivery and acceptance certificate with electronic signatures may be treated as an original and will be admissible as evidence thereof.

**LESSEE SIGNATURE**

Legal Name of Corporation or Partnership: Watsonville Hospital Corporation

Lessee Signature: /s/ Sean Fowler

Date: 9/30/2020

Print Name: Sean Fowler

Title: CEO

Address: 75 Nielson Street

City: Watsonville    State: CA    Zip: 95076

Organization ID#:

Witness Signature: /s/ Matko Vranjes

Print Name: Matko Vranjes

Title: Assistant Administrator

**LESSOR**

Lessor Signature: /s/ Gene Fisher (DocuSigned By: Gene Fisher, 115F52BA9B044B4...)

Date: November 18, 2020

Print Name: Gene Fisher

Title: Vice President of Operations

For: PHILIPS MEDICAL CAPITAL, LLC

Witness Signature:

Print Name:

Title: