

WILMINGTON, DE
LOS ANGELES, CA
SAN FRANCISCO, CA
NEW YORK, NY
HOUSTON, TX

919 NORTH MARKET STREET
17th FLOOR
P.O. BOX 8705
WILMINGTON
DELAWARE 19899-8705

**TELEPHONE:** 302.652.4100
FACSIMILE: 302.652.4400

LOS ANGELES
10100 SANTA MONICA BLVD.
13th FLOOR
LOS ANGELES
CALIFORNIA 90067-4003

**TELEPHONE:** 310.277.6910
FACSIMILE: 310.201.0760

SAN FRANCISCO
ONE MARKET PLAZA, SPEAR TOWER
40th FLOOR, SUITE 4000
SAN FRANCISCO
CALIFORNIA 94105-1020

**TELEPHONE:** 415.263.7000
FACSIMILE: 415.263.7010

NEW YORK
780 THIRD AVENUE
34th FLOOR
NEW YORK
NEW YORK 10017-2024

**TELEPHONE:** 212.561.7700
FACSIMILE: 212.561.7777

TEXAS
440 LOUISIANA STREET
SUITE 900
HOUSTON
TEXAS 77002-1062

**TELEPHONE:** 713.691.9385
FACSIMILE: 713.691.9407

WEB: www.pszjlaw.com

Steven Golden     August 19, 2022     sgolden@pszjlaw.com

<u>**Via E-mail**</u>

Paul Winterhalter
Offit Kurman P.C.
401 Plymouth Road, Suite 100
Plymouth Meeting, PA 19462

      Re:     <u>**In re Watsonville Hospital Corporation**</u>

Dear Paul:

     As you are aware, Pachulski Stang Ziehl & Jones LLP is counsel to Watsonville Hospital Corporation ("<u>WHC</u>") and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>") in their jointly-administered bankruptcy cases (the "<u>Bankruptcy Cases</u>") pending in the United States Bankruptcy Court for the Northern District of California (the "<u>Bankruptcy Court</u>") that were commenced on December 5, 2021 (the "<u>Petition Date</u>"). I write with respect to the positions taken by your client, Philips Medical Capital, LLC ("<u>PMC</u>"), regarding PMC's longstanding contractual relationship with the Debtors.

     PMC's contention that "there are no actual leases to be assumed and assigned" is a frivolous argument belied by both fact and law. Should PMC persist in pressing this absurd argument, the Debtors intend to commence appropriate action against PMC before the Bankruptcy Court on an emergency basis, which may include seeking punitive damages and reimbursement of the Debtors' attorney's fees incurred in connection with the action.

     The Debtors and the Pajaro Valley Healthcare District Project (the "<u>Buyer</u>") remain ready to discuss a negotiated path forward with PMC. However, given that the Closing of the Sale to the Buyer will occur on August 31, 2022, absent a consensual resolution with PMC, the Debtors intend to commence emergency proceedings to avoid PMC's actions harming the Debtors and the Buyer.

DOCS_DE:240303.2 92381/002



I.   **Brief Factual Background**

   A. **The PMC Contracts**[1]

On or about June 2020, WHC and PMC began discussing the parties' entry into a series of agreements related to the construction and operation of a catheterization laboratory facility (the "Cath Lab") at Watsonville Community Hospital (the "Hospital"). As both parties recognized, substantial construction work needed to be done before equipment relating to the Cath Lab could be installed at the Hospital. On July 22, 2020, WHC and Philips entered into a *Statement of Work (Quotation Number 1-26F9ZWH)* (the "July SOW"), beginning the Cath Lab project. On September 22, 2020, WHC and PMC entered into a series of agreements, consisting of (i) a Master Lease Agreement and Addendum thereto (collectively, the "MLA") and (ii) Master Lease Schedules #1 through 6 ("Schedules 1 – 6"). The MLA and Schedules 1 – 6 contemplate the lease of certain equipment to the Hospital for the Cath Lab (the "Equipment") by PMC to WHC. WHC paid a $123,870.76 deposit under such agreements on March 2, 2021, and certain of the Equipment was delivered to WHC on October 4, 2021 and remains on the Debtors' premises to this day.

Just days after executing the MLA and Schedules 1 – 6, on September 30, 2020, with PMC's advance knowledge and in reliance on PMC's contractual commitments to lease Equipment to WHC and finance the construction of the Cath Lab, WHC entered into an agreement (the "Construction Contract") with Colin Construction Company ("Colin") to build the Cath Lab for $878,904.00. Philips had previously issued a purchase order in this amount identifying Colin Construction as the vendor. Consistent with the Parties' prior agreement that the Philips would pay Colin Construction in the first instance, on November 24, 2020, WHC and PMC entered into that certain *Statement of Work (Cath Lab Construction)* (the "November SOW"), pursuant to which PMC agreed to finance the Construction Contract. Indeed, twelve days *earlier*, PMC remitted a $131,836.00 progress payment directly to Colin (the "November Progress Payment"). To date, PMC has paid Colin $243,540.42 for Colin's work under the Construction Contract.[2] Notwithstanding PMC's

---

[1] The "PMC Contracts" are, collectively, the Uncontested PMC Contracts and the Contested PMC Contracts, each as defined herein.

[2] *See generally* Limited PMC Objection (as defined below) at ¶ 5.



agreement to finance the Construction Contract, in order to ensure Colin's continued performance—which is now substantially complete—under the Construction Contract, the Debtors have, to date, paid Colin $309,831.53.

**B. The Debtors' Bankruptcy Cases**

    1) *The Uncontested PMC Contracts*

On January 10, 2022, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. 188]. Among other things, the Bidding Procedures Order approved the Assumption and Assignment Procedures.[3] Thereafter, on January 14, 2022, the Debtors filed and served the Assumption and Assignment Notice [Docket No. 200]. Pursuant to the Assumption and Assignment Procedures, Contract Objections to any Assignable Contract (as each such term is defined in the Bidding Procedures Order) listed on the Assumption and Assignment Notice must have been filed and served on or before February 7, 2022 (the "Contract Objection Deadline").[4]

The Assumption and Assignment Notice listed nine (9) Assignable Contracts between WHC and PMC (the "Initial PMC Contracts"), namely the MLA, Schedules 1 – 6, and the November SOW.[5] PMC did not file any Contract Objection with respect to the Initial PMC Contracts by the Contract Objection Deadline.

On February 9, 2022, the Debtors filed and served the First Supplemental Assumption and Assignment Notice [Docket No. 297], which listed the July SOW (together with the Initial PMC Contracts, the "Uncontested PMC Contracts").[6] PMC did not file any Contract Objection with respect to the July SOW by the Supplemental Contract Objection Deadline (as defined in the First Supplemental Assumption and Assignment Notice).

On February 23, 2022, the Bankruptcy Court entered the Sale Order [Docket No. 347], granting the Debtors' motion to approve the sale (the "Sale") of substantially all of their assets [Docket No. 103] (the "Sale Motion") to the Buyer or its designee pursuant to that

---

[3] *See* Bidding Procedures Order, at ¶¶ 15 – 22.
[4] *Id.* at ¶ 18.
[5] Assumption and Assignment Notice, at lines 363 – 371.
[6] First Supplemental Assumption and Assignment Notice, at line 595.



Paul Winterhalter
August 19, 2022
Page 4

certain *Asset Purchase Agreement* dated December 27, 2021 [Docket No. 347-1] (as it may be amended or supplemented, the "Purchase Agreement").

   2) *The Contested PMC Contracts*

On February 22, 2022, you sent me an email attaching, among others, Schedules 8, 9, and 10 to the MLA ("Schedules 8 – 10"), stating that these were the "last revised schedules detailing what was intended to be installed" and "are the substance of the lease arrangement." I requested, but did not receive, a copy of Schedule 7 to the MLA ("Schedule 7" and, together with Schedules 8 – 10, the "Contested PMC Contracts"). On July 7, 2022, the Debtors filed the Third Supplemental Assumption and Assignment Notice [Docket No. 600], which included the Contested PMC Contracts.[7]

On July 14, 2022, PMC filed a limited objection to the Third Supplemental Assumption and Assignment Notice [Docket No. 610] (the "Limited PMC Objection"). The Limited PMC Objection appears to contend that (i) there is no binding agreement between the Debtors and PMC because the Contested PMC Contracts were not executed by PMC and (ii) Buyer had not provided PMC with adequate assurance of future performance pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

II.  **The Debtors Will Avail Themselves of All Rights Under Applicable Law**

Your email to Jonathan Doolittle, counsel to the Buyer, and me dated August 17, 2022 (the "August 17 Email") states that PMC (1) "believe[s] the contracts were not finalized and equipment was not delivered so there are no actual leases to be assumed and assigned" and (2) "believe that financial performance [of the Buyer] is too speculative." PMC is wrong on both accounts, both as a matter of fact and law.

   A. **The Uncontested PMC Contracts Can – And Will – Be Assumed by the Debtors and Assigned to the Buyer**

---

[7] Third Supplemental Assumption and Assignment Notice, at lines 628 – 631.

DOCS_DE:240303.2 92381/002


Paul Winterhalter
August 19, 2022
Page 5

PMC's contention that there are no "finalized" contracts with WHC is not plausible. First, each of the Initial PMC Contracts are executed by both WHC and PMC. Second, PMC's course of conduct evidences the existence of the Uncontested PMC Contracts—PMC has (contrary to the August 17 Email) delivered Equipment to WHC and paid $243,540.42 to Colin. It defies elementary logic that PMC would gratuitously deliver expensive medical equipment to a hospital and pay *nearly a quarter million dollars* for construction related to such equipment without an agreement to be repaid those funds.

But even if, for the sake of argument, the Uncontested PMC Contracts are not "finalized," PMC is estopped from asserting that the Uncontested PMC Contracts (separately or together, depending on the Buyer's decision) cannot be assumed by the Debtors and assigned to the Buyer pursuant to the Sale Order. As clearly stated in the Bidding Procedures Order, PMC's failure to timely file a Contract Objection as to the Uncontested PMC Contracts prior to the applicable Contract Objection Deadline:

> (a) the Cure Amount and adequate assurance, if any, set forth in the Assumption and Assignment Notice shall be controlling, notwithstanding anything to the contrary in any Assignable Contract or any other document; and (b) the Contract Counterparty will be deemed to have consented to the assumption and assignment of the Assignable Contract and the Cure Amounts and adequate assurance, if any, and will be forever barred from objecting to the assumption and assignment of such Assignable Contract and rights thereunder, including the Cure Amounts and adequate assurance, if any, and from asserting any other claims related to such Assignable Contract against the Debtors or the Winning Bidder.[8]

Nearly six months have elapsed since the February 7 Contract Objection Deadline. PMC cannot—just days before the Closing—now inexplicably claim that the Uncontested PMC Contracts do not exist. And to the extent that PMC is arguing that the Uncontested PMC Contracts are not operative because the Contested PMC Contracts control the terms of the deal between WHC and PMC, such

---

[8] Bidding Procedures Order at ¶ 20



Paul Winterhalter
August 19, 2022
Page 6

argument is factually and legally inconsistent with PMC's contention that the Contested PMC Contracts are not "finalized"[9] or "binding."[10]

### B. The Buyer Has Provided PMC with Adequate Assurance of Future Performance

As you recall, after you filed the Limited PMC Objection, WHC, PMC, and the Buyer (including both legal and business representatives of each party) participated in a Zoom call to discuss PMC's questions with respect to the Buyer's provision of adequate assurance of future performance under section 365(b)(1)(C) of the Bankruptcy Code. The next morning, on July 21, 2022, I sent you and PMC comprehensive financial information provided to the Debtors by the Buyer (the "Adequate Assurance Information"), which consisted of: (i) a one-year post Closing cash flow; (ii) the Buyer's comprehensive bottom-up financial model in Excel; (iii) the Buyer's general business plan presentation; and (iv) the Buyer's Cath Lab-specific business plan presentation. Thereafter, I understand that PMC participated in several business calls with WHC and the Buyer to further discuss the Adequate Assurance Information.

What is required to show adequate assurance of future performance under section 365(b)(1)(C) of the Bankruptcy Code "will fall considerably short of an absolute guarantee of performance and will be adequate if performance is likely (i.e. more probable than not)."[11] The comprehensive Adequate Assurance Information provided to PMC easily meets this standard and, indeed, shows that the Cath Lab will be a profit center for Watsonville Community Hospital moving forward.

### C. If PMC Refuses to Perform, It Will be Liable to the Debtors

Since the July SOW was entered into in the summer of 2020, the Debtors have incurred considerable expense in reliance on PMC's

---

[9] August 17 Email.
[10] Limited PMC Objection at ¶ 10.
[11] *Sunshine Precious Metals, Inc. v. Sterling Mining Co.* (*In re Sterling Mining Co.*), 2010 U.S. Dist. LEXIS 43744, at *12 (D. Idaho May 5, 2020) (internal quotations omitted); *see also Official Creditors' Comm. v. X10 Wireless Tech., Inc.* (*In re X10 Wireless Tech, Inc.*), 2005 Bankr. LEXIS 3376, *9 – 10 (9th Cir. B.A.P. Apr. 5, 2005).



contractual obligations to lease Equipment for and pay for the construction of the Cath Lab. To date, the Debtors have expended hundreds of thousands of dollars toward the Cath Lab that was specifically designed and constructed for the Equipment. Among other things, if PMC now refuses to honor its contracts to lease the Equipment to WHC (or, after the Closing, the Buyer), the Hospital will be forced to spend hundreds of thousands of dollars to re-design and re-construct the Cath Lab to accommodate other equipment (assuming, of course, that the Hospital can procure such equipment). If PMC refuses to honor its commitment to pay for the construction of the Cath Lab, not only will the Hospital have to pay for the completion of the Cath Lab (including over $20,000 in Colin's remobilization fees), it will have to pay Colin $397,193.90 in past-due amounts under the Construction Contract, which are outstanding due to PMC's past failure to perform its obligations under certain of its contracts with WHC, to satisfy and remove any mechanic's lien levied upon the Hospital by Colin.

While the foregoing is not, and is not intended to be, a comprehensive recitation of all amounts for which PMC would be liable to WHC for breach of contract (or *quasi*-contract), it clearly shows how WHC has justifiably and detrimentally relied on PMC's representations and obligations with respect to the Cath Lab. The Debtors intend to hold PMC accountable to those representations and obligations.

### III. Conclusion

Since February 2022, the Debtors, PMC, the Buyer, and Colin have been in regular contact to discuss the go-forward relationship among the parties. The Debtors recognized, and continue to recognize, that both PMC and the Buyer may find it more desirable to enter into new agreements to memorialize their contractual relationship than to rely on the existing PMC Contracts.

However, if the Buyer determines to designate the some or all of the Uncontested PMC Contracts as Transferred Contracts (as defined in the Sale Order), they will be assumed by the Debtors and assigned to the Buyer, and PMC will be legally obligated to perform thereunder. Further, if the Buyer determines that it wishes to designate the some or all of the Contested PMC Contracts as Transferred Contracts as well, the Debtors will seek an emergency



hearing with the Bankruptcy Court to address the Limited PMC Objection, which the Debtors are confident will be overruled. And, in all instances, the Debtors reserve all rights against PMC, including to seek damages as a result of PMC's breaches of contract and potential violations of federal bankruptcy law. Please note also that in light of PMC's stated position the Buyer has reserved all rights, including the right to pick and choose which contracts it will designate for assumption and assignment.

Accordingly, by no later than **August 22, 2022 at 5:00 p.m. Eastern**, please let me know:

(i) whether PMC desires to discuss (and, prior to August 31, 2022, consummate) new agreements with the Debtors and/or Buyer to amend or supersede the existing PMC Contracts;

(ii) whether PMC will refuse to honor its contractual obligations under the Unopposed PMC Contracts; and

(iii) whether PMC is maintaining the Limited PMC Objection.

Absent a response or appropriate resolution of the matters discussed above, the Debtors intend to file an appropriate action in the Bankruptcy Court against PMC on or prior to Wednesday, August 24.

Very truly yours,

Steven Golden

SWG